IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION,  **Plaintiff,**  CITY OF BAYTOWN, TEXAS,  **Plaintiff-Intervenor,**  v.  ROBERT ANDRES BONTA A.K.A. ROB BONTA, IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; BAYKEEPER, INC.; AND INTERGENERATIONAL ENVIRONMENT JUSTICE FUND LTD.  **Defendants.** | Case No. 1:25-cv-00011-MJT  **PLAINTIFF-INTERVENOR'S OPPOSED MOTION TO INTERVENE** |

Pursuant to Federal Rule of Civil Procedure 24, the City of Baytown, Texas ("**Baytown**" or "**Intervenor**") files this opposed motion to intervene (the "**Motion to Intervene**"), and proposed complaint in intervention (the "**Complaint**") as party-plaintiff against defendants Robert Andres Bonta a.k.a. Rob Bonta ("**Bonta**"), the California Attorney General being sued in his individual capacity; Sierra Club, Inc. (the "**Sierra Club**"); Surfrider Foundation, Inc. ("**Surfrider**"); Heal the Bay, Inc. ("**Heal the Bay**"); Baykeeper, Inc. ("**Baykeeper**" and, collectively with the Sierra Club, Surfrider, and Heal the Bay, the "**US Proxies**"); and Intergenerational Environment Justice Fund Ltd. (the "**IEJF**" and, collectively with its affiliates, the "**Foreign Interests**") (collectively, the "**Defendants**"). In support of this Motion to Intervene, Intervenor alleges as follows:

1

# INTRODUCTION

Intervenor is a Texas Gulf Coast community in which Plaintiff Exxon Mobil Corporation ("**ExxonMobil**") operates. Intervenor is working closely with ExxonMobil as it operates and constructs advanced recycling facilities to recycle plastic at its Baytown refining complex. ExxonMobil's advanced recycling has offered Intervenor an innovative solution to recycle its plastic waste that it previously did not have, and Intervenor is making investments and working to build its own plastic recycling programs because of the recycling solution ExxonMobil has provided.

Defendants, however, have interfered with Intervenor's plans. Apparently motivated by a combination of financial self-interest and political gain, Bonta, IEJF, and the US Proxies have disparaged ExxonMobil's advanced recycling business, interfered with its contracts, and defamed its reputation. Their tortious conduct is impacting the viability of Intervenor's plastic recycling investments, and its efforts to reduce the volume of plastic waste going into its landfills.

Rob Bonta, IEJF, and the US Proxies may not care about increasing the size of landfills in California or derailing innovations in plastic waste management, but in Texas, local communities and governments are focused on being a part of the solution, not part of the politics. Defendants have interfered with Intervenor's efforts to engage in plastic recycling by calling ExxonMobil's advanced recycling a "lie," "myth," and a "false solution." Bonta may have the right to make decisions that impact California, but he does not have the right to act unlawfully or to interfere with ongoing business operations in Texas.

Notwithstanding Defendants' misrepresentations, Intervenor understands that advanced recycling is not greenwashing. It is not a lie or a myth. Nor is it a product of a public relations campaign of deception. For Intervenor, advanced recycling is a reality that is enabling it to make

a positive change in how its communities handles plastic waste. To date, ExxonMobil has recycled over 80 million pounds of plastic waste in its Baytown facility. That is 80 million pounds of plastic waste that might otherwise have been buried in a landfill or burned in an incinerator. Recently, ExxonMobil publicly announced that it will make hundreds of millions of dollars in additional investments in Baytown and Beaumont to bring its advanced recycling capacity up to 500 million pounds per year in these two facilities. These are real solutions to real problems. Intervenor is committed to working alongside ExxonMobil to take full advantage of this technology and make plastic recycling a reality for its citizens.

The challenges to recycling plastic waste are well known. For decades, the lack of a market for recycled products, the difficulty and expense of proper collection and sortation, and the limitations of mechanical recycling have all been roadblocks to a robust solution to plastic recycling in the United States. Intervenor's community is no different. Baytown has never had a plastics recycling program, because it never had the resources to implement it or for it to work economically. However, ExxonMobil's development of advanced recycling at its Baytown refining complex has changed that paradigm and has offered Intervenor not only the opportunity to recycle plastics, but to do so with a technology that can handle a wider variety of plastics than traditional recycling methods.

Traditional mechanical recycling allows consumers to recycle certain types of plastic products, like single-use water bottles. But mechanical recycling has certain limitations. Mechanical recycling weakens the structure of recycled plastic, reducing its quality and value. Mechanical recycling typically requires a stream of uniform types of plastics, e.g. plastic water bottles, and cannot process the many different kinds of plastic products that are a blend of different kinds of plastic polymers. Moreover, many communities, including Intervenor, have simply been

unable to attract the business of mechanical plastic recyclers. For these reasons, among others, mechanical recycling is only a partial solution to the problem of plastic waste.

Over the past few years, Intervenor and its representatives have been evaluating ways to reduce the volume of plastic waste going to their landfills and to mitigate the environmental, social, and economic impacts of landfills in their communities. Baytown has studied its community's solid-waste disposal rates, developed solid-waste reduction targets, and launched community-wide education and engagement programs. Baytown has sought out individuals and entities who could serve as partners in its efforts to implement a solution to the problem of its growing landfill.

ExxonMobil came forward with an innovative and effective solution: advanced recycling. ExxonMobil's solution takes hard-to-recycle plastics and breaks them down into raw materials that can be used to produce valuable new products. And given that ExxonMobil's advanced recycling process is built into its existing petrochemical facilities, this is a solution that can now be implemented at scale. Advanced recycling provides an actual solution to help communities, like Intervenor, reduce the plastic waste that would otherwise build up in its landfill. Advanced recycling therefore represents a win-win for communities. Indeed, it helps communities, like Intervenor, to reduce plastic waste while allowing that waste to be used in the manufacture of new products, leading to a more circular economy.

Intervenor has worked with ExxonMobil and certain of its affiliates to develop comprehensive solid-waste management programs—"recycling collaborations"—to reduce the volume of plastic waste in Intervenor's landfill. Advanced recycling would play an integral part in these recycling collaborations. The recycling collaborations would bring recycling to one Texas Gulf Coast community for the first time ever and revive a long dormant recycling program in another.

Intervenor, its representatives, and its citizens are ready to welcome advanced recycling—and all of its myriad benefits—with open arms. Intervenor has had discussions with ExxonMobil with respect to the development and establishment of a recycling collaboration. In the fall of 2024, however, Rob Bonta and a coterie of environmental non-profits, backed by Foreign Interests competing against ExxonMobil in the low carbon solutions and energy transition sector, began a coordinated, intentional, and defamatory smear campaign against advanced recycling, falsely describing advanced recycling as, among other things, a "lie," a "myth," a "sham," and "illegal." Defendants' smear campaign cast a pall over ExxonMobil and its advanced recycling enterprise and, in so doing, undermined the viability of Intervenor's would-be recycling collaboration and jeopardized the many benefits Intervenor expected would flow from this collaboration.

Specifically, and as further set out below, advanced recycling cannot succeed without scale and a market for certified circular polymers. If ExxonMobil's customers are unwilling to purchase ExxonMobil's certified circular polymers or communities are unwilling to provide their plastics to ExxonMobil because of Defendants' intentional and malicious conduct, ExxonMobil may be forced to stop investing in this technology.

Intervenor has limited resources and cannot invest taxpayer dollars in the infrastructure needed to support its own plastics recycling programs if Defendants' smear campaign dooms advanced recycling (the destination for their plastic waste) to failure. But dooming advanced recycling appears to be exactly what Defendants intend. Rather than embracing a solution that will help municipalities such as Intervenor address plastic waste, Defendants are conspiring to undermine advanced recycling for their own personal and political reasons.

To be clear, Baytown and its representatives and citizens are clamoring for the establishment of recycling collaborations in its community. ExxonMobil was ready and willing

to help Baytown achieve that objective. But Bonta (who is running for another term as California attorney general and has been touted as a potential candidate for governor of California) and the US Proxies (who were recruited and are represented by lawyers funded by the Foreign Interests) have interfered with the prospective relationship between Texas municipalities and ExxonMobil. As a result of that intentional and malicious interference, Intervenor's plans are now in jeopardy.

Defendants have sacrificed Intervenor's recycling collaborations to personal ambition, fundraising opportunism, and old-fashioned greed. They must be held accountable for their actions and those actions' consequences for Texas communities. Accordingly, Intervenor seeks leave to intervene in the above-captioned action so that it may assert causes of action against Defendants for (i) tortious interference with prospective business relationships and (ii) a judicial declaration that advanced recycling is, in fact, legal and that Intervenor may therefore lawfully establish, participate in, and promote the contemplated recycling collaborations. Intervenor seeks damages and injunctive and other equitable relief to remedy the consequences of Defendants' tortious conduct.

## STATEMENT OF THE FACTS

### I.     Intervenor Plans Recycling Collaborations with ExxonMobil

Intervenor is a political subdivision in the State of Texas. For many years, Intervenor and its representatives have sought ways to reduce the plastic waste present in and sent to its landfill and to mitigate the corresponding environmental, social, and economic impacts to the landfill in its community. However, solutions proved elusive. Traditional mechanical recycling's limitations meant it offered only a partial answer to the plastic waste problem. Moreover, Intervenor has been unable to attract the business of mechanical plastic recyclers. Accordingly, Intervenor looked for entities who could help them develop waste-management solutions. ExxonMobil—with its one-of-a-kind advanced recycling technology—emerged as the perfect partner for Intervenor.

Advanced recycling is an innovative technology that can process difficult-to-recycle plastics. Through a technique called "pyrolysis," advanced recycling breaks plastics down at the molecular level. The resulting raw materials are identical to those derived from fossil-based feedstocks and can therefore be used to produce many new products, leading to greater circularity in the manufacturing supply chain. *Id.*; Compl. [ECF No. 1] ("**ExxonMobil Compl.**") ¶ 59. ExxonMobil has already processed 80 million pounds of plastic waste through advanced recycling at its Baytown facility. *See* ExxonMobil Compl. ¶ 59.

Intervenor recognized advanced recycling's tremendous potential for its community. Accordingly, over the past few years, Intervenor started working with ExxonMobil to develop comprehensive solid waste management programs, with advanced recycling as the backbone. Intervenor had discussions with ExxonMobil, solidifying the development and establishment of a recycling collaboration ("**Recycling Collaboration**").

ExxonMobil is to play an instrumental role at every level of the Recycling Collaboration. ExxonMobil will sponsor recycling education programs, which will inform Intervenor's citizens about what products can be recycled and about proper sorting guidelines. *Id.* ¶ 7. Intervenor will establish a comprehensive collection system to collect solid waste from recycling bins and bail it for pickup. *Id.* The bailed plastic waste will then be transported to ExxonMobil's affiliate Cyclyx International, LLC's ("**Cyclyx**") circularity center currently under development in Houston, which will aggregate, characterize, and process Intervenor's plastic waste. *Id.* Cyclyx will in turn sell the processed plastic waste to ExxonMobil for "feedstock" in its advanced recycling operations. *Id.* All this will help Intervenor significantly reduce the volume of plastic waste sent to its landfill. *Id.* ¶ 8.

Intervenor, ExxonMobil, and Cyclyx have signed a memoranda of understanding memorializing the mutual understanding and intent of the parties to collaborate on the establishment of the Recycling Collaboration. *Id.* ¶ 11. In sum, advanced recycling and Intervenor's partnership with ExxonMobil was set to revolutionize waste management and enable a circular economy in Intervenor's community.

## II. Defendants' Campaign Against ExxonMobil Stalls Its Advanced Recycling Efforts and Undermines Its Partnership with Intervenor

With Intervenor poised to begin its Recycling Collaboration with ExxonMobil, a group led by Rob Bonta began a defamatory campaign against ExxonMobil and its advanced recycling efforts. This cadre includes Bonta, the US Proxies, and the Foreign Interests. ExxonMobil Compl. ¶ 68. Through this campaign, Defendants attempt to advance various self-serving interests. Bonta hopes to gain further political influence, while the Foreign Interests have a financial stake in the renewable energy industry that competes with ExxonMobil. *Id.* ¶¶ 45, 75. Accordingly, they accuse ExxonMobil of fraudulently misleading the public about advanced recycling, claiming that advanced recycling is a "myth" and "not based on truth." *Id.* ¶¶ 68, 71. And Bonta has promised to bring "a judgment day" to ExxonMobil. *Id.* ¶ 69. Defendants have done all this despite knowing that advanced recycling is in fact a highly effective way of reducing plastic waste. *See id.* ¶¶ 68, 95–97.

Intervenor understands that Defendants' defamatory campaign has undermined ExxonMobil's ability to expand advanced recycling and make it economically viable. Intervenor understands that numerous entities have backed out of advanced recycling agreements with ExxonMobil. *See id.* ¶¶ 102, 120. Likewise, Intervenor understands that major international brands have refused to promote advanced recycling. *See id.* ¶ 102. And Intervenor understands that ExxonMobil's prospective customers have expressed concerns about contracting with

ExxonMobil, indicating Defendants' statements are the reason. *See id.* All of these developments have significantly undermined ExxonMobil's efforts to build advanced recycling to the necessary scale. *See id.* ¶ 103. In consequence, Intervenor's ability to effectively partner with ExxonMobil to use advanced recycling to combat plastic waste is in jeopardy. Put simply, Intervenor cannot afford to build the infrastructure necessary for the recycling collaboration if advanced recycling may not even be available in the future. *Id.* Because of Defendants' smear campaign, any investment Intervenor make would be at great risk.

As alleged in Intervenor's complaint, Defendants were aware of Intervenor's prospective partnerships with ExxonMobil when they attacked ExxonMobil and advanced recycling. *See* ExxonMobil Compl. ¶¶ 89, 123. Indeed, as part of Defendants' campaign, Bonta has specifically criticized ExxonMobil's Texas activities, singling out its Baytown facility. *Id.* ¶ 86. Moreover, Bonta has expressly stated that Defendants' aim is to effectuate "behavioral change" that would primarily occur in Texas. *Id.* ¶ 89. Accordingly, interfering with ExxonMobil's relationships between entities like Intervenor—and thereby preventing programs like the recycling collaboration from launching—was Defendants' goal all along.

On January 6, 2025, ExxonMobil sued Defendants in this Court for business disparagement, defamation, tortious interference with a contract, tortious interference with prospective business, and civil conspiracy.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24(b)(1) states, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The Court's determination is "wholly discretionary" and need only "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Reid v. General Motors Corp.*, 240 F.R.D. 257,

9

259 (E.D. Tex. 2006); Fed. R. Civ. P. 24(b)(3). In exercising its discretion, a district court may also consider "whether an intervenor's interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984). Permissive intervention does not require that the intervenor "have a direct personal or pecuniary interest in the subject of the litigation." *Newby v. Enron Corp.*, 443 F.3d 416, 423 (5th Cir. 2006). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015).

## ARGUMENT AND AUTHORITIES

The Court should grant the Motion to Intervene because (i) Intervenor's motion is timely; (ii) there are common questions of law and fact pertaining to Intervenor's Complaint and ExxonMobil's Complaint; (iii) intervention will not unduly delay or prejudice the original parties; (iv) Intervenor's interests are not adequately represented by other parties; and (v) Intervenor will significantly contribute to full development of the underlying factual issues in the suit.

### I.    Intervenor's Motion is Timely.

"[W]hether . . . intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). Fifth Circuit courts assess four factors when evaluating whether a motion to intervene is timely: "(1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 433 (5th Cir. 2011).

ExxonMobil filed its Complaint on January 6, 2025. Intervenor now files this Motion to Intervene before the Defendants have even responded. This proceeding has just begun. The parties have not started briefing the substantive issues, no dispositive motions have been heard or decided, and no discovery has been conducted. Under these circumstances, the Motion to Intervene is timely and neither party would be prejudiced by its intervening and being heard in the case. *See, e.g., Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996); *TiVo Inc. v. AT&T, Inc.*, 2010 WL 10922068, at *4 (E.D. Tex. Mar. 31, 2010); *Sewell v. St. Bernard Par. Gov't*, No. CV 21-02376, 2022 WL 22855266, at *3 (E.D. La. June 14, 2022).

## II.  There Are Common Questions of Law and Fact Pertaining to Intervenor's Complaint and ExxonMobil's Complaint.

The Motion to Intervene directly overlaps with the subject matter of ExxonMobil's Complaint. For one, the factual basis for Intervenor's tortious interference claim and ExxonMobil's tortious interference claim stems from the same alleged misconduct by Defendants. Within these claims are the same questions of law and fact, such as (1) whether Defendants' conduct constitutes the tort of defamation; (2) whether Defendants intentionally committed tortious interference; (3) whether Defendants had knowledge of ExxonMobil's prospective business relationships; (4) whether Defendants' conduct caused the injury; (5) whether ExxonMobil and Intervenor have suffered injury; and (6) Defendants' defense of these claims. *See U.S. Equal Emp. Opportunity Comm'n v. Wellpath LLC*, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021). Additionally, Intervenor and ExxonMobil seek similar declarations recognizing that advanced recycling is permitted by law and can be practiced at Texas facilities. As such, the declaratory judgment claims necessarily share common questions of law and fact as to the legality and efficacy of advanced recycling. *See Payne v. Fid. Sec. Life Ins. Co.*, 2010 WL 11553079, at *2 (E.D. Tex. May 13, 2010).

11

Courts in this district have routinely granted intervention where, like here, the intervenor's claims share common questions of law and fact with those of the plaintiff. *See, e.g.*, *Reid*, 240 F.R.D. at 260; U.*S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010) (same); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 2017 WL 6059303, at *7 (E.D. Tex. Dec. 7, 2017) (same); *Uniloc 2017 LLC v. AT&T Mobility LLC*, 2019 WL 1773117, at *6 (E.D. Tex. Apr. 23, 2019) (same).

### III.     Intervention Will Not Unduly Delay or Prejudice the Original Parties.

"The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis." *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021). As explained above, no undue delay or prejudice will occur to the original parties because the Motion to Intervene is filed in this Action's infancy. Fifth Circuit district courts have granted permissive intervention in similar circumstances. *See, e.g.*, *U.S. Equal Emp. Opportunity Comm'n v. Wellpath LLC*, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021); *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 2024 WL 1260639, at *7 (N.D. Tex. Jan. 12, 2024).

Moreover, were Intervenor to instead bring a separate lawsuit against Defendants, "the time and expense of separate litigation would almost invariably cause the defendants greater prejudice, expense, and delay." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, WL 974335, at *7 (N.D. Tex. Mar. 31, 2022). Hence, allowing Intervenor to intervene in this case will not result in any unduly delay or prejudice.

### IV.     Intervenor's Interests Are Not Adequately Represented by Other Parties.

Further, Intervenor's interests are not adequately represented by the original parties and therefore intervention is necessary to protect Intervenor's interests. When an intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be

adequately represented. *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). An intervenor may overcome this presumption by making a "minimal" showing of an "adversity of interest" by "demonstrat[ing] that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015). The intervenor need only show that the representation of its interest "may be" inadequate. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972).

Here, though Intervenor shares some similar aims as ExxonMobil, Intervenor is a local government entity with different interests from a large corporation like ExxonMobil. "The Fifth Circuit has historically acknowledged the significance of a distinction between institutional and individual representation in the context of Rule 24 intervention." *State of Texas v. United States*, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021). ExxonMobil has its own distinct economic interests in this Action related to harm to its reputation, business, and shareholder value. By contrast, Intervenor, as a governing body, has different interests based on the economic and environmental harms suffered by its constituents and community. *See Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994). As such, Intervenor should be permitted to represent their own, distinct interests in this Action.

**V.    Intervenor Will Contribute to Full Development of the Underlying Factual Issues.**

Intervenor will significantly contribute to the Court's understanding of the underlying factual issues. For one, Intervenor can provide "experience in observing the direct impact" of Defendants' alleged misconduct on its community, which ExxonMobil is not positioned to do. *See State of Texas*, 2021 WL 411441, at *4. ExxonMobil is not best situated to understand the nuances and minutiae of how local municipalities like Intervenor is affected by Defendants' tortious conduct, nor does it have access to the same evidence Intervenor can provide. Though Intervenor

13

presents similar claims as ExxonMobil, only Intervenor can offer the unique perspective and knowledge necessary to determine their tortious interference and declaratory judgment claims against Defendants. *See Martinez v. United States*, 2005 WL 8155760, at *6 (W.D. Tex. Dec. 12, 2005). As such, "[p]ermitting intervention will give all the litigants the opportunity to present their claims, defenses, and factual contentions together as a more cohesive story for the jury." *Id.*

## CONCLUSION

For the foregoing reasons, Intervenor respectfully requests that the Court grant their Motion to Intervene.

Respectfully submitted,

Travis C. Barton, SBN: 00790276
tcbarton@mcginnislaw.com
J. McLean Bell, SBN: 24120712
mbell@mcginnislaw.com
**MCGINNIS LOCHRIDGE LLP**
1111 W. 6th St, Ste 400
Austin, TX 78703
(512) 495-6000
(512) 495-6093 FAX


Jonathan D. Baughman, SBN: 24029074
jbaughman@mcginnislaw.com
William K. Grubb, SBN: 24107793
wgrubb@mcginnislaw.com
**MCGINNIS LOCHRIDGE LLP**
609 Main St., Ste. 2800
Houston, TX 77002
(713) 615-8500
(713) 615-8585 FAX

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically in compliance with Local Rule CV-5(a) on 22nd day of April, 2025.

_____
Travis C. Barton

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), undersigned counsel certifies that he has personally called counsel for each of the defendants and that multiple emails were exchanged with the defendants about the relief requested herein. The parties were unable to reach an agreement and are at an impasse because counsel did not believe intervention was proper or was otherwise unable to agree to the motion. Accordingly, this motion is opposed.

_____
Travis C. Barton