ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
WILL SETRAKIAN, CA State Bar No. 335045
Deputy Attorney General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone:  (213) 269-6668
  Fax:  (916) 731-2125
  E-mail:  William.Setrakian@doj.ca.gov
*Attorneys for Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **EXXON MOBIL CORPORATION,** | 1:25-cv-11-MJT |
| Plaintiff, | **DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS** |
| v. | Judge:        Hon. Michael Truncale |
| **ROBERT ANDRES BONTA A.K.A. ROB BONTA, IN HIS INDIVIDUAL CAPACITY, ET AL.,** | Action Filed:  January 6, 2025 |
| Defendants. | |

1

## TABLE OF CONTENTS

2

**Page**

3    Statement of the Issues ........................................................................................................ 1

4    Introduction ......................................................................................................................... 1

Factual Summary ................................................................................................................. 2

5    Legal Standard ..................................................................................................................... 3

6    Argument ............................................................................................................................. 4

7          I.        The Court Lacks Personal Jurisdiction over Attorney General Bonta ................... 4

8          II.       California and Texas Law Immunize Attorney General Bonta Because He
                    Acted in the Scope of His Employment ................................................................. 8

9                    A.        California Law ........................................................................................ 8

10                            1.        Attorney General Bonta Acted in the Scope of Employment ......... 8

11                            2.        California Law Shields Attorney General Bonta from
                                     Liability ...................................................................................... 11

12                    B.        Texas Law ............................................................................................ 13

                             1.        Attorney General Bonta Acted in the Scope of Employment ....... 13

13                            2.        Texas Law Shields Attorney General Bonta from Liability ......... 14

14          III.      The Eleventh Amendment Bars ExxonMobil's Suit ............................................ 16

            IV.       The Court Should Not Issue Declaratory Relief .................................................. 18

15    Conclusion ........................................................................................................................ 19

16    Certificate of Compliance ................................................................................................. 20

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

C ASES

4

*Ashcroft v. Iqbal*

5
    556 U.S. 662 (2009) ...................................................................................... 3

6

*Avila v. Larrea*
    394 S.W.3d 646 (Tex. App. 2012) .............................................................. 15

7

*Bailey v. Shell W. E&P, Inc.*

8
    609 F.3d 710 (5th Cir. 2010) ........................................................................ 8

9

*Berry v. Texas Woman's Univ.*
    2020 WL 9936141 (E.D. Tex. Feb. 28, 2020) ............................................. 3

10

11

*BHP Petroleum Co. Inc. v. Millard*
    800 S.W.2d 838 (Tex. 1990) ...................................................................... 18

12

*Bulkley & Assocs., LLC v. Dep't of Indus. Rels., Div. of Occupational Safety &*
    *Health of the State of Cal.*

13
    1 F.4th 346 (5th Cir. 2021) ...................................................................... 4, 5

14

*Carter v. Diamond URS Huntsville, LLC*

15
    175 F. Supp. 3d 711 (S.D. Tex. 2016) .................................................. 13, 14

16

*Christina v. Pitt*

17
    2020 WL 6684889 (E.D. Tex. Nov. 12, 2020) ............................................ 7

18

*City of Austin v. Paxton*
    943 F.3d 993 (5th Cir. 2019) ...................................................................... 17

19

*City of Hempstead v. Kmiec*

20
    902 S.W.2d 118 (Tex. App. 1995) .............................................................. 16

21

*City of Houston v. Guthrie*

22
    332 S.W.3d 578 (Tex. App. 2009) .............................................................. 16

23

*Cloud v. McKinney*
    228 S.W.3d 326 (Tex. App. 2007) .............................................................. 15

24

*Collins v. Morgan Stanley Dean Witter*

25
    224 F.3d 496 (5th Cir. 2000) ........................................................................ 5

26

*D'Amico v. Bd. of Med. Exam'rs*

27
    520 P.2d 10 (Cal. 1974) ................................................................ 9, 11, 14

28

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*d.d. v. Advanced Polymer Scis., Inc.*
   128 S.W.3d 304 (Tex. App. 2004) ........................................................................ 8

*Danzinger & De Llano, LLP v. Morgan Verkamp, LLC*
   24 F.4th 491 (5th Cir. 2022).............................................................................. 6

*Donohue v. Butts*
   516 S.W.3d 578 (Tex. App. 2017) ...................................................................... 16

*Eager to Motivate Fitness, LLC v. Eames*
   2023 WL 11822281 (W.D. Tex. Aug. 28, 2023) .................................................. 5

*Felch v. Transportes Lar-Mex SA DE CV*
   92 F.3d 320 (5th Cir. 1996).......................................................................... 5, 6

*Fontenot v. Stinson*
   369 S.W.3d 268 (Tex. App. 2011) ...................................................................... 16

*Frick v. Jergins*
   657 S.W.3d 840 (Tex. App. 2022) ...................................................................... 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
   564 U.S. 915 (2011) ......................................................................................... 4

*Hansen v. Protective Life Ins. Co.*
   642 F. Supp. 3d 587 (S.D. Tex. 2022) ................................................................ 18

*Henley v. Simpson*
   527 F. App'x 303 (5th Cir. 2013) ...................................................................... 17

*Holland v. Weisfelner*
   2019 WL 3290862 (S.D. Tex. July 1, 2019)........................................................ 8

*Hunt v. Smith*
   67 F. Supp. 2d 675 (E.D. Tex. 1999) .................................................................. 15

*Idaho v. Coeur d'Alene Tribe of Idaho*
   521 U.S. 261 (1997)......................................................................................... 17

*In re BP Oil Supply Co.*
   317 S.W.3d 915 (Tex. App. 2010)...................................................................... 18

*Ingram v. Flippo*
   89 Cal. Rptr. 2d 60 (Ct. App. 1999).................................................................... 12

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Jennings v. Abbott*
    538 F. Supp. 3d 682 (N.D. Tex. 2021)..............................................................14, 16

*Johnson v. TheHuffingtonPost.com, Inc.*
    21 F.4th 314 (5th Cir. 2021)........................................................................... 7

*Kassen v. Hatley*
    887 S.W.2d 4 (Tex. 1994)............................................................................ 14

*Kilgore v. Younger*
    640 P.2d 793 (Cal. 1982) ..................................................................10, 11, 12

*Knight v. City Streets, L.L.C.*
    167 S.W.3d 580 (Tex. App. 2005) ................................................................ 15

*Laverie v. Wetherbe*
    517 S.W.3d 748 (Tex. 2017)....................................................................13, 14

*Lewis v. Lynn*
    236 F.3d 766 (5th Cir. 2001)........................................................................ 19

*Mission Consol. Indep. Sch. Dist. v. Garcia*
    253 S.W.3d 653 (Tex. 2008)........................................................................ 16

*Mobolutions, LLC v. Geon Performance Sols., LLC*
    2024 WL 3927251 (E.D. Tex. Aug. 23, 2024) ................................................... 3

*Newton v. Arapaia*
    2005 WL 1562787 (N.D. Cal. June 28, 2005) ................................................... 13

*Off. v. Ngokoue*
    408 S.W.3d 350 (Tex. 2013)........................................................................ 16

*Paz v. Brush Engineered Materials, Inc.*
    445 F.3d 809 (5th Cir. 2006)........................................................................ 4

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984).................................................................................... 17

*Plastics Indus. Ass'n v. Bonta*
    2025 WL 1025142 (D.D.C. Apr. 7, 2025) ......................................................... 7

*Ramming v. United States*
    281 F.3d 158 (5th Cir. 2001)........................................................................ 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Ramos v. Tex. Dep't of Pub. Safety*
　35 S.W.3d 723 (Tex. App. 2000) .......................................................................... 15

*RapidDeploy, Inc. v. RapidSOS, Inc.*
　2022 WL 3045649 (W.D. Tex. Aug. 1, 2022) ...................................................... 6

*Reinhardt v. Key Risk Mgmt., Inc.*
　2003 WL 292176 (N.D. Tex. Feb. 6, 2003) .......................................................... 8

*Revell v. Lidov*
　317 F.3d 467 (5th Cir. 2002) ............................................................................... 7

*Richardson Hosp. Auth. v. Duru*
　387 S.W.3d 109 (Tex. App. 2012) ........................................................................ 16

*Robinson v. Alameda Cnty.*
　875 F. Supp. 2d 1029 (N.D. Cal. 2012) .............................................................. 13

*Robles v. Ciarletta*
　797 F. App'x 821 (5th Cir. 2019) ........................................................................ 5

*Rothman v. Jackson*
　57 Cal. Rptr. 2d 284 (Ct. App. 1996) .......................................................... 9, 11, 14

*Royer v. Steinberg*
　153 Cal. Rptr. 499 (Ct. App. 1979) ..................................................................... 12

*Sanborn v. Chron. Publ'g Co.*
　556 P.2d 764 (Cal. 1976) ................................................................................ 8, 10

*Sangha v. Navig8 ShipManagement Priv. Ltd.*
　882 F.3d 96 (5th Cir. 2018) ................................................................................. 5

*Save El Toro Ass'n v. Days*
　159 Cal. Rptr. 577 (Ct. App. 1979) ...................................................................... 9

*Saxton v. Faust*
　2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) .................................................... 7

*Schapira v. Salazar*
　2022 WL 2960229 (Tex. App. July 27, 2022) ..................................................... 14

*Shia v. Boente*
　2017 WL 6033741 (S.D. Tex. Nov. 16, 2017) ..................................................... 7

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Stallings v. CitiMortgage, Inc.*
611 F. App'x 215 (5th Cir. 2015) .......................................................... 18

*State Bd. of Equalization v. Superior Court*
42 Cal. Rptr. 3d 116 (Ct. App. 2006) ...................................................... 9

*Stramaski v. Lawley*
44 F.4th 318 (5th Cir. 2022).............................................................. 17

*Stroman Realty, Inc. v. Wercinski*
513 F.3d 476 (5th Cir. 2008) ........................................................... 4, 8

*Sykes v. Superior Court*
507 P.2d 90 (Cal. 1973) ..................................................................... 9

*Taylor on Behalf of T.J. v. Ctr. Indep. Sch. Dist.*
2024 WL 4001509 (E.D. Tex. July 25, 2024)................................................ 3

*Tex. Employers' Ins. Ass'n v. Jackson*
862 F.2d 491 (5th Cir. 1988) ............................................................. 18

*Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*
996 F.2d 774 (5th Cir. 1993) ............................................................. 18

*Trax Recs., Ltd. v. Sherman*
2023 WL 3275830 (E.D. La. May 5, 2023) ................................................. 5

*Tutor-Saliba Corp. v. Herrera*
39 Cal. Rptr. 3d 21 (Ct. App. 2006)............................................. 10, 11, 12

*Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*
421 F. App'x 398 (5th Cir. 2011) ....................................................... 18

*Vasquez v. Bridgestone/Firestone, Inc.*
325 F.3d 665 (5th Cir. 2003)............................................................. 8

*Vega v. City of El Paso*
2022 WL 789334 (W.D. Tex. Mar. 15, 2022) ............................................... 5

*Villarreal v. Wells Fargo Bank, N.A.*
814 F.3d 763 (5th Cir. 2016)............................................................. 4

*Vortex Cos., LLC v. Amex Sanivar Holding AG*
643 F. Supp. 3d 688 (S.D. Tex. 2022) ................................................. 7, 8

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Walden v. Fiore*
    571 U.S. 277 (2014) ................................................................................ 4

4

*Williams v. Am. Com. Lines, Inc.*

5

    2021 WL 4143931 (M.D. La. July 29, 2021) ...................................... 19

6

*Williams v. City of Nacogdoches*

7

    2023 WL 4156298 (E.D. Tex. May 24, 2023) ...................................... 3

8

*Willis v. City of Carlsbad*
    262 Cal. Rptr. 3d 528 (Ct. App. 2020) ............................................. 13

9

*Wyatt v. Kaplan*

10

    686 F.2d 276 (5th Cir. 1982) ............................................................. 3

11

**STATUTES**

12

28 U.S. Code

13

    § 1391 ................................................................................................ 8

14

California Business and Professions Code
    § 321 .................................................................................................. 9

15

California Civil Code

16

    § 47(a) .............................................................................................. 11

17

California Government Code

18

    § 825(a) ............................................................................................ 18
    § 950.2 ............................................................................................. 12

19

    § 11180.5 ....................................................................................... 9, 12
    § 11181 .......................................................................................... 9, 12

20

    § 12510 ............................................................................................. 9
    § 12511 ........................................................................................ 9, 11

21

    § 12600 .......................................................................................... 9, 12

22

California Tort Claims Act ................................................................ 8, 11, 12, 13

23

Texas Civil Practice and Remedies Code

24

    § 101.001(5) .................................................................................... 13

25

    § 101.106(f) ..................................................................................... 16

26

Texas Declaratory Judgment Act ...................................................... 18

27

Texas Tort Claims Act ...................................................................... 16

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

Eleventh Amendment................................................................................................ 2, 16, 17, 18

**COURT RULES**

Federal Rule of Civil Procedure
    12(b) ......................................................................................................... 19
    12(b)(1) ..................................................................................................... 3
    12(b)(2) ..................................................................................................... 3
    12(b)(6) ..................................................................................................... 3

**STATEMENT OF THE ISSUES**

1. Whether the Court has personal jurisdiction over Attorney General Bonta for statements that he made outside of Texas and that did not target Texas.

2. Whether Attorney General Bonta acted in the scope of his employment when he discussed litigation being pursued by the Department that he leads during events at which he appeared in his official capacity, and through email and social-media communications.

3. Whether a plaintiff can evade the Eleventh Amendment's bar on suing government officials for money damages by purporting to sue an official in his individual capacity for official conduct.

4. Whether the Court should dismiss ExxonMobil's declaratory relief request, if it concludes that none of ExxonMobil's other causes of action can proceed against Attorney General Bonta.

**INTRODUCTION**

ExxonMobil sues an out-of-state Attorney General based on statements describing litigation brought in that official's jurisdiction.  And it sues him in his individual capacity, seeking money from him directly.  This lawsuit is foreclosed on justiciability grounds by well-established precedent—and for good reason.  If such suits were allowed to proliferate, elected officials nationwide would face financial threats in far-flung jurisdictions, just for fulfilling the duties of their offices.  The Court should grant this Motion to Dismiss.

First, the Court lacks personal jurisdiction over Attorney General Bonta.  This suit does not arise out of Attorney General Bonta's contacts with Texas.  Instead, it stems from out-of-state comments, none of which were made in Texas, or target Texas or an audience therein. ExxonMobil touts its Texas connections, but those do not establish personal jurisdiction.  Rather, courts look to the defendant's forum-state contacts, not the plaintiff's.  Separately, California's state-law action against ExxonMobil also does not establish minimum contacts for personal jurisdiction.

Second, both California and Texas immunity law bar this action.  Both states immunize public officials from suit for actions taken in the scope of their employment.  Whichever law this Court applies, Attorney General Bonta's comments on his Department's pending litigation fall in

1

1   the heartland of his employment duties.

2          Third, the Eleventh Amendment bars this suit.  A plaintiff cannot sue a state official for

3   money damages in federal court.  As with the state-law immunities for public officials, a plaintiff

4   cannot end-run around this doctrine by purporting to sue a state employee in his individual

5   capacity for official conduct.

6          Finally, ExxonMobil's declaratory relief claim fails because declaratory relief cannot

7   proceed in the absence of another valid cause of action.

8          None of these legal defects can be cured by amendment.  The Court should apply well-

9   settled law and dismiss the Complaint against Attorney General Bonta without leave to amend.

10                                      **FACTUAL SUMMARY**

11         Last September, the People of the State of California sued ExxonMobil in California state

12  court alleging several state-law causes of action related to ExxonMobil's marketing and

13  promoting plastics as recyclable.  Declaration of Robert William Setrakian ("Setrakian Decl.")

14  Ex. A; *see* Request for Judicial Notice ("RJN").  The suit alleges that ExxonMobil deceptively

15  promoted plastics recycling as a solution to overabundant plastic waste, including by advertising

16  it in California publications.  Setrakian Decl., Ex. A at ¶¶ 51–58.  And it claims that

17  ExxonMobil's misconduct injured California by, among other things, despoiling its rivers and

18  beaches, suppressing its tourism industry, cramping its fishing economy, and sapping its

19  resources by diverting them to cleanup efforts.  *Id.* at ¶¶ 360–72, 378, 391, 394–405.  Attorney

20  General Bonta subsequently discussed the lawsuit and its allegations in several public

21  appearances made in his capacity as Attorney General.  Compl. Ex. 1; Cal. Dep't of Justice,

22  *Attorney General Bonta, Environmental NGOs Discuss Plastics Deception Lawsuit Against*

23  *ExxonMobil*, YouTube (Sept. 23, 2024), https://www.youtube.com/watch?v=OR24jmO_uNY

24  ("DOJ YouTube Video"); *California Sues Exxon over Global Plastic Pollution*, YouTube (Sept.

25  23, 2024), https://www.youtube.com/watch?v=Nsy8exWEcxw ("Reuters Video"); *Climate Week*

26  *NYC 2024—Rob Bonta*, YouTube (Sept. 23, 2024),

27  https://www.youtube.com/watch?v=XOGn_nFZ3Q8 ("Climate Week Video"); *California AG*

28  *Rob Bonta on ExxonMobil Lawsuit:  They Lied to the World*, CNBC (Sept. 24, 2024),

                                                    2

https://www.cnbc.com/video/2024/09/24/california-ag-rob-bonta-on-exxon-mobil-lawsuit-they-lied-to-the-world.html ("Squawk Box Video").[1]  Attorney General Bonta also posted statements about the case on his X and Instagram accounts, which identify him as California's Attorney General.  Compl. Exs. 2–5; Setrakian Decl., Ex. B; *see* RJN.  Finally, Attorney General Bonta discussed the suit, and linked to press coverage of its contents, in an email to supporters.  Compl. Ex. 6.

This lawsuit followed.  ExxonMobil alleged several Texas state-law claims against Attorney General Bonta based on his statements about California's suit.  It brought these claims against the Attorney General in his individual capacity.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for arguing that a suit is barred by sovereign immunity or state-law immunities.[2]  *Berry v. Texas Woman's Univ.*, 2020 WL 9936141, at *2 (E.D. Tex. Feb. 28, 2020), *report and recommendation adopted*, 2020 WL 10354078 (E.D. Tex. Mar. 18, 2020) (sovereign immunity); *Taylor on Behalf of T.J. v. Ctr. Indep. Sch. Dist.*, 2024 WL 4001509, at *4 (E.D. Tex. July 25, 2024), *report and recommendation adopted*, 2024 WL 3997476 (E.D. Tex. Aug. 29, 2024) (state-law immunity).  The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant."  *Mobolutions, LLC v. Geon Performance Sols., LLC*, 2024 WL 3927251, at *3 (E.D. Tex. Aug. 23, 2024).  "On a motion to dismiss for lack of personal jurisdiction, the plaintiff rather than the movant has the burden of proof."  *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).  The Court may consider documents "referred to in the plaintiff's complaint and [] central to her claim."  *Villarreal v. Wells Fargo Bank, N.A.*, 814

---

[1] The Complaint cites these videos.  ECF No. 1 at 17 n.18, 25 nn.34 & 35, 26 n.40.
[2] Some courts evaluate state-law immunities under Federal Rule of Civil Procedure 12(b)(6). *Williams v. City of Nacogdoches*, 2023 WL 4156298, at *2, 5–7 (E.D. Tex. May 24, 2023), *report and recommendation adopted*, 2023 WL 4143164 (E.D. Tex. June 21, 2023).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

F.3d 763, 766 (5th Cir. 2016) (quotation omitted).  The Court also may consider affidavits placed in the record.  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

**ARGUMENT**

**I.    THE COURT LACKS PERSONAL JURISDICTION OVER ATTORNEY GENERAL BONTA**

In a diversity suit, personal jurisdiction is "governed by the law of the state in which the federal court sits."  *Bulkley & Assocs., LLC v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 351 (5th Cir. 2021).  Texas law extends personal jurisdiction as far as permissible by due process.  *Id.*  Thus, personal jurisdiction exists if a non-resident defendant "has minimum contacts with the foreign state such that imposing a judgment does not offend traditional notions of fair play and substantial justice."  *Id.* (citations and internal quotations omitted).

"The proper focus of the 'minimum contacts' inquiry in intentional-tort cases [like this one] is 'the relationship among the defendant, the forum, and the litigation.'  And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (citation omitted).[3]  Courts thus "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Id.* at 285.  "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id.*; *see also, e.g.*, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008) (Fifth Circuit has "declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident").  If alleged conduct "happened to affect" ExxonMobil in Texas, that would "not . . . confer [personal] jurisdiction," because such effects would be "largely a consequence of [*ExxonMobil's*] relationship with the

---

[3]Courts have distinguished between general and specific personal jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A defendant is subject to general jurisdiction if his "affiliations with the State are so 'continuous and systematic' as to render [hi]m essentially at home in the forum State."  *Id.* (citation omitted).  "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Id.* (citation omitted).  ExxonMobil does not allege continuous and systematic affiliations with Texas sufficient to render Attorney General Bonta essentially at home in Texas and subject to general jurisdiction there.  This brief thus discusses only specific jurisdiction.

4

1   forum, and not of any actions [Attorney General Bonta] took to establish contacts with the

2   forum." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103–04 (5th Cir. 2018).

3        The minimum-contacts inquiry asks three questions.  First, whether the defendant

4   "purposely directed [his] activities toward the forum state or purposefully availed [him]self of the

5   privileges of conduct activities there." *Bulkley*, 1 F.4th at 351.  Second, whether the case "arises

6   out of or results from the defendant's forum-related contacts." *Id.*  And third, whether "the

7   exercise of jurisdiction is fair and reasonable." *Id.*  If the Court concludes that the defendant did

8   not purposely direct his activities towards the forum state or avail himself of that state's

9   privileges, it can end the inquiry without considering the remaining two factors.  *Eager to*

10  *Motivate Fitness, LLC v. Eames*, 2023 WL 11822281, at *3 (W.D. Tex. Aug. 28, 2023); *Trax*

11  *Recs., Ltd. v. Sherman*, 2023 WL 3275830, at *5 (E.D. La. May 5, 2023).

12       Starting with the first prong of this analysis, Attorney General Bonta did not direct his

13  activities toward or conduct activities in Texas.  ExxonMobil identifies eleven statements by the

14  Attorney General.  Compl., ¶¶ 49, 69–78, 84–89; Exs. 1–6.  Six are videos:  one announcing the

15  lawsuit against ExxonMobil and five interviews regarding the lawsuit.  Compl., ¶¶ 49, 69, 75, Ex.

16  1.[4]  Four are social-media posts regarding the lawsuit.  *Id.* Exs. 2–5.  And one is a campaign

17  email referencing the lawsuit.  *Id.* at Ex. 6.  These fail to establish personal jurisdiction for several

18  reasons.

19       First, the relevant statements were not made in Texas.  The Complaint does not allege that

20  Attorney General Bonta issued the named statements in Texas, so ExxonMobil has not met its

21  burden of establishing jurisdiction through them.  *Felch v. Transportes Lar-Mex SA DE CV*, 92

22  F.3d 320, 326 (5th Cir. 1996) ("the party who seeks to invoke the jurisdiction of the district court

23  bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the

24  _____

    [4]The Court may consider these videos on Attorney General Bonta's Motion to Dismiss.  A court
25  may consider documents on a motion to dismiss if the documents "are referred to in the plaintiff's
    complaint and are central to the [plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224
26  F.3d 496, 498–99 (5th Cir. 2000) (citation omitted).  This applies to video evidence.  *Robles v.
    Ciarletta*, 797 F. App'x 821, 832 (5th Cir. 2019); *Vega v. City of El Paso*, 2022 WL 789334, at
27  *4 (W.D. Tex. Mar. 15, 2022) (court may review video evidence at Motion to Dismiss phase
    "without converting the motion into one for summary judgment") (citation omitted).
28  ExxonMobil's Complaint repeatedly mentions these videos.  Compl., ¶¶ 49, 69–78, 85–89.
    Those references are central to ExxonMobil's personal-jurisdictional argument. *Id.* ¶¶ 85–89.

5

1    jurisdiction of the court").  Instead, Attorney General Bonta issued the relevant statements outside

2    of Texas.  Six of ExxonMobil's cited videos, two of its social-media posts, and a cited email were

3    produced or posted when Attorney General Bonta was in in New York.  Affidavit of Lauren

4    Blanchard in Support of Defendant Attorney General Rob Bonta's Motion to Dismiss at 1–2.

5    One social media post issued while Attorney General Bonta was in London.  *Id.* at 2.  And one

6    video was recorded when Attorney General Bonta was in California.[5]  *Id.*  ExxonMobil

7    accordingly cannot exercise personal jurisdiction based on Attorney General Bonta's actions in

8    Texas.  *RapidDeploy, Inc. v. RapidSOS, Inc.*, 2022 WL 3045649, at *4 (W.D. Tex. Aug. 1, 2022),

9    *report and recommendation adopted*, 2022 WL 17814234 (W.D. Tex. Aug. 26, 2022).

10         Next, the Attorney General's statements were not directed toward a Texas audience.  Ten of

11   the eleven identified statements do not mention Texas or ExxonMobil's specific activities therein.

12   Instead, they reference ExxonMobil's general course of conduct in allegedly misleading

13   consumers about plastic recycling, activity that occurs nationwide.  DOJ YouTube Video, Reuters

14   Video, Climate Week Video, Compl., Exs. 1–6.  In the eleventh communication, an interviewer

15   mentions ExxonMobil's Texas advanced-recycling facility and requests a response to

16   ExxonMobil's statement about the Attorney General's California lawsuit.  The Attorney

17   General's response about the Texas facility is part of a broader discussion about how

18   ExxonMobil's course of conduct harmed California.  Squawk Box Video.  This brief mention of

19   an ExxonMobil facility located in Texas, undertaken after a third party raised the topic, cannot

20   establish personal jurisdiction over the Attorney General.  *See Danzinger & De Llano, LLP v.*

21   *Morgan Verkamp, LLC*, 24 F.4th 491, 498 (5th Cir. 2022) (defendant's email to Texas plaintiff in

22   response to unsolicited email did not "meaningfully connect [defendant] to Texas" as necessary

23   for personal jurisdiction).  And Attorney General Bonta did not direct his activities to Texas by

24   suing ExxonMobil in California state court.  *Saxton v. Faust*, 2010 WL 3446921, at *3 (N.D. Tex.

25   _____

26   [5]One of ExxonMobil's cited videos—an interview between Attorney General Bonta and a
     reporter for CBS News—does not even concern this matter.  Exxon erroneously dated the video

27   "September 16, 2024," ECF No. 1 at 25 n.34, but the video actually aired on September 16, 2023.
     *CA Attorney General Rob Bonta Speaks on State's Lawsuit Against Big Oil Companies*, CBS

28   News (Sept. 16, 2023), https://www.cbsnews.com/losangeles/video/ca-attorney-general-rob-
     bonta-speaks-on-states-lawsuit-against-big-oil-companies.

Aug. 31, 2010) ("[A] nonresident government official may [not] be haled into a Texas court simply because the effects of a ruling are felt in Texas") (citing *Stroman Realty, Inc.*, 513 F.3d at 482–85); *Shia v. Boente*, 2017 WL 6033741, at *5 (S.D. Tex. Nov. 16, 2017), *report and recommendation adopted*, 2017 WL 6025546 (S.D. Tex. Dec. 5, 2017) (individual-capacity suit).

That most of the alleged comments were aimed at California audiences underscores the point.  Many of the statements reference the harm ExxonMobil's actions have caused to California and its people, discussing plastic waste that has accumulated on California's beaches or waterways and related monetary costs foisted on California and its local governments.  DOJ YouTube Video; Reuters Video; Climate Week Video; Compl., Exs. 1, 6.  "If the[se] article[s] had a geographic focus[,] it was" California.  *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002); *see Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321 (5th Cir. 2021) (no personal jurisdiction for libel suit in case in which posting website never "solicited Texan visits to the alleged libel").  To the extent the statements did not target California, they spoke to nationwide listeners and did not target Texas.  *Johnson*, 21 F.4th at 321–22 ("[t]o target every [person] everywhere . . . is to target no place at all").  Accordingly, the email to supporters, Compl. Ex. 6, for example, which was directed to a nationwide list of recipients, cannot establish personal jurisdiction.  *Christina v. Pitt*, 2020 WL 6684889, at *6–8 (E.D. Tex. Nov. 12, 2020).

For these reasons, ExxonMobil presents insufficient contacts with Texas to establish personal jurisdiction.[6]  Nor have the remaining two prongs of the minimum contacts inquiry been met.  Because Attorney General Bonta's comments do not establish sufficient contacts with Texas, these claims do not arise out of his contacts with Texas.  *Vortex Cos., LLC v. Amex Sanivar Holding AG*, 643 F. Supp. 3d 688, 695 (S.D. Tex. 2022).  And asserting jurisdiction over

---

[6]For similar reasons, the District Court for the District of Columbia recently held that a plastics industry group lacked personal jurisdiction over Attorney General Bonta in a case concerning a subpoena in the same California state-law matter animating this action.  *Plastics Indus. Ass'n v. Bonta*, 2025 WL 1025142, at *4 (D.D.C. Apr. 7, 2025).  The industry group alleged that, among other things, Attorney General Bonta's "persistent course of conduct" in the District established jurisdiction, but the Court rejected that argument because "limited mailings and communications from outside the jurisdiction" could not establish personal jurisdiction over Attorney General Bonta under D.C. law.  *Id.*

1    the Attorney General is neither fair nor reasonable given his lack of Texas contacts. *Id.*; *Stroman*

2    *Realty, Inc.*, 513 F.3d at 488.

3        The Court should dismiss Attorney General Bonta for a lack of personal jurisdiction.[7]

4    **II.    CALIFORNIA AND TEXAS LAW IMMUNIZE ATTORNEY GENERAL BONTA BECAUSE**
         **HE ACTED IN THE SCOPE OF HIS EMPLOYMENT**
5

6        California and Texas law[8] grant immunity to public officials for statements made in the

7    scope of government employment.  Under both California and Texas law, Attorney General

8    Bonta's statements came in the scope of employment.  The claims against him thus fail.  Under

9    California law, Attorney General Bonta falls within the state's official-immunity privilege, and

10   ExxonMobil did not comply with the California Tort Claims Act.  Under Texas law, Texas' broad

11   official-immunity doctrine covers Attorney General Bonta's statements, and ExxonMobil sued

12   the wrong party.

13       **A.    California Law**

14           **1.    Attorney General Bonta Acted in the Scope of Employment**

15       California law defines the scope of employment broadly.  In California, an employee acts in

16   the "scope of the employment 'when he is engaged in work he was employed to perform or when

17   the act is an incident to his duty and was performed for the benefit of his employer and not to

18   serve his own purposes or conveniences.'"  *Sanborn v. Chron. Publ'g Co.*, 556 P.2d 764, 766

19   (Cal. 1976) (citation omitted).

20   _____

21   [7]Because the Court lacks personal jurisdiction over Attorney General Bonta, this case also is
     improperly venued per 28 U.S.C. section 1391.  *Holland v. Weisfelner*, 2019 WL 3290862, at *3
22   (S.D. Tex. July 1, 2019), *report and recommendation adopted*, 2019 WL 3288046 (S.D. Tex. July
     22, 2019).
23   [8]In a federal diversity case, the court usually begins a state-law-immunity analysis by deciding
     which state's law applies.  *Reinhardt v. Key Risk Mgmt., Inc.*, 2003 WL 292176, at *2 (N.D. Tex.
24   Feb. 6, 2003).  The Court need not do so here.  "A federal court sitting in diversity applies the
     conflict-of-laws rules of the state in which it sits."  *Vasquez v. Bridgestone/Firestone, Inc.*, 325
25   F.3d 665, 674 (5th Cir. 2003).  "Texas courts initially determine whether there is a conflict
     between Texas law and the other potentially applicable law."  *Bailey v. Shell W. E&P, Inc.*, 609
26   F.3d 710, 722 (5th Cir. 2010).  "If the result would be the same under the laws of either
     jurisdiction, there is no need to resolve the choice of law question."  *SAVA gumarska in kemijska*
27   *industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App. 2004).  Because
     the same outcome—dismissing Attorney General Bonta from the suit—follows under either
28   California or Texas law, the Court need not conduct the choice-of-law analysis.  If the Court
     requests briefing on the choice-of-law analysis, Attorney General Bonta will provide it.

1    California's Attorney General "possesses not only extensive statutory powers but also

2    broad powers derived from the common law relative to the protection of the public interest."

3    *D'Amico v. Bd. of Med. Exam'rs*, 520 P.2d 10, 20 (Cal. 1974).  Concerning the statutory powers,

4    the Attorney General serves as "the state's chief attorney," *State Bd. of Equalization v. Superior*

5    *Court*, 42 Cal. Rptr. 3d 116, 118 (Ct. App. 2006), and "head of the Department of Justice."  Cal.

6    Gov't Code § 12510.  He thus "has charge, as attorney, of all legal matters in which the State is

7    interested."  Cal. Gov't Code § 12511.  His duties include pursuing actions to enforce California's

8    environmental laws, Cal. Gov't Code § 12600, and to protect California consumers, Cal. Bus. &

9    Prof. Code § 321.  And he may lead investigations to identify and address violations of these and

10   other statutes.  Cal. Gov't Code §§ 11180.5, 11181.

11       These statutory duties are accompanied by general duties to bring enforcement actions

12   where necessary and to inform the public of office activities.  It is the Attorney General's "duty to

13   see that the laws of the State are adequately enforced."  *Sykes v. Superior Court*, 507 P.2d 90, 97

14   (Cal. 1973) (citation omitted). He thus "has the power to file any civil action or proceeding

15   directly involving the rights and interests of the [s]tate, or which he deems necessary for the

16   enforcement of the laws of the state . . . and the protection of public rights and interest."

17   *D'Amico*, 520 P.2d at 20 (citation omitted); *see also Save El Toro Ass'n v. Days*, 159 Cal. Rptr.

18   577, 581 (Ct. App. 1979) (Attorney General's "function is to represent the general public . . . and

19   to ensure proper enforcement").  As a result, he has a "dual role as representative of a state

20   agency and guardian of the public interest."  *D'Amico*, 520 P.2d at 21.  This includes "the duty to

21   keep the public informed of his [] management of the public business."  *Rothman v. Jackson*, 57

22   Cal. Rptr. 2d 284, 294 n.6 (Ct. App. 1996).

23       Attorney General Bonta's statements identified in the Complaint fall within his official

24   duties as outlined above.  His public comments "informed" the public of "legal matters in which

25   the State is interested."  Cal. Gov't Code § 12511; *D'Amico*, 520 P.2d at 20; *Rothman*, 57 Cal.

26   Rptr. 2d at 294 n.6.  He spoke "about a lawsuit that we filed and the actions that we bring at the

27   California Attorney General's office."  Compl. Ex. 1 at 5.  He cited "California's nation & world-

28   leading climate action including [his] office's first-of-its-kind lawsuit against ExxonMobil."  *Id.*

9

Ex. 2; *see* Ex. 5.  He stated that "we've sued ExxonMobil." *Id.* Ex. 4.  And he quoted material

providing that "California Attorney General Rob Bonta is now suing ExxonMobil." *Id.* Ex. 5; *see*

*also* DOJ YouTube Video at 0:43–48 ("This morning we filed a lawsuit . . . against

ExxonMobil"); Reuters Video at 0:05–13 ("a lawsuit is being filed in California . . . We are suing

ExxonMobil"); Climate Week Video at 0:00–06 ("Today, we, the State of California, announce a

. . . lawsuit against ExxonMobil"); Squawk Box Video at 0:18–22 ("The lawsuit is, basically, the

State of California suing ExxonMobil").  Throughout the cited remarks, he acted "in his capacity

as Attorney General," and "dealt exclusively with law enforcement issues":  his Department's suit

against ExxonMobil. *Kilgore v. Younger*, 640 P.2d 793, 798 (Cal. 1982).  The remarks

"concerned the claims being asserted in the [] action, and [offered Attorney General Bonta's]

professional opinion, as the [] attorney entrusted with plenary power over that litigation, that the

matter was well worth pursuing." *Tutor-Saliba Corp. v. Herrera*, 39 Cal. Rptr. 3d 21, 29 (Ct.

App. 2006).

 The fact that some statements subsequently appeared on Attorney General Bonta's alleged

"personal" social-media pages does not change this analysis.  The scope-of-employment inquiry

asks only whether an employee was "engaged in work he was employed to perform," including

acts "incident to his duty and [] performed for the benefit of his employer." *Sanborn*, 556 P.2d at

766 (citation omitted).  Attorney General Bonta's social-media pages referenced by ExxonMobil

identify him as California's Attorney General.  Setrakian Decl., Ex. B.  The posts reflect this,

describing official work:  the Attorney General's "office's" lawsuit, Compl. Exs. 2, 3; the fact

that "we"—California's Department of Justice—had sued ExxonMobil, Compl. Ex. 4; and the

conclusion that "California Attorney General Rob Bonta is now suing" ExxonMobil, Compl. Ex.

5.  The social-media posts thus track, for example, *Tutor-Saliba*, in which an elected City

Attorney "express[ed] his professional opinion about the justification for, and potential merits of,

the . . . litigation he had initiated on behalf of" his constituent jurisdiction.  39 Cal. Rptr. 3d at 29.

Attorney General Bonta's comments were "limited to pending litigation he had filed in [state]

court against" ExxonMobil.  *Id.*  Accordingly, "the alleged defamatory statements [Attorney

General Bonta] made concerning [ExxonMobil's] business practices related to the policy making

1   he must necessarily perform as [Attorney General], and were within the scope of his duties."  *Id.*

2   The statements thus were made in Attorney General Bonta's professional, not personal, capacity.

3        The email to supporters similarly contains statements made in Attorney General Bonta's

4   professional capacity.  The email's contents describe the litigation, thus serving to "inform[]" the

5   public of "legal matters in which the State is interested."  Cal. Gov't Code § 12511; *D'Amico*,

6   520 P.2d at 20; *Rothman*, 57 Cal. Rptr. 2d at 294 n.6.  The email is no different, in this respect,

7   from the remarks in *Tutor-Saliba*, made to members of the San Francisco Chinese–American

8   Democratic Club and found to be within the scope of the elected attorney's duties.  39 Cal. Rptr.

9   3d at 23, 29.

10       **2.     California Law Shields Attorney General Bonta from Liability**

11       Two California doctrines stop ExxonMobil from maintaining this suit against Attorney

12  General Bonta for comments made within the scope of his duties:  absolute immunity for public

13  statements, and ExxonMobil's failure to comply with the California Tort Claims Act.

14       California privileges statements made "in the proper discharge of an official duty."  Cal.

15  Civ. Code § 47(a).  This "absolute privilege" extends to "high-ranking state [] officials . . . on the

16  rationale that their ability to function would be impaired and society adversely affected if they

17  were not absolutely free of the threat of suit by the defamed seeking recompense for injury."

18  *Kilgore*, 640 P.2d at 798 (internal quotation and citation omitted).  "For the absolute privilege to

19  attach, the public official need only be properly discharging an official duty."  *Id.*  The privilege

20  thus covers "any statement by a public official, so long as it is made (a) while exercising policy-

21  making functions, and (b) within the scope of his official duties."  *Tutor-Saliba*, 39 Cal. Rptr. 3d

22  at 28 (quoting *Royer v. Steinberg*, 153 Cal. Rptr. 499, 505 (Ct. App. 1979)).

23       Accordingly, if an Attorney General gives a "press conference in his capacity as Attorney

24  General, purport[s] to act in such role throughout its duration and, at least as is here relevant,

25  deal[s] exclusively with law enforcement issues," he cannot face litigation arising from the

26  substance of the statements.  *Kilgore*, 640 P.2d at 798.  This standard protects even conduct by

27  elected officials that "may well have been taken to produce a popular and appealing law

28  enforcement image" to burnish political credentials.  *Id.*  The same protections apply if a public

11

1   official "summariz[es] the results of an investigation" to press. *Ingram v. Flippo*, 89 Cal. Rptr. 2d

2   60, 69 (Ct. App. 1999), *overruled on other grounds by Leon v. County of Riverside*, 530 P.3d

3   1093 (Cal. 2023). For that reason, an elected law-enforcement figure like the Attorney General

4   may "express his professional opinion about the justification for, and potential merits of . . .

5   litigation he had initiated on behalf of the" state, and those remarks may be "florid and [] cast [the

6   defendant] in an unfavorable light," so long as they "concern[] the claims being asserted in the []

7   action." *Tutor-Saliba*, 39 Cal. Rptr. 3d at 29.

8        Attorney General Bonta is thus immune from suit regarding his comments. As discussed

9   above, Attorney General Bonta's comments, which concerned the existence and merits of

10  litigation that the Department of Justice initiated during his tenure, fall within the scope of his

11  employment. These statements all "related to a matter properly within the [Attorney General's]

12  jurisdiction," *Royer*, 153 Cal. Rptr. at 505—enforcement of California law. Cal. Gov't Code

13  §§ 11180.5, 11181, 12600. He thus falls within this doctrine's protection.

14       Applying absolute immunity also serves the doctrine's policy goals. "[T]he purpose of the

15  official immunity accorded government officers is to avoid the 'chilling effect' which the fear of

16  damage suits would have on the energetic performance of the public's business." *Kilgore*, 640

17  P.2d at 800 (citing *Barr v. Mateo*, 360 U.S. 564, 571 (1958) (plurality op.)). By avoiding such

18  judicial chilling, the law bolsters the separation of powers, ensuring that recourse for allegedly

19  improper public statements comes from the political sphere, not civil litigation. *Id.* at 799–800.

20  Letting this suit proceed against Attorney General Bonta would threaten every state's top law-

21  enforcement official with nationwide civil litigation, dimming the energy with which the states'

22  chosen leaders serve their constituents.

23       Even if ExxonMobil could surmount this privilege, its suit would fail because it did not

24  comply with the California Tort Claims Act. In California, under the Tort Claims Act "a cause of

25  action against a public employee . . . for injury resulting from an act or omission in the scope of

26  his employment as a public employee is barred if an action against the employing public entity

27  for such injury is barred . . . ." Cal. Gov't Code § 950.2. An action against a public entity, in

28  turn, is barred if a plaintiff does not "timely file a claim for money or damages with the public

1   entity" before suing. *Willis v. City of Carlsbad*, 262 Cal. Rptr. 3d 528, 539 (Ct. App. 2020)

2   (quotation omitted) (citing Cal. Gov't Code § 911.2).  This requirement applies in federal

3   diversity suits. *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1044 (N.D. Cal. 2012).

4       ExxonMobil has not alleged compliance with the California Tort Claims Act or otherwise

5   indicated that it complied.  And a plaintiff cannot avoid this statutory bar by claiming that it sued

6   the defendant in his individual capacity if the suit concerns official conduct. *Newton v. Arapaia*,

7   2005 WL 1562787, at *5 (N.D. Cal. June 28, 2005).  Thus, ExxonMobil's suit has not satisfied

8   the California Tort Claims Act.

9       **B.**   **Texas Law**

10        **1.**   **Attorney General Bonta Acted in the Scope of Employment**

11      ExxonMobil's suit also fails if Texas law applies.  As an initial matter, Attorney General

12  Bonta's statements fall within the scope of his employment under Texas law.  Texas law defines

13  the "scope of employment" as the "performance for a governmental unit of the duties of an

14  employee's office or employment[,] includ[ing] being in or about the performance of a task

15  lawfully assigned to an employee by a competent authority."  Tex. Civ. Prac. & Rem. Code Ann.

16  § 101.001(5).  The scope-of-employment analysis seeks "a connection between the employee's

17  job duties and the alleged tortious conduct[.]" *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex.

18  2017).  To find that link, the inquiry "focuses on 'performance . . . of the duties of an employee's

19  office or employment,' . . . an objective assessment of whether the employee was doing her job

20  when she committed an alleged tort, not her state of mind when she was doing it." *Id.* (quoting

21  Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5)).  "[E]ven if [a] law enforcement officer acts

22  partly to serve his or her own interests and allegedly commits tortious acts," his conduct ranks as

23  official if he discharges duties assigned to him. *Carter v. Diamond URS Huntsville, LLC*, 175 F.

24  Supp. 3d 711, 751 (S.D. Tex. 2016); *see also Laverie*, 517 S.W.3d at 753 (employee acts within

25  scope of employment "even if the employee performs negligently or is motivated by ulterior

26  motives or personal animus so long as the conduct itself was pursuant to her job

27  responsibilities").

28

1    Attorney General Bonta's statements came in his employment's scope under this broad

2    definition.  As discussed above, the California Attorney General's employment duties include

3    filing civil actions and "keep[ing] the public informed of his or her management of the public

4    business."  *Rothman*, 57 Cal. Rptr. 2d at 294 n.6; *see also D'Amico*, 520 P.2d at 20.  These duties

5    are connected to the alleged tortious conduct because Attorney General Bonta's communications

6    about the performance of his duties purportedly spawned ExxonMobil's suit.

7    As is true under California law, the fact that Attorney General Bonta posted on his allegedly

8    "personal" social-media accounts is not relevant to the analysis.  Because Attorney General

9    Bonta's job responsibilities include disseminating his office's conduct to the public, the Court

10    "must conclude [he] was acting in the scope of his employment regarding the [social-media]

11    statements attributed to him."  *Schapira v. Salazar*, 2022 WL 2960229, at *3–4 (Tex. App. July

12    27, 2022) (not designated for publication) (holding public official immune for statements made

13    on social media).  Similarly, the email to supporters falls within Attorney General Bonta's scope

14    of employment.  The communication informed recipients of his office's activities and its

15    management of the public business, even if it allegedly "act[ed] partly to serve his [] own

16    interests."  *Carter*, 175 F. Supp. 3d at 751; *Laverie*, 517 S.W.3d at 753.

17    ### 2.    Texas Law Shields Attorney General Bonta from Liability

18    Texas law "strongly favors dismissal of suits against government employees."  *Jennings v.*

19    *Abbott*, 538 F. Supp. 3d 682, 692 (N.D. Tex. 2021) (citing *Garza v. Harrison*, 574 S.W.3d 389,

20    399–400 (Tex. 2019)).  Because Attorney General Bonta acted in the scope of his employment,

21    such dismissal is warranted for two reasons, one based on Texas common law and the other on

22    state statute.

23    First, Texas's common-law official immunity doctrine shields Attorney General Bonta from

24    suit.  A state official sued in his individual capacity receives official immunity so long as the acts

25    were discretionary duties within the scope of his authority and he acted in good faith.  *Kassen v.*

26    *Hatley*, 887 S.W.2d 4, 9 (Tex. 1994).  Attorney General Bonta satisfies this test.

27    Attorney General Bonta's statements fulfilled discretionary duties.  "If an action involves

28    personal deliberation, decision, and judgment, it is discretionary; an action that requires

14

1  obedience to orders or the performance of a duty to which the employee has no choice is

2  ministerial." *Ramos v. Tex. Dep't of Pub. Safety*, 35 S.W.3d 723, 727 (Tex. App. 2000).

3  Attorney General Bonta was not ordered or instructed to speak publicly about California's lawsuit

4  against ExxonMobil—instead, he exercised personal deliberation and judgment in speaking to the

5  press.

6       Attorney General Bonta's statements also came within the scope of his authority.  "A tort is

7  within the course and scope of the employee's authority [for purposes of this test] if his action

8  (1) was within the employee's general authority; (2) was in furtherance of the employer's

9  business; and (3) was for the accomplishment of the object for which the employee was hired."

10  *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 583 (Tex. App. 2005).  As explained above,

11  Attorney General Bonta has the authority to speak publicly on behalf of the Department of

12  Justice, particularly regarding actions the Department is pursuing.  Here, his statements concerned

13  active Department of Justice litigation, furthering the Department's business and

14  "accomplish[ing] the object for which" he is employed.

15       Finally, Attorney General Bonta spoke in good faith.  Courts evaluate good faith against an

16  objective standard.  *Cloud v. McKinney*, 228 S.W.3d 326, 336 (Tex. App. 2007).  In the

17  defamation context, an employee must show that "a reasonably prudent employee, under the same

18  circumstances, could have believed that his [statement] was justified."  *Id.*  That requires

19  "consider[ing] the circumstances in which the allegedly defamatory statement was made."  *Id.* at

20  338.

21       The circumstances here show the good-faith nature of Attorney General Bonta's statements:

22  they offered commentary to the press and the public about Department litigation, explaining the

23  reasons why he and the Department believed that litigation furthered the interests of California

24  and its citizens.  *See Avila v. Larrea*, 394 S.W.3d 646, 662 (Tex. App. 2012).  Plaintiffs cannot

25  show that "no reasonable person in [Attorney General Bonta]'s position could have thought the

26  facts were such that they justified [his] acts."  *Hunt v. Smith*, 67 F. Supp. 2d 675, 683 (E.D. Tex.

27  1999) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994)).

28

Attorney General Bonta thus acted in the scope of his employment, and the Court should vindicate Texas's interest in "dismissal of suits against government employees." *Jennings*, 538 F. Supp. 3d at 692.

Second, ExxonMobil failed to sue the proper defendant under the Texas Tort Claims Act based on its sought remedy.  Texas law requires a plaintiff, when initiating suit, to decide "whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008).  And it requires dismissing a government-employee defendant "if the plaintiff's claim (1) is based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit." *Jennings*, 538 F. Supp. 3d at 692 (citing *Garza*, 574 S.W.3d at 399–400).  A suit could have been brought against a government unit if it could be filed against that unit, even if Texas law does not waive immunity for the tort alleged. *Frick v. Jergins*, 657 S.W.3d 840, 848 (Tex. App. 2022).  This procedure applies in federal court. *See Jennings*, 538 F. Supp. 3d at 692–93.

Because ExxonMobil sued Attorney General Bonta for conduct taken in the scope of his duties, it had to sue the "government unit"—that is, it had to sue him in his *official* capacity.  Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).  Because it did not do so, the case should receive "early dismissal." *Tex. Adjutant Gen.'s Off. v. Ngokoue*, 408 S.W.3d 350, 355 (Tex. 2013).[9]

## III.    THE ELEVENTH AMENDMENT BARS EXXONMOBIL'S SUIT

In addition to state-law statutory immunity, ExxonMobil's suit must also surrender to federal sovereign immunity.  The Eleventh Amendment forbids suits "against one of the United States by Citizens of another State."  This immunity applies to state-law claims brought in federal

---

[9]Even if ExxonMobil refiled this suit against Attorney General Bonta in his official capacity as contemplated by section 101.106(f), it would fail.  Under Texas law, state officials cannot be held liable for intentional torts. *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App. 1995).  ExxonMobil alleges exclusively intentional torts. *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 112 (Tex. App. 2012) (business disparagement); *City of Houston v. Guthrie*, 332 S.W.3d 578, 593 (Tex. App. 2009) (tortious interference); *Fontenot v. Stinson*, 369 S.W.3d 268, 274 (Tex. App. 2011) (civil conspiracy); *Donohue v. Butts*, 516 S.W.3d 578, 581 (Tex. App. 2017) (defamation).

1   court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984). "[S]overeign

2   immunity also prohibits suits against state officials or agencies that are effectively suits against a

3   state," so "Eleventh Amendment immunity is not limited to cases in which states are named as

4   defendants." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). "[T]he general rule is

5   that relief sought nominally against an officer is in fact against the sovereign if the decree would

6   operate against the latter." *Pennhurst*, 465 U.S. at 101 (citation and quotation omitted).

7       ExxonMobil tries to evade the Eleventh Amendment by naming Attorney General Bonta in

8   his individual capacity, but precedent anticipates and prohibits this maneuver. "[T]he fact a

9   plaintiff brings a suit against a state employee solely in that employee's individual capacity does

10  not eliminate the Eleventh Amendment as a possible defense." *Stramaski v. Lawley*, 44 F.4th

11  318, 324 (5th Cir. 2022). This is because Eleventh Amendment interests are not "sacrificed to

12  elementary mechanics of captions and pleading." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521

13  U.S. 261, 270 (1997). Thus, if an employee is named in his individual capacity but "the state is

14  the real and substantial party in interest, the Eleventh Amendment may bar the suit. Whether the

15  state is the real party in interest depends on the circumstances of the case." *Stramaski*, 44 F.4th at

16  322 (internal quotation and citation omitted).

17      The Eleventh Amendment bars this suit. As discussed above, ExxonMobil has sued

18  Attorney General Bonta for official conduct. A suit pulling him into federal court and seeking

19  damages thus "operate[s] against" the State of California, *Pennhurst*, 465 U.S. at 101 (quotation

20  omitted), targeting it as "the real and substantial party in interest" and causing the Eleventh

21  Amendment to block the suit, *Stramaski*, 44 F.4th at 322 (quotation omitted). Naming Attorney

22  General Bonta personally is thus a "transparent[] effort at an end run around the Eleventh

23  Amendment." *Id.* at 323 (quoting *Modica v. Taylor*, 465 F.3d 174, 183 (5th Cir. 2006)).

24      Moreover, this litigation targets California's coffers. A state indemnification policy confers

25  Eleventh Amendment protection if a suit enforces "personal liability for implementing a State

26  policy." *Henley v. Simpson*, 527 F. App'x 303, 307 (5th Cir. 2013). If a State were not to

27  immunize officers under such circumstances, "no rational official would assume [] state-office

28  positions." *Id.* Here, California would indemnify Attorney General Bonta for liability because

17

1    the suit concerns actions taken within the scope of his employment.  Cal. Gov't Code § 825(a).

2    The Eleventh Amendment thus shields Attorney General Bonta from suit.

3    **IV.    THE COURT SHOULD NOT ISSUE DECLARATORY RELIEF**

4         In addition to ExxonMobil's state-law causes of action, it seeks declaratory relief on the

5    merits of the California Department of Justice's state-law suit proceeding in California state

6    court.  But ExxonMobil's declaratory-relief request cannot proceed without another of its other

7    causes of action.  *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 218 (5th Cir. 2015) ("When

8    [all] other claims have been dismissed, it is appropriate also to dismiss any declaratory-judgment

9    request."); *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400 (5th Cir. 2011)

10   (per curiam) ("Both Texas and federal law require the existence of a justiciable case or

11   controversy in order to grant declaratory relief").  As discussed above, the Court lacks personal

12   jurisdiction over Attorney General Bonta, and statutory and constitutional immunities shield him

13   from suit.  Once the Court dismisses the tort causes of action for these reasons, this cause of

14   action, too, must fail.

15        Even if the Court allows one of ExxonMobil's other causes of action to proceed, it still

16   should dismiss this claim.  Although ExxonMobil does not explain whether it seeks relief under

17   the federal Declaratory Judgment Act or Texas declaratory-judgment law,[10] the request fails

18   either way because courts do not entertain declaratory-relief requests concerning subject matter

19   that is pending before other tribunals.  *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996

20   F.2d 774, 778 (5th Cir. 1993); *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex.

21   1990).  This principle extends to proceedings in other states—courts extend comity to foreign

22   trials, "stay[ing] the later-filed proceeding pending adjudication of the first suit."  *In re BP Oil*

23   *Supply Co.*, 317 S.W.3d 915, 919 (Tex. App. 2010); *Tex. Employers' Ins. Ass'n v. Jackson*, 862

24   F.2d 491, 506 (5th Cir. 1988).  Because ongoing litigation in California addresses the issues

25   sought to be resolved by declaratory judgment, this claim fails.

26

27   _____

     [10]If state law is the basis for relief, "[t]he Texas Declaratory Judgment Act is a procedural
28   mechanism that is inapplicable in federal court."  *Hansen v. Protective Life Ins. Co.*, 642 F. Supp.
     3d 587, 595 (S.D. Tex. 2022).

1

**CONCLUSION**

2      The Court should grant Attorney General Bonta's Motion to Dismiss.  And because

3  ExxonMobil cannot cure the identified deficiencies, the Court should deny leave to amend.[11]

4

Dated:  April 24, 2025                          Respectfully submitted,

5
                                                Rob Bonta
6                                               Attorney General of California
                                                R. Matthew Wise
7                                               Supervising Deputy Attorney General

8

9                                               */s/ Robert William Setrakian*

10                                              Will Setrakian
                                                Deputy Attorney General (CA SBN
11                                              335045), admitted *pro hac vice*
                                                  300 South Spring Street, Suite 1702
12                                                Los Angeles, CA 90013-1230
                                                  Telephone:  (213) 269-6668
13                                                Fax:  (916) 731-2125
                                                  E-mail:  William.Setrakian@doj.ca.gov
14                                              *Attorneys for Attorney General Robert*
                                                *Bonta*
15
SA2025300062
16

17

18

19

20

21

22

23

24

25  _____
    [11]If Attorney General Bonta's co-defendants prevail on Rule 12(b) arguments, including
26  arguments that the Complaint fails to state a claim on any of its causes of action, the Court should
    also grant relief as to Attorney General Bonta, assuming that he is "similarly situated" to the co-
27  defendants with respect to those arguments. *Williams v. Am. Com. Lines, Inc.*, 2021 WL
    4143931, at *6 n.47 (M.D. La. July 29, 2021), *report and recommendation adopted*, 2021 WL
28  4145083 (M.D. La. Sept. 10, 2021), *vacated on other grounds and remanded*, 2022 WL 1652778
    (5th Cir. May 24, 2022); *see also Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).

19

**CERTIFICATE OF COMPLIANCE**

I certify that on April 24th 2025, a true and correct copy of this document was served

electronically by the Court's CM/ECF system to all counsel of record.

/s/ Robert William Setrakian

Will Setrakian

Defendant Attorney General Rob Bonta's Motion to Dismiss (1:25-cv-11-MJT)

# CERTIFICATE OF SERVICE

Case Name:  **Exxon Mobil v. Bonta**          No.  **1:25-cv-00011-MJT**

I hereby certify that on **April 24, 2025**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

2. **[PROPOSED] ORDER GRANTING DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

3. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

4. **DECLARATION OF ROBERT WILLIAM SETRAKIAN IN SUPPORT OF DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

5. **EXHIBIT A OF THE DECLARATION OF ROBERT WILLIAM SETRAKIAN IN SUPPORT OF DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

6. **EXHIBIT B OF THE DECLARATION OF ROBERT WILLIAM SETRAKIAN IN SUPPORT OF DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

7. **AFFIDAVIT OF LAUREN BLANCHARD IN SUPPORT OF DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **April 24, 2025**, at Los Angeles, California.

| | |
|---|---|
| J. Martinez | *J. Martinez* |
| Declarant | Signature |

SA2025300062
67598233.docx