## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| **EXXON MOBIL CORPORATION,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **ROBERT ANDRES BONTA A.K.A.** | § |
| **ROB BONTA, IN HIS INDIVIDUAL** | §    **Case No. 1:25-cv-00011-MJT** |
| **CAPACITY; SIERRA CLUB, INC.;** | § |
| **SURFRIDER FOUNDATION, INC.;** | § |
| **HEAL THE BAY, INC.; BAYKEEPER,** | § |
| **INC.; AND INTERGENERATIONAL** | § |
| **ENVIRONMENT JUSTICE FUND LTD.** | § |
| | § |
| **Defendants.** | § |

## JOINT MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT .............................................................................................................................5

I.   This Case Should Be Transferred Pursuant to 28 U.S.C. § 1406(a) ..........................................5

II.  This Case Should Be Transferred Pursuant to 28 U.S.C. § 1404(a) .........................................7

    A.  This Action Could Have Been Brought in the Northern District of California ..................7

    B.  The Convenience of the Parties and Witnesses, and the Interest of Justice,
        Warrant Transfer ................................................................................................8

CONCLUSION.........................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585 (5th Cir. 2020) ...................................9

*Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916 (5th Cir. 1987) ..............................7

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185 (5th Cir. 2010) ..........14

*Charles v. SBC Disability Income Plan*, 2005 WL 8159403 (N.D. Tex. Sept. 19, 2005).............6

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) ........................................................13

*Doubletree Partners, L.P. v. Land Am. Am. Title Co.*,
   2008 WL 5119599 (N.D. Tex. Dec. 3, 2008) ..........................................................................12

*Droplets, Inc. v. Amazon.com, Inc.*, 2012 WL 3578605 (E.D. Tex. 2012)..............................9, 12

*ExpressJet Airlines, Inc. v. RBC Cap. Markets Corp.*,
   2009 WL 2244468 (S.D. Tex. July 27, 2009)...........................................................................12

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) ...........................................................................6

*In re Chamber of Commerce*, 105 F.4th  297 (5th Cir. 2024) ...............................................7, 8, 13

*In re Clarke*, 94 F.4th 502 (5th Cir. 2024)....................................................................................13

*In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023) ...........................................................................9

*In re Volkswagen of America, Inc*, 545 F.3d 304 (5th Cir 2008)............................................8, 11

*Koehring Company v. Hyde Const. Co.*, 324 F.2d 295 (5th Cir.1963) ...........................................6

*Kuykendall v. Amazon Studios LLC*, 2022 WL 19337991 (S.D. Tex. Mar. 18, 2022)...................12

*McLoba Inc. v. Peregoy*, 2020 WL 10456916 (E.D. Tex. July 23, 2020)......................................8

*MG Bldg. Materials, Ltd v. Paychex, Inc.*, 2011 WL 13324380 (W.D. Tex. Mar. 28, 2011).......12

*Phillips v. Illinois Cent. Gulf R.R.,* 874 F.2d 984 (5th Cir. 1989) .................................................6

*Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308 (5th Cir. 2000) ........................................................14

*Stingray Music USA, Inc. v. Music Choice*,
   2017 WL 1022741 (E.D. Tex. Mar. 16, 2017) .........................................................................12

*Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485 (5th Cir. 2018)................................................6

*Westberry v. GusTech Commc'ns, LLC*, 2018 WL 3548869 (N.D. Tex. July 24, 2018)..............................12

## <u>STATUTES</u>

28 U.S.C. § 1391 ....................................................................................................5, 6, 7

28 U.S.C. § 1404 ..................................................................................................1, 5, 6, 7

28 U.S.C. § 1406 ....................................................................................................1, 5, 6

28 U.S.C. § 1631 .........................................................................................................6

## <u>RULES</u>

Fed. R. Ev. 201 ........................................................................................................1, 9

## <u>OTHER AUTHORITIES</u>

Charles A. Wright & Arthur R. Miller, 21B Fed. Prac. & Proc. Evid. (2d ed.) ..............................1

Defendants Sierra Club, the Surfrider Foundation ("Surfrider"), Heal the Bay, Inc. ("Heal the Bay"), and Baykeeper ("Baykeeper") (collectively the "U.S. Nonprofits") hereby move to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a).  As noted in the accompanying Certificate of Conference, the non-moving Defendants do not oppose this Motion.

The U.S. Nonprofits request oral argument.

## INTRODUCTION

On September 23, 2024, the U.S. Nonprofits filed a lawsuit against Exxon Mobil Corporation ("ExxonMobil") in the Superior Court of the State of California, County of San Francisco ("Superior Court"), asserting claims for nuisance and under California's unfair competition law.  That complaint ("the California Litigation") alleged "ExxonMobil, the world's largest producer of polymers to make single-use plastics, caused the single-use plastics pollution crisis."  ECF 1-1, *Sierra Club, Inc. v. Exxon Mobil Corporation*, Civ. No. 3:24-cv-07288, N.D. Cal. ("Cal. Compl."), ¶ 3.[1]  It accused ExxonMobil of "a fifty-year operation to **bury the truth**" by engaging in "misleading marketing" of allegedly new "advanced recycling" technology that promised to "dispose[] of" single-use plastic trash "easily and safely."  *Id.* ¶¶ 3-4, 7 (emphasis in original).  But that technology, the U.S. Nonprofits alleged, was "not 'advanced' or 'recycling,'" and had "been around for decades."  *Id.* ¶ 10.  Rather than producing new plastic from the old, ExxonMobil's "advanced" technology primarily produced "oil and toxic byproducts."  *Id.*  And "[i]nstead of disclosing the lack of any solution" to the single-use-plastics crisis, "ExxonMobil hid

---

[1] The Court can notice "the records of any court, state or federal," including that an "assertion was made" in a complaint.  Charles A. Wright & Arthur R. Miller, 21B Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

the truth about single-use plastics to sell more virgin polymers and plastics." *Id.* ¶ 12.  On the same day, the State of California filed its own similar lawsuit against ExxonMobil.  *See* ECF 44-4.

ExxonMobil removed the California Litigation to the Northern District of California, and successfully opposed a motion to remand the case to the Superior Court.  Exxon has filed a motion to dismiss, and also a motion to strike under California's anti-SLAPP law.[2]

ExxonMobil filed this lawsuit in January 2025.  While its legal deficiencies are addressed in separately-filed Rule 12 motions, there is a threshold question about where this case belongs.  The answer is clear: in the Northern District of California, alongside the pending litigation between ExxonMobil and the U.S. Nonprofits concerning plastics recycling.

ExxonMobil has told this Court "[t]here is a definite, concrete, and ongoing controversy between the parties as to the legality of ExxonMobil's conduct."  Compl. ¶ 136.  Yes, there is: it is the California Litigation.  With its filing of the Complaint in this case, ExxonMobil seeks to put at issue *in this forum* numerous matters which are the same or substantially similar to those at issue in the California Litigation.  *See*, *e.g.*, Compl. ¶ 140 & Prayer for Relief, section g (seeking "[a] declaration that (i) advanced recycling is recognized and permitted by law in multiple states, including Texas, and that (ii) ExxonMobil is lawfully permitted to engage in and promote advanced recycling at its Texas facility.").  The following comparison of the two complaints illustrates some of the overlap.

---

[2] The case filed by the State of California has been remanded to the Superior Court.  *See* ECF 28, 41, *California v. Exxon Mobil Corporation*, Civ. No. 3:24-cv-07594, N.D. Cal.

| **California Litigation Complaint** | **Statements Challenged by ExxonMobil Here** |
|---|---|
| "ExxonMobil engaged in a fifty-year operation to **bury the truth**, promoting the fiction that single-use plastic waste can be safely, technically, and economically disposed by landfilling, recycling, or incineration." Cal. Compl. at ¶ 4 (emphasis in original). | "Defendants are repeatedly and publicly attacking ExxonMobil with false accusations . . . that advanced recycling is a 'myth' and a 'sham.'" Compl. ¶ 4; *see also id.* ¶ 68 ("Bonta and the US Proxies . . . falsely claim[ed] that ExxonMobil's effective and innovative advanced recycling technology is a 'false promise' and 'not based on truth.'"). |
| "Despite years of misleading marketing, recycling is ... not a solution due to long known technical and economic limitations that prevent most plastic from being recycled. The cost of collection, sorting, and processing mixed materials with a host of varying chemical additions render single-use plastic incapable of being recycled into new products, and effectively cost-prohibitive compared to the relatively simple process of producing virgin polymers from oil. ... ExxonMobil has known this since at least the early 1980s." Cal. Compl. at ¶¶ 7-8.<br><br>"However, 'advanced recycling,' also known as 'chemical recycling,' is an industry catch-all term for a variety of processes—including pyrolysis, gasification, hedrolysis, methanolysis, and more—that are intended to break a polymer down to its basic chemical elements. These processes are not 'advanced' or 'recycling.' They have been around for decades. Regardless of the name, the output of 'advanced recycling' is not polymer or plastic, but rather oil and toxic byproducts." Cal. Compl. at ¶ 10. | "Bonta … called advanced recycling 'a false promise' and 'a myth,' and proclaimed that ExxonMobil 'proposed sham solutions….'" Compl. ¶ 12; *see also id.* ¶¶ 69, 105, 110; *id.* ¶ 70 ("[A]dvanced recycling is 'a false promise,' 'not based on truth.,' and 'an over promise.'"). "'Advanced Recycling is neither advanced nor recycling.' 'Their plant … doesn't recycle. It's an old technology.'" *Id.* ¶ 85. |

| | |
|---|---|
| "Single-use plastics pollution hits beaches and the ocean particularly hard because an estimated 11 million metric tons (12.1 U.S. tons) of plastics enter our waterways annually. Once in the water, plastics do not biodegrade, but instead break down into 'microplastics' or even smaller particles known as 'nanoplastics,' and the toxic materials from the additives and chemicals in those micro- and nano- plastics leach into the water resulting in harm to plants, wild life, and humans." Cal. Compl. at ¶ 16. | "Exxon's plastic polymers are poisoning waterways, wildlife and people." Compl. ¶¶ 12, 92. |
| "Microplastics are so prolific that an individual can ingest approximately five grams of plastic every week—the mass of a credit card. ... [R]esearch suggests that the presence of microplastics may increase the risk of heart attack and other cardiovascular problems among people with heart disease. The tiny plastics were also found to double the risk of stroke or heart attack and harm hormone and reproductive systems." Cal. Compl. at ¶¶ 16-17. | "'[T]his stuff is killing us a little bit more every day.'" Compl. ¶¶ 12, 92. |
| "[T]he petrochemical industry, led by ExxonMobil, the world's largest producer of polymers to make single-use plastics, caused the single-use plastics pollution crisis through a decades-long campaign asserting that single-use plastics trash is harmless and can be disposed of easily and safely. The reality is quite the opposite." Cal. Compl. at ¶ 3. | "[ExxonMobil is] the largest producer of polymers and one of the biggest liars." Compl. ¶¶ 12, 70; *see also id.* ¶ 38 ("ExxonMobil is the largest producer of plastic polymers which are then turned into single-use plastics."); *id.* ¶ 77 ("ExxonMobil … 'created … the global plastics crisis.'"). |
| "Instead of disclosing the lack of any solution to dispose single-use plastics, ExxonMobil hid the truth about single-use plastics to sell more virgin polymers and plastics." Cal. Compl. at ¶ 12. | "Exxon perpetuated the myth of recyclability to keep consumers buying more and more." Compl. ¶ 12. |

4

| | |
|---|---|
| "The bottom line for ExxonMobil, however, was not to increase the recyclability of its products. Instead, it wanted to give the appearance that it was doing enough about mechanical recycling to increase the sale and production of virgin polymers for single-use plastics. In fact, ExxonMobil's internal documents said the quiet part out loud: 'Our recycling programs continue to concentrate on generating income and enhancing the acceptability of our products.' 'And as recycling programs prove they work, we expect demand for our products to grow.'" Cal. Compl. at ¶ 129. | "[O]ur environment and health were being sacrificed just to protect Exxon's bottom line." Compl. ¶¶ 12, 91. |
| "Plaintiffs seek to ensure that ExxonMobil is held accountable for the single-use plastics pollution crisis it has created and the injuries caused to each of Plaintiffs and to all Californians." Cal. Compl. at ¶ 20. | "ExxonMobil's 'days of polluting with impunity are over.'" Compl. ¶ 12. |

As explained below, venue in this Court is improper, and the case should be transferred pursuant to 28 U.S.C. § 1406(a).  But the Court need not reach the question of venue because this case is a paradigmatic example of one which should be transferred pursuant to 28 U.S.C. § 1404(a).

## ARGUMENT

### I.    This Case Should Be Transferred Pursuant to 28 U.S.C. § 1406(a)

Plaintiff claims venue is proper in this District because "a substantial part of the events or omissions giving rise to ExxonMobil's claims occurred in this judicial district . . . ." Compl. ¶ 33; *see* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.").  But no allegation in the Complaint supports that assertion, and "once a defendant challenges venue, conclusory allegations, speculation, and unsubstantiated assertions cannot be used to establish proper venue

because the plaintiff has the burden of proving venue." *Charles v. SBC Disability Income Plan*, 2005 WL 8159403, * 2 (N.D. Tex. Sept. 19, 2005).

ExxonMobil's terse discussion of venue mentions the presence of its Beaumont Complex in this District. But Section 1391(b)(2) turns on the location of the allegedly liability-generating conduct—not the location of alleged impact. *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (basing venue determination on location of defendant's alleged acts, not location of alleged impact on plaintiff).

ExxonMobil also appears to allege—without citing relevant statutory provisions—that venue is proper in this District because "Defendants are subject to this Court's personal jurisdiction with respect to this action." Compl. ¶ 33; *see* 28 U.S.C. § 1391(b)(1), (c)(2). But the U.S. Nonprofits are not subject to personal jurisdiction in this District with respect to this case, for the reasons explained in their respective Rule 12 motions.[3]

Because this case was filed in an improper venue, the Court may transfer it "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As explained below, this case could have been brought in the Northern District of California, and should be

---

[3] The U.S. Nonprofits do not waive their contention that this Court lacks personal jurisdiction over them in this case. A district court can transfer under Section 1406(a) and Section 1404(a) without determining it has personal jurisdiction, or even if it determines personal jurisdiction is absent. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *Phillips v. Illinois Cent. Gulf R.R.,* 874 F.2d 984, 987 (5th Cir. 1989) (holding *Goldlawr* "considerations are equally applicable where a transfer is made under § 1404(a)"); *Koehring Company v. Hyde Const. Co.*, 324 F.2d 295, 297-98 (5th Cir.1963) (ordering transfer under Section 1404(a) "whether or not the trial court below had personal jurisdiction over the defendant"). 28 U.S.C. § 1631, entitled "Transfer to cure want of jurisdiction," provides: whenever a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action to any other such court. . . in which the action . . . could have been brought at the time it was filed . . . ."

transferred to that court.[4]

## II.    This Case Should Be Transferred Pursuant to 28 U.S.C. § 1404(a)

A transfer analysis under Section 1404 considers whether (1) the action could have been brought in the proposed transferee district, and (2) "the convenience of the parties and witnesses, in the interest of justice" warrant that the case be transferred.  *In re Chamber of Com.*, 105 F.4th 297, 303-04 (5th Cir. 2024).  Because the answer to both is "yes," the motion should be granted.

### A.    This Action Could Have Been Brought in the Northern District of California

There should be little doubt that this action could have been brought in the Northern District of California.

Personal Jurisdiction: With the exception of IEJF, no Defendant disputes it would be subject to personal jurisdiction were this case in the Northern District of California.

Venue: Venue would be proper in the Northern District of California.  28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  As the accompanying Declarations explain, two of the U.S. Nonprofits have their headquarters in the Northern District of California.  Moreover, at least two individuals identified in the Complaint as having made statements challenged by Plaintiff are based in the Northern District of California, and were present there when alleged to have made those statements.  *See*, *e.g.*, Compl. ¶ 91 (statement attributed to Martha Kreeger); Declaration of Martha Kreeger ¶¶ 1, 8 (residence: Fremont, California; location at time of statement: Burlingame, California); Compl. ¶ 92 (statement attributed to Sejal Choksi-Chugh); Declaration of Sejal Choksi-Chugh ¶¶ 1, 24 (residence and location at time of statement: Contra Costa County, California).

---

[4] If the Court concludes that this case could not have been filed in California, it should be dismissed.  *See* Fed. R. Civ. P. 12(b)(3); *see also Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987).

B.    **The Convenience of the Parties and Witnesses, and the Interest of Justice, Warrant Transfer**

Courts in the Fifth Circuit generally consider the following eight factors when deciding whether transfer will further "the convenience of the parties and witnesses and in the interest of justice": (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws.  *See In re Volkswagen of America, Inc*, 545 F.3d 304, 315 (5th Cir 2008); *In re Chamber of Com.*, 105 F.4th at 304.  The first four are referred to as the "private interest factors," and the latter four as the "public interest factors."  These factors are non-exhaustive, and none is given dispositive weight.  *McLoba Inc. v. Peregoy*, 2020 WL 10456916, *1 (E.D. Tex. July 23, 2020).

### *Private Interest Factors*

The private interest factors favor transfer.

1. *The relative ease of access to sources of proof.*  This factor favors transfer.  Given the substantial overlap between this case and the California Litigation, access to sources of proof will be easier if the cases are in the same court—and even more so if they are before the same Judge and/or formally coordinated in the Northern District of California.  With transfer, discovery in one case will be more easily accessible in the other.  Moreover, two of the U.S. Nonprofits have their headquarters in the Northern District of California, and the other two are headquartered in the Central District of California.  *See* Choksi-Chugh Declaration at ¶ 7 (Baykeeper's principal place of business is in Oakland, California); Declaration of Holly Bender, ¶ 8 (Sierra Club's headquarters

are in Oakland, California); Declaration of Michelle Kremer, ¶ 4 (Surfrider's headquarters are in San Clemente, California); Affidavit of Tracy Quinn, ¶ 3 (Heal the Bay's principal place of business is in Santa Monica, California). General Bonta is in California, and his office is in Oakland as is another location of the Office of the Attorney General, both within the Northern District of California.[5]

Plaintiff is incorporated in New Jersey, and has its principal executive offices in Spring, Texas (Compl. ¶ 16), a community within the Southern District of Texas. The Complaint mentions industrial facilities in Baytown and Beaumont. Compl. ¶ 16 ("refining and chemical complexes"); *id*. at ¶ 59 ("a pyrolysis facility in Baytown"); *id*. at ¶ 83 ("advanced recycling facility in Baytown"). But Plaintiff's employees at those facilities are unlikely to be witnesses in this case, and it is not apparent what other proof relevant to the case is located there. The number of employees ExxonMobil has within this District (Compl. ¶ 33), or in Texas (Compl. ¶ 16), is not itself relevant to the transfer analysis. *See In re TikTok, Inc.*, 85 F.4th 352, 359-60 (5th Cir. 2023) ("the district court cannot rely on the mere fact that petitioners have a general presence" in the District to deny transfer). The ExxonMobil executives responsible for its plastics and recycling businesses—including contract negotiations—as well as their documents, are likely based as its headquarters, which is in the Southern District of Texas. *See Droplets, Inc. v. Amazon.com, Inc.*, 2012 WL 3578605, * 3 (E.D. Tex. June 27, 2012) ("Presumably, the bulk of discovery material relating to a corporate party is located at the corporate headquarters."). Therefore, much of the proof in the possession of Plaintiff is expected to be located outside of this District.

---

[5] *See* https://oag.ca.gov/contact/mailing-addresses. This court may take judicial notice of these locations pursuant to Fed. R. Evid. 201(b) because the website is a publicly available governmental website, the contents of which cannot reasonably be questioned. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020).

2.    *The availability of compulsory process to secure the attendance of witnesses*.  This factor favors transfer because if a trial were conducted in this District numerous potential witnesses could not be compelled to testify.  For example:

- One of the few statements challenged in the Complaint and attributed to a U.S. Nonprofit was made by Martha Kreeger, a Sierra Club volunteer, not an employee. No party could compel Ms. Kreeger's attendance at a trial held in this District. However, she lives in the Northern District of California, and is subject to compulsory process there.  *See* Kreeger Declaration at ¶ 2.

- The Complaint makes allegations about a press conference conducted in conjunction with the filing of the California Litigation.  Compl. ¶ 49.  An in-person press conference occurred the day the California Litigation was commenced, in Burlingame, California (in the San Francisco Bay Area), and within the Northern District of California.  *See* Kreeger Declaration at ¶ 8; Kremer Declaration at ¶ 20; Quinn Affidavit at ¶ 5.  Any witness who attended that press conference is likely subject to compulsory process in the Northern District of California, but not in this District.

- The Complaint contains numerous allegations about the role of the Cotchett law firm.  Compl. ¶¶ 6, 7, 46-49.  The Cotchett firm has no offices in this District, and its personnel could not be compelled to testify at trial (assuming they have any non-privileged testimony to provide).  However, the lawyers at the Cotchett firm leading the California Litigation are based in that firm's Bay Area office, within the Northern District of California.

- As noted above, two of the U.S. Nonprofits are headquartered in the Northern District of California.  Bender Declaration at ¶ 8; Choksi-Chugh Declaration at ¶ 7. If any of their current employees leave between now and trial, they are more likely to remain subject to compulsory process in the Northern District of California than in this District.

- The Complaint contains numerous allegations about California's recycling programs and practices.  Compl. ¶¶ 50-56.  The proof regarding those programs and practices will reside in California, not in this District.  Therefore, much of it would be subject to compulsory process if this case is transferred to the Northern District of California, but none of it would be absent a transfer.

3.  *The cost of attendance for willing witnesses*.  This factor favors transfer.  As the Fifth Circuit has explained: "it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home and that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen*, 545 F.3d at 317.

As discussed in the preceding section, there are likely numerous witnesses who cannot be compelled to testify but are based within the Northern District of California.  For any such prospective witnesses who wish to attend voluntarily, the cost of attendance would be substantially higher if they had to travel to this District.

Moreover, the two U.S. Nonprofits not headquartered within the Northern District of California are based relatively close by, in the Central District of California.  *See* Kremer Declaration at ¶ 4; Quinn Affidavit at ¶ 3.  For any of their volunteers or former employees who

are prospective witnesses and wish to attend voluntarily, the cost of attendance would be substantially higher if they had to travel to this District.

4.    *All other practical problems that make trial of a case easy, expeditious, and inexpensive.*  This factor weighs heavily in favor of transfer.  "Practical problems include those that are 'rationally based on judicial economy.'"  *See Droplets, Inc.*, 2012 WL 3578605 at * 6.  Given the substantial overlap between this case and the California Litigation, adjudication of this case would be significantly easier, expeditious and inexpensive if the cases are in the same court— and even more so if they are before the same Judge and/or formally coordinated in the Northern District of California.

Courts in this Circuit often treat the existence of pending litigation in another district as a significant consideration in the Section 1404 analysis.  *See Kuykendall v. Amazon Studios LLC*, 2022 WL 19337991, at *7 (S.D. Tex. Mar. 18, 2022) (transferring case, even though several section 1404 factors were neutral, because the existence of similar pending litigation in another district "heavily weigh[ed] in favor of transfer"); *Westberry v. GusTech Commc'ns, LLC,* 2018 WL 3548869, at *8 (N.D. Tex. July 24, 2018); *Stingray Music USA, Inc. v. Music Choice*, 2017 WL 1022741, at *4 (E.D. Tex. Mar. 16, 2017) ("There will be some overlap in discovery, and should issues arise during discovery, they are better handled by the same Court which will have institutional knowledge regarding the case.")*; MG Bldg. Materials, Ltd v. Paychex, Inc.*, 2011 WL 13324380, at *15 (W.D. Tex. Mar. 28, 2011) (noting that judicial economy "alone can support the transfer of a case to another district"); *ExpressJet Airlines, Inc. v. RBC Cap. Markets Corp.*, 2009 WL 2244468, at *14 (S.D. Tex. July 27, 2009)*; Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, at *7 (N.D. Tex. Dec. 3, 2008) ("Transfer is particularly appropriate where . . . a related case involving the same or similar issues is pending in another court").

**_Public Interest Factors_**

Two public interest factors favor transfer, while the other two are neutral.

5.      *The administrative difficulties flowing from court congestion.*  This factor is neutral. The median time to disposition is substantially the same in this District and the Northern District of California.[6]

6.      *The local interest in having localized interests decided at home.*  This factor slightly favors transfer.  The Fifth Circuit has explained this factor does not consider the *parties*' connection to the venue.  *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024); *In re Chamber of Com.*, 105 F.4th at 308.  Instead, it is concerned with *non-party* interest in adjudication of the case.

Local interest in this case within the Northern District of California is already evidenced by media coverage of the filing of the Complaint.[7]  The U.S. Nonprofits do not doubt that local communities in both this District and the Northern District of California will have interest in this case, and are sufficiently connected to it such that subjecting community members to jury duty is reasonable.  *In re Chamber of Com.*, 105 F.4th at 308.  However, the Fifth Circuit has explained that this factor requires consideration of "the events that *gave rise to* a suit."  *Defense Distributed*

---

[6] *See Table C-5–U.S. District Courts–Civil Federal Judicial Caseload Statistics* (Mar. 31, 2024), UNITED STATES COURTS, https://www.uscourts.gov/data-news/data-tables/2024/03/31/federal-judicial-caseload-statistics/c-5.

[7] *See, e.g.*, Bob Egelko, *Exxon escalates battle over plastics recycling with defamation suit against California AG*, SF CHRONICLE (Jan. 7, 2025), https://www.sfchronicle.com/politics/article/exxon-rob-bonta-20020790.php; John Ramos, CBS SAN FRANCISCO (Jan. 7, 2025), https://www.cbsnews.com/sanfrancisco/news/bay-area-continues-to-focus-on-plastic-pollution-as-exxon-hit-with-lawsuit/; *Cotchett Pitre at center of Exxon's lawsuit over plastic recycling*; THE LOS ANGELES/SAN FRANCISCO DAILY JOURNAL, (Jan. 8, 2025), https://www.dailyjournal.com/article/382778-cotchett-pitre-at-center-of-exxon-s-lawsuit-over-plastic-recycling; Kevin Crowley, *Exxon sues California AG Bonta, environmental groups over recycled plastic 'smear*,' THE MERCURY NEWS (a subsidiary of Bay Area News Group) (Jan. 7, 2025), https://www.mercurynews.com/2025/01/07/exxon-sues-california-ag-environmental-groups-over-smear/.

*v. Bruck*, 30 F.4th 414, 464-65 (5th Cir. 2022) (emphasis added). Defendants' alleged conduct occurred in California—much of it in the Northern District of California—and therefore this factor slightly favors transfer.

7.      *The familiarity of the forum with the law that will govern the case*. This factor is neutral. Choice-of-law determinations are made claim-by-claim. *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 n.6 (5th Cir. 2000) ("Texas also requires that a choice of law determination be done on an issue by issue basis."); *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 191 (5th Cir. 2010) ("The choice of law is evaluated issue by issue."). Regardless of whether Texas or California law (or both) applies, the U.S. Nonprofits have no doubt that this Court and the Northern District of California would have sufficient familiarity with applicable law to ably adjudicate the case.

8.      *The avoidance of unnecessary problems of conflict of laws*. This factor favors transfer. Given the substantial overlap between this case and the California Litigation, if this case is not transferred there is a meaningful risk of inconsistent rulings—including potentially due to the application of different sources of law to the same issues. This risk can be minimized by transfer—and avoided if this case is assigned to the Judge overseeing the California Litigation.

*       *       *

Applying the private and public interest factors, it is clear that good cause exists to transfer this case to the Northern District of California.

## CONCLUSION

For the foregoing reasons, this case should be transferred to the Northern District of California.

Dated: April 25, 2025

Respectfully submitted,

**BURT BARR & ASSOCIATES. L.L.P.**

/s/ *M. Forest Nelson*
M. Forest Nelson
Texas Bar No. 14906425
fnelson@bbarr.com
John Holman Barr
Texas Bar No. 01798700
jbarr@bbarr.com
203 E. Colorado Blvd. Dallas, Texas 75203
Telephone: (214) 943-0012
Facsimile: (214) 943-0048

*Attorneys for Baykeeper, Inc.*

**TRIBBLE & ROSS**

/s/ *Deborah Greenleaf*
Deborah Greenleaf
S.B.N. 08402650
dgreenleaf@tribblelawfirm.com
Fallin Schwartz
S.B.N. 24095622
fschwartz@TribbleLawFirm.com
Monica Vaughn
S.B.N. 00794784
mvaughan@tribblelawfirm.com
6371 Richmond Ave.
Houston, TX 77057
Telephone: (713) 622-0444
Facsimile: (713) 622-0555

*Attorneys For Heal The Bay, Inc.*

**BOIES SCHILLER FLEXNER LLP**

/s/ *Scott E. Gant*
Scott E. Gant (appearing pro hac vice)
D.C. Bar No. 455392
sgant@bsfllp.com
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 895-7566
Facsimile: (202) 237-6131

*Attorney for Sierra Club, Inc.*

**GRAVES, DOUGHERTY,
HEARON & MOODY, P.C.**

/s/ *Peter D. Kennedy*
Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
James A. Hemphill
Texas Bar No. 00787674
jhemphill@gdhm.com
401 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone: (512) 480-5764
Facsimile: (512) 536-9908

**CORNELL LAW SCHOOL
FIRST AMENDMENT CLINIC**

/s/ *Daniela del Rosario Wertheimer*
Daniela del Rosario Wertheimer
(appearing pro hac vice)
N.Y. Bar No. 90019383
Ddw83@cornell.edu
Myron Taylor Hall
Ithaca, NY 14853
Telephone: (602) 670-7255
Facsimile: (607) 255-4196

*Attorneys for Surfrider Foundation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

_s/   Scott E. Gant_

## <u>CERTIFICATE OF CONFERENCE</u>

In keeping with Local Rule CV-7(h)-(i), I hereby certify that counsel for Defendants have complied with the meet-and-confer requirement in Local Rule CV-7(h).  I, Scott E. Gant, counsel for Sierra Club, participated in substantive telephone or video conferences with counsel for the non-moving parties regarding the U.S. Nonprofits' anticipated motion to transfer.  During those calls I was authorized by counsel for the other U.S. Nonprofits to speak on their behalf for purposes of the meet-and-confer discussions.

On April 8, 2025, I participated in a substantive discussion with Michael P. Cash, counsel for ExxonMobil.  After substantive discussions, conferral reached an impasse due to disagreement about whether this case should be transferred.

On April 7, 2025, I spoke with William Setrakian, counsel for Attorney General Bonta, about the anticipated transfer motion.  After our discussion, Mr. Setrakian informed me that his client does not oppose the transfer motion.

On April 14, 2025, I spoke with Matthew Craig and John Quinn, counsel for Intergenerational Environment Justice Fund Ltd., about the anticipated transfer motion.  After our discussion, Mr. Craig informed me that his client does not oppose the transfer motion.

*/s/   Scott E. Gant*