IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| EXXONMOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:25-cv-00011 |
| | § | |
| ROBERT ANDRES BONTA, A.K.A. | § | |
| ROB BONTA, IN HIS INDIVIDUAL | § | |
| CAPACITY; SIERRA CLUB, INC.; | § | |
| SURFRIDER FOUNDATION; | § | |
| HEAL THE BAY, INC.; BAYKEEPER, INC.; | § | |
| AND INTERGENERATIONAL | § | |
| ENVIRONMENT JUSTICE FUND LTD., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT SURFRIDER FOUNDATION'S
RULE 12(b) MOTION TO DISMISS**

TO THE HONORABLE MICHAEL J. TRUNCALE:

Defendant Surfrider Foundation ("Surfrider") moves to dismiss all claims against it pursuant to Rule 12(b)(1), (2) and (6) and would respectfully show:

**I.      Introduction and summary.**

In September 2024, four environmental nonprofit organizations, including Surfrider, sued ExxonMobil Corporation ("ExxonMobil") in California for violating California law.  The State of California also sued ExxonMobil and alleged violations of California law.  Each environmental group and the California Attorney General issued press releases announcing the filing of the lawsuits.  ExxonMobil responded by filing this lawsuit in Texas, claiming that statements in the press releases constituted business disparagement, defamation, tortious interference, and conspiracy.

Surfrider moves to dismiss ExxonMobil's claims against it because it is not subject to

personal jurisdiction in Texas and because ExxonMobil fails to state a claim.

First, ExxonMobil has not, and cannot, meet its burden of showing that this Court has personal jurisdiction to adjudicate its claims against Surfrider.  Surfrider is not subject to **_general_** jurisdiction in Texas because it is not "at home" in this state.  It is not subject to **_specific_** jurisdiction in Texas because there are insufficient contacts between Surfrider and Texas that relate to ExxonMobil's claims.  Surfrider's press release was about a lawsuit filed in California alleging the violation of California law.  It did not mention Texas and was not directed at Texas.  Surfrider did not research, write, or publish its press release in Texas.  Under well-established Fifth Circuit precedent, Surfrider is not subject to this Court's jurisdiction.

Second, even if this Court did have jurisdiction over Surfrider, ExxonMobil's Complaint fails to state a claim.  ExxonMobil's primary claims – for defamation and business disparagement – fail to identify a single Surfrider statement as allegedly false and defamatory.  The Complaint cites one statement from Surfrider's press release, a quote from a representative of a different defendant that accurately describes claims made in the California lawsuit; that statement is nonactionable opinion and is privileged.  ExxonMobil fails to identify a single specific contract or business relationship with which Surfrider allegedly interfered and fails to adequately plead other essential elements of its tortious interference and conspiracy claims.  Finally, ExxonMobil's declaratory judgment claim seeks an improper advisory opinion that should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.      ExxonMobil's allegations and the relevant facts.

### A.      The parties to this motion.

ExxonMobil is a New Jersey corporation headquartered in Spring, Texas.  Comp. ¶ 16.  It is a vertically integrated, multinational company that explores for, produces, refines, and sells oil

and gas.  *Id.*, Ex. 3 ¶ 33.  ExxonMobil is the world's largest producer of polymers used to make single-use plastics.  Ex. 3, ¶ 33.

Surfrider is a 501(c)(3) nonprofit organization founded by surfers in Malibu, California in 1984.  Surfrider is incorporated and based in California.  Comp. ¶ 19.  Its headquarters is in San Clemente, California and it maintains other offices in California and Puerto Rico.  Ex. 1 ¶ 4. Surfrider has volunteer chapters in California and around the country, including three in Texas, but it has no offices or employees in this state.  *Id*. ¶ 12-14.  Surfrider's mission is to protect the world's oceans, waves, and beaches, in California and beyond.  Ex. 1 ¶ 5.  Surfrider and its volunteers work to reduce pollution in California and beyond, including single-use plastic pollution, through public education, advocacy, legislative efforts, and beach clean-ups.  *Id.*  ¶¶ 5-6.

> **B.**     **The California lawsuits.**

On September 23, 2024, Sierra Club, joined by Surfrider and two other California-based environmental nonprofits, Heal the Bay, Inc. and Baykeeper, Inc., sued ExxonMobil in California state court.  *See* Ex. 2, attached.  The California lawsuit describes the problem of plastic pollution, in particular single-use plastics and microplastics that result from plastic decomposition.  Ex. 2 ¶¶ 1-6.  The lawsuit explains that despite initial hopes, recycling has not resulted in reducing plastic pollution, and that ExxonMobil has known of this limitation for decades.  *Id*. ¶¶ 7-9.  The lawsuit alleges that recycling, including the industry-touted "advanced recycling," is no solution to the plastic pollution crisis, and that ExxonMobil has knowingly misrepresented recycling's effectiveness in order to increase its profits, in violation of California's public nuisance statutes and unfair competition and business practices act.  *Id*. ¶¶ 40-238.  The State of California filed a separate lawsuit against ExxonMobil, likewise alleging violations of California law.  Ex. 3, attached.

Surfrider published a press release announcing its participation in the California lawsuit, as

did each of the other plaintiffs.  *See* Ex. 4, attached.  The press release described its allegations in general terms, described the problems caused by plastic pollution, and identified the lawsuit's goal as seeking to protect Californians.  *Id*. at 1-2.  As is typical of press releases, it included a quote from the plaintiff's lead counsel about the lawsuit, a quote from a representative of each plaintiff, and a brief description of each group.  *Id*. at 2-4.

### C.    ExxonMobil's claims against Surfrider.

ExxonMobil filed this lawsuit on January 6, 2025, against Robert Bonta, the California Attorney General, "in his individual capacity," the four California environmental nonprofit plaintiffs in *Sierra Club v. ExxonMobil*, and the Intergenerational Environment Justice Fund Ltd. *See* Doc. 1.  The Complaint lists six counts: business disparagement, defamation, tortious interference with contract, tortious interference with prospective business, civil conspiracy, and declaratory judgment.  Comp. ¶¶ 104-40.  The bulk of ExxonMobil's allegations consists of general assertions about pollution, the purported effectiveness of plastic recycling, and a history of recycling regulations and efforts in California.  *Id*. ¶¶ 34-67.  The thrust of the Complaint appears to be that Surfrider and the other defendants "should be promoting" ExxonMobil's claims about the benefits of "advanced recycling" rather than disagreeing with them.  *Id*. ¶ 34.  ExxonMobil claims that the venerable Sierra Club, founded by John Muir in 1892, and the other California environmental groups are dupes of "foreign interests," fooled by one of ExxonMobil's competitors into opposing the single-use plastics that are polluting California's Pacific shores.  *Id*. ¶¶ 35-49. ExxonMobil focuses most of its complaints on the California Attorney General.  *Id.* ¶¶ 68-89.

Conspicuously absent are factual allegations of misconduct by Surfrider.  ExxonMobil identifies a few statements made by representatives of other nonprofits as the basis of its claims, *id*. ¶¶ 90-93, but none made by Surfrider.  Copm. ¶¶ 90-93.  The Complaint attaches Surfrider's press

release, but it makes no reference to that press release except to quote a comment it contains from Baykeeper's Executive Director.  *Id*. ¶ 92.  Throughout the Complaint, ExxonMobil lumps all the defendants together without identifying which defendant allegedly did what.  *See e.g.*, ¶¶ 90-103.

The word "Surfrider" appears in the Complaint only six times:  in the caption, in the first paragraph listing the parties, in Paragraph 6 noting that it is a party to the California lawsuit, twice in Paragraph 19, and in a parenthetical in footnote 56.  None allege any wrongdoing by Surfrider. Paragraph 19 simply notes that Surfrider's headquarters are in California, and that its Texas chapters have engaged in unidentified "advocacy on environmental issues on the Texas Gulf Coast" and unidentified "direction action against ExxonMobil's advanced recycling," *id*. ¶ 19, neither of which are the basis for this lawsuit.

While the Complaint broadly alleges that the California environmental nonprofits engaged in "a coordinated smear campaign" against ExxonMobil, it identifies only a few statements by those organizations – and none by Surfrider – to support its accusations:

- By the Sierra Club:  "our environment and health were being sacrificed just to protect ExxonMobil's bottom line;" its "days of polluting with impunity are over;" and "ExxonMobil perpetuated the myth of recyclability to keep consumers buying more and more."  Comp. ¶ 91.

- By Baykeeper:  "ExxonMobil brainwashed everyone into thinking that plastic recycling works and that it's good for the planet;" "ExxonMobil's plastic polymers are poisoning waterways, wildlife, and people;" and [t]his stuff is killing us a little bit more every day." Comp. ¶ 92.

- By Heal the Bay:  "[i]nstead of cleaning up the wreckage created by [ExxonMobil]," it is "moving aggressively to stop the harm at its source."  Comp. ¶¶ 93.

Despite suing Surfrider for business disparagement and libel and other torts based on allegedly defamatory statements, ExxonMobil fails to identify a ***single*** allegedly actionable statement made by Surfrider or any other purportedly wrongful conduct; it just argues that Surfrider disagrees with ExxonMobil about the ability of "advanced recycling" to solve the plastic waste

crisis polluting California's waters and shores.  Comp. ¶¶ 1-140.

### III.    ExxonMobil fails to establish that Surfrider is subject to personal jurisdiction in Texas.

ExxonMobil bears the burden of establishing that this Court has personal jurisdiction over Surfrider.  *Guidry v. U.S. Tobacco Co., Inc.,* 188 F.3d 619, 625 (5th Cir. 1999).  The Texas long-arm statute reaches the limits of due process.  *Shambaugh & Son, LP v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024).  ExxonMobil does not, and cannot, allege that Surfrider is subject to *general* jurisdiction in Texas, because Surfrider is not incorporated or "at home" in this forum.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  To establish *specific* jurisdiction, ExxonMobil must show that (1) Surfrider has directed activities towards Texas such that it has "minimum contacts" with this forum; (2) its claims arise out of those contacts with Texas, and (3) exercising jurisdiction over Surfrider would be "fair and reasonable."  *Savoie v. Pritchard*, 122 F.4th 185, 190-91 (5th Cir. 2024).

In particular, when a claim is based on a nonresident defendant's speech, as here, to establish specific jurisdiction the plaintiff must show that the nonresident "expressly aimed" and "intentionally directed" that speech towards the forum state.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  It is not sufficient to allege that the speech caused the defendant harm in the forum state; the *speech itself* must focus on the forum.  *Walden v. Fiore*, 571 U.S. 227, 288 (2014).  That is, "mere injury to a forum resident is not a sufficient connection to the forum."  *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 24 F.4th 491, 496-97 (5th Cir. 2022).  It is the *defendant's* contacts with the forum, not the *plaintiff's*, that "must drive the personal jurisdictional analysis."  *Defense Distributed v. Grewal*, 971 F.3d 485, 494 (5th Cir. 2020) (emphasis added).

"For Texas to have jurisdiction" over a speech-based claim, the nonresident's speech must "target Texas specifically and knowingly."  *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314,

318 (5th Cir. 2021) (citing *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002)). The Fifth Circuit has articulated a "subject and sources" test to determine whether speech is "expressly aimed" at a forum. At a minimum, "to exercise specific jurisdiction in a libel action, the 'aim' of the plaintiff under the *Calder* test must be demonstrated by showing that (1) the subject matter of and (2) sources relied upon for the article were in the forum state." *Fielding v. Hubert Media, Inc.*, 415 F.3d 419, 425-28 (5th Cir. 2005) (citing *Revell*, 317 F.3d at 474). ExxonMobil must satisfy **both** prongs. *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 401 (E.D. Tex. 2022).

### A. ExxonMobil's jurisdictional allegations.

ExxonMobil correctly alleges that Surfrider is a California nonprofit corporation headquartered in California. Comp. ¶ 19. ExxonMobil correctly notes that Surfrider has three chapters along the Texas coast, *id.*, but it does **not** allege those volunteer chapters were involved in the press release that is the subject of ExxonMobil's claims, and they were not. Ex. 1 ¶ 15. As noted, ExxonMobil makes no allegations of tortious conduct by Surfrider; the closest is a reference to a Baykeeper representative's comment contained in Surfrider's press release. Comp. ¶ 92. ExxonMobil does allege, conclusorily and without distinguishing among the defendants, that they "committed tortious acts in Texas by making Texas the focal point of their disparaging and defamatory conduct and by directing that conduct toward the people of Texas." *Id*. ¶ 26. Assuming that ExxonMobil is alleging that the quoted portion of Surfrider's press release constituted this purported "disparaging and defamatory conduct" directed "toward the people of Texas," that speech does not subject Surfrider to specific jurisdiction in Texas under well-established Fifth Circuit precedent.

### B. Surfrider does not have the requisite contacts with Texas to support personal jurisdiction in this forum.

ExxonMobil fails to meet either prong of the Fifth Circuit's "subject and sources"

jurisdictional requirement and thus fails to establish the required "minimum contacts" with Texas.

First, the subject of Surfrider's press release was not Texas.  *See* Ex. 4.  The press release announced the filing of a California lawsuit by a California law firm representing California environmental groups alleging that ExxonMobil's conduct violated California law and harmed California's coasts and waterways.  *Id*. at 1.  The release did not mention Texas or "the people of Texas."  *Id*. at 1-4.  It carried a California dateline, addressed plastic pollution generally, and stated that the California-filed "lawsuit seeks to protect Californians from Defendant's harmful conduct." *Id*. at 1-2.  The release quoted a Surfrider representative, Jennifer Savage (who ExxonMobil does not claim defamed it), who identified the amount of single-use plastics "collected in our California beach cleanups in 2023."  *Id*. at 3.  Baykeeper's representative was quoted saying that "San Francisco Bay has some of the highest levels of microplastics in the world," and Heal the Bay's representative noted that "California taxpayers shell out an estimated $420 million each year to clean up and prevent plastic pollution from fouling our public places."  *Id*.

The release referred generally to ExxonMobil's polymer resins used to manufacture single-use plastics and its claims about plastic recycling, but only in reference to what "U.S. consumers" think about plastics.  Ex. 4 at 2.  The release did not state where any of ExxonMobil's operations are located.  *Id.* at 1-4.  ExxonMobil has many operations outside Texas – in Baton Rouge, Louisiana, Jolliet, Illinois, Akron, Ohio, and in Canada, Columbia, Guyana, Brazil, Argentina, France Belgium, Luxembourg, Italy, the Czech Republic, Hungary, Poland, Norway, Finland, Turkey, Kazakhstan, China, India, Indonesia, Japan, Malaysia, New Zealand, Papua New Guinea, Singapore, South Korea, Taiwan, Thailand, Vietnam, Egypt, Saudi Arabia, Qatar, UAE, Nigeria,

Angola, Mozambique, and Namibia.[1]  Nothing in Surfrider's press release would give a reader any idea where ExxonMobil's recycling plant is located.

Second, the press release cited no Texas sources, and Surfrider relied on none.  Ex. 1 ¶ 18. Under controlling Fifth Circuit law, this lack of Texas sources shows that the release was not "directed toward" this forum and precludes the exercise of jurisdiction over Surfrider.  *Nunes*, 582 F. Supp. 3d at 401 (citing *Johnson*, 21 F.4th at 320).

Nor do any other facts surrounding Surfrider's press release connect it to Texas.  It was drafted, and published on Surfrider's website, in California.  Ex. 1 ¶ 15.  Surfrider distributed the release generally to the media, without targeting Texas.  *Id*.  ¶ 16  It was sent to no Texas-based outlets.  *Id*.  ¶ 17.  The press conference to announce the lawsuit was held in California.  *Id*.  ¶ 20.

ExxonMobil must establish personal jurisdiction based on Surfrider's contacts with Texas alone; it may not use its conclusory allegation of "conspiracy" to attribute other party's contacts to Surfrider.  *Delta Brands, Inc. v. Danieli Corp.*, 99 Fed. Appx. 1, 5 (5th Cir. 2004) (plaintiff must show that defendant "individually, and not as part of the [alleged] conspiracy, had minimum contacts with Texas"); *Chow v. United States*, No. 20-30503, 2021 WL 3438365, at *2 (5th Cir. Aug. 5, 2021) (per curiam) (rejecting claim that jurisdiction over one alleged conspirator established jurisdiction over a nonresident alleged co-conspirator).

Lacking facts tying its claims against Surfrider to Texas, ExxonMobil emphasizes its ***own*** connection to Texas and alleges that Surfrider knew it would suffer harm in this forum.  Comp. ¶¶ 99-103.  But this argument has been squarely rejected by the Supreme Court and Fifth Circuit. A court may not "exercise personal jurisdiction over a defendant on the basis that he knew his

---

[1]  *See*  https://corporate.exxonmobil.com/locations/united-states;  https://corporate.exxonmobil.com/who-we-are/our-global-organization.

allegedly tortious conduct" would cause harm in the forum, because "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 279, 285. *See also Danzinger*, 24 F.4th at 496-97 ("mere injury to a forum resident is not a sufficient connection to the forum"). ExxonMobil's Texas recycling plant was not mentioned in the press release and was irrelevant to its topic, the California lawsuit; the release would have been the same regardless of the happenstance where ExxonMobil located its plant. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426-27 (5th Cir. 2005) (rejecting personal jurisdiction despite plaintiff's residence in Texas where publication's reference to forum was "merely collateral" to article's focus).

ExxonMobil's reference to Surfrider's volunteer Texas chapters likewise cannot support specific jurisdiction because this suit does not arise out of their actions – beach clean-ups and environmental advocacy – or any alleged (and wholly undefined) "direct action against ExxonMobil's advanced recycling." Comp. ¶ 19.[2] ExxonMobil does not, and cannot, allege that they were involved in drafting or publishing the press release, because they were not. Since ExxonMobil's claims do not "arise out of or relate to" these Texas contacts, they cannot support specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Nor can Surfrider's publication of its release on the internet support personal jurisdiction. ExxonMobil does not allege that Surfrider's website is targeted at Texas, and even if it did, that would not suffice. What matters is whether Surfrider "aimed *the alleged libel at Texas*." *Johnson*, 21 F.4th at 321 (emphasis in original). As shown above, it did not. The Fifth Circuit holds that "internet-based jurisdictional claims must continue to be evaluated on a case-by-case basis, focusing on the nature and quality of online and offline contacts to demonstrate the requisite

---

[2] The Texas chapters conducted no "direct action" against Exxon and were not involved in the alleged "tagging" of plastic waste that Exxon refers to. Ex. 1 ¶¶ 22-23.

purposeful conduct that establishes personal jurisdiction." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226 n. 7 (5th Cir. 2012).  Targeting internet users everywhere, as Surfrider did by posting online, "is to target no place at all." *Johnson*, 21 F.4th at 321-22.

Dismissal would be consistent with, and indeed is required by, Fifth Circuit precedent.  For instance, in *Sangha*, the plaintiff argued that the *Calder* "effects" test allowed the district court to exercise personal jurisdiction over the nonresident defendant because its alleged defamation was "aimed at" the work the plaintiff was performing in Texas and the harm was felt there.  *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018).  But the Fifth Circuit found no jurisdiction because the plaintiff's presence in Texas was "largely a consequence of *his* relationship with the forum, and not of any actions [the defendant] took to establish contacts with the forum."  *Id*. at 103-04.

Similarly, in *Johnson*, a Texas resident filed a libel lawsuit against a nonresident online publisher that had no office, employees, or operations in Texas.  21 F.4th at 316.  Although the publisher sold subscriptions and merchandise through its website to Texans and others, there was no personal jurisdiction because the article did not mention Texas, described events that took place outside Texas, and used no Texas sources.  *Id*. at 319.  Publishing online is not "purposeful availment of Texas," at least when the publisher did not solicit "Texan visits to the alleged libel." *Id*. at 320-21.  *See also Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (statements made in California to a California reporter about a California lawsuit were not directed towards Louisiana, even though plaintiff's conduct and alleged harm occurred there, where defendant "never mentioned Louisiana" or "referred to specific actions taken in Louisiana"); *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (upholding dismissal for lack of jurisdiction over nonresident defendant where allegedly defamatory statements "did not concern activity in Texas;

nor were they made in Texas or directed to Texas residents any more than residents of any state").

### C. Exercising jurisdiction over Surfrider would not be fair and reasonable.

Due process precludes requiring a nonresident defendant to defend a case Texas when it "did not purposefully aim any conduct at Texas as compared to any other states" and defending in Texas "would impose an unjustified and unconstitutional burden." *Butowsky v. Gottlieb*, No. 4:19-CV-00180-ALM-KPJ, 2020 WL 5797713, at *13 (E.D. Tex. July 16, 2020). Because ExxonMobil has failed to establish that Surfrider has the required minimum contacts with Texas, this Court need not reach the factors that determine whether exercising jurisdiction over Surfrider would be "fair and reasonable." *See E. Concrete Materials, Inc. v. ACE Am. Inc. Co.*, 948 F.3d 289, 298-99 (5th Cir. 2020) (listing five factors). In any case, those factors weigh against exercising jurisdiction.

First, the burden on the nonresident defendant, Surfrider, from litigating in Texas is significant. Surfrider's offices, documents, and officers are in California; it has no relevant evidence or witnesses in Texas. Ex. ¶¶ 9-27. Surfrider is a small nonprofit organization with limited financial resources, whereas ExxonMobil is one of the largest corporations on Earth, worth $270 billion as of December 31, 2024.[3]

Second, the forum state's interests are neutral. At the motion to dismiss stage, the Court should not accept "conclusory statements" "devoid of further factual enhancement." *Martinez*, 123 F.4th at 288. Here, ExxonMobil provides nothing but conclusory statements to suggest it has experienced any actual harm at all. Comp. ¶¶ 101-103.

Third, ExxonMobil can easily seek relief in California, where Surfrider is subject to personal jurisdiction; this Court need not exercise jurisdiction over Surfrider in Texas to ensure that ExxonMobil has an opportunity to seek whatever relief it may be entitled to in court.

---

[3] ExxonMobil 10-K Statement 2024.

Fourth, exercising jurisdiction in Texas would be inefficient for the interstate judicial system, given the lawsuit's California focus and related proceedings against ExxonMobil that were already pending in California when this suit was filed.

Fifth, exercising jurisdiction would undermine federalism, given that this lawsuit is primarily, if not solely, an attack on two judicial proceedings filed and pending in a sister state, California, in an effort to enforce that state's laws by both private citizens of that state and the state itself. Exercising jurisdiction here would validate and encourage defendants around the country to file counter-lawsuits in their home states, seeking a more favorable venue to impose litigation costs and duplicate proceedings and efforts. This is particularly problematic when a party such as ExxonMobil has essentially unlimited litigation resources. Although the Fifth Circuit has held that Texas' anti-SLAPP law does not apply in federal court, the principles behind that law – discouraging retaliatory lawsuits against citizens who exercise their right to petition the government and speak on matters of public concern – apply here, when determining whether forcing Surfrider to defend a lawsuit over 1,500 miles from its office is "fair and reasonable." *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487-89 (5th Cir. 2008) (holding that federalism concerns made exercising person jurisdiction over nonresident defendant unfair).

## IV. ExxonMobil fails to state a claim against Surfrider.

Even if this Court had personal jurisdiction over Surfrider, dismissal would be appropriate because ExxonMobil fails to state any claim against Surfrider. Fed. R. Civ. P. 12(b)(6).

### A. ExxonMobil fails to state a claim for defamation.

The Complaint makes scant mention of Surfrider. ExxonMobil's sole substantive mention of Surfrider is buried in a footnote. Comp. at 30 n.56. It quotes a statement made by the representative of a *different* nonprofit; the footnote indicates that the statement is included in the

Surfrider press release that accurately describes the allegations in the California Lawsuit.  Ex. 4.

This passing reference to Surfrider fails to state a claim, for multiple reasons.

### 1. ExxonMobil fails to allege that Surfrider made *any* defamatory statement.

To state a defamation claim, a plaintiff must identify one or more "specific defamatory statements" allegedly made by the defendant.  *Stukes v. Nehls*, 614 F. Apd'x 792, 794 (5th Cir. 2015) (per curiam); *Black v. Experian Info. Solutions, Inc*., No. 4:21-CV-04231, 2023 WL 2267266 (S.D. Tex. Feb. 28, 2023) (quoting *Stukes*).  *See also ExxonMobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (publication of a defamatory statement to a third party is an essential element of defamation).[4]  Because ExxonMobil identifies *no* specific statement allegedly made by Surfrider, as required, its defamation claim against Surfrider must be dismissed.

### 2. Surfrider's press release accurately reported a third party's true account of claims made in the California lawsuit and is nonactionable opinion.

ExxonMobil cannot hold Surfrider liable for including a third party's statement in its press release because that statement is an accurate report of claims made in the California lawsuit.

The Complaint cites just one statement in the Surfrider press release, a partial quote from a Baykeeper representative:

> ExxonMobil brainwashed everyone into thinking that plastic recycling works and that it's good for the planet …. ExxonMobil's plastic polymers are poisoning waterways, wildlife, and people. … This stuff is killing us a little bit more every day.

---

[4] ExxonMobil chose to file this lawsuit in Texas, so Texas choice-of-law principles apply.  *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 771 (5th Cir. 2016).  A choice-of-law analysis is needed only if there is a conflict between the laws of two states whose law might apply.  *Vandeventer v. All American Life & Cas. Co.*, 101 S.W.3d 703, 711-12 (Tex. App. – Fort Worth 2003, no pet.) ("In the absence of a true conflict, we need not undertake a choice of law analysis.").  Surfrider is unaware of any significant conflict between Texas and California law regarding any of ExxonMobil's substantive claims – with the possible exception of the fair report privilege, discussed below – so this Motion addresses Texas law.

Complaint ¶ 92 at 29-30.  ExxonMobil omits the quote's beginning, which makes clear Baykeeper was describing the California lawsuit: "The complaint alleges that …."  Ex. 4 at 3.  ExxonMobil does not allege that Surfrider misquoted Baykeeper, nor that the quote inaccurately describes allegations in that lawsuit.

A plaintiff cannot maintain a defamation action based on a substantially true statement. *McIlvain v. Jacobs*, 794 S.W.2d 14, 15-16 (Tex. 1990).  The only quoted passage in the Complaint attributed to the Surfrider press release is true on two levels.

First, it is an accurate account of Baykeeper's statement, and ExxonMobil does not claim otherwise.

Second, it accurately describes allegations in the California litigation.  The California plaintiffs contend that ExxonMobil was involved in "a decades-long campaign asserting that single-use plastics trash is harmless and can be disposed of easily and safely.  The reality is quite the opposite," and that ExxonMobil is "promoting the fiction that single-use plastic waste can be safely, technically, and economically disposed by landfilling, recycling, or incineration.  However, each results in harmful pollution."  Ex. 2 ¶¶ 4, 5.  Baykeeper's opinion that ExxonMobil "brainwashed" the public about the safety and recyclability of single-use plastics tracks the California lawsuit's allegation that ExxonMobil promoted the "fiction" that single-use plastics are not harmful.

Critically, the Surfrider press release *specifically* notes that the statement is recounting allegations in the California lawsuit.  The first four words – included in the press release but omitted from ExxonMobil's Complaint – are "*The complaint alleges that* …."  Ex. 4 at 3.  Read in context, as allegedly defamatory statements must be, *New Times, Inc. v. Isaacks*, 146 S.W.3d

144, 158 (Tex. 2004), the statement can only be reasonably read as an account of lawsuit allegations.

Even if Baykeeper's statement is considered "adopted" by Surfrider by its inclusion in the press release, a party's own press release describing its litigation claims is nonactionable if it accurately describes those claims. *Encompass Ins. Co. of Mass. v. Giampa*, 522 F. Supp. 2d 300, 312-13 (D. Mass. 2007) (statement in party's press release accurately describing its litigation claims "cannot be defamatory because it is 'substantially true'"; the description is "an unrefutable statement of fact that cannot support a claim for defamation").

ExxonMobil wrongly alleges that the quote "effectively accuse[s] ExxonMobil of homicide." Comp. ¶ 92. The context of the statement – that plastic polymers "are killing us a little bit more every day" – cannot reasonably be read as an accusation of homicide. The statement is a fair account of the California lawsuit's claim that plastic polymers have "leached toxic materials into the environment," "resulting in harm to plants, wild life, and humans," and that "[d]ozens of research studies in the past decade have shown that microplastics are known to harm people," including elevating "the risk of stroke or heart attack." Ex. 2 ¶¶ 15, 16.

Moreover, Baykeeper's statement was opinion or, at most, rhetorical hyperbole. This presents a question of law. *Dickson v. Lilith Fund for Reprod.*, 647 S.W.3d 410, 414 (Tex. App. – Amarillo 2021), *aff'd*, 662 S.W.3d 355 (Tex. 2023) (affirming on opinion). The U.S. and Texas Constitutions "protect statements that cannot reasonably be interpreted as stating actual facts about an [entity] made in debate over public matters." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (bracketed material added; internal quotations omitted). A court determines whether a statement is factual or protected opinion by focusing on "a statement's

verifiability and the entire context in which it was made." *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002).

Baykeeper's quote appeared in a press release announcing a lawsuit and was prefaced with the phrase "[t]he complaint alleges that."  The statement's context and content unmistakably informs the reader that it describes Baykeeper's position in the litigation – its *opinions* on ExxonMobil's promotion of plastics as recyclable and the health effects of microplastics in the environment.

Words and phrases such as "brainwashed" and "killing us a little bit more every day" are nonactionable rhetorical hyperbole – "extravagant exaggerations utilized for rhetorical effect." that cannot reasonably be read as asserting literal fact.  *Dickson v. Lilith Fund*, 647 S.W.3d at 418. For example, the court in *Dickson v. Lilith Fund* held that labeling a pro-choice entity as a criminal organization that committed murder was nonactionable as opinion and rhetorical hyperbole.  *Id.* at 418.  *See also Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (characterizing negotiation position as "blackmail" was "no more than rhetorical hyperbole, a vigorous epithet" that no reasonable person would interpret as meaning plaintiff had committed a crime); *DeIuliis v. Engel*, No. 20 CIV. 3252, 2021 WL 4443145, at *5 (S.D.N.Y. Sept. 27, 2021) ("ecocidal planet killers" and "top 100 people killing the planet" are nonactionable opinion).

### 3. The challenged quote in Surfrider's press release is privileged under Texas law.

The common law provides a privilege against defamation liability for fair reports of official proceedings such as lawsuits.  *Scripps NP Operating, LLC v. Carter*, 567 S.W.3d 1, 21 (Tex. App. – Corpus Christi-Edinburg 2016), *aff'd*, 573 S.W.3d 781 (Tex. 2019).  This fair report privilege protects the public's right to receive information about what occurs in official proceedings. Restatement (Second) of Torts § 611 cmnt. a; *Dameron v. Washington Magazine, Inc.*, 779 F.2d

736, 739 (D.C. Cir. 1985); *Bufalino v. Associated Press*, 692 F.2 266, 271 (2d Cir. 1982).  "So long as the publication fairly and accurately reports the contents of the [statement] without embellishment, the publication is privileged … ."  *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App. – Houston [14th Dist.] 2008, no pet.).

Even treating Baykeeper's quote as Surfrider's speech, the fair report privilege protects an accurate description of a party's litigation contentions.  "[T]he fair reporting privilege shields anyone who discusses a judicial proceeding as long as that discussion is a fair and accurate description of the proceeding – or here, a fair and accurate description of what is in a complaint."  *Allstate Ins. Co. v. Shah*, No. 2:15-cv-01786, 2017 WL 1228406, at *5 n. 36 (D. Nev. March 31, 2017) (holding nonactionable a statement in a party's press release accurately describing its litigation claims).  "The fair reporting privilege is inapplicable only when a party distorts what was in the complaint or discusses things not in the complaint at all."  *Id*. at *5.[5]

The privilege promotes the public interest by allowing a party to inform the public "about the content of a lawsuit that the litigant has filed."  *Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC*, No. 3:22-CV-885, 2024 WL 99469, at *1 (D. Conn. Jan. 8, 2024).  "[T]he public often learns about a lawsuit only because a plaintiff makes some form of public announcement, such as by a press release;" accordingly, any curtailment of this "long-accepted practice" "would discourage

---

[5] The court in *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 2518833, at *21-24 (E.D. Tex. Apr. 17, 2019), discussed exceptions to the fair report privilege contained in the Restatement (Second) of Torts but not adopted by the Texas Supreme Court, ultimately not relying on those exceptions and holding that the plaintiff adequately pleaded (1) actual malice sufficiently to overcome the qualified privilege, and (2) that the statements were not true reports.  As that court noted, the Restatement's "self-reporting" exception only applies when a party "has an improper motive for inserting defamatory statements in the original proceeding," such as making the challenged statement "solely for the purpose of obtaining the fair-report shield," which ExxonMobil does not allege.  *Butowsky*, 2019 WL 2518833, at *21 (citing cases).

plaintiffs who file lawsuits from speaking publicly at all about their allegations for fear of a defamation lawsuit." *Id.* at *2.[6]

The privilege also has a constitutional dimension: "the First and Fourteenth Amendments command nothing less than that the states may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1299 (D.C. Cir. 1988) (quoting *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975)).

### 4. The challenged quote in Surfrider's press release is also privileged under California law.

California law provides an absolute statutory privilege for "a fair and true report in, *or a communication to*, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) anything said in the course thereof … ." Cal. Civil Code § 47(d) (emphasis added). The privilege covers press releases issued by litigants and their counsel. *See, e.g.*, *J-M Manuf. Co., Inc. v. Phillips & Cohen, LLC*, 247 Cal. App. 4th 87, 94, 97-98 (Cal. App. 2016). Like Texas's common-law privilege, this statutory privilege deters "satellite litigation" where the same claims are litigated in separate lawsuits. *J-M Manuf.*, 247 Cal. App. 4th at 101. Without this privilege, every party to a lawsuit could sue the other party for publicly describing their legal contentions, claiming those contentions are "false," thus instituting duplicate litigation over the truth of the contentions in the first lawsuit. That is what ExxonMobil is trying to do here. The fair report privilege prevents such waste of judicial resources while protecting the public's right to know what is happening in courts.

---

[6] *See also Myers v. D.C. Hous. Auth.*, No. 1:20-CV-00700-APM, 2021 WL 1167032, at *5 (D.D.C. Mar. 26, 2021) (applying fair report privilege to litigant's website announcement of sexual harassment case, noting that litigant was not using the privilege to "file[] a defamatory complaint, then republish[] it in order to avoid liability").

Should the Court determine that Texas common law does not provide a privilege for Surfrider's press release, then Texas law conflicts with California's statute, requiring a choice-of-law analysis.  In determining choice of law, Texas employs the "most significant relationship" test. *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000).  This test is applied on an issue-by-issue basis, *id.*, and incorporates factors listed in Section 145 of the Restatement (Second) of Conflicts.  *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).  Section 145 lists the factual matters to be considered when applying the general most-significant-relationship inquiry to a tort case.  *Id.* at 319.  These matters show that if there is a conflict between Texas and California law, the California privilege applies.

***The place where the injury occurred.***  ExxonMobil has failed to adequately plead *any* actual injury.  But the press release summarizes the claims made in the California lawsuit, which alleges that ExxonMobil violated California, not Texas, law, so any injury would have been sustained primarily in California.  The fact that ExxonMobil – one of the largest companies in the world, performing actions around the globe, and publicly traded on the New York Stock Exchange – has its corporate headquarters in Texas does not mean that any injury occurred in Texas.

***The place where the conduct causing the injury occurred.***  Surfrider issued a press release in California summarizing a California lawsuit brought by four California environmental nonprofits.

***The domicil[e], residence, nationality, place of incorporation and place of business of the parties.***  For Surfrider, the answer to these inquiries is "California."  ExxonMobil is a New Jersey corporation operating worldwide, including in California, with corporate headquarters in Texas.

***The place where the relationship, if any, between the parties is centered.*** The only relationship between Surfrider and ExxonMobil is the California lawsuit.

A press release issued in California, by a California nonprofit, about a California lawsuit challenging ExxonMobil's actions in California, is "most significantly related" to California. Surfrider believes the result is the same under Texas and California law, but if the Court perceives a conflict, California's privilege law applies, requiring dismissal.

     **5.**    **ExxonMobil has failed to adequately plead facts supporting the applicable fault standard.**

A defamation plaintiff must plead and prove some level of fault when suing over speech on a matter of public concern. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (states may not "impose liability without fault" in defamation cases). Private-figure plaintiffs must prove negligence; public figures must prove constitutional "actual malice." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

ExxonMobil, a public figure, must plead and prove that Surfrider acted with actual malice: knowledge that the statement was false, or reckless disregard of the truth. *Gertz*, 418 U.S. at 342. "Reckless disregard" means that the defendant acted with knowledge that its speech was false, or had a high degree of subjective awareness of its probable falsity. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (the "reckless disregard" element of actual malice requires a high degree of awareness of probable falsity or the actual entertainment of serious doubts about truth).

Though ExxonMobil does not outright admit it is a public figure, its Complaint alleges only that Defendants acted with actual malice. *See, e.g.*, Comp. ¶¶ 94, 98, 106, 111. It does not allege negligence. By pleading only actual malice, ExxonMobil effectively concedes that standard

applies.[7]  As well it should – ExxonMobil is the quintessential public figure corporation.  In deciding whether a corporation is a public figure, the Fifth Circuit uses a three-factor test:  (1) "the notoriety of the corporation to the average individual in the relevant geographical area;" (2) the "nature of the corporation's business;" and (3) "the frequency and intensity of media scrutiny that [the] corporation normally receives." *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 (5th Cir. 1993).  All three factors weigh heavily in favor of concluding that ExxonMobil is a public figure.

*First*, ExxonMobil has achieved pervasive fame in Texas, nationally, and internationally. Its Complaint boasts that "more than 40,000 ExxonMobil employees and retirees call Texas home," that it "has done business in Texas for over a century," and is the state's "largest producer of oil and gas."  Comp. ¶ 16.  Its website claims it is "one of the world's largest publicly traded energy providers and chemical manufacturers."[8]

*Second*, ExxonMobil's business is vast and publicly ubiquitous.  ExxonMobil is the largest U.S. oil company, with consumer-facing gas stations across the country, including several hundred in Texas.[9] In short, ExxonMobil is a household name.

*Third*, ExxonMobil courts and receives significant publicity, and has ready access to media. It routinely issues press releases on its website's "Newsroom"[10] and it publishes contact

---

[7] If ExxonMobil contends it is a *private* figure (despite its worldwide notoriety) and need only prove negligence, dismissal is appropriate because it pleads no facts to support a negligence claim, and in fact never uses the word "negligence" in its Complaint.

[8] *Company Overview*, ExxonMobil, https://investor.exxonmobil.com/company-information (last visited April 22, 2025).

[9] *All Gas Stations in United States*, ExxonMobil, https://www.exxon.com/en/find-station/united-states (last visited Mar. 29, 2025); *ExxonMobil Stations Texas*, ExxonMobil, https://locations.exxon.com/tx (last visited Mar. 29, 2025).

[10] *Newsroom*, ExxonMobil, https://corporate.exxonmobil.com/news (last visited April 22, 2025).

information for media inquiries in multiple worldwide geographical areas.[11]    ExxonMobil's

actions receive significant media attention, monitoring, and scrutiny, including this lawsuit.[12]

ExxonMobil has also injected itself into the public debate over the very issues that are at

the heart of its defamation claim. As the Fifth Circuit has explained, an individual is at least a

limited purpose public figure when they "thrust themselves to the forefront of particular public

controversies in order to influence the resolution of the issues involved … ."  *Trotter v. Jack*

*Anderson Enterprises, Inc.*, 818 F.2d 431, 433 (5th Cir. 1987).  ExxonMobil devotes an entire

section of its website to describing its advocacy work, leadership, and policy positions on

recycling.[13]  As the Fifth Circuit has explained, when an individual has taken a leadership role in

a public debate or issue that is germane to the alleged defamation, that individual becomes a public

figure for defamation purposes.  *Trotter*, 818 F.2d at 433-34.

As a public figure, ExxonMobil must plead *facts* sufficient "to allow the court to infer more

than the mere possibility of misconduct."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724,

744-45 (5th Cir. 2019).  In *Walker*, the Fifth Circuit found the defamation plaintiff had not

sufficiently pleaded facts to support its conclusory claim of actual malice; he had not alleged, for

example, "the existence or contents of specific discussions, correspondence, or supporting

documentation" to adequately plead the element.  *Id.  See also Beneficient v. Gladstone*, No. 6.23-

cv-376-JDK, 2024 WL 2338256, at *11 (E.D. Tex. May 22, 2024) ("Plaintiffs must have pleaded

---

[11] *Media inquiries*, ExxonMobil, https://corporate.exxonmobil.com/news/media-contacts (last visited April 22, 2025).

[12]    *E.g.*, Exxon Sues California Official, Claiming he Defamed the Cmopany, https://www.nytimes.com/2025/01/07/climate/exxon-bonta-california-defamation-lawsuit.html (last visited April 25, 2025).

[13] *See* ExxonMobil, *available at* https://corporate.exxonmobil.com/who-we-are/policy/exxonmobil-advocacy-report/trade-associations#ExxonMobil%E2%80%99sadvocacyforadvancedrecyclinginEurope (last visited Apr. 21, 2025).

sufficient facts to create a plausible inference that [defendant] knew that [their] publications were false or seriously doubted their truth.").

ExxonMobil makes only conclusory allegations that "Defendants made these statements knowing that they were false—or with reckless disregard for their falsity." Comp. ¶ 111. Legal conclusions that simply repeat the actual malice standard are "insufficient to allow the court to infer more than the mere possibility of misconduct." *Walker*, 938 F.3d at 744-45. ExxonMobil pleads *no facts* specific to Surfrider supporting its conclusory allegation. It includes excerpts from "studies on recycling" from the "State of California" that discuss developments in recycling technology, Comp. at 30-32, none of which mention ExxonMobil, and then states, without tying the studies to any statement by Surfrider, that the mere fact of their existence "make[s] inescapably clear that Defendants either knew, or recklessly disregarded" that their "statements about ExxonMobil and advanced recycling were false." Comp. ¶ 98. ExxonMobil's Complaint fails to set forth any facts that have "nudged their claims across the line from conceivable to probable," *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007), and therefore its defamation claim should be dismissed.

Further, although ExxonMobil has not identified a single Surfrider out-of-court statement mentioning "advanced recycling," Surfrider and the other plaintiffs in the California Lawsuit allege that the process is not tenable as a solution to plastic pollution. Ex. 2 at 20-23. Their allegations are backed up by numerous studies that are cited in that lawsuit. At most, there is a debate over the efficacy of "advanced recycling," and any statement critical of the process could not have been made with knowledge of actual or probable falsity.

**B.    ExxonMobil fails to state a claim on its remaining tort causes of action, which are mere repackaging of its deficient defamation claim.**

**1.    ExxonMobil fails to state a claim for business disparagement.**

Business disparagement shares many similarities with defamation, including requiring pleading and proof that the defendant made a substantially false statement of fact about the plaintiff. This claim, therefore, fails for the same reasons ExxonMobil's defamation claim fails. Moreover, the elements of business disparagement are even "more stringent than those of defamation because business disparagement protects against pecuniary loss." *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). Those additional requirements include (1) that the defendant published false information with malice, (2) that the challenged statement was not privileged, and (3) proof that the statement caused special damages. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014). ExxonMobil's disparagement claim fails on all three of these requirements.

*First*, ExxonMobil has failed to adequately plead malice. Whether "malice" means constitutional actual malice or common-law "ill will" malice, ExxonMobil fails to plead facts supporting this element. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 613 (Tex. App. – San Antonio 2018, pet. denied) (business disparagement "malice" can be shown by proof of actual malice or ill will). As shown above, ExxonMobil fails to plead *facts* to support its conclusory actual malice allegations (and has also failed to identify any false statement made by Surfrider), and fails to plead facts supporting a claim that Surfrider acted with ill will.

*Second*, the single statement from the Surfrider press release that ExxonMobil identifies is privileged under both Texas and California law, also as shown above.

*Third*, ExxonMobil fails to plead facts to support any claim that it sustained a direct pecuniary loss – that is, special damages – from any Surfrider statement. "[P]roof of special

damages is a fundamental element of the tort" of business disparagement.  *Innovative Block*, 603 S.W.3d at 417.  Economic loss constitutes special damages only if it is "in the form of loss of trade or other dealings."  *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d at 762, 766 (Tex. 1987).  ExxonMobil makes bare conclusory claims that it sustained monetary and economic harm from Defendants' false statements, generally, Comp. ¶¶ 99-103, 107, but none from Surfrider's, and it asserts no *facts* to support a claim that it sustained a direct, pecuniary loss.  For example, ExxonMobil pleads no facts to show that it lost business "from any particular customer or prospective customer."  *See Hurlbut*, 749 S.W.2d at 767.  And ExxonMobil pleads no facts to support a claim that statements attributable to Surfrider "play[ed] a substantial part in inducing others not to deal with [P]laintiff."  *Hurlbut*, 749 S.W.2d at 767; Comp. ¶ 102 (alleging only that "[p]otential customers" "explicitly referenced statements by Bonta and the US Proxies as the cause of" their "concern and hesitancy to work with ExxonMobil").  Bare legal conclusions are insufficient to plead special damages.  *See Martinez v. City of Rosenberg*, 123 F.4th 285, 288 (5th Cir. 2024) (a court does "not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement").  ExxonMobil's business disparagement claim must be dismissed.

      **2.**        **ExxonMobil fails to state a claim for tortious interference with contract.**

A claim for tortious interference with contract requires pleading and proof that the defendant committed a willful and intentional act of interference with one or more particular contracts, proximately causing actual damage.  *Prudential Ins. Co. of Am. v. Fin. Revies Servs. Inc*, 29 S.W.3d 74, 77 (Tex. 2000).

ExxonMobil's conclusory references to "contracts" do not allege any specific facts.  It does not identify any actual contracts, only asserting vaguely that the claimed contracts are with various

municipalities, cities, and counties. Compl. ¶¶ 62-67.  Because these allegations do not identify any specific contract, ExxonMobil has not properly pleaded tortious interference with contract. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 114-75 (S.D. Tex. 2010) (granting Rule 12(b)(6) dismissal on tortious interference claim when plaintiff failed to identify any specific contracts interfered with, pleading only that it had "valid contracts with certain customers").

ExxonMobil also fails to plead specific facts to support an allegation that Surfrider willfully or intentionally acted to interfere with its unnamed contracts or how Surfrider's acts proximately caused any damage.  ExxonMobil has simply alleged that unidentified companies refused to promote ExxonMobil's advanced recycling and "explicitly referenced statements" allegedly made by Defendants, without specifying any actual Surfrider statements or how Surfrider made any statements *intending* to interfere with these supposed contracts.  Comp. ¶ 102.  By failing to allege any willful or intentional acts, ExxonMobil also has failed to adequately plead that Surfrider proximately caused any damage by taking an active part in persuading any breaches of contract. *Ancor Holdings, L.P. v. Landon Capital Partners, L.L.C.,* 114 F.4th 382, 400 (5th Cir. 2024) ("Mere conjecture, guess, or speculation is insufficient to establish proximate cause.").

### 3.    ExxonMobil fails to state a claim for tortious interference with business relationships.

This brand of tortious interference requires proof of a defendant's independently tortious or unlawful conduct.  *Coinmach Corp. v. Aspenwood Apt. Corp*., 417 S.W.3d 909, 923 (Tex. 2013).  The only allegedly tortious conduct claimed by ExxonMobil is alleged defamation.  Comp. ¶ 125.  As shown above, ExxonMobil has failed to state a valid claim for defamation, for multiple reasons, so its tortious interference claim thus fails on this essential element.

Moreover, ExxonMobil must allege that Surfrider's actions were intended to prevent business relationships and were made with certainty that they would cause interference.

*Coinmatch Corp.*, 417 S.W.3d at 923.  ExxonMobil only generally claims that unidentified businesses expressed hesitancy to work with it, but it does not name any such business and does not set forth any specific facts alleging the extent or impact of such  alleged "hesitancy."  Comp. ¶ 102.  Vague assertions that future business relationships may be harmed are insufficient to state a claim, and here ExxonMobil does not allege any specifics of harmed relationships.  *Stone v. FINRA,* 694 F. Supp. 3d 774 (E.D. Tex. 2023) ("Plaintiff fails to sufficiently plead the 'reasonable probability' element, as Plaintiff does not 'describe the specifics of a proposed agreement that never came to fruition.'") (citations omitted).  By asserting no more than conclusory statements and naming no specific business relationship, ExxonMobil fails to allege specific facts in support of its claim of tortious interference with prospective business.

### 4.    ExxonMobil fails to plausibly plead civil conspiracy.

As with its other claims, ExxonMobil's civil conspiracy claim is nothing but conclusory, general statements without sufficient factual allegations.

Civil conspiracy requires that a plaintiff plead and prove an agreement between two or more persons to accomplish a course of action and the commission of "one or more unlawful, overt acts … taken in pursuance of the object or course of action."  *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).  ExxonMobil alleges that the Defendants "worked together and in concert … to launch this coordinated campaign of defamation," Comp. ¶ 130, but fails to plead facts to show this alleged concerted action (other than the fact that they are parties to the California lawsuit, conduct that is privileged from liability).  Further, the only alleged unlawful act claimed is the "campaign of defamation;" ExxonMobil pleads no facts to support a contention that Surfrider made an agreement with any other party to defame ExxonMobil.  And, because its defamation claim fails, so does its conspiracy claim.

### 5.    ExxonMobil fails to plausibly plead a declaratory judgment claim.

ExxonMobil's request for a declaratory judgment that "advanced recycling is recognized and permitted by law in multiple states, including Texas," and that "ExxonMobil is lawfully permitted to engage in and promote advanced recycling at its Texas facility," Comp. ¶ 140, is wholly improper because it fails to state a case or controversy.

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995). A district court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* To decide whether to dismiss a declaratory judgment action, courts engage in a three-step inquiry: (1) "whether an 'actual controversy' exists between the parties to the action;" (2) "whether [the Court] has the 'authority' to grant declaratory relief in the case presented;" and (3) "how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (citations omitted). The statute's requirement of an actual controversy refers to an Article III case or controversy. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126-27 (2007). ExxonMobil bears the burden of pleading facts showing a justiciable controversy. *See Orix Credit All., Inc.*, 212 F.3d at 895.

ExxonMobil's declaratory judgment claim fails at the first step of the inquiry because it does not—and indeed cannot—articulate the required "definite and concrete dispute" between the parties rising to the level of an Article III case or controversy. Instead, ExxonMobil seeks a prohibited "opinion advising what the law would be upon a hypothetical set of facts." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748-49 (5th Cir. 2009) (quoting *MedImmune, Inc.,* 549 U.S. at 127). ExxonMobil fails to allege facts supporting a claim that Surfrider (or any other Defendant, for that matter) has ever contended that ExxonMobil's Texas "advanced recycling"

activities violate Texas law.  In fact, Surfrider has never made such a claim.  To the extent that ExxonMobil is attempting to raise a declaratory judgment claim based on contentions made in the California lawsuit, Comp. ¶ 137, that suit is the forum to resolve that claim.

ExxonMobil alleges that it is "likely to become involved in additional legal matters," Comp. ¶ 138, but that does not establish a ripe case or controversy.  The threat of litigation only creates a controversy when it is "specific and concrete." *Shields v. Norton*, 289 F.3d 832, 835–36 (5th Cir. 2002).  ExxonMobil does not allege that Surfrider has taken any concrete steps at all to bring a lawsuit regarding the issues about which it seeks a declaration.  And past litigation alone "is not enough" to create a threat.  *See id.* at 835-36.  This Court cannot "anticipate" challenges not currently before it where "[n]o person has sued" yet or taken steps to do so imminently because "[t]he parties to litigation, not the court, shape the issues." *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 884-85 (N.D. Tex. 2008).  Because ExxonMobil is seeking a pure advisory opinion "regarding a situation that has not and may never occur," its declaratory judgment claim fails.  *Heredia v. Bierman*, No. 3:19-CV-2625, 2021 WL 665538, at *2 (N.D. Tex. Feb. 4, 2021), *report and recommendation adopted*, No. 3:19-CV-2625, 2021 WL 662302 (N.D. Tex. Feb. 19, 2021).  In addition, because a case or controversy is required for subject matter jurisdiction to lie, ExxonMobil's declaratory judgment claim should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

## V.    Conclusion and prayer.

For these reasons, Defendant Surfrider Foundation moves the Court to dismiss all claims against it alleged by Plaintiff ExxonMobil Corporation in its Complaint and grant such other and further relief to which it may be justly entitled.

Respectfully submitted,

By: */s/James A. Hemphill*
         Peter D. Kennedy
         Texas Bar No. 11296650
         pkennedy@gdhm.com
         James A. Hemphill
         Texas Bar No. 00787674
         jhemphill@gdhm.com
         Graves, Dougherty, Hearon & Moody, P.C.
         401 Congress Avenue, Suite 2700
         Austin, Texas 78701
         (512) 480-5764
         (512) 480-9908 (Fax)

         Heather E. Murray
         Daniela del Rosario Wertheimer
         Jared Carter
         (all admitted *pro hac vice*)
         Cornell Law School First Amendment Clinic[14]
         Myron Taylor Hall
         Ithaca, NY 14853
         Tel: (607) 255-8518
         hem58@cornell.edu
         ddw83@cornell.edu
         jc2537@cornell.edu

         **ATTORNEYS FOR DEFENDANT**
         **SURFRIDER FOUNDATION**

---

[14] Clinic students Sierra Berry, Devin Brader-Araje, and Evan Deakin and Clinic intern Krista Wirth drafted portions of this brief.  The Clinic is housed within Cornell Law School and Cornell University.  Nothing in this brief should be construed to represent the views of these institutions, if any.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2025, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following:

Michael Patrick Cash
Wade Thomas Howard
Liskow & Lewis PLC - Houston
First City Tower
1001 Fannin Street, Suite 1800
Houston, TX 77002
**Attorneys for Plaintiff**
**Exxon Mobil Corporation**

Robert William Setrakian
California Attorney General's Office
300 S. Spring Street
Los Angeles, CA 90027
**Attorneys for Defendant Robert Andres Bonta**

Scott E. Gant
Boies Schiller Flexner LLP
1401 New York Ave NW
Washington, DC 20005
**Attorneys for Defendant Sierra Club, Inc.**

Deborah Greenleaf
Tribble & Ross
6371 Richmond Ave
Houston, TX 77057
**Attorneys for Heal the Bay, Inc.**

Michael Forest Nelson
John Holman Barr
Burt Barr & Associates
PO Box 223667
Dallas, TX 75222-3667
**Attorneys for Defendant Baykeeper, Inc.**

*/s/James A. Hemphill*
James A. Hemphill

**EXHIBITS IN SUPPORT OF**
**DEFENDANT THE SURFRIDER FOUNDATION'S**
**<u>MOTION TO DISMISS</u>**

1.      Affidavit of Michelle Kremer.

2.      Complaint, *Sierra Club, Inc., et al. v. ExxonMobil Corporation, et al.*

3.      Complaint, *State of California v. ExxonMobil Corporation.*

4.      Surfrider Foundation press release, September 23, 2024.