# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

EXXON MOBIL CORPORATION, §
§
    Plaintiff, §
§
v. §
§
ROBERT ANDRES BONTA A.K.A. §
ROB BONTA, IN HIS INDIVIDUAL §   Case No. 1:25-cv-00011-MJT
CAPACITY; SIERRA CLUB, INC.; §
SURFRIDER FOUNDATION, INC.; §
HEAL THE BAY, INC.; BAYKEEPER, §
INC.; AND INTERGENERATIONAL §
ENVIRONMENT JUSTICE FUND LTD. §
§
    Defendants. §


## BAYKEEPER, INC'S RULE 12(b)(2), (3), (6) MOTION TO DISMISS

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES ................................................................ 1

SUMMARY ........................................................................................ 1

FACTS ............................................................................................ 3

LEGAL STANDARD ............................................................................ 5

EVIDENCE ........................................................................................ 6

ARGUMENT ...................................................................................... 6

    A.  This Court Lacks Personal Jurisdiction Over Baykeeper ................................ 6

    B.  This Complaint Should Be Dismissed Under the First-to-File Rule ................... 11

    C.  This Complaint Fails to State a Claim Upon Which Relief Can be Granted .......... 14

DECLARATORY RELIEF ...................................................................... 25

PRAYER .......................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796 (1990) ................................. 13

*Alpine View Co. v. Atlas Capco AB*, 205 F.3d 208 (5th Cir. 2000) .................................... 5

*American Broad Cos. v. Gill*, 6 S.W.3d 19
(Tex.App.-San Antonio 1999, pet. denied) ........................................................... 16

*Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*,
300 F.3d 620 (5th Cir.2002) ................................................................................ 15

*Arris Group, Inc. v. British Telecommunications PLC*,
639 F.3d 1368 (Fed.Cir. 2011) ............................................................................. 26

*Ashai Metal Industry Co. v. Superior Court of Cal.*,
*Solano Cty.*, 480 U.S. 102 (1987) .......................................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 5,6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ........................ 11

*Barrow v. Sutton*, 2014 U.S. Dist. LEXIS 191677 (S.D.Tex. July 16, 2014) .................... 14

*Basit Mian v. Progressive County Mut. Ins. Co.*, 2020
U.S.Dist. LEXIS 255774 (S.D.Tex June 11, 2020) ................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 5

*Bose v. Consumers Union*, 66 U.S. 485, 511 n.30 (1984) ........................................... 13

*BridgeLux, Inc. v. Cree, Inc.*, 2007 WL 9724143, (E.D. Tex. 2007) .............................. 14

*Burback v. Brock*, 2023 U.S.App. LEXIS 17845 (5th Cir. July 13, 2023) ......................... 16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................. 6

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3rd Cir.2011) ...................................... 15

*Bush v. Rust-Oleum Corp.*, 2021 U.S. Dist. LEXIS
507 (N.D.Cal. Jan 4, 2021) ................................................................................ 22

*Caddle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599, 605-06 (5th Cir. 1999) ................................................................... 12

*Calder v. Jones,* 465 U.S. 783 (1984) ...................................................................... 8

*Church of Scientology v. Flynn*, 744 F.2d 694 (9th Cir. 1984) ........................................ 22

*Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909 (Tex.2013) ...................... 14, 15

*Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671 (Tex.2019) ............... 14, 15

*Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370 (Tex.2019) ................................. 18

*Dontos v. Vendomation NZ Ltd.*, 582 F.Appx. 338 (5th Cir. 2014) ................................... 7

*Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431 (9th Cir.1992) ................................... 17

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir.2008) ..................................... 23

*Dxp Enters., Inc. v. Hill*, 2016 WL 4159756, at \*3 (S.D. Tex. 2016) ............................... 12

*E.g., Brocq v. Lane*, 2017 WL 1281129, at \*2 (N.D. Tex. 2017) ..................................... 14

*Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970) ......................................... 16

*Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007) ...................................................... 13

*Hanson v. Denkla*, 357 U.S. 235 (1958) ................................................................... 7

*Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657 (1989) ....................................... 23

*Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir. 2000) ..................................................... 6

*Hearn v. Bd. of Supervisors of Hinds Cnty., Miss.*,
2013 WL 1305586, at \*1 (S.D. Miss. 2013), *aff'd* (July 8, 2014) .................................... 14

*Hearst Corp. v. Skeen*, 159 S.W.3d 633 (Tex.2005) ................................................... 23

*Hermann Holdings, Ltd. v. Lucent Techs., Inc.*,
302 F.3d 552, 565 (5th Cir. 2002) ......................................................................... 25

*In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976
(5th Cir. 2015), *as revised* (May 15, 2015) .............................................................. 12

*In re GlenFed, Inc. Secur. Litg.*, 42 F.3d 1541(9th Cir.1994)(*en banc*) ............................. 23

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314
(5th Cir.2021), rehearing *en banc* denied, *cert.* denied, 2022 U.S.

LEXIS 5290 (U.S. Dec. 5, 2022) ............................................................ 8, 11

*Kor Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134, 63 P.3d 937 (Cal.2003) ..................................... 14, 15

*Lillith Fund for Reprod. Equity v. Dickson,* 662 S.W.3d 355 (Tex.2023) ..................... 14, 15

*Lone Star Invest. Club v. Schlotzky's, Inc.,* 238 F.3d 363 (5th Cir.2001) ........................ 24

*Luv N' Care, Ltd. v. Insta Mix, Inc.,* 438 F.3d 465 (5th Cir. 2006) ................................... 5

*Mandawala v. Ne. Baptist Hosp.,* 16 F.4th 1144, 1153 (5th Cir.2021) .......................... 16

*McClatchy v. Superior Court,* 189 Cal.App.3d 961, 972-74 (1987) ............................. 13

*McLoba, Inc. v. Peregoy,* 2020 WL 10456914 (E.D. Tex. 2020) ................................ 12

*Memorial Hermann Health Sys. v. Gomez,* 649 S.W.3d 415 (Tex.2022) .................... 14, 15

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990) ........................................ 3, 16, 17

*Monkton Ins. Servs. v. Ritter,* 768 F.3d 316 (5th Cir. 2014) ..................................... 7, 10

*Muser v. Smith Prot. Servs.,* 723 S.W.2d 653 (Tex.1987) ....................................... 17

*My Clear View Windshield Repair, Inc.* v.
*GEICO Advantage Ins. Co.,* 2017 WL 2591339, at *6 (S.D. Tex. 2017) .......................... 12

*name,space, Inc. v. Internet Corp. for Assigned Names & Numbers,*
795 F.3d 1124 (9th Cir. 2015) ................................................................... 14, 15

*New England Data Services, Inc. v. Becher,* 829 F.2d 286 (1st Cir.1987) ...................... 23

*New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) .............................................. 3

*Nishimatsu Const. Co. Ltd. v. Houston Nat'l Bank,*
515 F.2d 1200 (5th Cir.1975) ................................................................... 5, 20

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
253 F.3d 865 (5th Cir. 2001) ........................................................................ 5

*Parker v. Spotify USA, Inc.,* 569 F.Supp.3d 519 (W.D.Tex.2021) ................................ 22

*PC Drivers Headquarters, LP v. Malwarebytes, Inc.,*
371 F.Supp.3d 652 (N.D.Cal. 2019) ............................................................ 14, 15

*Save Power Ltd. V. Syntek Fin. Corp.*,
121 F.3d 947, 950-51 (5th Cir. 1997) ………………………………………………… 12

*Summit Bank v. Rogers*, 206 Cal. App.4th 669 (Ct. App.2012) ……………………………… 18

*Taus v. Loftus*, 40 Cal. 4th 683, 151 P.3d 1185 (Cal.2007) …………………………………… 14, 15

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
219 S.W.3d 563 (Tex.App.-Austin 2007, pet. denied) ………………………………………… 23

*Tifford v. Tandem Energy Corp.*, 562 F.3d 699 (5th Cir. 2009) ………………………………… 14

*Turner v. KTRK TV, Inc.*, 38 S.W.3d 103 (Tex.2000) …………………………………............ 22, 23

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
125 F.3d 899 (5th Cir. 1997) ………………………………………………………………… 6

*U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325 (5th Cir.2003) ……………………………… 6

*U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180 (5th Cir. 2009) …………………… 6

*USPlabs Jack 3d, LLC v. MMRNV*, 2012 U.S. Dist.
LEXIS 194699 (N.D.Tex. Oct. 31, 2012) ……………………………………………………… 8, 9

*U.S. v. United Healthcare Inc.*, 848 F.3d 1161 (9th Cir.2016) ………………………………… 16

*Vess v. Ciba-Geigy Corp., U.S.A.* 317, F, 3d 1092 (9th Cir.2003) …………………………….. 24

*Walden v. Fiore*, 571 U.S. 277 (2014) ………………………………….................. 7, 9

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex.1998) …………………………………… 23

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. &
Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985) ………………………… 12

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir.1997) …………………………… 23

*7-Eleven, Inc. v. Puerto Rico-7 Inc.*, 2008 U.S.Dist.
LEXIS 94835 (N.D.Tex. Nov. 19, 2008) ……………………………………………………… 25

*7X Cattle Co., LLC v. Brandstadt*, 2024 U.S.Dist. LEXIS
154651 (E.D.Tex July 22, 2014) (citing *Mandawala v. Ne. Baptist Hosp.*,
16 F.4th 1144 (5th Cir.2021) …………………………………………………………………… 16

**STATUTES**

U.S. Const. art. III, § 2 ……………………………………………………… 26

Tex. Civ. Prac. & Rem. Code Chp. 17 ……………………………………….... 6

Cal. Civ. Code § 47 ………………………………………………………… 17

**RULES**

Fed. R. Civ. P. 4(k)(1)(A) ………………………………………………… 6

Fed. R. Civ. P. 201 ………………………………………………………… 6

Fed. R. Civ. P. 9(b) ……………………………………………………… 6, 16, 23

Fed. R. Civ. P. 12(b)(6) ………………………………………………… 6, 18

Fed. R. Civ. P. 12(b)(2) ………………………………………………… 8

Fed. R. Civ. P. 12(b)(3) …………………………………………………7, 15

Fed. R. Civ. P. 12(g)(1) ………………………………………………… 2

**SECONDARY SOURCE**

KEETON ET AL., PROSSER & KEETON ON TORTS
§ 116, at 117 (Supp. 1988) ……………………………………………… 22

Von Mehren & Trautman, Jurisdiction to Adjudicate:
A Suggested Analysis, 79 Harv. L. Rev., 1121, 1136 (1966) …………………………… 7

Defendant Baykeeper, Inc. ("Baykeeper") files its motion to dismiss Plaintiff ExxonMobil Corporation's ("ExxonMobil") claims under Rule 12(b)(2), (3), (6).

## STATEMENT OF THE ISSUES

1.      Does the Court have personal jurisdiction over Baykeeper, an organization with no presence in or connection to Texas, based solely on statements Baykeeper made in California about Texas-based ExxonMobil?

2.      Given that Baykeeper and others filed suit against ExxonMobil in California, should the Court dismiss, or in the alternative, transfer this lawsuit, which bases liability on statements in the California complaint and at a press conference about that complaint?

3.      Has ExxonMobil shown that Baykeeper did anything in Texas that resulted in the claims asserted by ExxonMobil?

4.      Could Baykeeper reasonably expect to be haled into a Texas court due to statements made at a Northern California press conference about plastic waste in San Francisco Bay?

5.      Did ExxonMobil demonstrate that a substantial part of Baykeeper's complained of conduct occurred in the Eastern District of Texas?

6.      Does ExxonMobil's allegations for claims with a fraud element satisfy the heightened pleading standards of Rule 9(b)?

7.      Has ExxonMobil plausibly alleged factual statements with particularity that would make Baykeeper's statements actionable as a defamation-based claim or as a tortious interference-based claim?

## SUMMARY

ExxonMobil brought this lawsuit in retaliation for claims filed against it in California by Baykeeper and some of its co-defendants to address a California public health issue. The California

1

litigation concerns ExxonMobil's misrepresentations to California customers concerning single-use

plastic waste in California waterways and the efficacy of landfilling, mechanical recycling, and

incineration (so-called "advanced recycling") as solutions to dispose of single-use plastics and

polymers. Beyond defending against Baykeeper's case on the merits, ExxonMobil brings what

amount to compulsory counterclaims designed to silence Baykeeper. The Court should dismiss the

claims against Baykeeper for the following reasons—in addition to those articulated in Defendants'

Joint Motion to Transfer Venue (Dkt. 46).

*First*, this Court lacks personal jurisdiction over Baykeeper.   Baykeeper is a California non-

profit with California staff that advocates for environmental protection in California and

specifically the San Francisco Bay. ExxonMobil does not allege that Baykeeper has taken any

action sufficient to establish minimum contacts with the State of Texas, much less that its claims

arise from those contacts. Under established law, it is not enough that ExxonMobil claims these

actions affected its business in Texas. The absence of personal jurisdiction over Baykeeper is

dispositive and requires dismissal.

*Second,* the Court should dismiss this lawsuit under the first-to-file doctrine. Under the law

of this Circuit, a district court should not entertain a lawsuit that substantially overlaps with a

previously filed lawsuit. Because of the overlap between the California litigation and this case—

namely, whether certain statements about single-use plastics and recycling can be subject to

liability—application of the first-to-file rule also requires dismissal.

*Finally,* ExxonMobil fails to state any claim against Baykeeper. ExxonMobil's claims turn

upon the assertion that Baykeeper defamed ExxonMobil through allegations in its California

complaint, and by issuing a statement at a press conference describing those allegations. But the

First Amendment renders those allegations privileged. In addition, Exxon has not shown each of the

allegedly defamatory statements are objectively verifiable, rather than nonactionable opinions under

2

the standards set forth in *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990). Baykeeper's press conference statement is also a privileged fair report of official proceedings under California law. And all of the challenged statements—even if construed as statements of fact—are substantially true and thus nonactionable.   For these and additional reasons below, the claims fail as a matter of law.

By bringing retaliatory litigation to short-circuit a debate about single-use plastic waste taking place in California and its courts, ExxonMobil seeks to undermine our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). ExxonMobil cannot wield the law to shutter public discussion and opposing points of view, much less in a Texas court far from this California dispute. Baykeeper requests an order dismissing the action.

## FACTS

Three months before ExxonMobil filed this lawsuit, Defendants Baykeeper, Sierra Club, Inc., Surfrider Foundation, Inc., and Heal the Bay, Inc. ("U.S. Nonprofit Defendants") filed a complaint in California ("CA Complaint") against ExxonMobil. (Ex. 3, Pg. 1). The CA Complaint sought to abate the production of ExxonMobil resins that form the building block for unsustainable single-use plastics as well as help in cleaning-up single-use plastic debris fouling California waters. (Ex. 3, Pg. 63). It further alleged ExxonMobil misrepresented landfilling, mechanical recycling, and incineration (advanced recycling) as solutions to disposing of its single-use plastic products.[1]

In the Complaint in this case, ExxonMobil challenges the following statements made by Baykeeper's Executive Director at the California press conference:

> The complaint alleges that Exxon has brainwashed everyone into thinking that plastic recycling works and that it's good for the planet. But when we pulled back the curtain, we found that Exxon's plastic

---

[1] "Ex." refers to the numbered exhibits accompanying this motion. The accompanying numbered exhibits are incorporated by reference in this motion.

> polymers are poisoning waterways, wildlife, and people.
>
> San Francisco Bay has some of the highest levels of microplastics in the world. That's why we're going after Exxon: to stop plastic pollution at the source. This stuff is killing us a little bit more every day, and we won't let Exxon gaslight us into believing this is normal. People and wildlife around the Bay deserve to live free from exposure to toxic petrochemicals and microplastics. (Dkt. 1-9).

Beyond that, ExxonMobil makes conclusory allegations that "Defendants" did something.

The Complaint identifies no ties this dispute has to Texas, *other than* that ExxonMobil has allegedly been injured here. ExxonMobil admits the named defendants are California citizens or a foreign entity. (Dkt. 1; ¶23). It has not identified any business of which Baykeeper has availed itself in Texas, any activities in Texas by Baykeeper, any contacts between Baykeeper and Texas, any torts allegedly committed by Baykeeper in Texas, or any conduct by Baykeeper directed at Texas. (Dkt. 1; ¶21). It does not, for example, allege that Baykeeper (1) has local chapters in Texas (Dkt. 1,¶28), (2) transmitted allegedly defamatory materials to Texas residents (Dkt. 1, ¶29), (3) communicated with the Houston Recycling Consortium (an entity whose relationship with ExxonMobil was allegedly disrupted by the defendants) (Dkt. 1, ¶30), (4) placed air tags in plastic waste (Dkt. 1, ¶30), or (5) made false statements to agencies granting ExxonMobil recycling permits (Dkt. 1, ¶32). Nor could Exxon make these allegations. Baykeeper has never had a presence in Texas. (Ex. 1, ¶ 14). And ExxonMobil's claims against Baykeeper emanate from a lawsuit filed against it in California and a single press conference in California posted on a passive website in California - nothing more. (Ex. 1, ¶ 25).

ExxonMobil is the largest producer of virgin polymers for plastics. (Dkt. 1, ¶ 38, fn 9). Six primary virgin polymers exist, five of which ExxonMobil produces for single-use plastic resins. (Ex. 3, ¶¶ 41-42). Toxic additives to these resins include stabilizers, plasticizers, coatings, catalysts, and flame retardants. (Ex. 3, ¶ 64). Only one pure polymer is recycled on a commercial scale. (Dkt.

4

1, ¶ 96.e).

Advanced recycling methods include chemical, thermal, and biological processes, which vary according to the plastic's chemical makeup. (Dkt. 1, ¶ 96.a). Each process presents numerous obstacles: technical obstacles due to the various plastics to be recycled; economic obstacles because of collection costs; asset acquisition obstacles for specialized machinery; stock obstacles from inconsistent supplies; promotion obstacles from undeveloped markets; and regulatory obstacles from tax and zoning laws. (Dkt. 1, ¶ 96.f.).

ExxonMobil has not alleged a verifiable factual basis for refuting the absence of an existing process to make single-use plastic sustainable, including ExxonMobil's advanced pyrolysis (thermochemical) recycling process. (Dkt. 1, ¶¶ 57-61). ExxonMobil sets forth no facts, scientific laws, or tested hypotheses for single-use plastic sustainability. Neither the Complaint nor its exhibits present a viable process for making single-use plastics sustainable.[2]

## LEGAL STANDARD

Plaintiff has the burden to establish that *in personam* jurisdiction exists.[3] Absent sufficient facts to make out a *prima facie* case for personal jurisdiction, personal jurisdiction is lacking.[4] A court will accept a plaintiff's non-conclusory, uncontroverted allegations as true, and resolve cogent factual conflicts in the evidence in a plaintiff's favor.[5]

To defeat a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations, recital of claim elements, and naked assertions will not support a facially plausible

---

[2] *Nishimatsu Const. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) (a court may disregard a complaint's allegations if contradicted by facts in the complaint's exhibits).
[3] *See Luv N' Care, Ltd. v. Insta Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[4] *Alpine View Co. v. Atlas Capco AB*, 205 F.3d 208, 215 (5th Cir. 2000).
[5] *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

claim. For a plausible claim, sufficient factual matter must rise above a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a claimant to plead fraud-based claims with specificity. This includes the who, what, when, where, and how of the alleged misrepresentations.[6] Specificity also includes what the defendant obtained from the misrepresentation.[7] Per the Fifth Circuit, courts should apply the specificity standard "with bite and without apology." *U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quotation citing omitted). Failure to comply with Rule 9(b) equates to a failure to state a claim under Rule 12(b)(6).[8]

## EVIDENCE

Baykeeper relies upon the attached declarations of Sejal Choksi-Chugh (Ex. 1) and M. Forest Nelson (Ex. 2) as well as the Exhibits. (Exs. 3-54). Defendants also ask the Court to take judicial notice of its file under Federal Rule of Evidence 201.

## ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Baykeeper.

An analysis of personal jurisdiction begins with the reach of the Texas long-arm statute's reach,[9] which extends to the limits imposed by federal due process.[10] Those limits end where maintaining a suit in the chosen forum would not offend "traditional notions of fair play and substantial justice."[11] This lawsuit, if in Texas, would do just that.

To determine fair play and substantial justice, courts look at two factors: (1) the nonresident's minimum contacts with the forum and (2) whether the nonresident had fair warning

---

[6] *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).
[7] *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir.2003).
[8] *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).
[9] Tex. Civ. Prac. & Rem. Code Chp. 17.
[10] Fed. Rule Civ. P. 4(k)(1)(A); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).
[11] *See Burger King*, 471 U.S. at 472.

that its conduct would subject it to jurisdiction in Texas. A nonresident's minimum contacts fall into two categories: (1) specific conduct-linked personal jurisdiction and (2) general all-purpose personal jurisdiction.

ExxonMobil does not allege this Court has general jurisdiction over Baykeeper, focusing instead on specific jurisdiction. (Dkt. 1, ¶¶ 24-32). The Fifth Circuit uses a three-prong test to determine specific jurisdiction: (1) whether defendant had minimum contacts purposefully directed at or purposefully availing itself of the forum's privileges; (2) whether plaintiff's claims result from the forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[12]  ExxonMobil has the burden to show the first two prongs, and the burden then shifts to Baykeeper to show the exercise of personal jurisdiction is neither fair nor reasonable.[13] Specific jurisdiction due process turns on Baykeeper's activities in or directed to Texas regarding single-use plastic debris in California waterways. Baykeeper's activities must be directly connected to Texas and to the very controversy sought to establish personal jurisdiction in this case.[14]  Whether ExxonMobil experienced a particular injury or effect in Texas is of no moment; instead the question is whether Baykeeper's conduct connects it to Texas in a meaningful way.[15] This rationale stems from due process serving to protect the liberty of the nonresident defendant rather than the plaintiff's convenience.[16]  Absent Baykeeper purposefully availing itself of the privilege of conducting meaningfully linked activities in Texas, exercising personal jurisdiction over Baykeeper in Texas becomes unjustified.[17]  Again, the court's record lacks reference to any Baykeeper conduct occurring in or directed at Texas. ExxonMobil complains about a statement

---

[12] *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).
[13] *Dontos v. Vendomation* NZ Ltd., 582 F.Appx. 338, 343 (5th Cir. 2014).
[14] Von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev., 1121, 1136 (1966); see Brilmayer, a General Look at General Jurisdiction, 66 Texas L. Rev. 723, 782 (1988).
[15] *Walden v. Fiore*, 571 U.S. 277, 290 (2014).
[16] *Id.* at 284.
[17] *Hanson v. Denkla*, 357 U.S. 235, 253 (1958), see, *e.g.*, *Ashai Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 105 (1987).

made by Baykeeper's executive director at a Northern California press conference that was posted on a passive internet site. (Dkt. 1, ¶ 92, n. 56; Dkt. 1-9). The Fifth Circuit has held that a statement posted on a passive internet site precludes personal jurisdiction, "full stop."[18]

Even if one assumed arguendo that the posting occurred on an interactive internet site, exercising personal jurisdiction over Baykeeper would still offend traditional notions of fair play and substantial justice. ExxonMobil's lawsuit implies that anyone appearing on an interactive internet site can reasonably expect to be sued, and accedes to being sued, in any forum where a federal court can be found. Such a belief does not comport with fair play or substantial justice.

Applying the Fifth Circuit's three-prong test for specific personal jurisdiction validates the lack of personal jurisdiction. Baykeeper had no minimum contacts with Texas, let alone any contacts that purposefully availed itself of any Texas privileges. Baykeeper's lack of minimum Texas contacts rules out ExxonMobil's claims against Baykeeper having resulted from forum-related (Texas) contacts. Lastly, Baykeeper can demonstrate that a Texas court exercising personal jurisdiction over it is neither fair nor reasonable.

In its Complaint, ExxonMobil unsuccessfully attempts to fall within the "effects test" to create minimum contacts. (Dkt. 1, ¶ 26). Because some conduct has far-reaching effects, courts have applied the "effects test" used in *Calder v. Jones* to determine specific personal jurisdiction over complaints with claims that have intent as a material fact. In a defamation-based case, under the effects test, a forum becomes the focal point if "both the subject matter of the article or conduct, and the sources relied upon for the article or conduct were in the forum state." *USPlabs Jack 3d, LLC v. MMRNV*, 2012 U.S. Dist. LEXIS 194699 at *6 (N.D.Tex. Oct. 31, 2012).

In *USPlabs,* a company with its principal place of business in Texas sued a competitor who

---

[18] *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir.2021), rehearing *en banc* denied, *cert.* denied, 2022   U.S. LEXIS 5290 (U.S. Dec. 5, 2022).

gave an interview on a Nevada television station that made its way onto the internet. In the interview, the competitor stated the Texas company derived its health supplement from rat poison that could kill you. In granting the motion to dismiss for lack of personal jurisdiction, the *USPlabs'* court relied upon the facts that Texas was not mentioned in the interview; that the interview took place in Nevada, and thus, was directed at Nevada residents; and that Texas sources were not relied upon for the statements. The facts here mirror those in *USPlabs*: a Texas company suing a California entity for a press conference in Northern California, directed at California residents, that only referred to California waterways, and cited no Texas sources.

If personal jurisdiction is lacking under *USPlabs,* it is certainly lacking under *Walden v. Fiore,* which the Supreme Court decided two years later and which narrows the exercise of jurisdiction under the effects test.   In *Walden*, the Court added two limiting factors to the "effects test": 1) the relationship must arise out of the contacts that the defendant itself created with the forum state and 2) the analysis looks to the forum where the defendant committed the conduct that caused the alleged harm, not to the forum where the plaintiff suffered the alleged harm. With these two added factors, the test became more than where did the plaintiff's alleged injury occur – which proves an insufficient forum connection for personal jurisdiction – but rather, does the defendant's complained of conduct have a meaningful connection to the forum. Thus, even if Baykeeper knew that ExxonMobil had recycling operations in Texas that could foreseeably be affected by a California lawsuit that still would not prove sufficient minimum contacts.

When determining if Baykeeper has enough deliberate and purposeful contacts with Texas to satisfy the enhanced "effects test," one must look at the nature and the quality of contacts with Texas; the quantity of such contacts; and the relation of the cause of action to the contacts. Here, Baykeeper had no physical presence in Texas, nor did it reach into Texas. (Ex. 1, ¶¶ 14, 15). Baykeeper did not enter Texas by its employees, agents, or goods. (Ex. 1, ¶ 15). Additionally,

Baykeeper is not registered to do business in Texas; has no bank account in Texas; has no agents or employees in Texas; has no place of business or chapters in Texas; does not solicit donations from Texas; never communicated with ExxonMobil in Texas; and never picketed or protested outside ExxonMobil facilities in Texas. (Ex. 1, ¶¶ 16, 17, 18, 19, 20, 21). Baykeeper's only connection to Texas is a lawsuit filed in San Francisco against a worldwide company with its principal office in Texas, which does not warrant the exercise of personal jurisdiction by a Texas forum under the current "effects test." ExxonMobil cannot satisfy the first two due process prongs.

The third due process prong - fair and reasonable - looks to whether Baykeeper could reasonably expect to find itself in a Texas court because of a press conference in Northern California about plastic waste in the San Francisco Bay Area. Baykeeper could not. The third prong has five factors: (1) the burden on the nonresident defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in the most efficient resolution, and (5) the several states shared interest in furthering social policies.

The first factor favors Baykeeper. Baykeeper is a single-office nonprofit in California and will be severely burdened by defending claims of an international conglomerate halfway across the country. Texas' interest in addressing single-use plastic waste in California waterways does not rise to the level of California's interest, where the impact of such waste is a constant reminder and an ongoing societal cost.

The second factor also favors the absence of fairness in exercising personal jurisdiction over Baykeeper.

The third factor is neutral. ExxonMobil and Baykeeper both have interests in how the issue of single-use plastic waste in California waterways is addressed – one has a public interest, the other an economic interest.

The fourth and fifth factors draw attention to the potential error in exercising personal

jurisdiction based upon a passive internet posting in another state. Because if one accepts ExxonMobil's logic that Baykeeper could reasonably expect to end up in a Texas court for an internet posting in California, then every person in the United States, regardless of where they live, is subject to being haled into a Texas court if they make a public comment about the harmful effects of single-use plastics made from ExxonMobil resins. Accepting ExxonMobil's position, no limit to a court's jurisdiction would exist, and plaintiffs could sue anyone everywhere. And as the Fifth Circuit has held, "Grannies with cooking blogs do not, and should not, expect lawsuits from Maui to Maine." *Johnson*, 21 F.4th at 320. Factors four and five support a lack of fairness and reasonableness in Baykeeper being haled into a Texas court. A weighing of these five factors demonstrates that Texas does not represent a fair or reasonable forum for this action.

ExxonMobil has failed to show that Baykeeper had sufficient minimum contacts with Texas to be subject to personal jurisdiction in this forum. ExxonMobil has also not shown that Baykeeper had a reasonable expectation of being haled into a Texas court for making a passive press statement in California about plastic debris in San Francisco Bay. ExxonMobil posits that any statement that makes its way onto the internet – whether purposeful or not – satisfies due process and that a defendant should expect to be haled into any forum where the press release posting could be read. Baykeeper not only has the right to purposefully avail, but also to purposefully avoid, a forum, and nationwide access to the internet cannot deny either right. The Court should dismiss the claims against Baykeeper for lack of personal jurisdiction.

## B.  The Complaint Should Be Dismissed Under the First-to-File Rule.

Although this Court should dismiss or transfer the claims for the reasons in the joint motion, the first-to-file rule also requires this result.

"[F]ederal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with

11

each other's affairs."[19] Accordingly, where parallel cases have a likelihood of "substantial overlap," the second-filed court should dismiss or transfer its case to the first-filed court.[20] The "ultimate determination of whether there *actually* [is] a substantial overlap" is not for the second-filed court to decide.[21] Rather, that court need only find a "likelihood" of such overlap.[22] Thus, this Court should dismiss or transfer this case if it decides that Baykeeper has demonstrated a "likelihood of substantial overlap" with the California litigation.[23]

Substantial overlap does not require that the cases or parties be "identical."[24] Rather, courts "examine factors such as whether the core issue is the same and whether much of the proof adduced would be identical."[25] This serves the purpose of the rule "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[26]

Although this case and the California litigation are different in many ways, there can be no serious dispute that they substantially overlap. ExxonMobil filed its case as a reaction to the California case. Both concern ExxonMobil's campaign to mislead the public about the recycling or disposing of plastics.[27] (Dkt. 1; Ex. 3, Pgs. 63). Both lawsuits seek similar relief—one abatement and an injunction of misrepresentations about recycling of single-use plastics, CA Complaint ¶¶

---

[19] *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985).

[20] *Id.* at 729; *see also McLoba, Inc. v. Peregoy,* 2020 WL 10456914 (E.D. Tex. 2020) (describing first-to-file rule).

[21] *Id.* at 730 (emphasis in original).

[22] *Id.*; *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999).

[23] *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997).

[24] *See also In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015), *as revised* (May 15, 2015) (applying rule despite objection that "neither the issues nor the parties are identical").

[25] *My Clear View Windshield Repair, Inc.* v. *GEICO Advantage Ins. Co.*, 2017 WL 2591339, at *6 (S.D. Tex. 2017) (applying first-to-file rule where "core issue in both suits is the same," making claims in second-filed suit "more appropriately counterclaims or affirmative defenses to" the first); *see also, e.g., Dxp Enters., Inc. v. Hill*, 2016 WL 4159756, at *3 (S.D. Tex. 2016) (applying rule where "core issues" overlapped).

[26] *Cadle Co.*, 174 F.3d at 603 (quotation marks, citation omitted).

[27] *Compare* CA Complaint ¶¶ 117-45 (alleging ExxonMobil violated California law through misrepresentations about recycling) *with* Complaint ¶ 99 (challenging "false statements that advanced recycling does not work, and that ExxonMobil has lied to consumers of the efficacy of its recycling practices").

240-1, the other a declaration that "advanced recycling is recognized and permitted by law," Complaint § VI ¶ 6. (Ex. 3, Pgs. 60-1; Dkt. 1).

Many legal issues, too, will overlap. To prove its defamation claim, ExxonMobil must show the statements are false, unprivileged, were made with actual malice, and caused it damages.[28] As to falsity, ExxonMobil will have to show that Baykeeper's statements, including that "ExxonMobil brainwashed everyone into thinking that plastic recycling works," Complaint ¶ 92, are false, while the U.S. Nonprofits in the California litigation must show that ExxonMobil has misrepresented the "recyclability and harmlessness of single-use plastics," CA Complaint ¶ 236. (Dkt. 1 ; Ex.3, Pg.63). This overlap risks conflicting decisions on the veracity of at least portions of the parties' statements. The element of privilege, too, will involve overlap. Because the statements ExxonMobil challenges were made in a press conference about the California litigation, they should be privileged, a defense that will require comparing them to statements in the CA Complaint.[29] Finally, the actual malice inquiry—which assesses whether Baykeeper knowingly made false statements or acted with reckless disregard as to their falsity— will require examining the evidence supporting Baykeeper's statements, much of which is directly relevant to whether ExxonMobil's statements were misrepresentations.[30]

---

[28] *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007) (elements).

[29] *McClatchy v. Superior Court*, 189 Cal.App.3d 961, 972-74 (1987) (fair report privilege applies where there is "some connection or logical relation to the proceedings"); *see also, e.g., Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796 (1990) (applying privilege to defamation claims based on hospital's communications to local newspaper about its antitrust litigation).

[30] *Bose v. Consumers Union*, 66 U.S. 485, 511 n.30 (1984) (actual malice requires "with clear and convincing evidence" that the defendant "realized that his statement was false or … subjectively entertained serious doubt as to the truth of his statement").

That ExxonMobil is the plaintiff in this case but the defendant in the California litigation is irrelevant. Courts routinely apply the first-to-file rule to lawsuits filed by the defendant in the first-filed suit.[31]

The Court should dismiss or transfer this case under the first-to-file rule. This result is not only dictated by the law of this Circuit, but it is consistent with principles of comity and sound judicial administration upon which the rule is based.

## C.  The Complaint Fails to State a Claim Upon Which Relief Can be Granted

Even if this Court does not dismiss this case on jurisdictional or procedural grounds, it should do so on the merits. All of ExxonMobil's claims hinge upon alleged defamation as the actionable tort. Defamatory statements reflect an element of the defamation[32] and business disparagement[33] claims and serve as the underlying tortious interference element for both interference with existing contract[34] and prospective contract claims.[35]  Yet ExxonMobil has failed to adequately allege Baykeeper made defamatory statements: Baykeeper's statements were not objectively verifiable as fact; were exempt from liability by the fair report privilege; and were non-actionable for being substantially true. And, because a civil conspiracy claim is derivative of an underlying tort, dismissal of the underlying defamatory statement predicate claims warrants dismissal of the civil conspiracy claim.[36]

---

[31] *E.g., Brocq v. Lane*, 2017 WL 1281129, at *2 (N.D. Tex. 2017) (first-to-file rule applies where "much of the proof adduced would likely be identical); *BridgeLux, Inc. v. Cree, Inc.*, 2007 WL 9724143, (E.D. Tex. 2007) (dismissing patent infringement counterclaims without prejudice). Here, too, the Court should apply the first-to-file rule. *See Hearn v. Bd. of Supervisors of Hinds Cnty., Miss.*, 2013 WL 1305586, at *1 (S.D. Miss. 2013), *aff'd* (July 8, 2014) (applying rule to claims based on allegations that defendants in first suit "had committed various torts against [plaintiff] during their defense of the first suit").

[32] *Taus v. Loftus*, 40 Cal. 4th 683, 720, 151 P.3d 1185 (Cal.2007); *Lillith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex.2023); see Tex. Civ. Prac. & Rem. Code § 73.001.

[33] *Memorial Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex.2022); *PC Drivers Headquarters, LP v. Malwarebytes, Inc.*, 371 F.Supp.3d 652, 664 (N.D.Cal. 2019).

[34] *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex.2019); *name,space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015).

[35] *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex.2013); *Kor Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.3d 937, 950 (Cal.2003).

[36] *See Tifford v. Tandem Energy Corp.*, 562 F.3d 699 (5th Cir. 2009).

To maintain a claim, a plaintiff must allege enough facts to support wrongful conduct.[37]  If a complaint lacks plausible factual allegations on any claim element the plaintiff must prove at trial, then a Rule 12(b)(6) dismissal becomes justified for that claim.[38]  Whether under Texas or California law, every ExxonMobil claim requires a false statement finding.

- To prevail on a business disparagement claim, ExxonMobil must establish that Baykeeper maliciously published **false disparaging words** about ExxonMobil's economic interests, which were not privileged and caused special damage.[39]

- For a defamation claim, Baykeeper must publish a **false factual statement** about ExxonMobil that proximately caused ExxonMobil financial injury.[40]

- On a tortious interference with existing contract claim, ExxonMobil must establish it had: (1) a valid contract that (2) Baykeeper willfully and **intentionally interfered with**, and which (3) proximately caused injury to ExxonMobil.[41]

- On a tortious interference with prospective relations claim, ExxonMobil must show (1) a reasonable probability it would have entered into a business relationship, which (2) Baykeeper **intentionally interfered with** by (3) **independent tortious conduct** that (4) proximately caused actual damage to ExxonMobil.[42]

In this action, the tortious interference claims were triggered by alleged statements that defamed ExxonMobil. The pleadings standards for ExxonMobil varies by claim. For its tortious interference with prospective contracts, ExxonMobil must meet the higher pleading standard of

---

[37] *See Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 631 (5th Cir.2002).

[38] *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3rd Cir.2011).

[39] *Memorial Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex.2022); *PC Drivers Headquarters, LP v. Malwarebytes, Inc.*, 371 F.Supp.3d 652, 664 (N.D.Cal. 2019).

[40] *Taus v. Loftus*, 40 Cal. 4th 683, 720, 151 P.3d 1185 (Cal.2007); *Lillith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex.2023); see Tex. Civ. Prac. & Rem. Code § 73.001.

[41] *Community Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex.2019); *name,space, Inc. v. Internet Corp. for Assigned Names & Numbers*,795 F.3d 1124, 1133 (9th Cir. 2015).

[42] *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex.2013); *Kor Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.3d 937, 950 (Cal.2003).

Rule 9(b), as **fraudulent** misrepresentations underly this claim (Dkt. 1, ¶¶ 125-26).[43]  Under Rule 9(b), ExxonMobil must allege with particularity the who, what, when, where, and how of the alleged misconduct, including how and why the representations were false.[44]  Simple allegations that a defendant had fraudulent intent will not suffice.[45]  ExxonMobil must plead enough specific facts for an inference of fraud.[46]  The remaining non-derivative claims require ExxonMobil to specify the statement, the speaker, and when and where the false statement occurred to avoid dismissal.[47]

Because a defamatory statement by Baykeeper denotes an element of each ExxonMobil claim, ExxonMobil must plausibly allege the defamatory statements with some particularity. Baykeeper's complained of statements are limited to the California videotelephony press conference statements cited in Exhibit 9 to the Complaint:

> The complaint alleges that Exxon has brainwashed everyone into thinking that plastic recycling works and that it's good for the planet. But when we pulled back the curtain, we found that Exxon's plastic polymers are poisoning waterways, wildlife, and people, San Francisco Bay has some of the highest levels of microplastics in the world. That's why we're going after Exxon: to stop plastic pollution at the source. This stuff is killing us a little bit more every day, and we won't let Exxon gaslight us into believing this is normal. People and wildlife around the Bay deserve to live free from exposure to toxic petrochemicals and microplastics.

Baykeeper made its statements in the context of a social debate over pollution in California waterways to a California audience daily encountering waterways impacted by single-use plastic waste.[48]  One would expect embellished rhetoric in such a heated debate.[49]  But epithets and rhetorical hyperbole are not actionable because they lack objective verifiability.[50]  Similarly,

---

[43] *Basit Mian v. Progressive County Mut. Ins. Co.*, 2020 U.S.Dist. LEXIS 255774 at *24(S.D.Tex June 11, 2020).
[44] *U.S. v. United Healthcare Inc.*, 848 F.3d 1161, 1180 (9th Cir.2016).
[45] *Burback v. Brock*, 2023 U.S.App. LEXIS 17845, at *10 (5th Cir. July 13, 2023)
[46] *Id.*
[47] *7X Cattle Co., LLC v. Brandstadt,* 2024 U.S.Dist. LEXIS 154651 (E.D.Tex July 22, 2014) (citing *Mandawala v. Ne. Baptist Hosp.,* 16 F.4th 1144, 1153 (5th Cir.2021).
[48] *Milkovich*, 497 U.S. at 24 (dissent).
[49] *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6,13 (1970). .
[50] *American Broad Cos. v. Gill*, 6 S.W.3d 29-30 (Tex.App.-San Antonio 1999, pet. denied).

16

statements about brainwashing and gaslighting people as well as wanting people and animals to live free from toxins are not objectively verifiable, and thus, not actionable. Because all of ExxonMobil's claims hinge upon a defamatory statement being made, to the extent Baykeeper's statements lack objective verifiability, they cannot support any of ExxonMobil's claims. ExxonMobil's claims should be dismissed for lack of plausible allegations.

Baykeeper published the complained of statements in a public media outlet in California. Under Cal. Civ. Code § 47, a publication or broadcast by a fair and true report of a judicial proceeding or anything said in a complaint is privileged. In the overarching desire to protect free speech, a fair and true report must simply capture the substance of the reported judicial proceedings to trigger the absolute privilege. More importantly, this absolute privilege extends to statements by a party to the action made outside the proceedings.[51]

In this case, Baykeeper's statements in the one online press conference do capture the judicial proceedings' substance. Namely, waste generated from ExxonMobil resin-based single-use plastics is harmful to California waterways and ExxonMobil's advanced recycling cannot adequately address the harm – the harm must be addressed at its origin: the resin stage. Accordingly, Baykeeper's statements in the press conference will receive the absolute privilege of fair and true reporting afforded statements made in California concerning judicial proceedings. This privilege also independently forecloses ExxonMobil's claims against Baykeeper.

The doctrine of substantial truth provides further grounds for dismissing ExxonMobil's claims against Baykeeper. To plausibly allege a defamatory statement – the lynchpin of all of ExxonMobil's claims - the claimant must set forth sufficient facts to demonstrate the defendant made a false statement.[52]  Liability will generally not attach to a statement that is substantially

---

[51] *See Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431 (9th Cir.1992).
[52] *See Muser v. Smith Prot. Servs.*, 723 S.W.2d 653, 655 (Tex.1987).

true.[53]

Baykeeper's statements at the press conference begin by referencing the statements as those made in the California Complaint. From that introduction, the statements speak to the deleterious effects of single-use plastics made from ExxonMobil's plastic resins on California waterways and the inability of ExxonMobil's recycling processes to cure the problem, (Dkt. 1-9).

Turning to the first statement: ExxonMobil's plastic polymers are having deleterious effects on California waterways and wildlife and people that use and enjoy those waterways. The Complaint contains no factual allegations setting forth how this statement is false. ExxonMobil does not allege that the various polymers it refines are not toxic and cannot degrade into microplastics that accumulate in waterways. ExxonMobil also failed to allege that single-use plastics made from its polymers do not contain toxic stabilizers, plasticizers, coatings, catalysts, and flame retardants. Likewise, the Complaint is devoid of any allegations - factual or otherwise - that polymer microplastics cannot contaminate soil and water, enter the food chain, and harm organisms. Nowhere in the Complaint does ExxonMobil attempt to dispute the allegations in the CA Complaint regarding the harmful effects of microplastics, even though Baykeeper's statements in the California press conference began by saying "[T]he (CA) complaint alleges that Exxon." (Ex. 4, ¶¶ 1, 5, 50, 112, 233). But in its Complaint, ExxonMobil does refer to expended single-use plastics as waste. (Dkt. 1, ¶ 96.a).

The Complaint lacks plausible factual allegations to make Baykeeper's statement about the toxicity of single-use plastics made from ExxonMobil polymers either false or fraudulent. Under Rule 12(b)(6) ExxonMobil cannot maintain any of its claims predicated upon Baykeeper's first allegedly false/fraudulent statement.

---

[53] *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex.2019); *Summit Bank v. Rogers*, 206 Cal. App.4th 669, 689 (Ct. App.2012).

ExxonMobil fares no better with the second statement: ExxonMobil's recycling efforts cannot effectively cure the plastic waste problem. Once again, the Complaint lacks plausible factual allegations to make this statement false or fraudulent. For example, the CA Complaint details six plastic resin polymers – five of which ExxonMobil refines. (Ex. 3, ¶¶ 41-42). And of the five resins, ExxonMobil alleges that only one resin, polyethylene terephthalate (PET), is being recycled on a commercial scale, which means the other four ExxonMobil resins are not being recycled on a commercial scale. (Dkt. 1, ¶ 96.e). This translates to every plastic product other than water and soda bottles are not being recycled on a commercial scale. (Ex. 3, ¶¶ 41-42). Furthermore, ExxonMobil makes no factual allegation as to what constitutes "on a commercial scale" - 25%, 50%, 75%. But what we do know is that four out of the five polymer plastic resins refined by ExxonMobil are not being recycled at a commercially reasonable level.

ExxonMobil's advanced recycling efforts are not sustainable. Unlike the recycling of aluminum and glass packaging/products, recycling of the packaging/products made from the various ExxonMobil plastic resins does not even come close to keeping up with the amount of single-use plastic waste generated. Single-use plastics are neither biodegradable like paper nor readily recyclable like glass[54] and aluminum. Even ExxonMobil stated in its Complaint that in 2023 glass bottles and aluminum cans were recycled at the rate of 71% in California. (Dkt.1, ¶ 52). No recycling rate figures were cited for any ExxonMobil plastic resin.

ExxonMobil does provide further insight into the difficulties of recycling plastics in its Complaint. At paragraph 96 of the Complaint, ExxonMobil cites a series of published studies regarding recycling of plastics. (Dkt. 1, ¶ 96). The publications – from the 1990's and early 2000's - describe forms of plastic recycling as having significant "potential," but nowhere uses terms like

---

[54] Biodegradable glass from wood fibers and sugars have been developed.

19

"actuality" or "sustainability."   Those potential forms of recycling include chemical, thermal, and biological processes (Dkt. 1, ¶ 96.a). ExxonMobil has not alleged that any of these processes, including ExxonMobil's advanced recycling through pyrolysis (thermochemical) process, has made single-use plastic anywhere near sustainable/efficient. (Dkt. 1, ¶ 57).

As ExxonMobil noted in its Complaint, each plastic recycling process presents numerous obstacles that prevent sustainability. (Dkt. 1, ¶ 96.f.). Those obstacles include the variety of plastics to be recycled, waste separation costs; the volume of waste; specialized machinery costs; undeveloped markets; supply chains; and zoning laws. (Dkt. 1, ¶ 96.f.). None of the exhibits attached to ExxonMobil's complaint advances a viable process for making single-use plastics sustainable either.[55]

What is more, ExxonMobil, in its motion to dismiss the CA Complaint, acknowledged the inability of its recycling processes to provide a competent means for recycling plastics derived from its polymer resins. (Ex.4). Like the U.S. Nonprofit Defendants, ExxonMobil views its advanced recycling assertions as falling far short of a panacea. ExxonMobil even told the California federal court that statements about the efficacy of advanced recycling were nothing more than subjective representations lacking objective factual verifiability:

> The Complaint introduces this section by stating that "ExxonMobil promotes advanced recycling as the panacea for the obvious inadequacy of mechanical recycling." Compl. ¶ 140. But the statements cited in support say nothing like that. Instead, they say that advanced recycling, in combination with traditional recycling, "offers a 'huge opportunity' to 'strengthen circularity' and 'help … address the plastic waste challenge.'" *Id*. **Describing a technology as offering an opportunity to help with a problem is not a representation that it is "the panacea" to the problem.** Nor would any of the quoted statements be actionable, even if the Complaint had not mischaracterized them. **Whether advanced recycling presents a "huge opportunity" to "strengthen circularity" that could "help" address plastic waste is not an "objectively verifiable fact"; instead, these are nonactionable vague, aspirational, and "subjective representations" about advanced recycling's potential**

---

[55] *Nishimatsu Const. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) (a court may disregard a complaint's allegations if contradicted by facts in the complaint's exhibits).

20

**environmental impact.** (citations omitted) (emphasis added). (Ex. 4, Pgs. 27-28).

ExxonMobil viewed its own statements about the sustainability of its advanced circular recycling as aspirational– translation: "advanced recycling isn't working." ExxonMobil knew that the U.S. Nonprofit Defendants' press conference statements were not just substantially true, but entirely true: advance recycling will not succeed in solving the plastic waste problem.

ExxonMobil went even further in its motion to dismiss to explain how its statements regarding the calculation for a certified-circular plastic could mislead the plastic end user about the efficacy of the circular recycling process but not the business savvy customer purchasing the polymer resin:

> It is not clear from the Complaint what Plaintiffs think is misleading about this statement. Indeed, the Complaint itself quotes all the "disclaimer[s]," Compl. ¶ 142—which are actually just body text—explaining how mass-balance attribution works and what the third-party certificates mean. To the extent Plaintiffs mean to challenge not the sustainability report, but rather ExxonMobil's communications about advanced recycling with its customers, Plaintiffs' claims would fail for an additional reason. **The "target audience" for ExxonMobil's statements about certified circular polymers are not end consumers, but businesses that purchase virgin polymers and convert them into plastic products for *their* customers, "like Taco Bell." *Id.* ¶ 107. These are highly sophisticated businesses who are not likely to be misled by ExxonMobil's full disclosures.** (citations omitted) (emphasis added) (Ex. 4, Pgs. 28-29).

The highlighted text confirms the accuracy of the "gaslighting/greenwashing/brainwashing" references made in the California press conference. ExxonMobil concedes that its sustainability report on advanced recycling would likely mislead end users on the environmental impact of single-use plastics because most end users lack the sophistication of businesses purchasing the ExxonMobil polymers – ExxonMobil's purported "target audience" for the potentially misleading disclaimers. The sustainability report meets the paradigm for greenwashing, namely, making claims about a product that could mislead end users regarding a product's environmental impact, which is

21

what ExxonMobil contends happened here.[56]

Assuming arguendo ExxonMobil had made a colorable allegation of a false statement of fact about the efficacy of advanced recycling, the substantial truth doctrine would still reject any showing of a plausible allegation of a false factual statement. Under the substantial truth doctrine, a statement that correctly conveys a story's gist is not factually false.[57] Even a statement that errs in some details will not constitute a plausible false factual statement allegation under Rule 12(b)(6).[58] In its motion to dismiss, ExxonMobil conceded that no recycling process, including its advanced recycling, can sustain the onslaught of single-use plastic waste. (Ex. 4, Pg. 28). Advanced recycling is a hope, an aspiration, not a panacea or a cure all. (Ex. 4, Pg. 28). Factually and empirically, there is no workable process for dealing with single-use plastic waste, this leaves addressing plastic waste at its origin – the polymer resin – as the U.S. Nonprofit Defendants posited in their press conference statements and their first-filed lawsuit.

Baykeeper and the other U.S. Nonprofit Defendants spoke the truth, or at least a substantial truth, at the press conference, when they said catalytic recycling is not the answer to single-use plastic waste because it won't work and ExxonMobil misled members of the public by suggesting it objectively did work. Accordingly, the Complaint lacks plausible factual allegations for an element of all of ExxonMobil's claims: a false defamatory statement. ExxonMobil has not plausibly alleged that Baykeeper knew its statements were false, had serious doubts about the statements being false, or had an awareness that the statements were probably false. The absence of plausible allegations on false defamatory statements merits dismissal under Rule 12(b)(6) of all of ExxonMobil's claims.

Also, ExxonMobil, as an active participant in the California waterways single-use plastic

---

[56] *See Bush v. Rust-Oleum Corp.*, 2021 U.S. Dist. LEXIS 507 **3-4 (N.D.Cal. Jan 4, 2021).
[57] *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 115 (Tex.2000); *see also Church of Scientology v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984); KEETON ET AL., PROSSER & KEETON ON TORTS § 116, at 117 (Supp. 1988).
[58] *Parker v. Spotify USA, Inc.*, 569 F.Supp.3d 519, 529 (W.D.Tex.2021)(citing *Turner*, 38 S.W.3d at 115).

waste controversy, has taken on the status of a limited-purpose public figure.[59]  As a limited-purpose public figure suing a nonmedia defendant over statements that involve matters of public concern, ExxonMobil must prove Baykeeper made its statements with actual malice.[60]  The kinds of factual allegations that tend to show actual malice include facts demonstrating that Baykeeper entertained serious doubts about the truth of its statements,[61]  that Baykeeper purposefully avoided the truth,[62]  or that Baykeeper omitted certain facts from its statements in order to cause a false impression.[63]  Once again, ExxonMobil has failed to make required plausible factual allegations that would support its claims - claims predicated upon a showing of actual malice regarding the making of allegedly false defamatory statements. The lack of plausible actual malice allegations further warrants dismissal under Rule 12(b)(6).

One additional point, the tortious interference with prospective contracts contains a fraud element. Claims with fraud elements must not only present a plausible basis for relief but also present that basis with particularity. Particularity requires a claimant to state how the alleged misstatements were false and misleading[64] and to state what was given up or obtained by the alleged fraudulent statements.[65]  A claimant also cannot simply plead a defendant acted with fraudulent intent the claimant must plead enough contextual facts for a plausible scienter finding.[66]  Further, allegations of fraud emanating from "information and belief" require the claimant to set forth the source for the information and the reasons for the belief.[67]

If the fraud averments fail to comply with Rule 9(b), the Court should disregard such

[59]  *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 574 (Tex.App.-Austin 2007, pet. denied)
[60]  *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 573 (Tex.1998).
[61]  *Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657, 688 (1989).
[62]  *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 638 (Tex.2005).
[63]  *Turner*, 38 S.W.2d at 121.
[64]  *See In re GlenFed, Inc. Secur. Litg.*, 42 F.3d  1541, 1547 fn. 7 (9th Cir.1994)(*en banc*).
[65]  *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.1997).
[66]  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir.2008).
[67]  *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir.1987).

averments when determining whether ExxonMobil has plausibly alleged those three claims.[68] Here, ExxonMobil has failed to allege with specificity (1) how the alleged misstatements were false and misleading; (2) what was given up or obtained by the alleged fraudulent statements; and (3) enough contextual facts for a plausible scienter finding. ExxonMobil also made allegations based upon information and belief without setting forth the source of the information and the reasons for the belief. (Dkt. 1, ¶¶ 30, 32, 45, 93).

The Complaint lacks any allegations of what Baykeeper gave up or obtained from the asserted fraudulent press conference statements. Instead, ExxonMobil makes generic conclusory allegations that the U.S. Nonprofit Defendants (including Baykeeper) acted for politics, publicity, and private gain. (Dkt. 1, ¶ 1).

Regarding politics, as a 501(c)(3) nonprofit corporation, Baykeeper cannot directly or indirectly participate in any political campaign. Baykeeper would not - and did not - jeopardize its 501(c)(3) status, as recognized by ExxonMobil, who chose not to allege such a violation with any specificity. Publicity allegations just involve the single press conference regarding the lawsuit against ExxonMobil in California. Couple a free press with a transparent court system, and press coverage on the filing of a public nuisance lawsuit that affects the entire California community becomes common. ExxonMobil has not alleged any other "publicity" seeking conduct by Baykeeper. Finally, the complaint provides no particular facts alleging private gain by Baykeeper. Baykeeper is a charitable organization that has maintained its tax-exempt status for decades, and as such, none of its earnings inure to the benefit of any private individual or entity. Similarly, Baykeeper is neither organized nor operated for the benefit of any private interests; nor has any excise tax ever been imposed upon any person or Baykeeper organizational manager for engaging

---

[68] *Vess v. Ciba-Geigy Corp., U.S.A.* (9th Cir.2003); *Lone Star Invest. Club v. Schlotzky's, Inc.,* 238 F.3d 363, 368 (5th Cir.2001).

in an excess benefit transaction. (Ex. 1, ¶ 43). ExxonMobil's Complaint also lacks any specific fact allegations of private gain - because none exist. California has three forms of nonprofit corporations. Baykeeper is a nonprofit public benefit corporation as opposed to a mutual benefit corporation or a religious corporation. Only the latter two corporate types allow benefits to flow to the members.

Specific facts demonstrating scienter fall into two categories: (1) facts showing the defendant's intent to commit fraud or (2) circumstances that indicate conscious behavior by the defendant.[69]  ExxonMobil generally avers that Baykeeper acted as a proxy, made statements at a press conference, and tortiously interfered with ExxonMobil's existing and future contracts. There are no factual allegations of Baykeeper contacting any person that entered, or may enter, a contract with ExxonMobil regarding recycling. Similarly, the Complaint is devoid of any specific facts indicating that Baykeeper's motive in participating in the press conference was to tortiously interfere with ExxonMobil contracts; to the contrary, Baykeeper just wants to clean-up pollution in, and prevent further pollution of, San Francisco Bay. A generic allegation of intent - "Defendants intended" – only appears in paragraph 100 of the Complaint (Dkt. 1, ¶ 100). The term "motive" also appears just once - again generically - in paragraph 7, without any reference to specific conduct by Baykeeper in the remainder of paragraph 7 (Dkt. 1, ¶ 7). ExxonMobil fails to allege specific facts that indicate Baykeeper had an intent or motive to tortiously interfere with ExxonMobil contracts via fraudulent statements.[70]  The failure to allege the tortious interference with prospective contract claim with the specificity required under Rule 9(b) merits dismissal of these claims under Rule 12(b)(6).

## DECLARATORY RELIEF

---

[69] *See Hermann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 565 (5th Cir. 2002).
[70] *7-Eleven, Inc. v. Puerto Rico-7 Inc.*, 2008 U.S.Dist. LEXIS 94835 **6-7 (N.D.Tex. Nov. 19, 2008).

25

The requested declaratory relief fails for lack of a case or controversy. In paragraph 138 of the Complaint, ExxonMobil avers that it seeks declaratory relief because, upon information and belief, it is likely to become involved in additional legal matters bringing similar allegations, in the near future. Article III, Section 2. to the United States Constitution limits a federal court's judicial power to adjudicating live cases or controversies. There is no federal provision for advance advisory opinions under the Declaratory Judgment Act.[71]  The Court should dismiss the declaratory relief count as well.

**PRAYER**

Baykeeper asks the Court to (1) grant its motion to dismiss for lack of personal jurisdiction, (2) grant its motion to dismiss for improper venue, or alternatively, transfer venue for convenience to the Northern District of California, San Francisco Division; (3) grant its motion to dismiss for failure to state a claim, and (4) grant such further relief to which Baykeeper may show entitlement.

Respectfully submitted,

/s/ M. Forest Nelson
JOHN HOLMAN BARR
S.B.N. 01798700
M. FOREST NELSON
S.B.N. 14906425
Lead Counsel
BURT BARR & ASSOCIATES. L.L.P.
203 E. Colorado Blvd.
Dallas, Texas 75203
(T) 214-943-0012
(F) 214-943-0048
jbarr@bbarr.com

**ATTORNEYS FOR BAYKEEPER, INC.**

---

[71] *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1373-74 (Fed.Cir. 2011).

## CERTIFICATE OF SERVICE

On April 25, 2025, I electronically filed the foregoing document with the clerk for the Eastern District of Texas, using the court's electronic case filing system. I hereby certify that I have served all counsel and *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5.

___/s/ M. Forest Nelson___
M. Forest Nelson
