**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>                    *Plaintiff*,<br><br>        *v.*<br><br>ROBERT ANDRES BONTA A.K.A. ROB BONTA,<br>IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB,<br>INC.; SURFRIDER FOUNDATION, INC.; HEAL<br>THE BAY, INC.; BAYKEEPER, INC.; AND<br>INTERGENERATIONAL ENVIRONMENT<br>JUSTICE FUND LTD.,<br><br>                  *Defendants*. | No. 1:25 Civ. 00011 (MJT) |

**DEFENDANT INTERGENERATIONAL ENVIRONMENT**
**JUSTICE FUND LTD.'S MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICITON AND FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

ISSUES TO BE DECIDED ........................................................................................................ 1

PRELIMINARY STATEMENT ................................................................................................. 2

BACKGROUND ......................................................................................................................... 3

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT .............................................................................................................................. 6

    I.    The Court Lacks Personal Jurisdiction over the Justice Fund............................................ 6

    II.   In the Alternative, The Complaint Fails to State a Claim Against the Justice Fund ...... 11

        A.   Exxon Provides No Basis for Holding the Justice Fund Vicariously Liable for the U.S. Nonprofits' Alleged Torts ................................................................................ 11

        B.   Exxon Fails to State a Claim for Civil Conspiracy ................................................. 14

        C.   Exxon's Claim for Declaratory Judgment Fails ...................................................... 16

CONCLUSION.......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Alcolac, Inc.*,
    974 F.3d 540 (5th Cir. 2020) ........................................................................ 16

*Agar Corp. v. Electro Cirs. Int'l, LLC*,
    580 S.W.3d 136 (Tex. 2019) ......................................................................... 15

*Angel v. La Joya Indep. Sch. Dist.*,
    717 F. App'x 372 (5th Cir. 2017) ................................................................. 15

*Arvizu v. Estate of Puckett*,
    364 S.W.3d 273 (Tex. 2012) ..................................................................... 11, 12

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*,
    480 U.S. 102 (1987) ...................................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 6, 13

*Bailey v. Mansfield Indep. Sch. Dist.*,
    425 F. Supp. 3d 696 (N.D. Tex. 2019) ......................................................... 17

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785 (N.D. Tex. 2009) ......................................................... 15

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
    582 U.S. 255 (2017) ...................................................................................... 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ........................................................................................ 7

*Clemens v. McNamee*,
    615 F.3d 374 (5th Cir. 2010) ........................................................................ 7, 9

*Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
    915 F.2d 167 (5th Cir. 1990) ........................................................................ 17

*Comm'r v. Banks*,
    543 U.S. 426 (2005) ................................................................................... 12, 13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .................................................................................... 9, 10

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.,*
    24 F.4th 491 (5th Cir. 2022) ................................................................ 9

*Davidson v. AT&T Mobility, LLC,*
    No. 3:17 Civ. 0006, 2018 WL 4075722 (N.D. Tex. Aug. 27, 2018) ........................... 11, 13

*Delta Brands Inc. v. Danieli Corp.,*
    99 F. App'x 1 (5th Cir. 2004) .............................................................. 9

*Duff v. Spearman,*
    322 S.W.3d 869 (Tex. App.—Beaumont 2010, pet. denied) ................................. 12

*Fielding v. Hubert Burda Media, Inc.,*
    415 F.3d 419 (5th Cir. 2005) ............................................................. 9

*Frye v. Anadarko Petrol. Corp.,*
    953 F.3d 285 (5th Cir. 2019) ............................................................ 17

*Gentilello v. Rege,*
    627 F.3d 540 (5th Cir. 2010) ............................................................ 6

*Goldstein v. MCI WorldCom,*
    340 F.3d 238 (5th Cir. 2003) ........................................................... 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) .................................................................... 10

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,*
    313 F.3d 305 (5th Cir. 2002) ........................................................... 17

*Guidry v. U.S. Tobacco Co.,*
    188 F.3d 619 (5th Cir. 1999) ............................................................ 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ..................................................................... 7

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.,*
    753 F.3d 521 (5th Cir. 2014) ............................................................ 9

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) .................................................................. 6, 7

*Johnston v. Multidata Sys. Int'l Corp.,*
    523 F.3d 602 (5th Cir. 2008) ......................................................... 10, 11

*Juhl v. Airington*,
    936 S.W.2d 640 (Tex. 1996)..................................................................... 14, 16

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 795 (E.D. Tex. 2014).............................................................. 7

*Luangphor Viriyang Sirintharo Found. v. Willpower Inst. U.S.A., Inc.*,
    No. 23 Civ. 2812, 2024 WL 382450 (S.D. Tex. Jan. 31, 2024) ......................... 10

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*,
    241 F. Supp. 3d 737 (N.D. Tex. 2017) .......................................................... 14

*Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*,
    No. 09 Civ. 3828, 2010 WL 1996596 (S.D. Tex. May 17, 2010) ...................... 15

*Mid-Am. Supply Corp. v. Truist Bank*,
    660 F. Supp. 3d 594 (E.D. Tex. 2023).......................................................... 16, 17

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ...................................................................... 8

*N. Collin Special Util. Dist. v. City of Princeton*,
    696 F. Supp. 3d 254 (E.D. Tex. 2023).......................................................... 15

*NavSav Holdings, LLC v. Beber*,
    724 F. Supp. 3d 615 (E.D. Tex. 2024).......................................................... 7, 9

*Nunes v. NBCUniversal Media, LLC*,
    582 F. Supp. 3d 387 (E.D. Tex. 2022).......................................................... 6, 7

*Omega Contracting, Inc. v. Torres*,
    191 S.W.3d 828 (Tex. App.—Fort Worth 2006, no pet.).................................... 12

*Peavy v. WFAA-TV, Inc.*,
    221 F.3d 158 (5th Cir. 2000) ...................................................................... 14, 16

*Rosales v. Uber Techs., Inc.*,
    No. 6:21 Civ. 58, 2024 WL 4340042 (S.D. Tex. Sept. 26, 2024) ...................... 13

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
    882 F.3d 96 (5th Cir. 2018) ........................................................................ 6

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,
    112 F.4th 284 (5th Cir. 2024) .................................................................. 8, 9, 10

*Seiferth v. Helicopteros Atuneros, Inc.*,
  472 F.3d 266 (5th Cir. 2006) ................................................................. 9

*St. Joseph Hosp. v. Wolff*,
  94 S.W.3d 513 (Tex. 2002) .................................................................. 11

*Stallings v. CitiMortgage, Inc.*,
  611 F. App'x 215 (5th Cir. 2015) ........................................................ 17

*Tompkins v. Cyr*,
  995 F. Supp. 664 (N.D. Tex. 1998) ..................................................... 16

*Triplex Commc'ns., Inc. v. Riley*,
  900 S.W.2d 716 (Tex. 1995) ............................................................... 14

*United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*,
  744 F. Supp. 3d 676 (E.D. Tex. 2024) ................................................. 6

*Vertex Servs., LLC v. Oceanwide Hous., Inc.*,
  583 S.W.3d 841 (Tex. App.—Houston [1st dist.] 2019, no pet.) ................ 14, 15

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................ 8, 9

## FEDERAL RULES

Fed. R. Civ. P. 12 ............................................................................ 1, 6, 15

## TREATISES

2A C.J.S. Agency § 47 (2024) ............................................................. 12

## ISSUES TO BE DECIDED

1.      Whether this Court should dismiss the claims against Defendant Intergenerational Environment Justice Fund Ltd. (the "Justice Fund") under Federal Rule of Civil Procedure 12(b)(2) because the Justice Fund lacks any contacts with Texas as is required by due process and the Texas long-arm statute.

2.      Whether this Court should dismiss the claims against the Justice Fund under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff Exxon Mobil Corporation ("Exxon") has not alleged that the Justice Fund has taken any tortious action against Exxon, has not alleged any basis for holding the Justice Fund vicariously liable for the other Defendants' conduct, and has not alleged the necessary elements to state a claim for civil conspiracy.

## PRELIMINARY STATEMENT

Last year, Defendants Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., Baykeeper, Inc., and California Attorney General Robert Bonta—*i.e.*, Defendants other than the Justice Fund—sued Exxon in California state court. They alleged that Exxon, the world's largest supplier of polymers used to make single-use plastics, had created a public nuisance in California. By misleading the public into the false belief that single-use plastics can be recycled easily, Exxon allegedly caused consumers to continue purchasing single-use plastic products, damaging California's environment and harming its residents. Exxon, of course, will have a full opportunity to defend itself in that litigation. But Exxon has nevertheless come to this Court and started a new lawsuit in parallel, asserting various causes of action based on public statements that the California plaintiffs made about the California litigation.

The purpose of a retaliatory lawsuit is often simply to drag an adversary into a costly court proceeding, whatever the viability or even plausibility of any claim. This action is no exception, especially when it comes to the Justice Fund. The Justice Fund is a nonprofit based in Australia, with no presence in or connection to Texas. And the Justice Fund did not make any of the statements that Exxon complains about in this case. The only thing that the Justice Fund allegedly did was provide funding to the law firm that represents the nonprofits in their litigation in California court—and Exxon disclaims that its injuries arise from that litigation. That is not nearly enough to assert jurisdiction over a foreign charity. Nor is it enough to plead the sort of control and direction that might make the Justice Fund vicariously liable for the speech of the other nonprofits. For these and many other reasons set forth below, the claims against the Justice Fund should be dismissed for lack of personal jurisdiction and for failure to state a claim.

## BACKGROUND

Plaintiff Exxon is a major producer of oil, gas, and plastic resin, which can be used to make single-use plastics. ¶¶ 16, 38.[1] Since 2021, Exxon has operated an "advanced recycling" program, which it claims "gives new life and value to plastic waste" by enabling "difficult-to-recycle plastics to be aggregated and converted into raw materials for making valuable new products, such as fuel, lubricants, chemicals, and plastic." ¶¶ 10, 16.

In September 2024, Defendants Sierra Club, Surfrider, Heal the Bay, and Baykeeper (collectively, "the U.S. nonprofits"), as well as Attorney General Bonta, in his official capacity, brought separate lawsuits against Exxon in California state court relating to Exxon's plastics production and recycling. *See* Compl., *Sierra Club, Inc., et al. v. ExxonMobil Corp., et al.*, No. CGC-24-618321 (Cal. Super. Ct. Sept. 23, 2024); Compl., *People ex rel. Bonta v. Exxon Mobil Corp., et al.*, No. CGC-24-618232 (Cal. Super. Ct. Sept. 23, 2024).[2] The California actions allege that Exxon's products have harmed California residents and the state's natural environment, and that Exxon has made misleading statements about its products and plastics recycling, including by overstating the efficacy of its "advanced recycling" program to Californians and California policymakers.

After filing the California actions, the U.S. nonprofits and Attorney General Bonta allegedly made public statements about Exxon:

- ***Sierra Club***: In a CBS Bay Area article discussing the California litigation, Sierra Club's San Francisco chair was quoted as stating, "Exxon perpetuated the myth of recyclability to keep consumers buying more and more." ECF 1-8 at 4; *see* ¶ 91. In a press release issued by the Surfrider Foundation in San Francisco, the president of

---

[1] Citations to "¶" refer to paragraphs in the Complaint. Citations to "Ex." refer to exhibits to the Complaint.

[2] Exxon removed both lawsuits to the District Court for the Northern District of California, which subsequently remanded California's action to state court. *See California ex rel. Bonta v. Exxon Mobil Corp.*, No. 3:24 Civ. 7594, 2025 WL 595267, at *1 (N.D. Cal. Feb. 24, 2025). The U.S. nonprofits' action remains in federal court. *See Sierra Club, Inc., et al. v. Exxon Mobil Corp., et al.*, No. 3:24 Civ. 7288 (N.D. Cal.).

Sierra Club's Board of Directors was quoted as saying, "Plastic pollution has risen to be one of the defining environmental issues of our time. If we're going to clean up the mountains of plastic waste, Exxon needs to clean up its act. Big Oil, beware: Your days of polluting with impunity are over." ECF 1-9 at 2; *see* ¶ 91.

- *San Francisco Baykeeper*: In the same press release, the executive director of San Francisco Baykeeper was quoted as saying, "The complaint alleges that Exxon has brainwashed everyone into thinking that plastic recycling works and that it's good for the planet. But when we pulled back the curtain, we found that Exxon's plastic polymers are poisoning waterways, wildlife, and people. … San Francisco Bay has some of the highest levels of microplastics in the world. That's why we're going after Exxon: to stop plastic pollution at the source. This stuff is killing us a little bit more every day, and we won't let Exxon gaslight us into believing this is normal. People and wildlife around the Bay deserve to live free from exposure to toxic petrochemicals and microplastics." ECF 1-9 at 3; *see* ¶ 92.

- *Heal the Bay*: In a blog post describing the U.S. nonprofits' lawsuit against Exxon, Heal the Bay stated, "For the past 40 years, we've hosted tens of thousands of beach cleanups in L.A. County. Our volunteers have removed over 2 million pounds of plastic-strewn trash from our shorelines and inland waterways. Today, we say 'No more!' Instead of cleaning up the wreckage created by Big Plastic, we are moving aggressively to stop the harm at its source." Heal the Bay, Heal the Bay Sues Big Plastic (Sept. 23, 2024), https://healthebay.org/heal-the-bay-sues-big-plastic/; *see* ¶ 93 & n.57.

- *Attorney General Bonta*: Attorney General Bonta participated in various interviews after filing the California lawsuit against Exxon. During Reuters Climate Week in September 2024, Attorney General Bonta stated, "We are suing Exxon Mobil for a decades-long campaign of deception in which they perpetuated the lie, the myth that recycling of plastics, including single-use plastics, is sustainable, is good for the environment. … We don't believe our corporations should lie to us. They've done it for decades, knowingly perpetuated the myth of recycling, and they deserve and need a judgment day, and we are going to bring it to them with our lawsuit." Rob Bonta Announcement at Reuters Climate Week NYC (Sept. 23, 2024), https://www.youtube.com/watch?v=Nsy8exWEcxw; *see* ¶ 69 & n.34. At the same event, he stated, "Today we, the State of California, announced a first-of-its-kind, groundbreaking lawsuit against Exxon Mobil …. They have proposed sham solutions, and it's illegal, and so we're here to hold them accountable. The truth is about plastic recycling that only five percent of plastics in the United States are actually ever recycled. Ninety-five percent goes to the landfill or into the environment or the incinerator …." Rob Bonta Interview at Reuters Climate Week NYC (Sept. 23, 2024), https://www.youtube.com/watch?v=XOGn_nFZ3Q8; *see* ¶ 69 & n.35. In other interviews, Attorney General Bonta allegedly "proclaimed that advanced recycling is a

'false promise,' 'not based on truth,' and 'an over promise,'" and accused Exxon of being a "liar[]" and engaging in a "campaign of deception." ¶¶ 70, 72.[3]

The Justice Fund is an Australian charity founded in 2022 and based in Perth, Australia. ¶¶ 22, 42. It does not have offices or employees in Texas, or anywhere else in the United States, and Exxon does not allege otherwise. Exxon does not allege that the Justice Fund made any statements about Exxon either. In fact, the only connection alleged between the Justice Fund and any other Defendant is that the Justice Fund has provided funding to a law firm that supports the U.S. nonprofits' California litigation against Exxon. ¶¶ 6, 45–46. On that basis alone, the Complaint deems the U.S. nonprofits "proxies" for the Justice Fund. ¶ 6. The Complaint also insists that the Justice Fund was motivated to support the U.S. nonprofits' litigation against Exxon because a founder of the Justice Fund allegedly advanced ideas to address plastic waste that were rejected by Exxon and heads a company that competes with Exxon in the low carbon energy market. *See* ¶¶ 35, 38, 42–46.

In January 2025, Exxon brought this action against the U.S. nonprofits, Attorney General Bonta, and the Justice Fund. The Complaint identifies the "conduct that is at issue in this lawsuit" as the specific statements allegedly made by the U.S. nonprofits and Attorney General Bonta about Exxon. ¶ 14; *see also* ¶¶ 68–74, 90–93. Based on those statements, Exxon asserts five tort causes of action against all Defendants: business disparagement, defamation, tortious interference with contract, tortious interference with prospective business, and civil conspiracy. ¶¶ 104–33. Exxon also asserts a sixth cause of action for declaratory judgment. ¶¶ 134–40.

---

[3] Exxon selectively quotes from a September 16, 2023 interview that Attorney General Bonta gave in connection with a separate lawsuit against multiple defendants, all while misdating it September 16, 2024. ¶ 69 & n.34. That interview did not discuss Exxon specifically and concerned fossil fuels' impact on the climate, not plastics or recycling. *See* Rob Bonta Interview with Ross Palombo, Reporter, CBS News (Sept. 16, 2023), https://www.cbsnews.com/losangeles/video/ca-attorney-general-rob-bonta-speaks-on-states-lawsuit-against-big-oil-companies.

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a plaintiff must establish a *prima facie* case of personal jurisdiction based on the complaint and other contents of the record at the time the motion is made. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Id.*

Dismissal under Rule 12(b)(6) is warranted unless a complaint alleges enough well-pleaded facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss for failure to state a claim, a court "will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 744 F. Supp. 3d 676, 692 (E.D. Tex. 2024) (Truncale, J.) (cleaned up) (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)).

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER THE JUSTICE FUND

Exxon asks this Court to exercise personal jurisdiction over the Justice Fund, an Australian charity that has never conducted any activities in Texas and has no employee, office, or presence in Texas. Because Exxon fails to show that the Justice Fund has even minimal contacts with this forum, the Justice Fund must be dismissed from this action.

"The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 395 (E.D. Tex. 2022) (quoting *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 801–02 (E.D. Tex. 2014) (Texas long-arm statute is coterminous with due process). The "minimum contacts" test can be satisfied in two ways: (1) establishing general personal jurisdiction, by showing that the defendant is effectively at home in a jurisdiction, or (2) establishing specific personal jurisdiction, by showing that the particular claims in the case arise from the defendant's contacts with the relevant forum. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

Exxon cannot establish general personal jurisdiction over the Justice Fund. "[G]eneral jurisdiction permits courts to exercise jurisdiction over corporations whose 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *NavSav Holdings, LLC v. Beber*, 724 F. Supp. 3d 615, 624 (E.D. Tex. 2024) (Truncale, J.) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Exxon does not (and could not) allege that the Justice Fund has "continuous and systematic" contacts with Texas, *id.*, and concedes that the Justice Fund "is an Australian charity," "headquartered in Perth, Australia," ¶¶ 6, 22.

Exxon also fails to establish specific personal jurisdiction. "Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Nunes*, 582 F. Supp. 3d at 397 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "Establishing a defendant's minimum contacts with the forum state requires contacts that are more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* at 398 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quotation marks omitted)). "To establish specific personal jurisdiction, three conditions must be met: (1) the defendant must have purposefully availed itself

of the privilege of conducting activities in the forum State, (2) the plaintiff's claim must arise out of or relate to those purposeful contacts, and (3) the exercise of personal jurisdiction must be fair and reasonable." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 294 (5th Cir. 2024). On a motion to dismiss, the plaintiff carries the burden on the first two prongs. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). All three require dismissal here.

*First*, Exxon does not allege that the Justice Fund "purposefully availed itself of the privilege of conducting activities" in Texas. *Stanford Int'l Bank, Ltd.*, 112 F.4th at 294. The only specific allegation that Exxon makes about the Justice Fund's *own* actions is its alleged financial support to the U.S. nonprofits' litigation *in California*. ¶ 46. This is insufficient as a matter of law to show that the Justice Fund had the requisite minimum contacts with Texas. *See, e.g.*, *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433 ("[A] defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state.").

To the extent Exxon seeks to justify the exercise of specific jurisdiction over the Justice Fund based on the alleged conduct of the U.S. nonprofits, that effort too fails as a matter of law. "The unilateral activity of another party or a third person" is insufficient to give rise to specific personal jurisdiction, because personal jurisdiction "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (cleaned up; emphasis in original). Although it may be possible in certain circumstances to impute the contacts of an agent to a principal for purposes of specific jurisdiction, Exxon has not plausibly alleged that the U.S. nonprofits were the Justice Fund's agents in connection with any of the alleged torts, *infra* at 11–14, nor has Exxon made the additional allegations that would be needed to establish that the

8

Justice Fund "purposefully avail[ed] itself of [the Texas] forum by directing [the U.S. nonprofits] to take action there," *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014); *see also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 531–32 (5th Cir. 2014) (recognizing that "an agency relationship alone may not be dispositive," but finding specific jurisdiction where principal's "control over its agents … pervaded [the agent's] dealings with the forum"). Exxon's conspiracy allegations, ¶¶ 129–33, provide no basis for imputation either, because the law requires the Justice Fund "individually, and not as part of [a] conspiracy, [to have] had minimum contacts with Texas." *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004); *see also Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).[4]

*Second*, and for similar reasons, Exxon fails to allege that its claims against the Justice Fund "arise out of or relate to [the Justice Fund's] purposeful contacts" with this forum. *Stanford Int'l Bank, Ltd.*, 112 F.4th at 294. Exxon's claims are, in essence, that statements by other Defendants harmed the company. *E.g.*, ¶ 14. But the only alleged action attributed to the Justice Fund is the provision of funding to the law firm that represents the U.S. nonprofits in the California litigation. That litigation did not give rise to the tort claims that Exxon asserts in this action—a

---

[4] Regardless, as the U.S. nonprofits explain in their briefs, ECF 50 ("Sierra Club Mot.") at 3–6; ECF 48 ("Surfrider Mot.") at 7–12; ECF 47 ("Heal the Bay Mot.") at 4–11; ECF 49 ("Baykeeper Mot.") at 6–11, those Defendants have no relevant Texas contacts either. Even if the U.S. nonprofits' "allegedly tortious conduct may have *affected* [Exxon] in Texas," the relevant conduct did not "*occur*[] in Texas." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 497 (5th Cir. 2022); *see also NavSav Holdings, LLC*, 724 F. Supp. 3d at 626. The alleged statements concerned lawsuits in California and the environmental harms that Exxon had caused in California, *see supra* at 3–5, and Exxon alleges no Texas sources that Defendants relied upon as the basis for any of the alleged statements. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005) (a defendant "aims" its out-of-state statements at the forum only when both "(1) the subject matter of and (2) the sources relied upon … were in the forum state"); *Clemens*, 615 F.3d at 378, 380 (affirming dismissal where plaintiff had "not made a prima facie showing that [defendant] made statements in which Texas was the focal point: the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state"). And while Exxon alleges that "[c]ertain of the Defendants have purposefully availed themselves of the privileges of the State of Texas by acting through their local Texas chapters for the purpose of promoting their campaign against ExxonMobil and its advanced recycling technology," ¶ 28, Exxon does not allege that any chapter engaged in activity having to do with any particular statement underlying Exxon's claims, *see Walden*, 571 U.S. at 284; *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

point that Exxon concedes, *id.*—and the Justice Fund is not a party to that litigation in any event. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 264 (2017) (activities "unconnected" to claim, even if occurring in forum state, do not give rise to specific jurisdiction); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Any assertion of personal jurisdiction in connection with Exxon's declaratory judgment cause of action fails for the same reason. *See, e.g.*, *Luangphor Viriyang Sirintharo Found. v. Willpower Inst. U.S.A., Inc.*, No. 23 Civ. 2812, 2024 WL 382450, at *5 (S.D. Tex. Jan. 31, 2024) (no personal jurisdiction where plaintiff "failed to show that its declaratory judgment cause of action arises out of or results from [defendant's] forum-related contacts").

*Third*, while the Court need not reach the issue, the exercise of personal jurisdiction over the Justice Fund in Texas would not "be fair and reasonable." *Stanford Int'l Bank, Ltd.*, 112 F.4th at 294. "To evaluate the reasonableness of exercising jurisdiction, [courts] normally consider: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008). The Justice Fund is an Australian charity with no offices or employees in the United States. The Supreme Court has held that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987), and principles of international comity caution against the same, *Daimler AG*, 571 U.S. at 141; *Johnston*, 523 F.3d at 615. By contrast, the interest

10

of Exxon, whose presence spans many states, in litigating this action in Texas is "comparatively slight." *Johnston*, 523 F.3d at 616. And, as discussed in the other Defendants' briefs, Sierra Club Mot. 3–6; Surfrider Mot. 7–12; Heal the Bay Mot. 7–11; Baykeeper Mot. 6–11; ECF 44 ("Bonta Mot.") at 7–8, the interest of Texas in adjudicating the dispute is likewise comparatively slight, as Exxon's claims are based on statements that were made outside Texas, by Defendants based in California, including by a California state official, surrounding the filing of litigation in California.

For all these reasons, the Justice Fund should be dismissed from this action for lack of personal jurisdiction.

## II.    IN THE ALTERNATIVE, THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE JUSTICE FUND

### A.    Exxon Provides No Basis for Holding the Justice Fund Vicariously Liable for the U.S. Nonprofits' Alleged Torts

Counts 1–4 arise from statements about Exxon that Exxon alleges were defamatory, disparaging, or harmful to its contracts and future business. *See, e.g.*, ¶¶ 69–74, 88, 90–93. But the Complaint is clear that none of those statements was made by the Justice Fund. *Id.* Instead, Exxon's theory appears to be that, by virtue of providing funding to the law firm representing the U.S. nonprofits in their California action, the Justice Fund is somehow responsible for the allegedly tortious statements of those nonprofits. ¶¶ 45–46. That theory is insufficient as a matter of law to state a claim for vicarious liability.

"Outside the employment context, a person may be liable for the tortious acts of another on a theory of non-employee agent liability (sometimes called 'mission' liability)." *Davidson v. AT&T Mobility, LLC*, No. 3:17 Civ. 0006, 2018 WL 4075722, at *3 (N.D. Tex. Aug. 27, 2018) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002), and *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 276–77 (Tex. 2012)). There are two elements of non-employee agent liability: (1) "right of control" and (2) "benefit to the principal." *Id.* (cleaned up). The first element is "the

key factor in establishing vicarious liability for the acts of a nonemployee." *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 847 (Tex. App.—Fort Worth 2006, no pet.) (en banc) (collecting cases describing the right to control as the "supreme test" and "major factor"); *see also Arvizu*, 364 S.W.3d at 276–77 (same). Exxon comes up short on both elements.

*First*, Exxon does not plead any facts that would suggest that the Justice Fund had the right to control the U.S. nonprofits. Indeed, there is no explanation in the Complaint as to how the provision of charitable funds could give the Justice Fund such control, when it is a basic principle of agency law that "[m]ere acceptance of payments from a third party does *not* create an agency relationship between the acceptor and the third party, nor does it amount to acquiescence in the creation of an agency relationship between the acceptor and the conduit through which the payment comes." 2A C.J.S. Agency § 47 (2024) (emphasis added). The utter implausibility of such an inference here is even clearer given that the Justice Fund did not actually give funds to any of the Defendants, but rather to a nonparty, ¶¶ 6, 46, and that nonparty was a law firm required by law to act only at the U.S. nonprofits' direction (and only for their benefit), *Comm'r v. Banks*, 543 U.S. 426, 436 (2005).

Moreover, the law is clear that "the right of control must extend to the specific activity from which the injury arose." *Omega Contracting, Inc.*, 191 S.W.3d at 847. In other words, the defendant must have had the "right and power to direct and control his imputed agent in the performance *of the causal act or omission at the very instant of the act or neglect.*" *Id.* (citation omitted; emphasis in original); *see also Duff v. Spearman*, 322 S.W.3d 869, 880 (Tex. App.—Beaumont 2010, pet. denied) (noting the law requires "control over the means and details of [the agent's] mission"). Exxon pleads absolutely no basis on which to infer that the Justice Fund, by

virtue of the funding provided to a nonparty law firm, had the right and power to control the speech of the U.S. nonprofits at issue.

*Second*, Exxon also does not allege that the U.S. nonprofits were "acting for [the Justice Fund's] benefit at the very instant" the alleged torts occurred. *Rosales v. Uber Techs., Inc.*, No. 6:21 Civ. 58, 2024 WL 4340042, at *11 (S.D. Tex. Sept. 26, 2024) (internal quotation marks omitted). The Complaint is devoid of any factual allegations that would demonstrate that the U.S. nonprofits, all of which are focused on environmental causes, made public statements about Exxon to provide some advantage to the Justice Fund. And, again, the nonparty law firm that allegedly received funding from the Justice Fund was required to act for the benefit of its clients—not the Justice Fund. *Banks*, 543 U.S. at 436.

Instead of pleading the elements that would be required to claim vicarious liability, Exxon makes the purely rhetorical argument that the U.S. nonprofits are "placeholders" or "[p]roxies" for the Justice Fund and speculates that "Foreign Interests"—an undefined set of entities that includes the Justice Fund—engaged with the nonprofits to "compet[e] against American oil-and-gas producers like ExxonMobil." ¶¶ 6, 45. But "labels and conclusions" are insufficient to establish agency. *Davidson*, 2018 WL 4075722, at *4 (quoting *Iqbal*, 556 U.S. at 678). Because Exxon does not plead any *facts* showing that the Justice Fund had the "right to control the details of" the other Defendants' public statements, and that the other Defendants acted for the benefit of the Justice Fund, there is no basis for holding the Justice Fund vicariously liable for the other Defendants' conduct. *Id.* at *5.

To be sure, even if Exxon had sufficiently alleged that the Justice Fund could be held secondarily liable for the U.S. nonprofits' alleged conduct, Exxon would still fail to state a claim against the Justice Fund because each of Exxon's underlying tort claims fails on the merits. *See*

Sierra Club Mot. 8–22; Surfrider Mot. 13–28; Heal the Bay Mot. 15–20; Baykeeper Mot. 14–25. The deficiencies that the U.S. nonprofits detail in their briefs are thus additional, independent reasons to dismiss the claims against the Justice Fund.[5]

### B.     Exxon Fails to State a Claim for Civil Conspiracy

Exxon's final tort claim against the Justice Fund and the other Defendants is for civil conspiracy. "Civil conspiracy is not an independent tort, but a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable." *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st dist.] 2019, no pet.). To state a claim for civil conspiracy, Exxon must plausibly allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 771 (N.D. Tex. 2017) (internal quotation marks omitted). Exxon must also show (6) "'specific intent'" by Defendants "to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means,'" rather than "merely proving a joint 'intent to engage in the conduct that resulted in the injury.'" *Juhl v. Airington*, 936 S.W.2d 640, 643–44 (Tex. 1996) (quoting *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 173 (5th Cir. 2000).

Exxon's civil conspiracy claim fails on multiple independent grounds. *First*, Exxon has not pleaded any underlying tort that was committed as part of the conspiracy. *Supra* at 13–14 & n.5;

---

[5] Exxon does not appear to advance any theory by which the Justice Fund could be vicariously liable for Attorney General Bonta's conduct. Even if it did, any such theory would fail for essentially the same reasons: Exxon does not plead that the Justice Fund controlled Attorney General Bonta's specific conduct, or that Attorney General Bonta was acting for the Justice Fund's benefit. And even if Attorney General Bonta could be liable in tort, *but see* Bonta Mot. 8–18, the tort claims against him, arising from statements similar to those attributed to the U.S. nonprofits, *supra* at 4–5, would fail at the pleading stage for all the same reasons set forth in the U.S. nonprofits' briefs, Sierra Club Mot. 8–22; Surfrider Mot. 13–28; Heal the Bay Mot. 15–20; Baykeeper Mot. 14–25.

Sierra Club Mot. 22; Surfrider Mot. 28; Heal the Bay Mot. 20; Baykeeper Mot. 14. As a matter of law, because Exxon fails to state a claim on any of its other causes of action, it fails to state a civil conspiracy claim as well. *See Vertex Servs., LLC*, 583 S.W.3d at 857 (a civil conspiracy claim "survives or fails alongside the underlying tort alleged" (internal quotation marks omitted)); *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 380 (5th Cir. 2017) ("[B]ecause no Plaintiff has properly stated a[n underlying] claim ... against any individual Defendant, each civil conspiracy claim must also fail for the same reason.").

*Second*, Exxon fails to allege the requisite meeting of the minds. The allegation that the U.S. nonprofits and Attorney General Bonta "worked together and in concert with the Foreign Interests to launch [a] coordinated campaign of defamation," ¶ 130, is the sort of generalized, conclusory allegation that courts cannot accept under Rule 12(b)(6). *N. Collin Special Util. Dist. v. City of Princeton*, 696 F. Supp. 3d 254, 265 (E.D. Tex. 2023). Indeed, courts regularly dismiss conspiracy claims where they rest on "speculative" allegations that "fail to identify a specific time or place in which any meeting of the minds occurred." *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, No. 09 Civ. 3828, 2010 WL 1996596, at *6 (S.D. Tex. May 17, 2010); *see Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 795 (N.D. Tex. 2009) (similar).[6]

*Third*, Exxon fails to allege facts showing it incurred damages as the proximate result of any allegedly tortious acts. Exxon claims that "[a]s a result of Defendants' scheme," it "suffered economic harm to its business reputation, its public image, and its contractual agreements." ¶ 133. But "[c]ivil conspiracy depends entirely on the injury caused by the underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself." *Agar Corp. v. Electro Cirs.*

---

[6] What's more, the only indirect touchpoint between the Justice Fund and any other Defendant, again, relates to funding that the Justice Fund provided to a nonparty law firm. Yet, Exxon disclaims that its claims arise from the California litigation. ¶ 14. That disclaimer only underscores the absence of any allegations detailing the how, when, and where of a meeting of the minds involving all six Defendants.

*Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019); *accord Adams v. Alcolac, Inc.*, 974 F.3d 540, 544 (5th Cir. 2020). As detailed in other Defendants' briefs, Exxon does not back up any generalized claims of harm with any concrete factual allegations as is necessary to state a claim. Sierra Club Mot. 10–13; Surfrider Mot. 25–26, 27–28; Heal the Bay Mot. 18; Baykeeper Mot. 25.

*Finally*, Exxon fails to allege specific intent on the part of the Justice Fund. "Each participant in a conspiracy must have the specific intent to injure the plaintiff. A joint intent to engage in conduct that results in an injury is not sufficient to prove a conspiracy." *Tompkins v. Cyr*, 995 F. Supp. 664, 685 (N.D. Tex. 1998) (citation omitted). Exxon's allegations concerning the Justice Fund are, once again, limited to the Justice Fund's provision of funds to the law firm representing the U.S. nonprofits in litigation in California and speculation about how such funding could indirectly help a founder of the Justice Fund's business interests. This is miles from alleging that, at the time of the purported conspiracy's conception, the Justice Fund specifically intended "to accomplish an unlawful purpose." *Juhl*, 936 S.W.2d at 643 (internal quotation marks omitted); *see Peavy*, 221 F.3d at 173 (conspirator must be "aware of the harm or wrongful conduct at the inception of the combination or agreement" (internal quotation marks omitted)).

### C.    Exxon's Claim for Declaratory Judgment Fails

In addition to the substantive claims addressed above, Exxon asserts a separate count seeking a declaratory judgment that "advanced recycling is recognized and permitted by law in multiple states, including Texas," and that Exxon "is lawfully permitted to engage in and promote advanced recycling at its Texas facility." ¶ 140. But because Exxon's substantive tort claims fail as a matter of law, the declaratory judgment request must also be dismissed. "The federal Declaratory Judgment Act is merely a procedural device that creates no standalone cause of action. Rather, the viability of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action." *Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp.

3d 594, 601–02 (E.D. Tex. 2023) (citing *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)). Where, as here, "a party's underlying cause of action fails as a matter of law, its claim for declaratory relief necessarily fails as well." *Id.* at 602 (citing *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217–18 (5th Cir. 2015)). What's more, Exxon's declaratory judgment cause of action does not identify any actual controversy between Exxon and the Justice Fund, and certainly not one that turns on the abstract question of "whether advanced recycling is permitted by law." ¶ 137. Instead, Exxon seeks an advisory opinion on the "legality" of unspecified "conduct" by apparent reference to the law of twenty-five states, without any connection to the Justice Fund whatsoever. ¶¶ 135–36. That is yet another reason to dismiss. *See Frye v. Anadarko Petrol. Corp.*, 953 F.3d 285, 293–94 (5th Cir. 2019).

\*       \*       \*

Finally, Exxon should not be granted leave to amend its pleading. Exxon's claims rest upon statements that other Defendants allegedly made, and the only hook for suing the Justice Fund is funding that the organization provided to a nonparty law firm that then supported the U.S. nonprofits' litigation against Exxon in California. There is nothing that Exxon could allege that would transform that indirect, out-of-state funding into a jurisdictional contact that would permit hauling an Australian organization into a Texas court, or somehow make the Justice Fund liable for the speech of the other Defendants. Because these "defects are incurable," no opportunity to replead should be granted. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003); *Bailey v. Mansfield Indep. Sch. Dist.*, 425 F. Supp. 3d 696, 727 (N.D. Tex. 2019).

# CONCLUSION

For the reasons above, the Court should grant the Justice Fund's motion and dismiss the claims against it for both lack of personal jurisdiction and failure to state a claim.

Dated: Washington, D.C.
April 25, 2025

Respectfully submitted,

_____
Joshua Matz* (lead attorney)
NY Bar No. 5388962; DC Bar No. 1045064
HECKER FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
(929) 294-2537
jmatz@heckerfink.com

John C. Quinn*
NY Bar No. 4965000
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883
jquinn@heckerfink.com

Matthew J. Craig*
NY Bar. No. 5263447; CA Bar No. 350030
HECKER FINK LLP
1150 S Olive St., Suite 10-140
Los Angeles, CA 90015
(212) 763-0883
mcraig@heckerfink.com

Joaquin Gonzalez
TX Bar No. 24109935
MARZIANI, STEVENS & GONZALEZ, PLLC
1533 Austin Hwy. #102-402
San Antonio, TX 78218
(210) 343-5604
jgonzalez@msgpllc.com

*appearing pro hac vice

Counsel for Defendant Intergenerational
Environment Justice Fund Ltd.

18