## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

|  |  |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>**Plaintiff,**<br><br>CITY OF BAYTOWN, TEXAS and CITY OF BEAMONT, TEXAS<br><br>**Plaintiff-Intervenors,**<br><br>v.<br><br>ROBERT ANDRES BONTA A.K.A. ROB BONTA, IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; BAYKEEPER, INC.; AND INTERGENERATIONAL ENVIRONMENT JUSTICE FUND LTD.,<br><br>**Defendants.** | Case No. 1:25-cv-00011-MJT<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN INTERVENTION

Pursuant to Federal Rule of Civil Procedure 24, the City of Baytown, Texas ("**Baytown**") and the City of Beaumont, Texas ("**Beamont**") (collectively, the "**Intervenors**") files this complaint in intervention (the "**Complaint**") as party-plaintiffs against defendants Robert Andres Bonta a.k.a. Rob Bonta ("**Bonta**"), the California Attorney General being sued in his individual capacity; Sierra Club, Inc. (the "**Sierra Club**"); Surfrider Foundation, Inc. ("**Surfrider**"); Heal the Bay, Inc. ("**Heal the Bay**"); Baykeeper, Inc. ("**Baykeeper**" and, collectively with the Sierra Club, Surfrider, and Heal the Bay, the "**US Proxies**"); and Intergenerational Environment Justice Fund Ltd. (the "**IEJF**" and, collectively with its affiliates, the "**Foreign Interests**"). In support of their Complaint, Intervenors allege as follows:

I.     **INTRODUCTION**

1.      Intervenors are Texas Gulf Coast communities in which Plaintiff Exxon Mobil Corporation ("**ExxonMobil**") operates.  Intervenors are working closely with ExxonMobil as it operates and constructs advanced recycling facilities to recycle plastic at its Baytown and Beamont refining complexes.  ExxonMobil's advanced recycling has offered Intervenors an innovative solution to recycle their plastic waste that they previously did not have, and Intervenors are making investments and working to build their own plastic recycling programs because of the recycling solution ExxonMobil has provided.

2.      Defendants, however, have interfered with Intervenors' plans.  Apparently motivated by a combination of financial self-interest and political gain, Bonta, IEJF, and the US Proxies have disparaged ExxonMobil's advanced recycling business, interfered with its contracts, and defamed its reputation.  Their tortious conduct has not only harmed ExxonMobil, but it is harming the communities in which ExxonMobil operates—impacting the viability of Intervenors' plastic recycling investments and their efforts to reduce the volume of plastic waste going into their landfills.

3.      Rob Bonta, IEJF, and the US Proxies may not care about increasing the size of landfills in California or derailing innovations in plastic waste management, but in Texas, local communities and governments are focused on being a part of the solution, not part of the politics. Defendants have interfered with Intervenors' efforts to engage in plastic recycling by calling ExxonMobil's advanced recycling a "lie," "myth," and a "false solution."  Bonta may have the right to make decisions that impact California, but he does not have the right to act unlawfully or to interfere with ongoing business operations in Texas.

4.      Notwithstanding Defendants' misrepresentations, advanced recycling is not greenwashing.  It is not a lie or a myth.  Nor is it a product of a public relations campaign of

deception.  For Intervenors, advanced recycling is a reality that is enabling them to make a positive change in how their community handles plastic waste.  To date, ExxonMobil has recycled over 80 million pounds of plastic waste in its Baytown facility.  That is 80 million pounds of plastic waste that might otherwise have been buried in a landfill or burned in an incinerator.  Recently, ExxonMobil publicly announced that it will make hundreds of millions of dollars in additional investments in Baytown and Beaumont to bring its advanced recycling capacity up to 500 million pounds per year in these two facilities.  These are real solutions to real problems.  Intervenors are committed to working alongside ExxonMobil to take full advantage of this technology and make plastic recycling a reality for their citizens.

5.      The challenges to recycling plastic waste are well known.  For decades, the lack of a market for recycled products, the difficulty and expense of proper collection and sortation, and the limitations of mechanical recycling have all been roadblocks to a robust solution to plastic recycling in the United States.  Intervenors' communities are no different.  Chambers County and Mont Belvieu actually had a plastic recycling program at one time, but their recycling vendor went out of business and the program was dropped.  Baytown and Beaumont have never had a plastics recycling program, because they never had the resources to implement it or for it to work economically.  However, ExxonMobil's development of advanced recycling at its Baytown refining complex has changed that paradigm and has offered Intervenors not only the opportunity to recycle plastics, but to do so with a technology that can handle a wider variety of plastics than traditional recycling methods.

6.      Traditional mechanical recycling allows consumers to recycle certain types of plastic products, like single-use water bottles.  But mechanical recycling has certain limitations. Mechanical recycling weakens the structure of recycled plastic, reducing its quality and value.

Mechanical recycling typically requires a stream of uniform types of plastics, e.g. plastic water bottles, and cannot process the many different kinds of plastic products that are a blend of different kinds of plastic polymers.  Moreover, many communities, including Intervenors, have simply been unable to attract the business of mechanical plastic recyclers.  For these reasons, among others, mechanical recycling is only a partial solution to the problem of plastic waste.

7.      Over the past few years, Intervenors and their representatives have been evaluating ways to reduce the volume of plastic waste going to their landfills and to mitigate the environmental, social, and economic impacts of landfills in their communities.  Baytown and Beaumont have studied their community's solid-waste disposal rates, developed solid-waste reduction targets, and launched community-wide education and engagement programs.  And they has sought out individuals and entities who could serve as partners in their efforts to implement a solution to the problem of their growing landfills.

8.      ExxonMobil came forward with an innovative and effective solution: advanced recycling.  ExxonMobil's solution takes hard-to-recycle plastics and breaks them down into raw materials that can be used to produce valuable new products.  And given that ExxonMobil's advanced recycling process is built into its existing petrochemical facilities, this is a solution that can now be implemented at scale.  Advanced recycling provides an actual solution to help municipalities, like Intervenors, reduces the plastic waste that would otherwise build up in their landfills.  Advanced recycling therefore represents a win-win for communities.  It helps communities, like Intervenors, reduce plastic waste while allowing that waste to be used in the manufacture of new products, leading to a more circular economy.

9.      Intervenors have worked with ExxonMobil and certain of its affiliates to develop comprehensive solid-waste management programs—"recycling collaborations"—to reduce the

volume of plastic waste in Intervenors' landfills. Advanced recycling would play an integral part in the recycling collaborations. The recycling collaborations would bring recycling to Gulf Coast Communities for the first time ever and revive a long dormant recycling program in another. Indeed, Chambers County has already spent nearly $2 million toward its plans to construct a sorting infrastructure, which would be essential to the success of its recycling collaboration.

10.    Intervenors, their representatives, and citizens are ready to welcome advanced recycling—and all of its myriad benefits—with open arms. Intervenors have had discussions with ExxonMobil with respect to the development and establishment of recycling collaborations. In the fall of 2024, however, Rob Bonta and a coterie of environmental non-profits, backed by Foreign Interests competing against ExxonMobil in the low carbon solutions and energy transition sector, began a coordinated, intentional, and defamatory smear campaign against ExxonMobil and advanced recycling, falsely describing advanced recycling as, among other things, a "lie," a "myth," a "sham," and "illegal." Defendants' smear campaign cast a pall over ExxonMobil and its advanced recycling enterprise and, in so doing, undermined the viability of Intervenors' would-be recycling collaborations and jeopardized the many benefits Intervenors expected would flow from the collaborations.

11.    Specifically, and as further set forth below, advanced recycling cannot succeed without scale and a market for certified circular polymers. If ExxonMobil's customers are unwilling to purchase ExxonMobil's certified circular polymers or communities are unwilling to provide their plastics to ExxonMobil because of Defendants' intentional and malicious conduct, ExxonMobil may be forced to stop investing in this technology.

12.    Intervenors have limited resources and cannot invest taxpayer dollars in the infrastructure needed to support its own plastics recycling programs if Defendants' smear

campaign dooms advanced recycling (the destination for their plastic waste) to failure.  But dooming advanced recycling appears to be exactly what Defendants intend.  Rather than embracing a solution that will help municipalities such as Intervenors address plastic waste, Defendants are conspiring to undermine advanced recycling for their own personal and political reasons.

13.    To be clear, Baytown, Beaumont and their representatives and citizens are all clamoring for the establishment of recycling collaborations in their Texas communities. ExxonMobil was ready and willing to help them achieve that objective.  But Bonta (who is running for another term as California attorney general and has been touted as a potential candidate for governor of California) and the US Proxies (who were recruited and are represented by lawyers funded by the Foreign Interests) have interfered with the prospective relationship between Texas municipalities and ExxonMobil.  As a result of that intentional and malicious interference, Intervenors' plans are now in jeopardy.

14.    Defendants have sacrificed Intervenors' recycling collaborations to personal ambition, fundraising opportunism, and old-fashioned greed.  They must be held accountable for their actions and those actions' consequences for Texas communities.  Accordingly, Intervenors seek leave to intervene in the above-captioned action so that they may assert causes of action against Defendants for (i) tortious interference with prospective business relationships and (ii) a judicial declaration that advanced recycling is, in fact, legal and that Intervenors may therefore lawfully establish, participate in, and promote the contemplated recycling collaborations. Intervenors seek damages and injunctive and other equitable relief to remedy the consequences of Defendants' tortious conduct.

## II.    INTERVENORS

15.    Baytown is a city located in the State of Texas, within Harris and Chambers Counties.  Baytown has a population of approximately 85,000.

16.    Beaumont is a city located in the State of Texas, within Jefferson County. Beaumont has a population of approximately 115,000.

## III.    FACTS RELEVANT TO ALL CAUSES OF ACTION

### A.    Intervenors Sought to Partner with ExxonMobil to Address the Problem of Plastic Waste in Its Landfill

17.    For a variety of reasons, not all plastics are recycled through mechanical recycling. Although traditional mechanical recycling can recycle certain types of plastics, such as single use water bottles that are commonly made of Polyethylene Terephthalate (PET), it cannot process packaging with multiple layers of different types of plastics and other materials.  For example, a chip bag may have a plastic outer layer and an aluminum inner layer.  Traditional recycling machines cannot separate these layers effectively.

18.    As a result, plastics often wind up occupying space in landfills—to the detriment of the cities and counties in which those landfills are located.  Accordingly, for years, Intervenors' representatives have sought a meaningful alternative to putting plastic in their landfills.  Baytown and Beaumont found that solution—or hoped they had—in ExxonMobil's advanced recycling program.

19.    Advanced recycling is a technology that complements traditional mechanical recycling by breaking down plastics into the usable raw materials to manufacture fuels, lubricants, chemicals, new plastics, and other products.  Advanced recycling begins with the collection of plastics that might otherwise have gone to a landfill.  Those plastics are then sent to a material recovery facility or a secondary sortation facility.  Once diverted from the landfill, the plastics are

sorted, shredded, and processed to meet the physical and chemical specifications for advanced recycling. At ExxonMobil's advanced recycling facility, the plastics are converted into liquid and gas molecules through a technique called "pyrolysis"—subjecting the plastics to intense heat in an oxygen-starved environment until their molecules break down at the molecular level—yielding usable raw materials identical to those derived from fossil-based feedstocks. The raw material can then be used to produce a wide range of new products from fuels and lubricants to high performance chemicals and plastics, giving another life to plastic waste.

20.    Advanced recycling allows a wider variety of plastics to be recycled, including hard-to-recycle chip bags, motor oil bottles, and artificial turf. It is a solution that can help improve recycling rates for plastic waste and support a more circular economy. And it can be scaled and replicated around the world to increase the amount of plastic waste that is made into new products. Perhaps most importantly, advanced recycling can reuse nearly every type of consumer plastic (excluding pvc pipe and similar pvc products), allowing the citizens of Intervenors' communities to simply bag their plastics and drop them off at a collection center, without having to separate the various types of plastics by their individual type.

21.    ExxonMobil operates an advanced facility in Baytown that has 80 million pounds of annual processing capacity. A unique characteristic of this facility is that it leverages existing infrastructure by being fully integrated into a petrochemical complex—making it a truly scalable advanced recycling solution. It has already processed over 80 million pounds of discarded plastic.

22.    In short, advanced recycling is a game-changing technology that will play an essential role in the creation of a more circular economy for plastics in Texas and the United States more broadly.

23.     Over the last several years, the Intervenors began developing a solid-waste management plan, including by (i) establishing core leadership teams composed of city or county officials, (ii) setting solid-waste reduction targets, (iii) preparing community engagement strategies, (iv) developing city and county priorities and related action items, and (v) launching community-wide education and engagement programs.  One of Intervenors' foremost priorities was reducing the volume of solid waste, including and especially plastic waste, transported to Intervenors' landfills.  More recently, Intervenors began engaging with ExxonMobil concerning the ways in which ExxonMobil could support its solid-waste management plans.  Through discussions between and among ExxonMobil and representatives of Intervenors taking place over several months, a comprehensive recycling program began to take shape.  Recently, ExxonMobil and Intervenors solidified the contours of their recycling programs, which would be called Recycling Collaborations after a similar collaboration established in Houston in January 2022.[1] The primary focus of the Recycling Collaborations was the diversion of plastic waste away from Intervenors' landfills.

24.     In support of the Recycling Collaborations, ExxonMobil will sponsor community-wide recycling education programs that will provide Intervenors' citizens with information concerning recycling and proper sorting guidelines.  Intervenors will establish a collection system for plastic waste from recycling bins and bail it for pickup.  Cyclyx will then transport the bailed plastic waste to its state-of-the-art circularity center currently under development in Houston, which will aggregate, characterize, and process Intervenors' plastic waste.  Cyclyx will in turn sell

---

[1] According to the City of Houston itself, the Houston Recycling Collaboration was formed in January 2022 between and among the city and various members of industry, including ExxonMobil and its affiliate Cyclyx International, LLC ("**Cyclyx**").  The "collaboration aims to significantly increase Houston's plastics recycling rate by accelerating both mechanical and advanced recycling technologies."

the processed plastic waste to ExxonMobil (and potentially other recyclers) for "feedstock" in its advanced recycling operations.

25.     From Intervenors' perspective, the end goal of these collaborations is to reduce the amount of solid waste going to Intervenors' landfills.  In addition to the goal of reducing the amount of solid waste that goes into landfills, the Recycling Collaborations will encourage the growth of jobs and local businesses to support the process.

26.     Intervenors, ExxonMobil, and Cyclyx have signed memoranda of understanding memorializing the mutual understanding and intent of the parties to collaborate on the establishment of the Recycling Collaborations.

27.     Indeed, Chambers County, for its part, had actually begun construction of a new sorting infrastructure, investing nearly $2 million.

**B.      Defendants' Defamatory Campaign Against ExxonMobil and Advanced Recycling**

28.     In or around the fall of 2024, Bonta and the US Proxies deployed their foreign-backed smear campaign against ExxonMobil and advanced recycling, interfering with the Recycling Collaboration, jeopardizing all of the savings and benefits Intervenors and their citizens would receive from the Collaborations, and seriously undermining ExxonMobil's efforts to establish a circular economy for plastics in Texas.

29.     As described in the ExxonMobil Complaint, a group spearheaded by California Attorney General Bonta began a coordinated campaign against ExxonMobil and its advanced recycling efforts.  This group includes Bonta, the US Proxies, and the Foreign Interests. Defendants have various motivations to attack American energy companies like ExxonMobil. Bonta stands to gain further political influence, while the Foreign Interests have a financial stake in the competing renewable energy industry.  *See* Compl. [ECF No. 1] ("**ExxonMobil Compl.**")

¶¶ 45, 75.  To advance these self-serving interests, Defendants falsely claim that ExxonMobil perpetuated a decades-long fraud on consumers by lying about advanced recycling.  They claim that advanced recycling is a "myth" and "not based on truth," despite knowing that ExxonMobil is not lying and that advanced recycling reduces plastic waste.  *See id.* ¶¶ 68, 95–97 (detailing numerous studies published by the State of California itself illustrating the efficacy of recycling— including advanced recycling, specifically—and advocating for its expansion).

30.    Specifically, Bonta has proclaimed in various interviews that ExxonMobil has engaged in "a campaign of deception" about recycling and derided advanced recycling as a "sham solution[]," among other defamatory statements.  *See id.* ¶¶ 72, 69.  Likewise, Bonta has threatened ExxonMobil with "a judgment day," promising to "bring it to them."  *Id.* ¶ 69.  Bonta has promoted these interviews on his personal social media accounts, where he has also made additional defamatory statements about ExxonMobil.  *See, e.g., id.* ¶¶ 71, 73–74.  Bonta made these statements in his personal capacity as material for his election campaign, and not in connection with his core responsibilities as California's Attorney General.  *See id.* ¶ 75.  The other Defendants have similarly attacked ExxonMobil, accusing it of "perpetuat[ing] the myth of recyclability" and "poisoning waterways, wildlife, and people," among other false statements.  *See id.* ¶¶ 91–92.

31.    Bonta and the other Defendants appear to be willfully ignoring how advanced recycling works and all of the many benefits associated with reusing plastic waste rather than sending it to landfills.

32.    Predictably, and just as Defendants intended, their campaign jeopardizes ExxonMobil's efforts to expand advanced recycling and make it economically viable. ExxonMobil reports that, already, numerous entities have backed out of advanced recycling agreements.  *See id.* ¶¶ 102, 120.  And major international brands have refused to promote

advanced recycling. *See id.* ¶ 102. Additionally, ExxonMobil reports that prospective customers have expressed concerns about contracting with ExxonMobil, citing Defendants' statements as the reason. *See id.* These Defendant-induced setbacks undermine ExxonMobil's ability to achieve the necessary scale for advanced recycling—and, correspondingly, Intervenors' ability to benefit from ExxonMobil's partnership. *See id.* ¶ 103. As noted, Intervenors cannot afford to spend taxpayer dollars to support advanced recycling if advanced recycling is undermined or will not be available for the long term. Defendants' smear campaign may prevent ExxonMobil from making advanced recycling viable, putting any investment into advanced recycling by Intervenors at risk.

33.    Defendants knew about ExxonMobil's prospective relationships with Intervenors when they made their statements attacking ExxonMobil and advanced recycling. In fact, Bonta has directly targeted ExxonMobil's activities in Texas, expressly disparaging ExxonMobil's Baytown advanced recycling facility. *See id.* ¶ 86. And Bonta has explained that Defendants' goal is to effectuate "behavioral change" that would primarily occur in Texas. *See id.* ¶ 89. Thus, disrupting ExxonMobil's prospective advanced recycling arrangements with municipalities like Intervenors was the central purpose animating Defendants' attacks. Intervenors cannot expend taxpayer dollars needed to support advanced recycling if there is a risk that advanced recycling will fall prey to Bonta's and the other Defendants' misconduct.

## IV.    CAUSES OF ACTION

### COUNT I –
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

34.    Intervenors reallege paragraphs 1 through 36 and incorporates them by reference as though fully set forth herein.

35.    Intervenors have entered into memoranda of understanding with respect to the development and establishment of Recycling Collaborations.

36.     However, Defendants' foreign-backed smear campaign against ExxonMobil and advanced recycling has seriously and potentially irrevocably interfered with ExxonMobil's advanced recycling enterprise and, it follows, the Recycling Collaborations.  As set forth above, advanced recycling requires the participation not only of plastic waste sources such as Intervenors, but also customers who will ultimately purchase certified circular polymers from ExxonMobil for use in connection with their businesses.  Defendants' smear campaign has threatened the participation of these stakeholders in advanced recycling.  By way of example only, as a direct result of Defendants' false, misleading, and defamatory statements about ExxonMobil and advanced recycling, ExxonMobil alleges that a number of entities have backed out of memoranda of understanding with ExxonMobil for the purchase of certified circular products.  *See* ExxonMobil Compl. ¶¶ 64-67, 120.  Without these entities' participation in the advanced recycling manufacturing and supply chain, there is a real risk that advanced recycling ***will not succeed***—and neither will the Recycling Collaborations.  Defendants have, therefore, tortiously interfered with Intervenors' prospective business relationships.

37.     Defendants had actual knowledge of Intervenors' prospective business relationships.  The highly publicized Houston Recycling Collaborations—which serves as a model for the Recycling Collaborations—launched in January 2022, and ExxonMobil and Cyclyx have announced (in online press releases, articles, and elsewhere) their plans to develop and establish future recycling collaborations in municipalities throughout Texas (and beyond).  Defendants— who admit that their objective is to put a stop to ExxonMobil's advanced recycling enterprise— have acted with a conscious desire to undermine ExxonMobil's advanced recycling program, and by extension Intervenors' Recycling Collaborations.

38.    Defendants' conduct was independently tortious or unlawful.  As alleged herein and in the ExxonMobil Complaint, Defendants' foreign-backed smear campaign against ExxonMobil and advanced recycling constitutes business disparagement, defamation, tortious interference with ExxonMobil's existing contracts, and tortious interference with ExxonMobil's prospective business relationships.  *See* ExxonMobil Compl. ¶¶ 104-128.

39.    As a direct and proximate result of Defendants' tortious interference with Intervenors' prospective business relationships, Intervenors are suffering actual damages and losses.  Because of Defendants' foreign-backed smear campaign against ExxonMobil and advanced recycling, its advanced recycling plans have been placed at risk, and should they not be completed, Intervenors' own recycling efforts may similarly fail—wasting the time and money spent to develop these programs.

## COUNT II –
## DECLARATORY JUDGMENT

40.    Intervenors reallege paragraphs 1 through 42 and incorporates them by reference as though fully set forth herein.

41.    Twenty-five states (including Texas) have recognized the efficacy of advanced recycling and have passed legislation to implement advanced recycling facilities in their waste management programs.  *See, e.g.*, Tex. Health & Safety Code Ann. § 361.003(1).

42.    There is a definite, concrete, substantial, and ongoing controversy between and among Intervenors and Defendants with respect to the legality of advanced recycling and the Recycling Collaborations (in which advanced recycling plays an integral part).  If, as Defendants falsely contend, advanced recycling is a "sham" and "illegal," *see, e.g.*, ExxonMobil Compl. ¶¶ 12, 69, then, by establishing, participating in, and promoting the Recycling Collaborations, Intervenors will be establishing, participating in, and promoting programs that are centered on a

purportedly illegal activity, and Intervenors could be subject to related claims asserted by Defendants. Intervenors and Defendants therefore have adverse legal interests, and Intervenors respectfully request that this Court exercise its broad discretion to adjudicate the actual controversy between and among Intervenors and Defendants by issuing a declaration that (i) advanced recycling is recognized and permitted by law, including in Texas, and (ii) Intervenors is lawfully permitted to establish, participate, and promote the Recycling Collaboration.

## V.   PRAYER FOR RELIEF

43.   For all of these reasons, Intervenors respectfully pray for relief as follows:

a.   That the court find Defendants liable for tortious interference with prospective business relations;

b.   An award of damages for any and all claims, losses, costs, and damages, whether direct, indirect, consequential, general, or special, in an amount sufficient to compensate Intervenors for all damages proximately caused by Defendants' tortious conduct;

c.   Equitable relief, including an injunction requiring Defendants to take down and retract defamatory statements and to cease interfering with Intervenors' prospective business relationships;

d.   A declaration that (i) advanced recycling is recognized and permitted by law, including in Texas, and that (ii) Intervenors are lawfully permitted to participate in the Recycling Collaboration, in which advanced recycling plays an integral part;

e.   Court costs; and

f.   Any such other and further relief to which Intervenors may be entitled.

May 1, 2025

Respectfully submitted,

Travis C. Barton, SBN: 00790276
tcbarton@mcginnislaw.com
J. McLean Bell, SBN: 24120712
mbell@mcginnislaw.com
**MCGINNIS LOCHRIDGE LLP**
1111 W. 6th St, Ste 400
Austin, TX 78703
(512) 495-6000
(512) 495-6093 FAX


Jonathan D. Baughman, SBN: 24029074
jbaughman@mcginnislaw.com
**MCGINNIS LOCHRIDGE LLP**
609 Main St., Ste. 2800
Houston, TX 77002
(713) 615-8500
(713) 615-8585 FAX

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically in compliance

with Local Rule CV-5(a) on 1st day of May, 2025.

Travis C. Barton

16