IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| EXXONMOBIL CORPORATION, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:25-cv-00011 |
| | § | |
| ROBERT ANDRES BONTA, A.K.A. ROB BONTA, IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB, INC.; SURFRIDER FOUNDATION; HEAL THE BAY, INC.; BAYKEEPER, INC.; AND INTERGENERATIONAL ENVIRONMENT JUSTICE FUND LTD., | § § § § § § § § § | |
| Defendants. | § | |

## **US NON-PROFITS' JOINT RESPONSE TO MOTIONS TO INTERVENE**

Defendants Sierra Club, The Surfrider Foundation, Heal the Bay, Inc., and Baykeeper, Inc. (collectively, "US Non-Profits"), subject to their motions to dismiss and transfer, respond to the motions to intervene of City of Baytown [ECF 39], City of Beaumont [ECF 54]; Chambers County [ECF 62], and City of Mont Belvieu [ECF 63] (collectively, "Putative Intervenors").

**I.     Introduction and summary.**

Plaintiff ExxonMobil is suing Defendants for making allegedly defamatory statements while announcing the filing of lawsuits against ExxonMobil in California. ExxonMobil asserts various causes of action, all based on statements made in California about ExxonMobil and the plastics pollution plaguing California. All Defendants have moved to dismiss this lawsuit or to transfer it to the Northern District of California. Those motions are pending.

Putative Intervenors are three cities and a county. They seek permission to file a joint Complaint in Intervention. *See* ECF 65. They do not allege that Defendants made any statements

about them, defamatory or otherwise, or that Defendants' statements interfered with any contract they have with ExxonMobil or others. Rather, they claim to be worried that *prospective* business interests *may be* impacted *in the future* if unidentified non-parties decide not to buy the output of ExxonMobil's recycling plants. Aping ExxonMobil's Complaint, they also want this Court to issue advisory opinions about "advanced recycling" and the legality of ExxonMobil's recycling operations under Texas and many other (unidentified) states' laws, an issue not raised by Defendants' statements or California lawsuits.

The Court should deny intervention because Putative Intervenors' proposed "claims" against Defendants are unripe, because their declaratory judgment request is improper, and because adding four remotely "interested" parties will cause undue expense, delay, and complexity. ExxonMobil is fully able to represent its own interests, and whatever input Putative Intervenors may have can be provided through amicus briefing or as non-party fact witnesses.

## II. Allowing permissive intervention is wholly discretionary and must not impose undue delay or prejudice on existing parties.

Putative Intervenors seek permissive intervention under Rule 24(b)(1)(B), Fed. R. Civ. P., which grants district courts discretion to permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The court should also consider whether the proposed intervenor will cure an existing party's lack of adequate representation, and whether intervention will materially contribute to the development of facts relevant to the existing parties' claims. *E.g.*, *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989). In addition, the proposed intervenor must establish the court's "subject matter jurisdiction to decide the new claim." *Chambers Medical Foundation v. Chambers*, 236 F.R.D.

299, 302 (W.D. La. 2006) (citing *Dev. Finance v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156 (3rd Cir. 1995)).

Permissive intervention is "wholly discretionary" and "may be denied even when the requirements of Rule 24(b) are satisfied." *Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025). "Orders denying permissive intervention are reviewed for 'clear abuse of discretion' and will be reversed only if 'extraordinary circumstances' are shown." *Chambers Medical Foundation v. Petrie*, 221 Fed. Appx. 349, 350 (5th Cir. 2007) (quoting *Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.*, 332 F.3d 815, 821-22 (5th Cir. 2003)).

### III. This lawsuit is about Defendants' allegedly defamatory statements about ExxonMobil, not Plaintiff Intervenors.

#### A. ExxonMobil is suing Defendants for statements they made about it, not Plaintiff Intervenors.

In September 2024, the State of California, represented by Defendant Attorney General Robert Bonta, sued ExxonMobil for violating California law by misrepresenting the efficacy of plastic recycling in order to promote and expand its polymer sales. The four Defendant US Non-Profits also sued ExxonMobil in their own lawsuit, asserting causes of action under California law. Attorney General Bonta and the US Non-Profits issued press releases and made public statements about their respective lawsuits on the day the suits were filed.

In January 2025, ExxonMobil filed this lawsuit against AG Bonta, the US Non-Profits, and Australian-based Intergenerational Environmental Justice Fund Ltd. ECF 1. While ExxonMobil's complaint discusses "advanced recycling" of plastics at length, the gravamen of its claims are allegedly disparaging statements made by Defendants about it. *Id.* ¶¶ 104-33. Those statements underly ExxonMobil's claims of business disparagement, defamation, tortious interference with existing contract and with prospective business, and civil conspiracy. *Id.*

Neither the Defendants' California lawsuits nor their statements claim Exxon's "advanced recycling" is illegal in California, let alone in Texas or elsewhere. Nonetheless, ExxonMobil seeks an advisory opinion (disguised as a request for declaratory judgment) that "advanced recycling is permitted by law" in Texas and twenty-four other (unidentified) states, and that ExxonMobil is entitled to "rely on the legality and widespread acceptance of the practice in promoting advanced recycling." *See id.* ¶¶ 135-39. ExxonMobil allegedly fears being sued "in additional legal matters" "in the near future" and wants this Court to "avoid a multiplicity of suits" by issuing a declaration that "advanced recycling is recognized and permitted in multiple states" and that ExxonMobil is "permitted to engage in and promote advanced recycling" in Texas and other unidentified states. *Id.* ¶¶ 137-40.

### B.     There are multiple pending motions to dismiss or transfer this lawsuit.

Prior to Putative Intervenors moving to intervene, each Defendant had moved to dismiss ExxonMobil's lawsuit or indicated its intent to do so. The following potentially dispositive motions are currently pending:

- Attorney General Bonta has moved to dismiss due to (1) lack of personal jurisdiction; (2) state law immunity; and (3) Eleventh Amendment immunity. ECF 44.

- Heal the Bay has moved to dismiss due to (1) lack of personal jurisdiction; (2) improper venue; and (3) failure to state a claim. ECF 47.

- Surfrider has moved to dismiss due to (1) lack of personal jurisdiction; and (2) failure to state a claim. ECF 48.

- Baykeeper has moved to dismiss due to (1) lack of personal jurisdiction; (2) the first-to-file rule; and (3) failure to state a claim. ECF 49.

- Sierra Club has moved to dismiss due to (1) lack of personal jurisdiction; (2) improper venue; and (3) failure to state a claim. ECF 50.

- The Justice Fund has moved to dismiss due to (1) lack of personal jurisdiction; and (2) failure to state a claim. ECF 51.

In addition, the US Nonprofits have moved, in the alternative, to transfer the case to the Northern District of California. ECF 46.[1]

### C. Unlike ExxonMobil, Putative Intervenors do not (and cannot) allege that Defendants made any disparaging statements about them.

City of Baytown, City of Beaumont, City of Mont Belvieu, and Chambers County seek permission to file a Complaint in Intervention that purports to state claims against the Defendants. ECF 65. In that proposed complaint, Putative Intervenors allege they are "making investments and working to build their own plastic recycling programs." *Id*. ¶ 1. They claim to have worked with "ExxonMobil and certain of its affiliates" to develop "recycling collaborations" to reduce the amount of plastic waste in their landfills. *Id*. ¶ 9. They claim they are ready to welcome "advanced recycling" with open arms. *Id*. ¶ 10.

However, unlike ExxonMobil, no Putative Intervenor claims that any Defendant made any disparaging statements about them. ECF ¶¶ 30-35. They simply repeat ExxonMobil's allegations about Defendants' statements about ExxonMobil and "advanced recycling." So, unlike ExxonMobil, Putative Intervenors do not (and cannot) allege business disparagement or libel. *Id*. Nor do Putative Intervenors claim to have any existing contract that Defendants have interfered with, so they do not (and cannot) allege tortious interference with contract. *Id*. Instead, Putative Intervenors string together a series of contingencies in an effort to allege "interference with *prospective* business relationships." *Id*. ¶ 37-41.

Putative Intervenors claim to have "entered into memoranda of understanding with respect

---

[1] Given that the Court's rulings on these motions will determine whether, where, and to what extent ExxonMobil's claims against Defendants will proceed, the Court should consider waiting to consider Putative Intervenors' motions until it resolves Defendants' motions. Putative Intervenors, for instance, allege no independent basis for personal jurisdiction over the Defendants, so their claims are bound to fail if this Court finds no jurisdiction to adjudicate ExxonMobil's claims.

to the development and establishment of Recycling Collaborations," ECF 65 ¶ 37, but they do not claim these memoranda are enforceable contracts, only that they "memorialize" a "mutual understanding and intent" to "collaborate." *Id.* ¶ 28. Nor do they allege that any party has breached any such "memoranda of understanding" or refused to participate in the "Recycling Collaborations" due to any Defendant's statement or act. *Id.* Indeed, they allege to be progressing with their recycling plans, such as Chambers County having "begun construction of a new sorting infrastructure, investing nearly $2 million." *Id.* ¶ 29.

Instead, Putative Intervenors allege that for ExxonMobil's "advanced recycling" program to be effective, it must have "customers who will ultimately purchase certified polymers from" its recycling project. ECF 65 ¶ 38. Putative Intervenors repeat ExxonMobil's allegation that an unspecified number of unidentified "entities" have backed out of "memoranda of understanding" (not contracts) to buy ExxonMobil's recycling output. *Id.* They then speculate that, if these unidentified entities do not participate in the "advanced recycling manufacturing and supply chain," there is a "real risk" that advanced recycling will not succeed. *Id.* If that happens, Putative Intervenors fear their "Recycling Collaborations" will not succeed. *Id.* Based on this feared future contingent chain of events, they claim Defendants have tortiously interfered with their "prospective business relationships." *Id.*

While Putative Intervenors make a conclusory claim to be "suffering actual damages and losses," they describe none. ECF ¶ 41.[2] Indeed, the language of their proposed complaint confirms their "prospective business" claims are unripe: Defendants' statements, they claim, somehow put ExxonMobil's entire "advanced recycling" plans "at risk," and that should those plans "not be

---

[2] Tellingly, while Putative Intervenors' initial disclosures identify eight persons with knowledge of relevant facts (and therefore eight more witnesses to depose), none claim to know of any damages suffered by any government entity seeking to intervene. *See* Ex. 1 at 4-6, attached.

completed" in the future, "Intervenors' own recycling efforts may similarly fail." *Id*.

As a fallback, Putative Intervenors try to state a claim for declaratory judgment. *See* ECF 65 ¶¶ 43-44. This "claim" is an even more obvious request for an impermissible advisory opinion than ExxonMobil's declaratory judgment claim. It is based on Putative Intervenors' difference of opinion with the US Non-profits about the value of "advanced recycling," and nothing more. *Id*. Defendants do not claim – in the California lawsuits or in their public statements – that "advanced recycling" is illegal in California, let alone in Texas or any other state. Those lawsuits are based on the environmental harm in California caused by ExxonMobil's false statements about plastic recycling, not the legality of "advanced recycling" under any state's laws.

Putative Intervenors do not manufacture, sell, or promote the polymers that pollute California's beaches and clog its landfills. Nonetheless, they claim to fear that they "could be" subject to unidentified "related claims" by Defendants, although they do not (and cannot) allege that any Defendant has threatened to bring a claim against them. *Id*. Despite all this, Putative Intervenors want this Court's permission to intervene to request essentially the same advisory opinion ExxonMobil already seeks, that is, a judicial decree that "advanced recycling is recognized and permitted by law, including in Texas," and that they are "lawfully permitted to establish, participate, and promote" recycling. *Id*. ¶ 44.

## IV.     The Court should deny permissive intervention.

This Court should deny permissive intervention because the proposed Complaint in Intervention does not allege a viable claim or live case or controversy. Intervention should also be denied because (1) Putative Intervenors' claims do not raise common issues of law or fact with ExxonMobil's claims; (2) intervention of four more parties would cause delay and prejudice; (3) ExxonMobil can adequately represent itself; and (4) Putative Intervenors are not needed as

parties to develop any relevant facts.

### A. The proposed Complaint in Intervention does not state a viable or ripe claim.

To assert claims against Defendants, Putative Intervenors must establish that this Court has "subject matter jurisdiction to decide the new claim." *Chambers Medical Foundation*, 236 F.R.D. at 302. This Court only has subject matter jurisdiction to determine live cases or controversies. U.S. Const. art. III, § 2, cl. 1. The Constitution "requires that parties seeking to invoke federal-court jurisdiction demonstrate that they have a legally cognizable interest or personal stake in the outcome of the case." *Payne v. Progressive Financial Servs., Inc.*, 748 F.3d 605, 607 (5th Cir. 2014). Neither "claim" alleged in the proposed Complaint in Intervention is viable or ripe.

First, the Putative Intervenors' "tortious interference with prospective business" claim is wholly speculative. It is based on events that have not yet happened: the possibility that so many potential customers of ExxonMobil's "advanced recycling" will, sometime in the future, choose not to buy its output due to Defendants' statements that ExxonMobil may end its "advanced recycling" program, which would impact Putative Intervenors' efforts to establish recycling programs. ECF 65 ¶ 38. But ExxonMobil does not allege that it plans to reduce or eliminate "advanced recycling." To the contrary, it alleges that Cyclyx International, LLC, is building a "circularity center" in Houston and plans to build a second center in Fort Worth funded in part by ExxonMobil. ECF 1 ¶ 31. ExxonMobil already operates an advanced recycling facility in Baytown, and it claims to be "committed to increasing its advanced recycling capacity" and to have pledged $200 million to expand that capacity significantly. *Id.* ¶ 60. Plaintiff Intervenors allege no facts supporting any current threat to their recycling efforts from the Defendants' statements about ExxonMobil. Indeed, ExxonMobil itself announced a $200 million pledge on November 21, 2024, *after* Defendants made the statements at issue in this case, stating it "is

continuing to develop advanced recycling projects at manufacturing sites in North America, Europe and Asia."[3]

Putative Intervenors also fail to allege facts supporting essential elements of a "prospective business" claim. For example, the tort requires proof that "the formation of a contract was reasonably probable." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App. – Houston [1st Dist.] 2006, pet. denied). But Putative Intervenors identify no "reasonably probable" contract that was not, or will not be, consummated due to Defendants' statements. Nor do they allege facts showing that Defendants ***knew about*** their "prospective business" and ***intentionally*** interfered with it, another essential element. *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001). They allege only that a different city's recycling collaboration – Houston's – was "highly publicized" and that ExxonMobil and Cyclyx have publicized "plans" to develop "future" recycling collaborations in unidentified "municipalities throughout Texas (and beyond)." ECF 65 ¶ 39. If a defendant does not have actual knowledge of the plaintiff's prospective contract or business relations, its alleged interference cannot be intentional and is not actionable. *Hill v. Heritage Res.*, 964 S.W.2d 89, 123 (Tex. App. – El Paso 1997, pet. denied).

Moreover, interference with prospective business claims are limited to relationships that "would have formed ***directly*** between the plaintiff and third parties" but for the defendant's interference. *Reed Migraine Centers of Tex., PLLC v. Chapman*, No. 3:14-CV-1204-N, 2015 WL 11120872, at *2 (N.D. Tex. Sept. 22, 2015) (emphasis added). Alleged third-party beneficiaries of ***other*** parties' relationships, as Putative Intervenors allege they are of ExxonMobil's relationships with potential purchasers of its recycling output, cannot state a claim for interference

---

[3] *See* https://corporate.exxonmobil.com/news/news-releases/2024/1121_exxonmobil-invests-200m-to-expand-advanced-recycling-in-texas.

with prospective business. *Id*. (finding no Texas authority "suggesting that a third party beneficiary may maintain an action for tortious interference with prospective business relations").

And, as noted above, the Putative Intervenors allege no facts showing any actual damages, another essential element. *Texas Disposal Sys. Landfill, Inc. v. Waste Management Holdings, Inc.*, 219 S.W.3d 563, 590-91 (Tex. App. – Austin 2007, pet. denied).

Putative Intervenors' declaratory judgment claim is even more tenuous. Such a claim is justiciable only if an "'actual controversy' exists between the parties to the action." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The dispute must be "definite and concrete, touching the *legal relations* of parties having *adverse legal interests*" and "admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126-27 (2007) (emphasis added). There is no definite, concrete controversy touching the legal interests of Defendants and Putative Intervenors about whether "advanced recycling is permitted by law in multiple states, including in Texas," or whether Putative Intervenors are "lawfully permitted to establish, participate, and promote the Recycling Collaboration." ECF 65 ¶ 44. Putative Intervenors do not allege, because they cannot, that any Defendant has ever claimed that "advanced recycling" or the Recycling Collaboration is illegal.

Nor does Putative Intervenors' vague fear of being sued by Defendants allege a ripe case or controversy. Putative Intervenors do not and cannot allege that any Defendant has threatened litigation against them, let alone made a litigation threat that is "specific and concrete," as required show a ripe claim or controversy. *Shields v. Norton*, 289 F.3d 832, 835-36 (5th Cir. 2002). This Court cannot anticipate disputes not currently before it where "[n]o person has sued" or taken steps to do so imminently. *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880,

884-85 (N.D. Tex. 2008).

The proposed Complaint in Intervention fails to allege a ripe controversy that would support subject matter jurisdiction, so this Court can deny intervention on that basis alone.

### B. The Rule 24(b) factors weigh heavily against intervention.

#### 1. Putative Intervenors' claims do not present common questions of law or fact with ExxonMobil's claim that Defendants defamed it.

Putative Intervenors allege two superficially similar claims to those of ExxonMobil: (1) tortious interference with prospective business relations; and (2) a declaration that "advanced recycling" is legal in Texas. Neither justifies intervention, however.

First, Putative Intervenors' tortious interference with prospective business claims, do not justify intervention. As noted, Putative Intervenors do not allege interference by Defendants with any of their *own* business relationships. Instead, their claim is based on a professed fear that Defendants' statements might harm ***ExxonMobil's*** relationships with ***potential*** buyers of its "advanced recycling" output. Without alleging interference with their *own* direct business relationships, they cannot state an interference claim against Defendants. *Reed*, 2015 WL 11120872, at *2. This Court should not grant permissive intervention just to have Putative Intervenors allege a nonviable claim.

Likewise, Putative Intervenors' declaratory judgment claim does not justify intervention because, to the extent it is understandable, it concerns those government entities' promotion of recycling to their constituents and their role in local recycling collaborations, not ExxonMobil's promotion of plastics and its operation of an "advanced recycling" plant. *Compare* ECF 65 ¶ 44 *with* ECF 1 ¶¶ 135-39. ExxonMobil wants a declaration (in reality, an advisory opinion) that ***its*** advanced recycling is legal in Texas and other states, while Putative Intervenors want a declaration (similarly, an advisory opinion) that ***their*** disparate actions are legal.

Putative Intervenors cite no case where a party was granted plaintiff-intervenor status to

assert nonviable and factually distinct claims. In *EEOC v. Wellpath LLC*, the court allowed an individual to intervene in an employment discrimination lawsuit the EEOC had filed against a company because the intervenor was the alleged discrimination victim with an obviously closely related claim. No. 5:20-CV-1092-DAE, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021). The other cases Putative Intervenors cite were patent infringement lawsuits where additional potential infringers of the patent-in-suit were granted defendant-intervenor status, which offered obvious efficiencies and reduced the potential for conflicting judicial rulings on the same patents.[4] In those cases, unlike here, adjudication of the original parties' claims directly affected the intervenors' claims or defenses.

### 2. Intervention will cause prejudice, added expenses, and delay.

Adding Plaintiff Intervenors would convert this from an already-complex seven-party case to an eleven-party case, with no discernable benefit to the Court or parties. "Additional parties always take additional time." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (affirming denial of intervention in favor of *amicus* participation). As parties, Putative Intervenors could file four more sets of motions and briefs, serve four more sets of written discovery, ask four more sets of questions at depositions, and otherwise expand the scope of the case, for no discernable benefit. *See Rogers v. 12291 CBW, LLC*, No. 1:19-CV-00266-MJT, 2021 WL 11247562, at *8 (E.D. Tex. Dec. 13, 2021) ("[T]he prejudice to this Court and to the current

---

[4] *Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 258 (E.D. Tex. 2006) (permitting party who supplied accused products to intervene as defendant); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-CV-448-JDL, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010) (permitting intervention of defendant when intervenor's components were integrated into accused products); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00235-JRG, 2017 WL 6059303, at *6 (E.D. Tex. Dec. 7, 2017) (permitting intervention of party that had sold infringing products and agreed to indemnify defendant); *Uniloc 2017 LLC v. AT&T Mobility LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117, at *6 (E.D. Tex. Apr. 23, 2019) (permitting intervention of party that had sold product implementing alleged infringing feature).

Parties increases with the rising number of filings and delays."); *see also* Fed. R. Civ. Proc. 1 (civil procedure rules should be used "to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Texas v. United States*, No. 6:24-cv-00306, 2024 WL 4039580 at *5 (E.D. Tex. Sept. 3 2024) (allowing intervention would "risk[] detracting from the federal rules' stated goal of speedy and inexpensive determination of the action. See Fed. R. Civ. P. 1."). This added complexity, delay, and expense argue strongly against intervention.

### 3. ExxonMobil can adequately represent its own interests.

Putative Intervenors do not, and cannot, claim that one of the world's wealthiest corporations needs their intervention to receive adequate representation. Indeed where, as here, the party "seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate ***adversity of interest***, ***collusion***, ***or nonfeasance***." *Bush*, 740 F.2d at 355 (emphasis added). This presumption applies because Putative Intervenors seek the same objective as ExxonMobil and their claims almost wholly mimic ExxonMobil's claims. Putative Intervenors cannot overcome the presumption of adequate representation. They do not claim to have an ***adversity of interest*** with ExxonMobil; indeed, their proposed Complaint in Intervention is a near-facsimile of ExxonMobil's Complaint. They do not claim ExxonMobil and Defendants are ***colluding*** to their detriment. Nor do they claim ***nonfeasance*** by ExxonMobil. All they claim is that their interests as governmental entities differ from ExxonMobil somewhat, as they are concerned with alleged economics harm to their "constituents and community," ECF 54 at 13, but they do not, and cannot, state a claim for such purported damages. In any case, identifying ***different*** "interests" does not show an ***adversity*** of interests justifying permissive intervention; there must be conflicting interest that diverge "in a manner germane to the case." *Texas v. United States*, 805 F.3d 653, 662 (5th

Cir. 2015). For example, in *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025), the Fifth Circuit affirmed the denial of permissive intervention when the proposed intervenor identified only its status as a private party focused on its members' interests as distinct from the government's public interest, when both sought to uphold a challenged rule. "'[T]he mere possibility that a party may at some future time' diverge in its interest 'cannot alone show inadequate representation.'" *Id*. The fact that interests "*may* at some future time diverge, it does not rebut the first presumption of adequate representation." *Id.* (quoting *Bush*, 740 F.2d at 358) (emphasis in *Bush*).

### 4. Putative Intervenors will not contribute to the development of facts material to ExxonMobil's claims against Defendants.

Finally, Putative Intervenors argue they will contribute to the case's factual development by proffering evidence of the purported impact that Defendants' statements had on their communities, a perspective they suggest ExxonMobil does not understand.[5] But this hardly justifies adding **four parties** to this litigation. Putative Intervenors do not claim ExxonMobil is unable to present such evidence through its own witnesses or third parties, including these governmental entities themselves. *See Texas v. United States Dep't of Homeland Sec.*, No. 6:24-CV-00306, 2024 WL 4039580, at *5 (E.D. Tex. Sept. 3, 2024) ("movants' intervention would not significantly amplify development of such facts" when their evidence could be developed by existing parties), *aff'd*, 2024 WL 4404421 (5th Cir. Oct. 4, 2024). "Community impact" testimony has little discernable relevance to the central question in this case – Did Defendants make actionably false, unprivileged statements that defamed and damaged ExxonMobil? To the extent "community impact" evidence carries any relevance, it could be presented through non-party

---

[5] Putative Intervenors distinguish between institutional and individual representation, ECF 63 at 13, but they are not acting in an "institutional" capacity here, and that distinction is material only when an intervenor's "interests diverge from the putative representative's interests in a manner germane to the case." *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015).

witnesses and *amicus* briefing without intervention.

## V. Conclusion and prayer.

For these reasons, the Court should deny the Putative Intervenors' motions to intervene.

| | |
|---|---|
| Dated: June 16, 2025 | Respectfully submitted, |
| | */s/ Peter D. Kennedy* |
| Michael Forest Nelson | Peter D. Kennedy |
| John Holman Barr | James Alan Hemphill |
| Burt Barr & Associates | Graves Dougherty Hearon & Moody, PC |
| PO Box 223667 | 401 Congress Avenue, Suite 2700 |
| Dallas, TX 75222 | Austin, TX 78701 |
| (214) 943-0048 | (512) 480-5764 |
| fnelson@bbarr.com | (512) 536-9908 |
| jbarr@bbarr.com | pkennedy@gdhm.com |
| | jhemphill@gdhm.com |
| *Counsel for Defendant Baykeeper, Inc.* | |
| | *Counsel for Defendant Surfrider Foundation* |
| Scott E. Gant (*pro hac vice*) | |
| Boies Schiller Flexner LLP | Deborah Greenleaf |
| 1401 New York Avenue, NW | Fallin Schwartz |
| Washington, DC 20005 | Tribble & Ross |
| (202) 237-2727 | 6371 Richmond Avenue |
| sgant@bsfllp.com | Houston, TX 77057 |
| | (713) 252-9575 |
| *Counsel for Defendant Sierra Club* | dgreenleaf@tribblelawfirm.com |
| | *Counsel for Defendant Heal the Bay, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ Peter D. Kennedy*