IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| EXXONMOBIL CORPORATION, | § | |
| Plaintiff, | § | |
| | § | |
| *v.* | § | Case No. 1:25-cv-00011 |
| | § | |
| ROBERT ANDRES BONTA, *et al.*, | § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF DEFENDANT
SURFRIDER FOUNDATION'S RULE 12(b) MOTION TO DISMISS**

TO THE HONORABLE MICHAEL J. TRUNCALE:

Defendant The Surfrider Foundation ("Surfrider") files this reply in support of its Rule 12(b) Motion to Dismiss and would respectfully show:

**I.    Introduction and summary.**

ExxonMobil's attitude seems to be "Sue them all and let the Court sort them out." Although all its claims are dubious, its case against Surfrider is especially weak. Recognizing this, ExxonMobil's response to Surfrider's motion to dismiss relies heavily on legally inadequate allegations of "conspiracy" to try to save its claims against this small nonprofit. It fails.

First, ExxonMobil is flat wrong that this Court may attribute to Surfrider, for personal jurisdiction purposes, other Defendants' Texas contacts. This Court cannot follow out-of-circuit cases that conflict with Fifth Circuit precedent. Even if it could, ExxonMobil only alleges that Surfrider cooperated with others to do something *legal* – file a lawsuit – not to engage in *illegal* acts. Because this Court may only look at Surfrider's Texas contacts to determine personal jurisdiction, the absence of any relevant contacts requires dismissing Surfrider.

Second, even if this Court had jurisdiction over Surfrider, ExxonMobil fails to state a claim against it. ExxonMobil still has not identified a *single* allegedly defamatory statement Surfrider

made.  Its "conspiracy" allegations are insufficient to attribute other Defendants' statements to Surfrider.  The sole statement that ExxonMobil alleges Surfrider published – a comment by Baykeeper, not Surfrider – is not actionable because it is privileged and states Baykeeper's opinion, not verifiable facts.  ExxonMobil's tag-along "tortious interference" claims likewise fail.

## II.    Surfrider is not subject to personal jurisdiction in this Court.

Surfrider has cited two Fifth Circuit cases, *Chow v. United States* and *Delta Brands v. Danieli Corp.*, unambiguously holding that ExxonMobil must establish personal jurisdiction based **solely** on Surfrider's Texas contacts.  Dkt. 48 at 9.[1]  ExxonMobil wants this Court to ignore those cases because they are "unpublished," and instead follow out-of-circuit cases it claims allow amalgamating all alleged conspirators' forum contacts.  Dkt. 96 at 12.  ExxonMobil must make this argument for a change in Fifth Circuit law to that court, which held in *Chow* that "we implicitly recognized that personal jurisdiction over one defendant conspirator is not sufficient to establish personal jurisdiction over a nonresident coconspirator" in *Thomas v. Kadis*, 748 F.2d 276, 282 (5th Cir. 1984), a published decision.  2021 WL 3438365, at *2 (emphasis added).  Indeed, the Fifth Circuit rejected ExxonMobil's **exact** contention in *Thomas*, holding that neither

> conclusory allegations of conspiracy by the California defendants based upon their acts in California, nor the alleged effects of this conspiracy in Texas, show a claim of sufficient minimum contacts with Texas that would support personal jurisdiction of Texas courts against these defendants for their acts in California.

748 F.2d at 282.  The basis for personal jurisdiction over Surfrider is even weaker because, unlike *Thomas*, no Defendant is located in Texas or took action here giving rise to ExxonMobil's claims.

---

[1] *Chow v. United States*, No. 20-30503, 2012 WL 3438365, at *2 (5th Cir. Aug. 5, 2021) (per curiam) (rejecting argument that plaintiffs' "civil conspiracy claim is enough to establish personal jurisdiction over all of the defendants," noting that "[t]here is no authority from this court supporting" that contention); *Delta Brands, Inc. v. Danieli Corp.*, 99 Fed Appx. 1, 5 (5th Cir. 2004) (plaintiff must show defendant "individually, and not as part of the conspiracy, had minimum contacts with Texas").

There is no question that *Thomas*, *Chow*, and *Delta Brands* remain the law of this Circuit.[2]  The Texas Supreme Court agrees; even when there is a Texas coconspirator, due process prevents "the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state." *Nat. Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995).  Therefore, even if ExxonMobil's conspiracy allegations were legally sufficient (they are not, *see* Section III.A, below), they could not support personal jurisdiction over Surfrider in this Court.[3]

ExxonMobil cites neither facts nor law that would allow this Court, consistent with due process, to exercise personal jurisdiction over Surfrider.  ExxonMobil falsely claims Surfrider's press release was published "in Texas," Dkt. 96 at 11, when the undisputed evidence shows it was written and published in California and not even sent to Texas media.  Dkt. 48, Ex. 1 ¶¶ 15-17.  ExxonMobil's reliance on *Keeton v. Hustler Magazine, Inc.*, is misplaced because, unlike Surfrider, the print publisher in *Keeton* regularly mailed and sold "thousands of magazines" into New Hampshire.  465 U.S. 770, 773-74.  Passive publication on a website is not a "contact" that supports personal jurisdiction.  *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (if a website "just posts information that people can see," "jurisdiction is unavailable,

---

[2] *See*, *e.g.*, *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 609 (E.D. Tex. 1994) (finding "no support in the Fifth Circuit" supporting plaintiffs' "contention that if this court has personal jurisdiction over one of the conspirators, it can exercise personal jurisdiction over the co-conspirators as well"); *Eagle Metal Prod., LLC v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 593 (N.D. Tex. 2009) (following *Delta Brands*); *Rusesabagina v. GainJet Aviation S.A.*, No. SA-20-CA-01422-XR, 2022 WL 17331272, at *6 (W.D. Tex. Nov. 29, 2022) (following *Chow*); *Fed. of State Massage Therapy Bds. v. Mendez*, No. 4:17-cv-2936, 2018 WL 534540, at *5 n. 9 (S.D. Tex. Jan. 24, 2018) (following *Delta Brands* and collecting cases).

[3] ExxonMobil wrongly conflates its inapplicable "conspiracy theory of jurisdiction" with "ordinary agency law."  Dkt. 96 at 12.  Its Complaint does not, and cannot, allege that the other Defendants were Surfrider's agents; it relies solely on its (inadequate) conspiracy allegations in a legally baseless effort to attribute their purported Texas contacts to Surfrider.  *Id.* at 1, 10-11.

full stop").  ExxonMobil argues that Surfrider's website is "interactive" because it solicits donations, Dkt. 96 at 10, but the website in *Johnson* was interactive, too – it showed ads tailored to Texas visitors and sold merchandise to Texans.  *Id*. at 317-18.  But "that doesn't matter" in a libel suit – what matters is "whether [the defendant] aimed *the alleged libel* at Texas."  *Id*. at 320, 322 (emphasis in original).

The uncontested facts show that Surfrider's press release was not "aimed at" Texas:  it announced a lawsuit filed in California, by California plaintiffs, claiming ExxonMobil's California acts violated California law; it did not mention Texas; it used no Texas sources; it was not sent into Texas; the press conference was in California; and Surfrider's Texas volunteers played no role in the lawsuit, press release, or press conference.  Dkt. 48 Ex. ¶¶ 13-21.[4]  ExxonMobil does not cite a single case supporting personal jurisdiction under remotely similar facts, Dkt. 96 at 10-11, and it ignores *Johnson* and the other analogous cases Surfrider cited.[5]  This Court should dismiss ExxonMobil's claims against Surfrider for lack of personal jurisdiction.

## III.    ExxonMobil fails to state a claim against Surfrider.

### A.    ExxonMobil fails to state a claim against Surfrider based on other Defendants' statements or conduct.

ExxonMobil premises nearly all its claims against Surfrider on its assertion that all Defendants "were working together in partnership and collaboration," supposedly making Surfrider liable for all statements and acts of all Defendants.  Dkt. 97 at 1.  But the alleged

---

[4] ExxonMobil's response refers to its conclusory assertion that, at some unidentified time, Surfrider took some undefined "direct action" against its "advanced recycling," Dkt. 96 at 10, but the undisputed evidence shows that Surfrider did no such thing.  Dkt. 48 Ex. 1 ¶ 22.  Moreover, ExxonMobil's claims against Surfrider do not arise out of that alleged "direct action."

[5] *See* Dkt. 48 at 10-11.  *See also USPlabs Jack3d, LLC v. MMRNV, LLC*, No. 3:12-CV-1605, 2012 WL 12893435, at *3-4 (N.D. Tex. Oct. 31, 2012) (defendant who made allegedly defamatory statements on Nevada television about Texas company's product, without referring to Texas or relying on Texas sources, is not subject to personal jurisdiction in Texas).

"partnership and collaboration" is nothing but the parties' cooperation in filing the California lawsuits. *Id*. ExxonMobil alleges no facts showing that Surfrider intended anything ***illegal***; its claim that Surfrider "conspired" is based on nothing but unremarkable litigation cooperation.

Texas law requires ExxonMobil to plead and prove that Surfrider had the "*specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means.*" *First United Pent. Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (emphases added). A "conspiracy to defame" specifically requires a meeting of the minds or agreement to defame the plaintiff. *Backes v. Misko*, 486 S.W.3d 7, 15 (Tex. App. – Dallas 2015, pet. denied); *In re Lipsky*, 441 S.W.3d 530, 551 (Tex. App. – Fort Worth 2013, orig. proceeding). ExxonMobil pleads no facts showing that Surfrider had such an intent.

ExxonMobil cites California Attorney General Bonta's statement that parties "were working together 'in partnership and collaboration.'" Dkt. 97 at 1. Bonta was referring to the lawsuits, not some nefarious plot,[6] so his statement cannot support a reasonable inference that any Defendant, let alone Surfrider, agreed to commit ***unlawful*** acts, as required to prove conspiracy.

Similarly, ExxonMobil quotes part of Heal the Bay's press release calling the nonprofits' lawsuit "part of 'a coordinated campaign." Dkt. 97 at 11. But the full quote said it was part of "coordinated campaign to ***legally*** hold Big Oil accountable for the production of wasteful and harmful single-use plastics."[7] That statement cannot reasonably support the conclusion that the nonprofits had agreed to employ ***illegal*** methods. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (allegations of lawful parallel conduct does not raise inference of conspiracy).

---

[6] *See* press conference video at https://www.youtube.com/watch?v=OR24jmO_uNY (last visited June 26, 2025), cited ExxonMobil's Complaint (Dkt. 1) at 17 n.18.

[7] https://healthebay.org/heal-thebay-sues-big-plastic/ (last visited June 26, 2025) (emphasis added), cited in footnote 57, page 30 of the Complaint.

ExxonMobil's claim of "concerted action," Dkt. 97 at 7-8, shows only that the parties worked together. So do countless joint parties in countless lawsuits; ExxonMobil cannot conflate cooperation with conspiracy. The *facts* ExxonMobil alleges show an agreement to achieve a legal objective by legal means; they do not support a probable inference of the polar opposite – an *unlawful* conspiracy. *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

ExxonMobil's "conspiracy" pleading failure has two consequences. First, its conspiracy claim must be dismissed. Second, it means ExxonMobil's claims against Surfrider must stand or fall on Surfrider's own statements and conduct alone. They fall, as shown below.

**B.      ExxonMobil fails to state a claim against Surfrider based on Surfrider's own statements or conduct.**

As noted, ExxonMobil's Complaint does not identify a single allegedly defamatory statement made by Surfrider. *See* Dkt. 48 at 14. Its response effectively concedes this, because it only identifies statements made by other defendants, not Surfrider. Dkt. 97 at 3-4. The only allegedly defamatory statement that ExxonMobil alleges Surfrider even *published* was made by Baykeeper, and that statement is not actionable, as shown in Surfrider's motion and below.

The only act by Surfrider that ExxonMobil refers to in its response is the publication of Surfrider's press release, and the only statement in that release ExxonMobil claims was defamatory was made by Baykeeper, not Surfrider. Dkt. 97 at 12. ExxonMobil's Complaint does not, however, allege that Surfrider is liable for Baykeeper's statement, *see* Dkt. 1 ¶¶ 92-93, so it cannot avoid dismissal based on that unpled statement. Given ExxonMobil's failure to allege a plausible conspiracy that would make Surfrider liable for other Defendants' statements, the Court can stop here and dismiss all of ExxonMobil's claims against Surfrider.

But even if ExxonMobil **had** pled Baykeeper's statement as a basis for Surfrider's liability, its claim still would fail, because Surfrider's press release accurately quoted Baykeeper, which

accurately described the lawsuit's allegations.  Dkt. 48 at 14-16.  Accurate reports of a lawsuit's contentions – like Surfrider's report of Baykeeper's contentions – are privileged under both Texas and California law.  *Id.* at 17-21.  In response, ExxonMobil claims that Surfrider's publication of Baykeeper's statement does not fall within any privilege, Dkt. 97 at 20-21, but ExxonMobil badly misconstrues both Texas and California law.

First, ExxonMobil argues that only *absolute* privileges apply in Texas defamation and business disparagement cases.  Dkt. 97 at 20.  This is wrong.  ExxonMobil misreads *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987), as holding that qualified privileges do not apply to either business disparagement (sometimes called "injurious falsehood") or defamation.  *Id.*  The Court in *Hurlbut* did not define the universe of Texas privileges; it simply pointed out, logically, that because malice is an essential element of business disparagement, and because malice overcomes qualified privilege, proving business disparagement defeats qualified privilege.  *Id.*  But *Hurlbut* was not a defamation case; Texas case law is replete with defamation cases applying common law qualified privileges.[8]

Second, ExxonMobil confuses the common law fair report privilege with Texas' statutory media fair report privilege.  Dkt. 97 at 21 (discussing Tex. Civ. Prac. & Rem. Code § 73.002(a)).  This is a red herring, because Surfrider's motion did not invoke the statutory privilege, but rather the ample Texas authority recognizing a common law privilege to accurately republish a lawsuit's allegations.  *See* Dkt. 48 at 17-19.  Critically, ExxonMobil does **not** contend that its complaint

---

[8] *E.g.*, *KMBT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016) (discussing the "common-law privilege to report on judicial proceedings"); *Cox Media Group, LLC v. Joselevitz*, 524 S.W.3d 850, 860 n.12 (Tex. App. – Houston [14th Dist.] 2017, no pet.) (discussing common-law fair report privilege); *Rockman v. OB Hospitalist Group, Inc.*, No. 01-21-00383-CV, 2023 WL 3311548 at *17-21 (Tex. App. – Houston [1st Dist.] May 9, 2023, no pet.) (discussing and applying, to affirm dismissal of defamation plaintiff's claims, the qualified common-interest privilege).

overcomes that privilege, only (wrongly) that the privilege is inapplicable.  Dkt. 97 at 21.  The Court, therefore, may stop here and dismiss ExxonMobil's claims against Surfrider.

Moreover, Surfrider showed that its press release is *absolutely* privileged under California's broader statutory fair report privilege, which applies to press releases that accurately report a lawsuit's allegations.  *See* Dkt. 48 at 19-21.  In response, ExxonMobil illogically argues that Surfrider forfeited a privilege that covers press releases by publishing its release on the most common place for them – its website.  Dkt. 97 at 21.  ExxonMobil cites *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450, 2023 WL 3919469 (N.D. Cal. June 9, 2023), but *Wisk Aero* involved both blog posts and a press release; the parties agreed the blog post fell outside the privilege, but the court ruled that "the press release is clearly protected by the doctrine."  *Id*. at *6. *Aero* supports Surfrider, not ExxonMobil.

Finally, Surfrider showed that Baykeeper's statements are non-actionable opinion and hyperbole.  Dkt. 48 at 16-17.  In response, ExxonMobil argues that whether Exxon "brainwashed everyone," whether its plastics are "poisoning waterways, wildlife and people" and "killing us a little bit more every day," and whether plastic recycling is "good for the planet" are statements of verifiable fact, Dkt. 97 at 13, when they are obviously hyperbole and matters of subjective opinion, not actionable libel.  *See* Dkt. 48 at 16-17.[9]

---

[9] *See, e.g.*, *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 562 (5th Cir. 1997) (statement that "the people of Texas are being poisoned" by spreading toxic sludge on ranchland is an opinion, not a verifiable fact); *Ollman v. Evans*, 750 F.2d 970, 991-92 (D.C. Cir. 1984) (article accusing professor of extolling "the beneficial nature of 'brainwashing'" is an opinion, not a verifiable fact).  ExxonMobil's citation to *Floyd v. Aalaei*, No. 4:15-CV-00525, 2016 WL 4472777, *2 (E.D. Tex. Aug. 25, 2016), suggests that case held that "brainwashed" and "gaslighted" are verifiable statements of fact, Dkt. 97 at 14, but those words were not at issue in *Floyd*.  Rather, the defendant in *Floyd* had accused an attorney on RipoffReport.com of fabricating criminal charges against her and stealing her house, which "deliberately mischaracterize[d] the facts underlying the property transfer" in question.  *Id*.

**C.    ExxonMobil failed to plead facts showing that Surfrider acted with actual malice, and it failed to plead negligence as an alternate standard of fault.**

Surfrider has shown that ExxonMobil pled no facts showing Surfrider acted with "actual malice." Dkt. 48 at 24. In response, ExxonMobil dubiously claims it is not a public figure "for purposes of plastic recycling," so it need only plead and prove negligence. Dkt. 97 at 18. It claims, falsely, that "Defendants do not deny that ExxonMobil has adequately pleaded negligence," *id.* at 17, when Surfrider expressly argued that ExxonMobil "pleads no facts to support a negligence claim, and in fact never uses the words 'negligence' in its Complaint." Dkt. 48 at 22 n.7.

ExxonMobil also argues that Surfrider had an "economic motive" to knowingly lie in order to raise funds, Dkt. 97 at 17-18, but all nonprofits fundraise; this is no evidence of actual malice. *See, e.g.*, *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (alleged profit motive is not actual malice). And again, ExxonMobil relies on its meritless conspiracy theory that Surfrider is responsible for other Defendants' states of mind. Dkt. 97 at 15-16. As shown above, this argument fails, as does ExxonMobil's actual malice pleading, as a matter of law.

**D.    ExxonMobil's tortious interference claims are inadequately pleaded.**

Surfrider has shown that ExxonMobil's "tortious interference with contract" claim is fatally conclusory. Dkt. 48 at 26-28. In response, ExxonMobil cites one easily distinguished case, *Monitronics Int'l, Inc. v. Skyline Sec. Mgmt., Inc.*, No. 3:16-CV-02716-M, 2017 WL 2882624 (N.D. Tex. July 5, 2017). In *Monitronics*, the court held that the plaintiff's complaint did not need to identify the contracts allegedly interfered with because the defendant admittedly knew about them. *Id.* at *5-6. As another court recognized, in *Monitronics* "the details of those contracts were known by both parties to the suit," so it was unnecessary for the plaintiff's complaint to specify them. *Antero Res. Corp. v. C&R Downhole Drilling, Inc.*, No. 4:16-CV-668-Y, 2021 WL 9969511, at *3 n.2 (N.D. Tex. June 8, 2021). Not so here – ExxonMobil neither identifies the

alleged contracts nor alleges Surfrider knew of them. *Monitronics* does not excuse ExxonMobil from meeting the binding Fifth Circuit authority requiring it to include "clear and specific description, evidence, or allegations regarding the details of the alleged interfered-with contract," with "a highly detailed and specific account (or evidence allowing the court to flesh out a highly specific account) of the alleged interference." *Cuba v. Plyant*, 814 F.3d 701, 718 (5th Cir. 2016). Nor does ExxonMobil plead facts showing Surfrider had the requisite specific intent to interfere with known contracts, citing only other parties' statements about the California litigation that say nothing about ExxonMobil contracts.

As for its "tortious interference with prospective business" claim, ExxonMobil relies solely on Bonta's acts as alleged predicate torts, which, given ExxonMobil's inadequate conspiracy allegations, cannot be imputed to each of the remaining defendants.

### E.    There is no justiciable controversy between ExxonMobil and Surfrider about the legality of "advanced recycling" in Texas or elsewhere.

Finally, Surfrider showed that ExxonMobil's declaratory judgment claim does not present a live case or controversy because Surfrider has never claimed ExxonMobil's "advanced recycling" is illegal in Texas or anywhere else. Dkt. 48 at 29-30. In response, ExxonMobil cites only Bonta's statements about "advanced recycling." Dkt. 97 at 28-29. But Bonta's statements are not Surfrider's, so they are no evidence of a justiciable dispute *between Surfrider and ExxonMobil*. The declaratory judgment claim against Surfrider should be dismissed.

## IV.    Conclusion and prayer.

For these reasons, the Court should dismiss ExxonMobil's claims against Surfrider and grant such other and further relief to which Surfrider may be justly entitled.

Respectfully submitted,

*/s/  James A. Hemphill*
Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
James A. Hemphill
Texas Bar No. 00787674
jhemphill@gdhm.com
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5764
(512) 480-9908 (Fax)

Heather E. Murray (admitted *pro hac vice*)
hem58@cornell.edu
Daniela del Rosario Wertheimer (admitted *pro hac vice*)
ddw83@cornell.edu
Jared Carter (admitted *pro hac vice*)
jc2537@cornell.edu
Cornell Law School First Amendment Clinic
Myron Taylor Hall
Ithaca, NY 14853

**ATTORNEYS FOR DEFENDANT**
**THE SURFRIDER FOUNDATION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following:

Michael Patrick Cash
Wade Thomas Howard
Liskow & Lewis PLC - Houston
First City Tower
1001 Fannin Street, Suite 1800
Houston, TX 77002
**Attorneys for Plaintiff**
**Exxon Mobil Corporation**

Robert William Setrakian
California Attorney General's Office
300 S. Spring Street
Los Angeles, CA 90027
**Attorneys for Defendant Robert Andres Bonta**

Scott E. Gant
Boies Schiller Flexner LLP
1401 New York Ave NW
Washington, DC 20005
**Attorneys for Defendant Sierra Club, Inc.**

Deborah Greenleaf
Tribble & Ross
6371 Richmond Ave
Houston, TX 77057
**Attorneys for Heal the Bay, Inc.**

Michael Forest Nelson
John Holman Barr
Burt Barr & Associates
PO Box 223667
Dallas, TX 75222-3667
**Attorneys for Defendant Baykeeper, Inc.**

*/s/James A. Hemphill*
James A. Hemphill
