IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>    Plaintiff,<br><br>CITY OF BAYTOWN, TEXAS; CITY OF BEAUMONT, TEXAS; CITY OF MONT BELVIEU, TEXAS; AND CHAMBERS COUNTY, TEXAS,<br><br>    Plaintiff-Intervenors,<br><br>v.<br><br>ROBERT ANDRES BONTA A.K.A. ROB BONTA, IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; BAYKEEPER, INC.; AND INTERGENERATIONAL ENVIRONMENT JUSTICE FUND LTD.<br><br>    Defendants. | Case No. 1:25-cv-00011-MJT |

**BAYTOWN, BEAUMONT, MONT BELVIEU, AND CHAMBERS COUNTY'S
JOINT REPLY IN SUPPORT OF THEIR MOTIONS TO INTERVENE**

The City of Baytown, Texas, the City of Beaumont, Texas, the City of Mont Belvieu, Texas, and Chambers County, Texas ("Intervenors") files this Joint Reply in support of their Motions to Intervene. In support, Intervenors alleges as follows:

**INTRODUCTION**

Defendants[1] do not provide a sound basis for arguinging that Intervenors fail to clear the low bar for permissive intervention. Rule 24(b)(1)(B) permits intervention by *anyone* who "has a

---

[1] Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper. Inc., (collectively, the "**US NGOs**"), Intergenerational Environment Justice Fund Ltd. ("**IEJF**"), and Robert Bonta (with the US NGOs and IEJF, the "**Defendants**").

claim or defense that shares with the main action *a* common question of law or fact." Intervenors' claims clearly share common questions of law and fact with Exxon Mobil Corporation's ("**ExxonMobil**") complaint: they address the same key issue of whether advanced plastics recycling is a valid and legal process. Yet, Intervenors also have important interests that ExxonMobil cannot adequately represent. Intervenors are local governments that must protect the well-being of their communities. Defendants wish to undermine Interventors' policies on the use of advanced recycling which is important to Intervenors' communities and economies. Interventors will suffer real world consequences if Defendants were to somehow prevail on their argument that advanced plastics recycling is a fraud. As explained below, their arguments all fail, and this Court should grant the motions to intervene.[2]

## ARGUMENT AND AUTHORITIES

Federal Rule of Civil Procedure 24(b)(1)(B) permits "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1)(B). The Fifth Circuit has a "broad policy favoring intervention," *Wal-Mart Stores, Inc.*, 834 F.3d 562 (5th Cir. 2016), and the low threshold for intervention is plainly met here.

**I.    Intervenors' Claims Share a Common Question of Law or Fact with ExxonMobil.**

Intervenors' claims for tortious interference and declaratory judgment "arise largely from the same set of facts" as ExxonMobil's claims. *See E.E.O.C. v. Comm. Coating Serv., Inc.*, 220 F.R.D. 300, 302 (S.D. Tex. 2004). As Defendants themselves acknowledge, *see* US NGO Opp. at 5; IEJF Opp. at 6, Intervenors' tortious interference claims implicate the same defamatory statements that ExxonMobil challenged, *see* Int. Compl. ¶ 30. To establish the tortious interference claims, Intervenors must show that Defendants' "conduct was independently tortious or unlawful."

---

[2] *See Motions to Intervene*, Dkt. 39; Dkt. 54; Dkt 62; Dkt. 63 (collectively, "**Mots.**").

*Cantu v. Falcon Int'l Bank*, 2018 WL 1831651, at *3 (Tex. App.—San Antonio Apr. 18, 2018, pet. denied). Accordingly, Intervenors' claims involve the same legal questions as ExxonMobil's defamation and disparagement claims. Moreover, both Intervenors and ExxonMobil seek a declaration that advanced recycling is valid and legal in Texas. ExxonMobil Compl. ¶ 140; Int. Compl. ¶ 44.

Nevertheless, the US NGOs and IEJF assert that Intervenors' claims do not share common questions of fact or law with ExxonMobil's claims. US NGO Opp. at 11; IEJF Opp. at 5. Specifically, IEJF notes that Intervenors' claims raise some *additional* issues, such as whether the statements proximately caused Intervenors' harm. *See* IEJF Opp. at 6. However, intervention is proper even if an intervenor's claims raise separate or additional legal issues not present in the main action. *Commercial Coating*, 220 F.R.D. at 302. The intervenor's claims need only share "*a common question of law or fact*" with the main action. Fed. R. Civ. P 24(1)(B) (emphasis added). It is not required "that *all* questions of fact or law raised by the dispute be common." *Decatur Ventures, LLC. v. Stapleton Ventures, Inc.*, 2005 WL 756170, at *4 (S.D. Ind. Jan. 13, 2005).

IEJF's cases are inapposite. In *Bay Mills Indian Cmty v. Snyder*, for example, a Native American tribe sought to intervene based only on a generalized interest in the meaning of the term "Indian land" in multiple statutes. 720 F. App'x 754, 758 (6th Cir. 2018). Permitting intervention was improper there as it would be akin to "allow[ing] any employer to intervene in any Title VII suit." *Id.* In contrast, the Intervenors have asserted claims against Defendants rooted in the very same conduct that ExxonMobil alleges. This case is also nothing like *Menggui Zhang v. Rothrock*, which IEJF cites in arguing that, because Intervenors were not the subject of Defendants' defamatory statements, they "had [no] involvement in the events that make up the facts of t[he] case." 2006 WL 8441176, at *3 (E.D. Tex. Dec. 13, 2006). Intervenors' specifically allege that

they, along with ExxonMobil, were directly targeted and impacted by the tortious conduct that lies at the heart of this suit. Int. Compl. ¶ 35. Accordingly, Intervenors satisfy Rule 24(b)(1)(B), because their claims share a common question of law or fact with ExxonMobil.

## II.  The Discretionary Factors All Favor Intervention.

### A.  The Intervenors' Interests Are Not Adequately Represented by ExxonMobil.

Intervenors need not show that their interests are inadequately represented by the existing parties to permissively intervene. *U.S. Commodity Futures Trading Comm'n v. PrivateFX Glob. One*, 778 F. Supp. 2d 775, 785 (S.D. Tex. 2011) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 & n.40 (5th Cir. 1984) ("***NOPSI***")); *Missouri v. U.S. Food & Drug Admin.*, 2025 WL 1223581, at *4 (N.D. Tex. Apr. 28, 2025) (granting permissive intervention where intervenor was adequately represented). But a court has the discretion to consider adequate representation in analyzing permissive intervention. *PrivateFX Glob. One*, 778 F. Supp. 2d at 785.

While courts have recognized a presumption of adequate representation when the proposed intervenor shares the same ultimate objective as an existing party, *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014), that presumption does not apply here and Intervenors do not concede that it does, *see* IEJF Opp. at 9. While Intervenors acknowledge they may "share some similar aims as ExxonMobil," they expressly maintain they have "different interests." Mots. at 13; *see Brumfield*, 749 F.3d 339 at 345 (noting the "presumption does not apply" where "interests may not align precisely"). Intervenors have a separate ultimate objective from ExxonMobil in addressing the "economic and environmental harms suffered by [their] constituents and community." Mots. at 13.

IEJF mistakenly claims that Intervenors' separate economic interest is insufficient to show differing interests, IEJF Opp. at 9 (citing *NOPSI*), but the Fifth Circuit has explained that there is no "bar preventing all intervention premised on 'economic interests,'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 567–68 (5th Cir. 2016) (distinguishing *NOPSI*). And

3

the Fifth Circuit has "continued to hold that economic interests can justify intervention" where, as here, "they are directly related to the litigation." *Id.* Regardless, Intervenors' unique interests in this case are more than purely economic—they have public interests in the well-being of their communities, including the reduction of plastic waste going into their landfills and the reduction or elimination of plastic waste in the waterways of Southeast Texas. Mots. at 4.

Bonta's argument that Intervenors and ExxonMobil share the same ultimate objective by virtue of a joint venture or business partner relationship also fails. Bonta Opp. at 5. Courts in the Fifth Circuit have held that a business partner's independent interest is reason to grant intervention. *See State Farm Fire & Cas. Co. v. Black & Decker, Inc.*, 2003 WL 22966373, at *3 (E.D. La. Dec. 11, 2003); *Sonnier v. Tako Towing, Inc.*, 1992 WL 329723, at *7 (E.D. La. Nov. 2, 1992); *Cross Timbers Oil Co. v. Rosel Energy, Inc.*, 167 F.R.D. 457, 460 (D. Kan. 1996).

Even if a presumption applied, Intervenors have rebutted it by demonstrating an "adversity of interest" with ExxonMobil. *Brumfield*, 749 F.3d at 345. Governmental groups—such as Intervenors—have different interests than private entities like ExxonMobil, even when aligned on certain legal issues. In *Abbott*, the Fifth Circuit found an adversity of interest between a governmental group and private party, explaining that, even though the parties shared an objective, "private interests are different in kind from the public interests of the State," and "government actors . . . are public servants, not self-interested private parties." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022); *see Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002) ("Government agencies . . . must represent the public interest, not just the economic interests of one industry . . . That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue."); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994).

4

Bonta and the US NGOs argue that the public versus private distinction is not relevant, but they misstate the standard. Bonta Opp. at 5; US NGO Opp. at 13. They claim "the inquiry does not probe whether parties have *different* interests—it asks whether those interests are adverse." *Id.* But an adversity of interests only means that Intervenors' "interests diverge" from ExxonMobil's in a "relevant" manner—not that they are opposing. *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015); *Miller v. Vilsack*, 2022 WL 851782, at *3 (5th Cir. Mar. 22, 2022). And the public versus private distinction among parties is a relevant divergence. *Abbott*, 29 F.4th at 309; *Heaton*, 297 F.3d at 425. The US NGOs' reliance on *Louisiana v. Burgum* is misplaced. US NGO Opp. at 14. There, the Court noted an intervenor must "point[] to specific conduct showing that the party at issue inadequately represent[s] its interests." 132 F.4th 918, 923 (5th Cir. 2025). But Intervenors satisfy that standard by alleging, for instance, that they can provide "distinct evidence" regarding the impacts on their communities. *Id.*; Mots. at 14; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972); *Students for Fair Admissions, Inc. v. Univ. of Tex. at Aus.*, 338 F.R.D. 364, 371–72 (W.D. Tex. 2021). All that matters is whether ExxonMobil's representation of Intervenors' governmental interests "*may* be inadequate"—not that it will "for certain." *Abbott*, 29 F.4th at 308–09. Intervenors have plainly established that they may not be adequately represented.

B. **Intervenors Will Contribute to the Factual Development of the Relevant Issues.**

Intervenors will meaningfully contribute to the factual development in this proceeding by providing "experience in observing the direct impact" of the Defendants' alleged misconduct on their communities and citizens, as well as the benefits that advanced recycling offers their citizens. *See State of Texas*, 2021 WL 411441, at *4. This will include Intervenors' investments to build plastic recycling programs to reduce the volume of plastic waste going into landfills. Further, Intervenors are well situated to explain how prior efforts to recycle plastic have failed and how advanced recycling offers a positive alternative for communities to handle plastic waste, while

creating jobs, boosting taxes, and helping the economy by strengthening local supply chains.

None of Defendants' arguments to the contrary should persuade the Court. Intervenors do more than "just up the volume" on the allegations in the complaint or present evidence that could be established through existing parties. *See* Bonta Opp. at 7 n.2; NGO Opp. at 14. Rather, as discussed above, Intervenors offer a unique perspective that could not be fully represented by ExxonMobil. Unlike Bonta suggests, *see* Bonta Opp. at 6, "contextualizing" community effects is sufficient for permitting intervention, *see Restaurant Law Center v. City and Cnty. of Denv.*, 2024 WL 1272125 (D. Col. May 1, 2025), and Intervenors here offer facts that could not be developed through the existing parties, *see* Mots. at 14. Indeed, NGOs, including Defendants Sierra Club and Surfrider, routinely intervene to provide such public context. *See, e.g.*, *id.* (permitting Sierra Club to intervene where it could "focus on advancing the many environmental and public health" issues, whereas the other parties may focus on "private economic and business interests"); *United States v. U.S. Steel Corp.*, 2018 U.S. Dist. LEXIS 210213 (N.D. Ind. Dec. 13, 2018) (permitting Surfrider and Chicago to intervene). IEJF argues Intervenors fail to explain "why this 'perspective' is relevant to any of Exxon's claims." IEJF Opp. at 10. But Intervenors demonstrate that Defendants' statements are false: advanced recycling is not a sham and offers a valid and legal solution for combatting plastic waste. This evidence is thus relevant to ExxonMobil's defamation and disparagement claims.

Bonta's reliance on *NOPSI* is also misplaced. In *NOPSI*, "there [wa]s no suggestion that the [intervenors] intend[ed] to make any contribution to development of the relevant facts in the suit which [existing parties] will not make, or that the officials are in any respect in a better position to do so." 732 F.2d at 472. Here, Intervenors will provide support for numerous facts related to the underlying action and Intervenors—as governmental entities—are in a better position than

ExxonMobil to discuss the impacts Defendants' conduct has had on their communities, *see State of Texas*, 2021 WL 411441, at *4; *U.S. Steel Corp.*, 2018 U.S. Dist. LEXIS 210213.

Apparently conceding Intervenors have relevant evidence, the US NGOs and IEJF argue ExxonMobil could present this evidence itself or through third-party means. *See* NGO Opp. at 14; IEJF Opp. at 10 n. 3. But the cases the US NGOs and IEJF rely on denied intervention because the intervenors did not satisfy all of the other relevant prongs—not solely because the facts they proposed to contribute could be developed through third parties. *See* NGO Opp. at 14 (citing *Texas v. U.S. Dep't of Homeland Sec.*, 2024 WL 4039580, at *5 (E.D. Tex. Sept. 3, 2024)); IEJF Opp. at 10 n. 3 (citing *Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994)). If that logic prevailed, there would be no successful intervenors, as parties are generally permitted to pursue third-party discovery. *See, e.g.*, *MC Trilogy Tex., LLC v. City of Heath, Tex.*, 2023 WL 8569018, at *1 (N.D. Tex. Dec. 11, 2023); *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 451 (N.D. Tex. 2015).

**C. Intervention Will Not Cause Undue Delay or Prejudice.**

Finally, intervention will cause no delay or prejudice. This case is still in its infancy. The parties have only produced minimal discovery pursuant to their initial disclosures, and briefing on Defendants' motions to dismiss and to transfer will only be complete as of the date of the filing of this brief. Courts routinely find that intervention would not cause undue delay or prejudice in similar circumstances. *See, e.g.*, *U.S. Equal Emp. Opportunity Comm'n v. Wellpath LLC*, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021). Moreover, no Defendant suggests that intervention is untimely, and "the analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis." *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021); *see also All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 2024 WL 1260639, at *2 (N.D. Tex. Jan. 12, 2024).

Nevertheless, the US NGOs and IEJF contend that intervention would cause undue prejudice or delay purportedly because "[a]dditional parties always take additional time." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984). *See* US NGO Opp. at 12; IEJF Opp. at 10. But this may "always" be true. So it alone cannot establish undue delay or prejudice. *See, e.g.*, *Alamo Brewing Co., LLC v. Old 300 Brewing, LLC*, 2014 WL 12876370, at *5 (W.D. Tex. May 21, 2014), *R&R adopted*, 2014 WL 12877262 (W.D. Tex. Oct. 14, 2014). Defendants do not show how any particular delay—much less one that is "undue or prejudicial"—would arise here where intervention is timely and Intervenors' claims implicate the same core facts and legal issues as ExxonMobil. And Defendants have no answer to Intervenors' observation that, if they are not permitted to intervene, they must vindicate their claims in separate lawsuits. "[T]he time and expense of separate litigation would almost invariably cause . . . [D]efendants greater prejudice, expense, and delay." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, WL 974335, at *7 (N.D. Tex. Mar. 31, 2022). Given the extensive overlap, Intervenors would be required to designate their suit as related to this one under Local Rule CV-42. Thus, it would be far more efficient and better serve judicial economy to permit intervention so that ExxonMobil's and Intervenors' related claims can be considered in one suit now.[3]

### III. Considering the Merits of Intervenors' Claims is Premature.

Unable to counter Intervenors' arguments for intervention, the US NGOs and IEJF instead prematurely attack the viability of Intervenors' claims. However, "[a] determination of the merits of the intervention claim is not appropriate at this threshold stage,' where mere leave to intervene—not the merits of the claims presented in the intervention—is at issue." *Tex. Og Holdings, LLC v.*

---

[3] IEJF suggests that permitting intervention might cause other parties to intervene, but this is entirely "speculative." *Siesta Vill. Mkt., LLC v. Perry*, 2006 WL 1880524, at *2 (N.D. Tex. July 7, 2006). And allowing intervention "could have the opposite effect by satisfying other would-be intervenors that their interests are [now] being adequately represented." *Id.*

*Birnham Energy Inv. Co., L.P.*, 2013 WL 12230863, at *2 (E.D. La. Feb. 8, 2013) (quoting *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980)); *see also Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974 (8th Cir. 2014). Likewise, the US NGOs' and IEJF's arguments that Intervenors seek an "advisory opinion" because they supposedly lack standing and their claims are not ripe would also be better considered *after* intervention. *Siesta*, 2006 WL 1880524, at *2.

Urging the Court to reach the merits now, the US NGOs and IEJF cite *Saavedra v. Murphy Oil U.S.A., Inc.* 930 F.2d 1104 (5th Cir. 1991). But there, the Fifth Circuit considered whether a party should be sanctioned for opposing intervention, not whether intervention was proper. *Id.* at 1109. And numerous cases since then explain that considering the viability of the claims is improper at the motion to intervene stage, "except for those claims that are frivolous on their face." *Stewart v. City of Houston*, 2008 WL 11397909, at *2 (S.D. Tex. Nov. 21, 2008), *R&R adopted*, 2008 WL 11398939 (S.D. Tex. Dec. 15, 2008); *Vill. Beverly, LLC v. Emp. Corp. Tenn., Inc.*, 2021 WL 1971496, at *3 (S.D. Miss. May 17, 2021); *Siesta*, 2006 WL 1880524, at *2. No Defendant argues Intervenors' claims are "frivolous on their face." Nor could they. *See* Int. Compl.

Moreover, as Defendants' own cases explain, an intervenor ultimately only needs to establish standing "to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 443, 440 (2017). And just like ExxonMobil, Intervenors bring a tortious interference with prospective business relations claim against the Defendants for the same core unlawful conduct, and also seek similar injunctive and declaratory relief. *See* Int. Compl. ¶ 38, 45; ExxonMobil Compl. ¶¶ 122–27, 108, 114, 128, 140. Defendants' concession that ExxonMobil has standing therefore forecloses their argument. *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019).

9

In any event, Intervenors have pleaded viable and ripe tortious interference claims, showing how Defendants have caused them Article III injury. Intervenors have explained in detail how Defendants' tortious conduct has undermined their would-be recycling collaborations with ExxonMobil, and how Defendants intended this result. *See, e.g.*, Int. Compl. ¶¶ 34–35. Intervenors' Complaint, therefore, both adequately states a claim for tortious interference and satisfies Article III. *See, e.g.*, *OCA-Greater Houston v. Tex.*, 867 F.3d 604, 612 (5th Cir. 2017) (explaining that Article III injury "need not be substantial").[4] To the extent Defendants complain that Intervenors seek to stop Defendants from causing *further* harm, that is precisely the relief sought by Intervenors. *ResMan, LLC v. Karya Prop. Mgmt., LLC*, 2021 WL 3423345, at *4 (E.D. Tex. Aug. 5, 2021). Likewise, a live controversy exists between Defendants and Intervenors with respect to the legality of advanced recycling. They have claimed that the very advanced recycling Intervenors wish to engage in "illegal." *See, e.g.*, ExxonMobil, Compl. ¶ 69. So even if the Court were to consider the US NGOs' and IEJF's premature challenges to the merits of Intervenors' claims—and it should not—it should reject them.

## CONCLUSION

For the foregoing reasons, the Court should grant Intervenors Motions to Intervene.

---

[4] IEJF's argument that the Court lacks personal jurisdiction, meanwhile, is wrong for the reasons explained by ExxonMobil in its *Opposition to the NGO Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3)*. *See* Dkt. 96.

June 30, 2025

                                    Respectfully submitted,

*/s/ Travis C. Barton*
Travis C. Barton, SBN: 00790276
tcbarton@mcginnislaw.com
J. McLean Bell, SBN: 24120712
mbell@mcginnislaw.com
**MCGINNIS LOCHRIDGE LLP**
1111 W. 6th St, Ste 400
Austin, TX 78703
(512) 495-6000
(512) 495-6093 FAX


Jonathan D. Baughman, SBN: 24029074
jbaughman@mcginnislaw.com
**MCGINNIS LOCHRIDGE LLP**
609 Main St., Ste. 2800
Houston, TX 77002
(713) 615-8500
(713) 615-8585 FAX

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document was filed electronically in compliance with Local Rule CV-5(a) on 30th day of June, 2025.

*/s/ Travis C. Barton*
Travis C. Barton

11