# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
|     Plaintiff | § | Case No. 1:25-cv-00011-MJT |
| | § | |
| v. | § | |
| | § | |
| | § | DEFENDANT BAYKEEPER |
| ROBERT ANDRES BONTA A.K.A. | § | INC.'S REPLY TO ITS |
| ROB BONTA, IN HIS INDIVIDUAL | § | RULE 12(b)(2), (3), (6) |
| CAPACITY; SIERRA CLUB, INC.; | § | MOTION TO DISMISS |
| SURFRIDER FOUNDATION, INC.; | § | |
| HEAL THE BAY, INC.; BAYKEEPER, | § | |
| INC.; AND INTERGENERATIONAL | § | |
| ENVIRONMENT JUSTICE FUND LTD. | § | |

**BAYKEEPER, INC'S REPLY TO ITS RULE 12(b)(2), (3), (6) MOTION TO DISMISS**

1

Defendant Baykeeper, Inc. ("Baykeeper") files its reply to its motion to dismiss plaintiff Exxon Mobil Corporation's ("Exxon") claims under Rules 12(b)(2), (3), and (6).

## SUMMARY

Factually and legally, Exxon failed to present grounds for denying Baykeeper's motion to dismiss. Factually, Exxon filed one responsive declaration (Dkt.96-1) failing to refute Baykeeper's sworn facts (Dkt. 49-1) – facts warranting dismissal of Exxon's claims for lack of purposeful contacts or conduct by Baykeeper directed at or in Texas. Legally, Exxon contends that if it alleges a plausible action against defendant Rob Bonta ("Bonta"), it will have pled a plausible action against all claimed co-conspirator defendants in a way that satisfies due process. Courts in Texas have not adopted such imputation reasoning. Instead, each defendant receives stand-alone consideration. Such consideration of Baykeeper's alleged conduct in this case warrants dismissal.

## FACTS

Baykeeper takes exception to unsworn alleged facts in Exxon's response:

1. The State of California's own studies confirm the efficacy of advanced recycling. (Dkt. 97, Pg. 11).
    a. California's recycling studies led to the adoption of legislation and regulatory programs to combat increased plastic pollution caused by Exxon's deception around plastic recycling. (Dkt. 44-4, Pgs. 135-37, ¶¶ 413-22).

## RULE 12(b)(2)

Exxon accepts that Texas does not have general jurisdiction over Baykeeper. (Dkt. 96, Pg. 13). Exxon only argues that Baykeeper should have known Exxon would feel the effects of Baykeeper's California conduct in Texas, which is sufficient for specific personal jurisdiction. Not so. Exxon failed to refute Baykeeper's sworn factual statements (Dkt. 49-1) showing Baykeeper lacked purposeful contacts with Texas and also failed to provide any affirmative evidence to the contrary. Neither Texas nor any of the alleged Texas recycling customers were mentioned in Baykeeper's statement at the California online press conference. Exxon's showing

2

does not satisfy the Fifth Circuit's requirements for specific conduct personal jurisdiction because (1) Baykeeper has not purposefully directed its conduct at or availed itself of privileges in Texas; and (2) Exxon's claims do not result from Baykeeper's nearly non-existent contacts with Texas.[1] Baykeeper is entitled to a dismissal for lack of personal jurisdiction.

Exxon's contrary argument focused on two opinions: *Calder*[2] and *X Corp.*[3] *Calder* created the "effects test," addressing libel cases where alleged harmful effects reached beyond the defendant's home state. *Calder's* effects test extended personal jurisdiction's reach to forums based on the loci of the defendant's conduct, the publication, the investigation, **and** the plaintiff's resulting damages.[4] This proved too broad, and the Supreme Court limited the test in *Walden*.[5] Since *Walden*, courts assess personal jurisdiction by the contacts the defendant created with the forum state, not where the plaintiff allegedly suffered harm. This means the forum where the allegedly wrongful acts that caused the harm were committed is the appropriate one. Here, Exxon has only complained about Baykeeper making a statement at a passive internet press conference in California. Exxon has not presented any facts of Baykeeper's alleged wrongful conduct in or directed at Texas.

*X Corp.* does not help Exxon's argument either. *X Corp.* involved a Texas corporation and internet content, but the similarities with this case end there. The *X Corp.* defendants, a non-profit entity, and two reporters, allegedly targeted two of X. Corp.'s largest Texas advertisers by publishing false articles on television and an interactive website urging the Texas advertisers to stop using X. Corp.'s services.[6] One reporter posted two articles describing how the plaintiff endorsed antisemitic conspiracy theories, placing pro-Nazi posts next to ads for the Texas advertisers. The

---

[1] *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).
[2] *Calder v. Jones,* 465 U.S. 783 (1984).
[3] *X. Corp. v. Media Matters for Am.*, 2024 U.S.Dist. LEXIS 157217 (N.D.Tex. Aug. 29, 2024).
[4] *USPlabs Jack 3d, LLC v. MMRNV*, 2012 U.S. Dist. LEXIS 194699 at *6 (N.D.Tex. Oct. 31, 2012).
[5] 571 U.S. 277 (2014).
[6] *X. Corp.*, 2024 U.S.Dist. LEXIS 157217 at **10-11.

article even named one of the Texas advertisers in its headline and referenced that advertiser as having ads aligned with statements touting Hitler and the Nazi Party.[7] The other reporter and the nonprofit republished the articles on television and interactive websites, urging the plaintiff's blue-chip advertisers to leave the X platform.[8] The Texas court viewed the publishing and republishing of these articles as purposeful contacts with Texas that warranted the exercise of personal jurisdiction over all three defendants.

But none of the *X Corp.* defendants denied having taken direct steps to drive the advertisers away from X Corp.[9] The Texas court further noted that had the nonprofit defendant's website been passive, the Court would have found it lacked personal jurisdiction over the nonprofit.[10] In our case, Baykeeper made a short statement at a passive internet press conference in the San Francisco Bay Area that reported on the complaint it had just filed against Exxon in San Francisco regarding plastic waste in California. Exxon presented no evidence to the contrary, no evidence that Baykeeper directly targeted any current or prospective Exxon recycling client, and no evidence of other purposeful conduct or contacts by Baykeeper with Texas, let alone sufficient contacts to give rise to jurisdiction in Texas in this case.

Last, Exxon attempts to establish personal jurisdiction by imputing another defendant's contacts to Baykeeper. This end-run of Texas' personal jurisdiction requirements is inconsistent with ample Texas precedent rejecting personal jurisdiction by conspiracy. In *National Industrial,*[11] the Texas Supreme Court dispelled the use of a conspiracy characterization to assert personal jurisdiction. Citing *World-Wide Volkswagen,*[12] the Texas court held that invoking a conspiracy "should not mask the real facts of the relationship or avoid analysis of the attribution process." *Id.*

---

[7] *Id.* at ** 8-9.
[8] *Id.* at *12.
[9] *Id.* at *10.
[10] *Id.* at *14.
[11] *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, (Tex.1994)
[12] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.286, 297 (1980).

The Texas Supreme Court went on to hold that it would

> decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state. Instead, we restrict our inquiry to whether the (nonresident defendant) itself purposefully established minimum contacts.

*National Industrial*, 897 S.W.2d at 773. The Fifth Circuit has applied the same reasoning in addressing personal jurisdiction dismissal motions[13] as have several district courts in Texas,[14] evaluating each defendant's conduct separately.[15]

A separate evaluation of Baykeeper's conduct demonstrates it lacks minimum contacts for exercising personal jurisdiction over it in Texas. Baykeeper discharged its burden of showing that exercising personal jurisdiction over it would offend traditional notions of fair play and substantial justice. Baykeeper never expected to find itself in a Texas court because of a California press conference regarding a California lawsuit about plastic waste in California. The Court should dismiss the claims against Baykeeper for lack of personal jurisdiction.

## RULE 12(b)(3)

Exxon argues venue lies in Beaumont because the alleged effects of the defendants' conduct in Northern California that were felt in the Eastern District of Texas are a "substantial part of the events giving rise to the claim" language in section 1391(b)(2). (Dkt. 96, Pg. 25). Exxon relies upon two opinions: *Calder*[16] and *Hawbecker*[17]; neither support Exxon's position. *Calder* makes no

---

[13] *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir.1999) (the district court erred by not deciding personal jurisdiction over a defendant individually rather than as part of a conspiracy); *Delta Brands v. Danieli Corp.*, 99 F.Appx. 1, *5 (5th Cir.1999) (unpublished)(plaintiff had to show defendant individually, and not as part of a conspiracy, had minimum contacts with Texas).
[14] *Embarcadero Tech, Inc. v. Redgate Software, Inc.*, 2018 U.S.Dist. LEXIS 1902 *20 (Jan. 5, 2018); *Hanna v. Blanchette*, 2014 U.S.Dist. LEXIS 116750 *13 (S.D.Tex. Aug. 21, 2014); *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F.Supp.2d 577, 593 (N.D.Tex.2009, J. Lynn); *Weinberg v. NFL Players Ass'n*, 2008 U.S. Dist. LEXIS 89998 **15-16 (N.D.Tex. Nov. 5, 2008).
[15] *Weinberg*, 2008 U.S.Dist. LEXIS 89998 at *5.
[16] *Calder v. Jones*, 465 U.S. 783 (1984)
[17] *Hawbecker v. Hall*, 88 F.Supp.3d 723 (W.D.Tex.2015).

mention of venue and the *Walden*[18] opinion limiting *Calder* made clear that if personal jurisdiction is lacking over a defendant, deciding proper venue becomes moot.[19] In *Hawbecker*, the defendant used Facebook to send messages accusing the plaintiff of being a child molester to the plaintiff's family, friends, students, and employer in Texas. The defendant also posted a statement on Facebook asking that this information be passed on to anyone the reader may know in San Antonio, where the plaintiff lived.

Nothing of the sort occurred here. Baykeeper gave a short statement at a passive internet press conference concerning the filing of a lawsuit in California about single-use plastic waste in California waters. The statement made no reference to Texas and was not directed to a Texas audience, let alone the specific types of audiences and close contacts targeted in *Hawbecker*. No factual support exists for a direct connection or contact between Baykeeper's statement at the California press conference and Texas.[20] The Court should either dismiss Exxon's claims against Baykeeper or transfer the claims to the Northern District of California.

## FIRST-FILED RULE

The Complaint also should be dismissed or transferred under the first-filed rule. The rule applies where there is a "substantial overlap" between two cases considering "factors such as whether the core issue is the same and whether much of the proof adduced would be identical."[21] Such is the case here: the first-filed California case and this case both concern the efficacy of Exxon's recycling practices; both seek relief that requires the court to determine whether Exxon misled the public about those practices; and the legal issues and evidence are likely to overlap because both cases will turn in part on the truth of Baykeeper's statements and the underlying

---

[18] 571 U.S. 277 (2014).
[19] *Id.* at 282 n.5.
[20] *Revell v. Lidov*, 317 F.3d 467, 473, 475 (5th Cir. 2002).
[21] *My Clear View Windshield Repair; Inc. v. GEICO Advantage Ins. Co.*, 2017 WL 2591339, at *6 (S.D. Tex. 2017) (applying first-to-file rule where "core issue in both suits is the same," making claims in second-filed suit "more appropriately counterclaims or affirmative defenses to" the first).

6

scientific evidence. None of Exxon's arguments to the contrary are meritorious.[22]

*First*, Exxon claims that the rule does not apply because the cases assert different claims. Exxon argues this case "focuses on a civil conspiracy" whereas the California case alleges that Exxon "substantially contributed to the deluge of plastic pollution…through 'deceiving Californians …by promising that recycling could and would solve the ever-growing plastic waste crisis.'" Dkt. 96 at p. 21. Exxon's argument misunderstands the first-filed rule, which does not require that the *claims* be identical[23]; it is enough that the *core issues* substantially overlap. Thus, courts routinely apply the rule where, as here, the claims in the second-filed suit are functionally "counterclaims or affirmative defenses to"[24] the first.[25] In those circumstances, the claims necessarily are different, but implicate the same "threshold issues" such that resolving them separately "would duplicate judicial effort" and produce "contrary results that the first-to-file rule manifestly seeks to avoid."[26] Here, before the court reaches Exxon's allegation that Baykeeper "harm[ed] [its] reputation, as well as its contracts with…customers," Dkt. 96 at 21, or whether defendants purportedly conspired to do so, it will have to determine whether Exxon sufficiently alleged falsity.[27] Similarly, the court in the California case will have to determine whether Exxon misrepresented the "recyclability and harmlessness of single-use plastics," which if proven, would defeat Exxon's defamation claim here.

*Second*, the court should reject Exxon's conclusory claim that there "is no overlap in the relief requested." Dkt. 96 at 22. Exxon provides no argument on this point, and as Baykeeper explained, both lawsuits seek similar relief: one, abatement and an injunction of unlawful or unfair

---

[22] Exxon's first-to-file argument related to the litigation privilege is a non-sequitur. Dkt. 96 at 22. Baykeeper argued that the *fair report* privilege will require comparing the California Complaint against the at-issue statement, not the *litigation* privilege. Dkt. 48 at 13.
[23] *E.g., My Clear View Windshield Repair, Inc. v. GEICO Advantage Ins. Co.*, 2017 WL 2591339 at *6 (S.D. Tex. 2017).
[24] *My Clear View Windshield Repair, Inc.*, 2017 WL 2591339 at *6.
[25] E.g., BridgeLux, Inc. v. Cree, Inc., 2007 WL 9724143, (E.D. Tex. Feb. 5, 2007) (dismissing patent infringement counterclaims without prejudice so they could be dealt with by first-filed patent case).
[26] Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp., 714 F. Supp. 2d 648, 651 (N.D. Tex. 2010).
[27] *See* Dkt. 49 at 16 (explaining that falsity an element of all of Exxon's claim).

misrepresentations about recycling of single-use plastics, CA Complaint ¶¶ 240-1, the other a declaration that "advanced recycling is recognized and permitted by law." Complaint § VI 16. (Ex. 3, Pgs. 60-1; Dkt. 1). Should the two courts come to opposite conclusions on the truth of Baykeeper's statements, there is a high likelihood not only of contradictory rulings, but of incompatible injunctive relief.

*Third*, Exxon also is wrong that the evidence is unlikely to overlap. Exxon seeks to punish Baykeeper for its statement that Exxon "brainwashed everyone into thinking that plastic recycling works." Dkt. 1 ¶ 4. It now claims the evidence will not overlap because the California case "will likely depend on support from experts on consumer behavior and pollution, which will be only minimally relevant (if at all) here." Dkt. 96 at 26. In fact, both categories of experts also are potentially relevant here to show Exxon's plastic recycling does not work, and that Exxon's tactics amounted to brainwashing, e.g., to show the effect of Exxon's statements on "consumer behavior." The evidence underlying the California Complaint also is relevant to both: to prove the claims in that lawsuit, and to show Baykeeper did not act with actual malice in this case.[28]

Exxon concedes there is "some factual overlap," Dkt. 96 at p. 26, and Baykeeper has shown a "likelihood" of substantial overlap of legal issues and evidence. As a result, the "determination of whether there actually [is] substantial overlap"[29] should be decided by the first-filed court.

### RULE 12(b)(6)

Exxon lodges three attacks against Baykeeper's Rule12(b)(6) motion: (1) as an alleged co-conspirator, Baykeeper has liability for Bonta's statements; (2) as a private figure, Exxon does not have to prove falsity or actual malice for its defamation claim; and (3) the fair report privilege does

---

[28] *E.g., Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1453 (1999) (no actual malice where defendant's statements relied on previously reported materials); 1 Sack on Defamation (5th ed. 2019) § 5:5.2 ("[a]n author or publisher may rely on previously published accounts in reasonably reliable sources").

[29] *Ameritox, Ltd. v. Aegis Scis. Corp.*, No. CIV.A.3:08-CV-1168-D, 2009 WL 305874, at *3 (N.D. Tex. Feb. 9, 2009) (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999)).

8

not apply to Baykeeper's statements. None of these attacks will work.

First, by stating plausible claims against Bonta, Exxon argues it has stated plausible claims against Baykeeper, an alleged co-conspirator. Factually, Exxon points to the FARA opinion letter (Dkt. 96-2) and Baykeeper's supposed lack of factual denials regarding Bonta's alleged tortious conduct. The FARA letter does not support Exxon's theory. The U.S. Department of Justice did not find that any of the U.S. NGOs were agents of IEJF or were required to register under FARA. Instead, the DOJ stated the U.S. NGOs would **not** be entering into any agreement with IEJF and would have the individual authority to remain in California litigation, determine litigation strategy, and evaluate and accept settlements. (Dkt. 96-2, Pgs. 3-4). As the letter explains, if IEJF terminates its engagement with the Cotchett law firm, the firm will continue representing the U.S. NGOs under each entity's individual retainer agreement. (*Id.* at 2). This does not support the required element of a meeting of the minds on a course of action among conspirators.

Contrary to Exxon's contention, Baykeeper *did* factually deny a civil conspiracy by swearing it committed no unlawful overt act in furtherance of any conspiracy. (Dkt. 49.1, ¶34). Exxon offers no response. Exxon cannot infer a participation in a civil conspiracy from any defendant's failure to deny Bonta's conduct or a close association with Bonta.[30] Instead, Exxon must show that Baykeeper was aware of the intended harm or proposed unlawful conduct by Bonta at the outset of the combination.[31] Exxon must show a common purpose, supported by a concerted action, that each conspirator has the intent to perform, and that each conspirator understands is the purpose of the other conspirators.[32] Exxon has not shown outset awareness or an understood purpose of intended harm by participating in the California lawsuit and press conference.

---

[30] *Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir.1988) (citing *United States v. Basey*, 816 F.2d 980, 1002 (5th Cir.1984).
[31] *First United Pentecostal Churh of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).
[32] *See Schlumberger Well Survey Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 857 (Tex.1968).

Second, nothing in the record makes Exxon anything other than a limited purpose public figure. A public figure must prove falsity and that the defendant acted with actual malice to make out a prima facie defamation[33] or business disparagement claim[34]; moreover, the same burden applies to the tortious interference and civil conspiracy claims that derive from defamation.[35] Public versus private figure status for a corporation turns on three factors identified in *Snead*[36]: notoriety, consumer recognition, and media scrutiny. Exxon's arguments misapply those factors.

**Notoriety**: Exxon's notoriety with the average American is apparent. Exxon's effort to cabin its notoriety to "energy production" as distinct from plastic production or "advanced recycling" is not even supported by Exxon's cited precedent.[37] In any event, Exxon is the world's largest producer of plastic polymers in single-use plastic waste. Exxon readily admits to its long participation in public discourse, lobbying, and advocacy related to plastics.[38]

**Consumer recognition**: Exxon's footprint in consumer goods includes being the largest chemical manufacturer in Texas, being the world's largest publicly traded oil and gas company, and being the largest producer of plastic polymers in the world. (Dkt. 1, ¶¶ 16, 38). Exxon's assertion that consumers do not recognize Exxon because it also sells products to "other businesses" does not help its claims. Unlike in *Super-Future Equities*, Exxon makes an inordinate number of sales to individual consumers every day and has for decades.[39]

---

[33] *Gateway Logistics Group, Inc. v. Dangerous Goods Mgmt. Austl. Pty. Ltd.*, 2008 U.S.Dist. LEXIS 34246 (S.D.Tex Apr. 25, 2008) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *Hearst Corp. v. Skeen*, 978 S.W.2d 568, 571 (Tex.1998).
[34] *Memorial Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 n.13(Tex.2022).
[35] *El Paso Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 421 (Tex.2017); *Firestone Steel Prods.*, 927 S.W.2d at 617.
[36] *Snead v. Redland Aggregates, Ltd.*, 998 F.2d 1325, 1329 (5th Cir.1993).
[37] *Computer Aid, Inc. v. Hewlett-Packard Co., 56 F. Supp. 2d 526, 536 (E.D. Pa. 1999)* (addressing whether defendant was a general purpose public figure, not the argument Baykeeper made that Exxon is a **limited purpose** public figure with respect to the controversy over single use plastics.)
[38] *E.g.*, Dkt. 1 ¶ 46 (describing commitments and spending since 2021 about "advanced recycling"); ¶ 16 (same); ¶ 14 n.42 (same).
[39] *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, 553 F. Supp. 2d 680, 691 (N.D. Tex. 2008).

**Media Scrutiny**: Exxon does not directly address this prong. Like Exxon's notoriety with the public, scrutiny of Exxon and plastic pollution is readily apparent. The breadth of media and public scrutiny of Exxon's role in plastic pollution is extensive, as are Exxon's efforts to influence the public debate on that subject.[40] Under *Snead*'s factors, Exxon is a public figure in this litigation.

As a limited purpose public figure, Exxon, for each of its claims, must show that Baykeeper made false statements with constitutional actual malice. Exxon has failed to show that Baykeeper's statements about the inability of advanced recycling to make single-use plastic sustainable were either false or stated with actual malice. Even Exxon admitted to the federal court in California that whether advanced recycling could "help" address plastic waste is a vague, aspirational, and subjective representation rather than a verifiable fact. (Dkt. 49-4, Pg. 29).

Exxon makes multiple unfounded contentions regarding the fair report privilege in Cal. Civ. Code § 47(d). First, Exxon calls the privilege qualified. It is not.[41] Second, Exxon claims Texas law controls even though Baykeeper made its complained of statements in California and directed its comments at the California public – facts Exxon did not dispute in its response (Dkt. 49-1, ¶ 24). California law applies.[42] Third, Exxon asserts Baykeeper's statement did not satisfy section 47(d)'s required publication in a "public journal." But the *Wisk*[43] opinion Exxon cites negates this argument. The *Wisk* court held that a press release fell within the privilege because it "served to inform the general public." *Id.* at *19. Baykeeper's press conference statement served to inform the public, and thus, falls within section 47(d)'s absolute privilege.

## PRAYER

Baykeeper asks the Court for the relief requested in its motion to dismiss.

---

[40] *See* n.39, *infra*.
[41] *McClatchy Newspapers v. Superior Court*, 189 Cal.App.3d 961, 974 (1987).
[42] *See also Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2015 WL 2451182, at *3 n. (N.D. Tex. May 22, 2015) (citing Cal. Civ. Code § 47(d) and finding "Texas and California law do not appear to conflict").
[43] *Wisk Aero LLC v. Archer Aviation Inc*, 2023 U.S.Dist. LEXIS 100960 (N.D.Cal. June 9, 2023).

11

Respectfully submitted,

/s/ M. Forest Nelson
M. FOREST NELSON
S.B.N. 14906425
Lead Counsel
JOHN HOLMAN BARR
S.B.N. 01978700
BURT BARR & ASSOCIATES. L.L.P.
203 E. Colorado Blvd.
Dallas, Texas 75203
(T) 214-943-0012
(F) 214-943-0048
fnelson@bbarr.com
jbarr@bbarr.com

**ATTORNEYS FOR BAYKEEPER**

## CERTIFICATE OF SERVICE

On June 30, 2025, I electronically filed the foregoing document with the clerk for the Eastern District of Texas, using the court's electronic case filing system. I hereby certify that I have served all counsel and *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5.

/s/ M. Forest Nelson
M. Forest Nelson

12