**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>　　　　　　*Plaintiff*,<br><br>　　　　v.<br><br>ROBERT ANDRES BONTA A.K.A. ROB BONTA, IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; BAYKEEPER, INC.; AND INTERGENERATIONAL ENVIRONMENT JUSTICE FUND LTD.,<br><br>　　　　　　*Defendants*. | No. 1:25 Civ. 00011 (MJT) |

**DEFENDANT INTERGENERATIONAL ENVIRONMENT JUSTICE FUND LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTON AND FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.    EXXON FAILS TO ESTABLISH PERSONAL JURISDICTION OVER JUSTICE FUND ............................................................................................................................. 1

        A.    Exxon Has Not Established Jurisdiction Through the Imputation of the Other Defendants' Alleged Contacts ................................................................................... 1

        B.    Jurisdictional Discovery Is Not Warranted ............................................................... 5

    II.    EXXON HAS ALSO FAILED TO STATE A CLAIM AGAINST JUSTICE FUND .... 7

        A.    Exxon Does Not Allege a Principal-Agent Relationship Between Justice Fund and Any Other Defendant ................................................................................................. 7

        B.    Exxon Does Not Plead a Conspiracy Involving Justice Fund .................................. 8

        C.    Exxon's Demand for Declaratory Judgment Also Fails ........................................... 9

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Angel v. La Joya Indep. Sch. Dist.*,
　717 F. App'x 372 (5th Cir. 2017) .................................................................................................. 7

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
　480 U.S. 102 (1987) ...................................................................................................................... 5

*Att'y Gen. of the U.S. v. Irish N. Aid Comm.*,
　668 F.2d 159 (2d Cir. 1982) .......................................................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ...................................................................................................................... 9

*Berry v. Indianapolis Life Ins. Co.*,
　608 F. Supp. 2d 785 (N.D. Tex. 2009) ......................................................................................... 9

*Charboneau v. Box*,
　No. 13 Civ. 678, 2017 WL 1159765 (E.D. Tex. Mar. 29, 2017) ............................................... 10

*Citizens United v. Fed. Election Comm'n*,
　558 U.S. 310 (2010) ...................................................................................................................... 3

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
　915 F.2d 167 (5th Cir. 1990) ...................................................................................................... 10

*Comm'r v. Banks*,
　543 U.S. 426 (2005) ...................................................................................................................... 3

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014) ................................................................................................................. 3, 5

*Delta Brands Inc. v. Danieli Corp.*,
　99 F. App'x 1 (5th Cir. 2004) ....................................................................................................... 5

*Fielding v. Hubert Burda Media, Inc.*,
　415 F.3d 419 (5th Cir. 2005) .................................................................................................... 5, 6

*Frye v. Anadarko Petrol. Corp.*,
　953 F.3d 285 (5th Cir. 2019) ...................................................................................................... 10

*Guidry v. U.S. Tobacco Co.*,
　188 F.3d 619 (5th Cir. 1999) ........................................................................................................ 5

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) .................................................................................. 7

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) .................................................................................. 5

*Juhl v. Airington*,
    936 S.W.2d 640 (Tex. 1996).................................................................................. 8

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000) ............................................................................. 4, 5

*M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*,
    512 S.W.3d 878 (Tex. 2017).................................................................................. 5

*Mary Lee v. TriCentury Corp.*,
    No. 08 Civ. 719, 2010 WL 11530300 (E.D. Tex. Apr. 29, 2010) ......................... 5

*Mid-Am. Supply Corp. v. Truist Bank*,
    660 F. Supp. 3d 594 (E.D. Tex. 2023).................................................................... 9

*Nafta Traders, Inc. v. Hewy Wine Chillers, LLC*,
    No. 18 Civ. 2773, 2018 WL 6696349 (N.D. Tex. Dec. 20, 2018)......................... 6

*Nat'l Indus. Sand Ass'n v. Gibson*,
    897 S.W.2d 769 (Tex. 1995).................................................................................. 5

*Nunes v. NBCUniversal Media, LLC*,
    582 F. Supp. 3d 387 (E.D. Tex. 2022).................................................................... 6

*Omega Contracting, Inc. v. Torres*,
    191 S.W.3d 828 (Tex. App.—Fort Worth 2006, no pet.)....................................... 8

*Peavy v. WFAA-TV, Inc.*,
    221 F.3d 158 (5th Cir. 2000) .................................................................................. 9

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,
    112 F.4th 284 (5th Cir. 2024) ................................................................................ 4

*Sinkin v. Pons*,
    No. 13 Civ. 871, 2014 WL 12488583 (W.D. Tex. Sept. 16, 2014)....................... 6

*Tompkins v. Cyr*,
    995 F. Supp. 664 (N.D. Tex. 1998) ....................................................................... 8

*Troice v. Proskauer Rose, L.L.P.*,
    816 F.3d 341 (5th Cir. 2016) ........................................................................................... 5

*Walden v. Fiore*,
    571 U.S. 277 (2014) ......................................................................................................... 4

*Walker Ins. Servs. v. Bottle Rock Power Corp.*,
    108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ....................................... 2

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ........................................................................................... 9

*Young v. U.S. Postal Service ex rel. Donahoe*,
    620 Fed. Appx. 241 (5th Cir. 2015) ............................................................................... 10

## FEDERAL RULES

Fed. R. Civ. P. 9(b) ........................................................................................................... 9

## OTHER AUTHORITIES

*2024 Corporate Political Contributions*, ExxonMobil, https://corporate.exxonmobil.com/who-
    we-are/policy/political-contributions/corporate-political-contributions ............................... 3

## PRELIMINARY STATEMENT

Across dozens of pages of briefing, Exxon says very little that is specific to Justice Fund and addresses few of its arguments for dismissal. Where Exxon does attempt to respond to the Australian nonprofit's motion, it reaffirms that its theories of both personal jurisdiction and secondary liability rest on Justice Fund's provision of funding to the nonparty law firm representing the U.S. nonprofits in litigation against Exxon in California—litigation that Exxon has repeatedly said is distinct from this case. Yet, as explained in Justice Fund's opening brief and below, funding provided to the law firm in that litigation did not transform the other Defendants here into Justice Fund's agents or co-conspirators in connection with public statements that those other Defendants made about Exxon. The claims against Justice Fund, therefore, should be dismissed for lack of personal jurisdiction and failure to state a claim.

## ARGUMENT

**I.     EXXON FAILS TO ESTABLISH PERSONAL JURISDICTION OVER JUSTICE FUND**

    **A.     Exxon Has Not Established Jurisdiction Through the Imputation of the Other Defendants' Alleged Contacts**

Exxon concedes that Justice Fund itself has not engaged in any forum activities that might permit the exercise of personal jurisdiction over it, and admits that Justice Fund did not make any of the statements upon which it bases its claims for relief. Instead, Exxon seeks to haul the Australian charity into Texas on the theory that the other Defendants who made the allegedly wrongful statements "were acting as [Justice Fund's] agents" in the state by virtue of the funding that Justice Fund provided to a nonparty law firm in California. ECF 96 ("12(b)(2) Opp.") at 13; *see also id.* at 14. Exxon comes up short for multiple independent reasons.

*First*, the provision of funding to a nonparty law firm in connection with the California litigation does not create the necessary agency relationship between the law firm and Justice Fund.

1

It is black-letter law that "[m]ere acceptance of payments from a third party does *not* create an agency relationship between the acceptor and the third party." ECF 51 ("MTD") at 12 (citation omitted). Exxon fails to meaningfully grapple with this basic principle of agency law. It cites a single case, *Walker Insurance Services v. Bottle Rock Power Corp.*, 108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.), for its claim that "[w]here one party pays another for its assistance in accomplishing a task, an agency relationship is formed." 12(b)(2) Opp. 14. But *Walker* nowhere says that payment alone creates an agency relationship and, in fact, makes clear that merely paying someone for assistance, without making the "essential" showing of "control *over the details* of accomplishing the assigned task," does not establish such a relationship. 108 S.W.3d at 549 (emphasis added). Exxon also points to the nonparty law firm's registration under the Foreign Agents Registration Act ("FARA") and argues that the FARA Unit's advisory opinions "strongly support the alleged agency relationship." 12(b)(2) Opp. 14. But agency concepts in FARA and the common law are distinct, and the former uses the term "agent" more broadly than is relevant here. "[T]he agency relationship sufficient to require registration [under FARA] need not … meet the [common law standard] with its focus on 'control' of the agent by the principal." *Att'y Gen. of the U.S. v. Irish N. Aid Comm.*, 668 F.2d 159, 161 (2d Cir. 1982). That's because "[i]n determining agency for purposes of [FARA]," the "concern is not whether the agent can impose liability upon his principal but whether the relationship warrants registration by the agent to carry out the informative purposes of [FARA]." *Id.*

*Second*, the nature of the relationship between the law firm and Justice Fund—the relationship on which Exxon focuses—is beside the point. The question, instead, is whether *the other Defendants* served as Justice Fund's agents. With respect to the U.S. nonprofits, Exxon concedes, as it must, that the nonparty law firm "acts as the US NGO Defendants' agent for

2

purposes of the lawsuits"—not the other way around. 12(b)(2) Opp. 15; *see also Comm'r v. Banks*, 543 U.S. 426, 436 (2005) ("attorney is an agent who is dutybound to act only in the interests of the principal"). And Exxon points to no law or facts that would support an inference that the funding provided to the law firm for the California litigation magically results in an inverted and expanded principal-agency relationship when it comes to the U.S. nonprofits' activities outside that litigation. Indeed, to accept Exxon's claim would be to hold that, even though the U.S. nonprofits are their lawyers' principals in connection with the litigation, the law firm is the principal for its clients' nonlitigation activities and controls its clients' employees' speech, and that such control is further exercised by Justice Fund itself. With respect to Attorney General Bonta, Exxon's theory is equally implausible. It may well be that "Cotchett and its attorneys made political contributions to Bonta" at unspecified times in the past, 12(b)(2) Opp. 14, but that does not make the Attorney General an agent of the law firm or of any other contributor, let alone an agent of a noncontributor like Justice Fund. To hold otherwise would upend this country's electoral system and call into question the First Amendment-protected activity of individuals and businesses, including Exxon itself. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010); *2024 Corporate Political Contributions*, ExxonMobil, https://corporate.exxonmobil.com/who-we-are/policy/political-contributions/corporate-political-contributions (last visited June 30, 2025).

*Third*, it is not enough for personal jurisdiction that there be an agency relationship, but rather Exxon must show that Justice Fund purposefully availed itself of the Texas forum "by directing [the U.S. nonprofits] to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014); *see* MTD 9. Exxon ignores this issue in its opposition and thus fails to show personal

3

jurisdiction "aris[ing] out of contacts that [Justice Fund *itself*] creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

*Fourth*, Exxon's jurisdictional arguments all trace back to the funding that Justice Fund provided to a nonparty in relation to the U.S. nonprofits' California litigation. Exxon insists that Justice Fund provided this funding for the specific purpose of "bring[ing] claims against [Exxon]." 12(b)(2) Opp. 2. But Exxon is equally clear that the claims it asserts in this action are unrelated to the California litigation, *id.* at 19, 21, 22, and that "[t]his case does not challenge" Defendants' conduct in bringing the California litigation, ECF 1 ("Compl.") ¶ 14. On Exxon's own terms, therefore, its claims do not "arise out of or relate to" the contacts of Justice Fund that Exxon purports to allege. *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 294 (5th Cir. 2024); *see also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ("[E]ven assuming [the alleged agent's] contacts with Texas … are properly attributable to [defendant], specific jurisdiction does *not* exist for it, because [plaintiffs'] claims do *not* arise out of those contacts.").

*Finally*, even if Exxon were able to show that Justice Fund "purposefully availed itself of the privilege of conducting activities in the forum State," and that its claims "arise from or relate to" Justice Fund's contacts with Texas, the exercise of due process still would not be "fair and reasonable." *Stanford Int'l Bank, Ltd.*, 112 F.4th at 294. Exxon summarily asserts in a footnote that, even though Justice Fund is a foreign defendant, "the Court should be reticent to dismiss [it] as a party from this action" because Exxon "has alleged that [Justice Fund] has instigated, championed, and funded the entire conspiracy directed toward undermining [Exxon] in Texas." 12(b)(2) Opp. 17 n.9. But this misconstrues the complaint, whose only specific allegations regarding Justice Fund concern the provision of funding to a law firm in connection with the

4

California litigation. Exxon also fails to grapple with the caselaw that Justice Fund cites regarding "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system," which "should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987), and the principles of international comity which caution against the same, *Daimler AG*, 571 U.S. at 141; *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008).[1]

### B.  Jurisdictional Discovery Is Not Warranted

As a last-ditch argument, Exxon suggests that if the Court finds "insufficient evidence of an agency relationship," Exxon should be permitted to take jurisdictional discovery before the Court dismisses the case. 12(b)(2) Opp. 15.

Fifth Circuit law is clear that "discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact." *Kelly*, 213 F.3d at 855 (internal quotation marks and alterations omitted). Even if there is a disputed issue of fact, a plaintiff seeking

---

[1] In response to Surfrider's motion to dismiss, Exxon insists that "a co-conspirator's purposeful contacts with the forum" can be used to "establish specific personal jurisdiction" over a conspirator without any forum contacts of its own. 12(b)(2) Opp. 12. Although Exxon does not attempt to impute another Defendant's contacts to Justice Fund on this basis, *see id.* at 13–16, it would come up short even if it had. Exxon urges this Court to ignore the Fifth Circuit's decision in *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004)—which rejects the conspiracy theory that Exxon urges—as "unpublished and non-precedential." 12(b)(2) Opp. 12. But Exxon itself ignores the published Fifth Circuit decision on which *Delta Brands* relies. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). It also ignores the Texas Supreme Court's rejection of a conspiracy theory of personal jurisdiction, *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886–87 (Tex. 2017); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995), and this Court is "bound to answer the question the way the state's highest court would resolve the issue" for purposes of Texas's long-arm statute, *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016). *See also Mary Lee v. TriCentury Corp.*, No. 08 Civ. 719, 2010 WL 11530300, at *3 & n.6 (E.D. Tex. Apr. 29, 2010) (recognizing Fifth Circuit's and Texas Supreme Court's rejection of conspiracy theory of personal jurisdiction). In any event, Exxon has failed to allege that Justice Fund was part of a conspiracy for all the reasons below. *Infra* at 8–9.

Separately, even if there were a basis to impute contacts to Justice Fund, Exxon has not shown that the other Defendants have sufficient Texas contacts either. *See* MTD 9 n.4. A defendant "aim[s]" its out-of-state statements at the forum only when both "(1) the subject matter of and (2) the sources relied upon … were in the forum state." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005). Exxon, for the reasons detailed in the other Defendants' briefs, has not made such a showing.

5

jurisdictional discovery must first make "a preliminary showing of jurisdiction." *Fielding*, 415 F.3d at 429. And, even then, jurisdictional discovery will be permitted only where the plaintiff "identif[ies] the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 402 (E.D. Tex. 2022).

Exxon's argument fails at each turn. Justice Fund's motion does not "create fact issues that entitle [Exxon] to limited jurisdictional discovery." *Nafta Traders, Inc. v. Hewy Wine Chillers, LLC*, No. 18 Civ. 2773, 2018 WL 6696349, at *4 (N.D. Tex. Dec. 20, 2018). Justice Fund did not submit any evidence in support of its motion; it rather applies the law to Exxon's own jurisdictional allegations to explain why the provision of funding to a nonparty law firm in California creates no basis for jurisdiction over the Australian charity in Texas. MTD 6–11. Nor has Exxon made a preliminary showing of jurisdiction for each of the independent reasons discussed above. *Supra* at 1–5. Finally, even if it satisfied the first two requirements, Exxon has not met its burden of identifying specific discovery that would prove personal jurisdiction over Justice Fund. Exxon gestures toward agency, but simply identifying a theory of jurisdiction is not the sort of specificity that might warrant subjecting a foreign defendant to the burdens of discovery in a forum it does not call home. *See, e.g.*, *Nunes*, 582 F. Supp. 3d at 399, 402 (denying jurisdictional discovery where plaintiff merely "listed the topics he would like to investigate" and made only conclusory allegations about the existence of personal jurisdiction).[2] Indeed, the only specific discovery that

---

[2] Exxon cites *Sinkin v. Pons*, No. 13 Civ. 871, 2014 WL 12488583 (W.D. Tex. Sept. 16, 2014), in arguing that the mere possibility that jurisdictional discovery could lead to "significant facts" concerning Justice Fund's relationships with other Defendants is sufficient to warrant that discovery here. 12(b)(2) Opp. 15. Exxon overstates *Sinkin*'s holding, and, in any event, the facts in *Sinkin* are totally dissimilar to those here. In that case, one of the corporate defendants not domiciled in Texas had subsidiaries doing business in the state. The defendant submitted a declaration that left open the factual questions of whether the subsidiaries acted as the parent's alter egos and to what extent the subsidiaries' Texas contacts gave rise to general jurisdiction. The court thus found jurisdictional discovery to be appropriate to address disputed, material questions of fact. *Id.* at *9. Here, Justice Fund did not submit a declaration

Exxon identifies in its motion—relating to "contributions the US NGO Defendants receive from Texas residents and how many members each has that reside in Texas," 12(b)(2) Opp. 15–16—has nothing to do with Justice Fund.

At bottom, courts will not "authorize a jurisdictional fishing expedition based on a plaintiff's general averments that more discovery will prove … jurisdiction." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (internal quotation marks omitted). Exxon cannot show jurisdiction over Justice Fund, and Justice Fund should be dismissed from this case.

## II. EXXON HAS ALSO FAILED TO STATE A CLAIM AGAINST JUSTICE FUND

Exxon concedes that its tort claims are premised on allegedly defamatory or disparaging statements made by Defendants *other than* Justice Fund. To state a claim against Justice Fund, therefore, Exxon must plausibly allege that Justice Fund is secondarily liable for the other Defendants' speech as result of a principal-agent relationship or a conspiracy that Justice Fund knowingly entered. It fails to do so.[3]

### A. Exxon Does Not Allege a Principal-Agent Relationship Between Justice Fund and Any Other Defendant

Exxon dedicates only three sentences of its 12(b)(6) opposition to the issue of agency, insisting, again, that it has plausibly alleged an agency relationship between Justice Fund and the other Defendants based on the funding that Justice Fund provided to the nonparty law firm. ECF

---

implicating facts relevant to jurisdiction, and the unspecified discovery proposed by Exxon would not move the needle on its faulty theory of personal jurisdiction.

[3] Exxon's failure to allege substantive claims against any of the other Defendants, including Attorney General Bonta, is an additional reason to dismiss the tort and conspiracy claims against Justice Fund. MTD 13–16 & n.5; *see, e.g.*, *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 380 (5th Cir. 2017) ("[B]ecause no Plaintiff has properly stated a [tort] claim … against any individual Defendant, each civil conspiracy claim must also fail for the same reason[.]").

97 ("12(b)(6) Opp.") at 10–11. Exxon's argument about the existence of an agency relationship fails for the numerous reasons already discussed above. *Supra* at 1–3.

Moreover, Exxon does not even attempt to address the requirement that, to impose liability under an agency theory, a plaintiff must show a "right of control" that "extend[s] to the specific activity from which the injury arose" and exists "at the very instant of the act or neglect." *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 847 (Tex. App.—Fort Worth 2006, no pet.) (en banc) (internal quotation marks and emphasis omitted); *see* MTD 12–13. No matter what Exxon might say about litigation funding or the nonparty law firm's registration under FARA, *e.g.*, 12(b)(6) Opp. 1, 8, 10, there is simply nothing in the complaint that demonstrates Justice Fund's right and power to control the speech of Attorney General Bonta or the individual employees of the U.S. nonprofits outside the California litigation.

### B. Exxon Does Not Plead a Conspiracy Involving Justice Fund

Exxon fares no better in salvaging its conspiracy claim against Justice Fund. Exxon insists that "the individual actions of each Defendant in furtherance of the conspiracy are imputed to all Defendants," so it does not matter that Exxon engaged in "collective" or "group" pleading. 12(b)(6) Opp. 9–10. But Exxon ignores the requirement—addressed in Justice Fund's opening brief—that "[e]ach participant in a conspiracy must have the specific intent to injure the plaintiff," and a "joint intent to engage in conduct that results in an injury is not sufficient." MTD 16 (quoting *Tompkins v. Cyr*, 995 F. Supp. 664, 685 (N.D. Tex. 1998)). And the few specific allegations relating to Justice Fund—regarding litigation funding to a nonparty law firm—provide no basis to infer that at the purported conspiracy's conception, Justice Fund specifically intended "to accomplish [the] unlawful purpose" of defaming and disparaging Exxon through the other Defendants' extra-litigation conduct. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).

8

Exxon also fails to allege the requisite meeting of the minds. It doubles down on the generalized, conclusory allegation that the other Defendants "worked together and in concert" with Justice Fund to commit their torts, 12(b)(6) Opp. 7, which caselaw makes clear does not suffice, *see Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 752 (5th Cir. 2019) (affirming dismissal of civil conspiracy claim where "[plaintiffs'] allegations of an 'agreement' amongst the various groups of defendants are largely conclusory and speculative and thus legally deficient"); MTD 15.[4] Moreover, the specific allegations that Exxon labels "express acknowledgments of an agreement" all concern the other Defendants, not Justice Fund, *see* 12(b)(6) Opp. 7, and, in any event, the existence of *some* relationship among those Defendants vis-à-vis their litigation does not mean there was an unlawful conspiracy, *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 172–73 (5th Cir. 2000); *Berry*, 608 F. Supp. 2d at 794 (dismissing civil conspiracy claim where "there [were] no allegations to suggest that any [of the identical] acts [defendants engaged in] took place in the context of, or as result of, some prior agreement among the" defendants).

## C. Exxon's Demand for Declaratory Judgment Also Fails

Exxon does not dispute that its request for declaratory judgment rises and falls with the merits of its substantive tort claims, 12(b)(6) Opp. 28, and has no answer to the basic point that there is no "standalone cause of action" for declaratory judgment, MTD 16 (quoting *Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp. 3d 594, 601–02 (E.D. Tex. 2023)). On that basis alone, Exxon's duplicative declaratory judgment claim should be dismissed.

---

[4] Contrary to Exxon's suggestion, *see* 12(b)(6) Opp. 8, Justice Fund's argument concerning the deficiencies in Exxon's conspiracy claim does not depend upon the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Justice Fund, for example, relied in part on the *Berry* decision, which determined that the paucity of factual allegations concerning a meeting of the minds between the defendants ran afoul of the standards in Rule 8(a) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 794 (N.D. Tex. 2009).

9

Exxon also comes up short in arguing that there is a definite and ripe controversy over the "legality" of advanced recycling "in Texas … and other states." 12(b)(6) Opp. 29; *see* Compl. ¶¶ 135–136 (referring to unspecified laws of 25 states). Exxon does not allege that Justice Fund has ever suggested advanced recycling is illegal in general, let alone under the laws of a specific state, *see Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990), and, in any event, courts are not permitted to issue advisory opinions of the type Exxon is demanding, *see Frye v. Anadarko Petrol. Corp.*, 953 F.3d 285, 293–94 (5th Cir. 2019).

\*   \*   \*

Exxon does not argue that it should be permitted to replead any of its claims against Justice Fund or explain how it would cure the defects in its pleading. MTD 17. It has thus waived the issue. *Charboneau v. Box*, No. 13 Civ. 678, 2017 WL 1159765, at \*13 (E.D. Tex. Mar. 29, 2017) ("[A] plaintiff's failure to brief an argument in the plaintiff's response to a motion to dismiss generally results in waiver of such argument."); *see also Young v. U.S. Postal Service ex rel. Donahoe*, 620 Fed. App'x 241, 245 (5th Cir. 2015) ("Denial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint."). Exxon's claims against Justice Fund should be dismissed with prejudice.

## CONCLUSION

For the reasons above and in Justice Fund's opening brief, the Court should grant Justice Fund's motion to dismiss for lack of personal jurisdiction and failure to state a claim.

| | |
|---|---|
| Dated: Washington, D.C.<br>June 30, 2025 | Respectfully submitted,<br><br>_____<br>Joshua Matz* (lead attorney)<br>NY Bar No. 5388962; DC Bar No. 1045064<br>HECKER FINK LLP<br>1050 K Street NW, Suite 1040<br>Washington, DC 20001<br>(929) 294-2537<br>jmatz@heckerfink.com<br><br>John C. Quinn*<br>NY Bar No. 4965000<br>HECKER FINK LLP<br>350 Fifth Avenue, 63rd Floor<br>New York, NY 10118<br>(212) 763-0883<br>jquinn@heckerfink.com<br><br>Matthew J. Craig*<br>NY Bar. No. 5263447; CA Bar No. 350030<br>HECKER FINK LLP<br>1150 S Olive St., Suite 10-140<br>Los Angeles, CA 90015<br>(212) 763-0883<br>mcraig@heckerfink.com<br><br>Joaquin Gonzalez<br>TX Bar No. 24109935<br>MARZIANI, STEVENS & GONZALEZ, PLLC<br>1533 Austin Hwy. #102-402<br>San Antonio, TX 78218<br>(210) 343-5604<br>jgonzalez@msgpllc.com<br><br>*appearing pro hac vice<br><br>Counsel for Defendant Intergenerational Environment Justice Fund Ltd. |