IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **EXXON MOBIL CORPORATION** | § § § § | |
| **V.** | § § § § | **CASE NO. 1:25-cv-00011-MJT** |
| **ROBERT ANDRES BONTA A.K.A ROB BONTA, IN HIS INDIVIDUAL CAPACITY; SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; BAYKEEPER, INC.; AND INTERGERATIONAL ENVIRONMENT JUSTICE FUND LTD.** | § § § § § § § § | |

**<u>DEFENDANT HEAL THE BAY, INC.'S  REPLY TO PLAINTIFF'S RESPONSE TO HEAL THE BAY, INC.'S 12(b)(2), (3), AND (6) MOTION TO DISMISS</u>**

Defendant Heal the Bay, Inc. ("Heal the Bay") files its Reply to Plaintiff's Response to Heal the Bay's Motion to Dismiss Plaintiff ExxonMobil Corporation's ("ExxonMobil") claims under Rule 12(b)(2), (3), and (6) and would show the court as follows:

**I.     Summary**

1.1     Heal the Bay is a non-profit organization that is incorporated in California with its principal place of business is in California. Heal the Bay drafted a press release in California and published it on Heal the Bay's website following the filing of a lawsuit against ExxonMobil in California. Despite no mention of "advanced recycling" in the press release, ExxonMobil filed suit against Heal the Bay in Texas based on ExxonMobil's advanced recycling operations in the Eastern District of Texas. As such: (1) this Court lacks specific personal jurisdiction over Heal the Bay; (2) Venue is proper in California, not Texas and; (3) Exxon Mobil fails to state a claim against Heal the Bay.

## II. The Court Does Not Have Personal Jurisdiction over Heal the Bay.

2.1     Plaintiff only spends one paragraph of its Response focusing on its jurisdictional argument over Heal the Bay and Baykeeper *combined*. When a case involves multiple defendants, the Plaintiff may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what.[1] In its Response, ExxonMobil claims that Heal the Bay did not deny that ExxonMobil is a Texas Corporation or that its advanced recycling operations are Texas-based.[2] However, ExxonMobil never alleged in its Complaint that Heal the Bay had knowledge that ExxonMobil was a Texas Corporation or that its Advanced Recycling operations occurred in Texas. Therefore, there was nothing for Heal the Bay to deny. Additionally, ExxonMobil does not cite to any statement by Heal the Bay regarding "advanced recycling." ExxonMobil's basis for jurisdiction and venue in the Eastern District of Texas stems from its advanced recycling operations in Texas, which Heal the Bay does not reference. On that basis alone, the Court does not have specific personal jurisdiction over Heal the Bay.

2.2     The Fifth Circuit has repeatedly held that "mere allegations of tortious interference with a forum resident's contractual rights are not sufficient to establish specific personal jurisdiction."[3] Further, in intentional tort cases, "it is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff."[4] Instead, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on

---

[1] *M.W. Prince Hall Grand Lodge v. Anderson,* No. 24-30517, 2025 WL 1576802, at *15 (5th Cir. 2025)(citing *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2022))(citing *Rush v. Savchuk*, 444 U.S.320, 331-32, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)).
[2] Dkt. 96, p. 13.
[3] *Elevacity U.S., LLC v. Schweda*, No. 04:22-cv-42, 2022 WL 3704537,*14 (E.D. Tex. Aug. 26, 2022)(quoting *Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003)).
[4] *Danziger & Del Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022).

intentional conduct by the defendant that creates the necessary contacts with the forum."[5] Thus "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[6] It is essential that there is an act by which the defendant purposefully availed itself of the benefits and protections of the forum state.[7] There is no such act by Heal the Bay. Therefore, the Court cannot exercise specific personal jurisdiction over Heal the Bay.

### A. *X Corp v. Media Matters* is not binding authority and is distinguishable

2.3    Plaintiff relies heavily on *X Corp. v. Media Matters for Am.,* a case out of the Northern District of Texas, to establish that knowledge of ExxonMobil being a Texas Corporation is enough to establish specific personal jurisdiction.[8] However, this case is not binding authority and is distinguishable.

2.4    X Corp. sued Media Matters, Hananoki, and Carusone for interference with contract, business disparagement, and interference with prospective economic advantage.[9] X Corp alleged that Defendants knowingly and maliciously fabricated side by side images of various advertisers' post on Plaintiff's social media platform X depicted next to neo-Nazi or other extremist content.[10] Plaintiff alleged that Defendants targeted Plaintiff's blue-chip advertisers with manipulated information designed to drive them from doing business with Plaintiff.[11] Plaintiff's Amended Complaint explains that the Defendants orchestrated a plan to manipulate Plaintiff's

---

[5] *Walden v. Fiore*, 571 U.S. 277, 286, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014).
[6] *Danziger*, 24 F.4th at 497.
[7] *Mr Showers, LLC v. Mr. Shower Door, Inc.*, No. 4:21-cv-00520, 2021 WL 5918921, at *4 (E.D. Tex. 2021)(citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).
[8] Plaintiff cites to *X Corp. v. Media Matters for Am.*, No. 4:23-cv-01175-O,2024 WL 4001803, at *4 (N.D. Tex. Aug. 29, 2024) for finding allegations implying defendants' knowledge entities were headquartered in Texas was sufficient where Defendants' affirmations did not deny such knowledge. However, that is not the page cite.
[9] *X Corp.,* 2024 WL 4001803, at*2.
[10] *Id.* at *2-3.
[11] *Id.* at *8.

platform to align ads from Plaintiff's customers with inflammatory posts.[12] Plaintiff alleged that Media Matters posted articles written by Defendant Hananoki which detailed and described the results of the manipulation.[13] The body of the Hananoki articles targeted Oracle, a Texas-based company that placed ads on Plaintiff's platform and even referred to Oracle in the title.[14] In one of Hananoki's articles, he mentioned how Media Matters investigative report found an Oracle ad occurred next to posts that tout Hitler and the Nazi Party.[15] Hananoki did not deny that he knew of the alleged manipulation or that he and his co-defendant's efforts were designed to drive blue-chip advertisers away from Plaintiff's Platform.[16]

2.5   Carusone appeared on Television shows a number of times discussing the importance of advertisers to X Corp.'s business model and advocating that advertisers should cease doing business with X Corp. if there is a deluge of unmoderated right-wing hatred and misinformation.[17] Carusone did not deny that he knew of the alleged manipulation or that Oracle and AT&T were based in Texas, or that Defendants engaged in jointly undertaken activity to drive X Corp.'s advertisers away.[18] In determining whether there was specific jurisdiction over Media Matters, the Northern District analyzed the nature of the website and determined that it was interactive.[19]

2.6   *X Corp.* is distinguishable for the following reasons: First, In *X Corp.*, Plaintiff claimed in the Complaint that Defendant Hananoki, who published articles, knew Oracle and AT&T were based in Texas. Here, ExxonMobil did not allege in their Complaint that Heal the Bay

---

[12] *Id.*
[13] *Id.* at *9.
[14] *Id.*
[15] *Id.* at *10.
[16] *Id.* at *11.
[17] *Id.* at *12.
[18] *Id.* at *13.
[19] *Id.* at *14.

Heal the Bay 12(b) Reply                                                                                          Page **4** of **10**

knew ExxonMobil was based in Texas. Second, the inference from Media Matters' affidavit was that Media Matters emailed the Hananoki articles to Texans.[20] Here, Heal the Bay has affirmatively stated that it did not send the press release to any reporters based outside of California and did not send the press release to any Texas Residents nor any Texas Corporations.[21] Third, in *X Corp.*, the defendants did not deny taking direct steps to drive advertisers away from X Corp.[22] Here, Heal the Bay has denied that it had any communications with any person or entity that had contracts or may have contracts with ExxonMobil, denied knowledge of any contracts that ExxonMobil had, and denied any participation in efforts that would affect ExxonMobil's ability to obtain permits.[23]

2.7     ExxonMobil references that Heal the Bay posted its press release on its website where it solicits donations, but as the Fifth Circuit has noted *Revell v. Lidov* discounted Columbia's solicitation of subscriptions because Revell's libel claim did not arise from the subscriptions.[24] For specific jurisdiction, courts look only to the contact out of which the cause of action arises.[25] As in *Revell*, the claim here arises from the alleged defamation, not from Heal the Bay inviting visitors to its website to donate.[26] What matters is whether Heal the Bay aimed the alleged libel at Texas.[27] It is uncontested that Heal the Bay's press release was issued in conjunction with the filing of a lawsuit against ExxonMobil in California about single-use plastic pollution on the beaches and ocean in California.[28] The press release was written in California. No sources for the press release came from Texas. Heal the Bay does not have any targeted advertising on its social media or

---

[20] *Id.* at 15.
[21] Dkt. 47-1, ¶¶9-10.
[22] *X Corp.,* 2024 WL 4001803, at*10.
[23] Dkt 47-1, ¶ 11.
[24] *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 319 (5th Cir. 2021); see also *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).
[25] *Id.*
[26] See *Id.*
[27] See *Johnson*, 21 F.4th at 321.
[28] Dkt. 47-2.

website to Texas residents and the press release was not sent to any Texas residents or corporations.[29] To target every user everywhere is to target no place at all.[30]

### B. The Fifth Circuit's recent ruling in *M.W. Prince Hall Grand Lodge* is more analogous to our case than *X Corp.*

2.8    Additionally, since the Northern District's opinion in *X Corp*, the Fifth Circuit recently issued an opinion in early June 2025 in *M.W. Prince Hall Grand Lodge v. Anderson*. In *M.W. Prince Hall Grand Lodge*, Plaintiff, Prince Hall Louisiana was a Masonic grand lodge located in Louisiana.[31] Prince Hall Louisiana was one of the founding members of the Conference of Grand Masters Prince Hall Masons, Inc. ("Conference").[32] In 2023, during its annual meeting in New Orleans, the Conference voted to suspend Prince Hall Louisiana from its membership.[33] In 2024, during its annual conference in North Carolina, the Conference voted to remove Prince Hall Louisiana from its membership rolls.[34] Prince Hall Louisiana sued the Conference and fourteen individuals in the Eastern District of Louisiana for tortious interference with contract, conspiracy to commit tortious interference with contract, and defamation among other causes of action.[35] The only allegations in Prince Hall Louisiana's complaint tying the Conference to Louisiana were: (1) the Conference accepted contracted annual dues from Prince Hall Louisiana from the Conference's inception until 2023; and (2) the Conference voted to suspend Prince Hall Louisiana from its membership rolls in 2023 at a meeting organized and held in New Orleans.[36] The forum contacts of the Conference in *M.W. Prince Hall Grand Lodge* are direct and greater than Heal the Bay's contacts with the Eastern District of Texas, much less Texas. Prince Hall Louisiana alleged that

---

[29] Dkt. 47-1, ¶5-6, 8-10
[30] *Johnson*, 21 F.4th at 321-22.
[31] *M.W. Prince Hall Grand Lodge v. Anderson,* No. 24-30517, 2025 WL 1576802, at *2 (5th Cir. 2025).
[32] *Id.*
[33] *Id.*
[34] *Id.* at *3
[35] *Id.* at *3-4.
[36] *Id.* at *7.

the Conference improperly influenced others from doing business with Prince Hall Louisiana by suspending it from the Conference's membership rolls and later voting to declare it an "irregular" masonic lodge, which occurred in North Carolina.[37] Prince Hall Louisiana's allegation of the Conference improperly influencing others from doing business with Prince Hall Louisiana is similar to ExxonMobil's allegations here.

2.9    The Fifth Circuit noted that "the 'effects' test 'is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.'"[38] The plaintiff cannot be the only link between the defendant and the forum.[39]  In *M.W Prince Hall Grande Lodge*, there were no facts suggesting that the Conference purposefully availed itself of the privilege of conducting activities in Louisiana and invoking the benefits and protections of Louisiana's laws when it voted to remove Prince Hall Louisiana from its membership in North Carolina.[40] The factual basis for Prince Hall Louisiana's defamation claim was that the Conference of Grand Masters Prince Hall Masons, Inc. ("Conference") circulated a document declaring Prince Hall Louisiana "irregular" on the Internet and social media. The Fifth Circuit noted that there were no facts indicating that the Conference made the social media and Internet posts in Louisiana, purposefully directed the posts to a Louisiana audience, or relied on Louisiana sources.[41] Therefore, Prince Hall Louisiana did not present prima facie evidence sufficient to establish specific personal jurisdiction.[42]

---

[37] *Id.* at *11.
[38] *M.W. Prince Hall Grand Lodge v. Anderson,* No. 24-30517, 2025 WL 1576802, at *13 (5th Cir. 2025) (citing *Panda Brandywine Corp. v. Potomac Elec. Power, Co.,* 253 F.3d 865, 869 (5th Cir. 2001) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997).
[39] *Walden v. Fiore*, 571 U.S. 277, 285, 134 S.Ct. 1115, 188 L. Ed. 2d 12 (2014).
[40] *M.W. Prince Hall Grand Lodge*, 2025 WL 1576802,*13.
[41] *Id.* at *14 (citing *Calder*, 465 U.S. 783, 788-89, 104 S.Ct. 1482, 79 L. Ed. 2d 804 (1984)).
[42] *M.W. Prince Hall Grand Lodge*, 2025 WL 1576802, at *14.

2.10    Here, no facts suggest that Heal the Bay purposefully availed itself of the privilege of conducting activities in Texas and invoked the benefits and protections of Texas' laws when it drafted and issued a press release in California. Therefore, the Court should grant Heal the Bay's Motion to Dismiss for lack of personal jurisdiction.[43]

### III.    Venue is Proper in California, not Texas.

3.1    Contrary to what ExxonMobil claims, Heal the Bay did not state that Texas injury is irrelevant under §1391(b)(2).[44] Heal the Bay stated that the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district.[45]

3.2    Plaintiff cites *Nunes v. NBCUniversal Media, LLC* for the proposition that where the harm was felt *may* be considered in determining where a substantial part of the events occurred for a defamation case. However, the Eastern District of Texas held that a substantial number of events occurred in the Southern District of New York including that Maddow and other individuals involved in the Report's production, including the show's executive producer work in New York City; the Report was prepared in New York City; recorded in New York City; published in New York City; broadcasted in New York City and produced by MSNBC, headquartered in New York City.[46] Here, the press release was drafted in California, it was written by people who work in California, it was published in California by a California non-profit organization.[47]

---

[43] ExxonMobil did not request leave to conduct jurisdictional discovery before it submitted its Response to Heal the Bay's Motion to Dismiss and even states in its Response that "the allegations in the Complaint are sufficient to clear the low bar for establishing personal jurisdiction, so jurisdictional discovery is unnecessary." Dkt. 96, p. 16. Therefore, Heal the Bay requests that the Court denies jurisdictional discovery.
[44] See Dkt. 96, p. 19.
[45] Dkt. 47 at ¶ 5.24.
[46] *Nunes v. NBCUniversal Media, LLC*, 582 F.Supp. 3d 387, 404 (E.D. Tex. 2022).
[47] Dkt 47-1, ¶¶3, 5-6, 9-10.

3.3    The second case plaintiff cites is *Udeobong v. Hawkins* which is distinguishable. In that it pertained to claims by a governmental entity regarding Medicaid requirements.[48] Plaintiff also cites to *Calder v. Jones* and the effects test, but those pertain to jurisdiction, **not** venue.[49]

3.4    Heal the Bay did not reference advanced recycling or ExxonMobil's advanced recycling operations in its press release. Therefore, the effects of Heal the Bay's alleged tortious conduct were not expressly aimed at Texas or ExxonMobil's advanced recycling operations.

**IV.    12(b)(6) – Plaintiff's Conspiracy allegations are not enough to state a claim against Heal the Bay.**

4.1    Plaintiff argues that conspiracy allegations and the actions of alleged co-conspirators is enough to defeat dismissal based on Rule 12(b)(6) even though there are no specific allegations against Heal the Bay.[50] However, once again, ExxonMobil has taken a statement by Heal the Bay out of context. Namely, that Heal the Bay was quietly meeting with other US NGO Defendants to engage in a coordinated campaign against ExxonMobil.[51] However, the statement is actually "Today's action marks the first step in a coordinated campaign to legally hold Big Oil accountable for the production of wasteful and harmful single-use plastics."[52] Which was underneath the title "Who else is backing the lawsuit against ExxonMobil?"[53] Nothing was said about advanced recycling in the press release. The essential elements of a civil conspiracy require that two or more persons have a meeting of the minds to accomplish an unlawful objective and take one or more unlawful, overt acts to accomplish the objective.[54] Here, the only allegation of conspiracy is actually based on an allegation of a coordinated campaign to file a lawsuit, which is

---

[48] *Udeobong v. Hawkins*, No.08-1833, 2009 WL 7326072, at *1-2 (S.D. Tex. Feb. 19, 2009).
[49] *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L. Ed. 2d 804 (1984).
[50] Dkt. 97, p. 27.
[51] See Dkt. 96, p. 13.
[52] Dkt. 47-2, p. 2.
[53] Dkt. 47-2, p. 2.
[54] See *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).

not illegal. Therefore, ExxonMobil cannot use conspiracy as a means of imputed co-defendants' conduct onto Heal the Bay and has failed to state a claim against Heal the Bay.

## PRAYER

For these reasons, the Court should Grant Heal the Bay's 12(b)(2) Motion to Dismiss against ExxonMobil. In the alternative, should grant dismissal under 12(b)(3) and 12(b)(6).

Dated: June 30, 2025

Respectfully Submitted,

**TRIBBLE | ROSS**

By: */s/ Deborah A. Greenleaf*
    Wesson H. Tribble
    State Bar No. 20213960
    Deborah A. Greenleaf
    State Bar No. 08402650
    Monica C. Vaughan
    State Bar No. 00794784
    Fallin D. Schwartz
    State Bar No. 24095622
    6371 Richmond Avenue
    Houston, Texas 77057
    Telephone:   (713) 622-0444
    Facsimile:    (713) 622-0555
    wtribble@tribblelawfirm.com
    dgreenleaf@tribblelawfirm.com
    mvaughan@tribblelawfirm.com
    fschwartz@tribblelawfirm.com
    **Attorneys for Defendant**
    **Heal the Bay, Inc.**

## CERTIFICATE OF SERVICE

I certify that on June 30, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a "Notice of Electronic Filing" to email to all parties of record.

    */s/ Deborah A. Greenleaf*
    Deborah A. Greenleaf