1   ROB BONTA
    Attorney General of California
2   R. MATTHEW WISE
    Supervising Deputy Attorney General
3   WILL SETRAKIAN, CA State Bar No. 335045
    Deputy Attorney General
4     300 South Spring Street, Suite 1702
      Los Angeles, CA 90013-1230
5     Telephone: (213) 269-6668
      Fax: (916) 731-2125
6     E-mail: William.Setrakian@doj.ca.gov
    *Attorneys for Attorney General Rob Bonta*

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF TEXAS

10

11

12   **EXXONMOBIL CORPORATION,**                    1:25-cv-00011-MJT

                                      Plaintiff,    **DEFENDANT ATTORNEY GENERAL**
13                                                  **ROB BONTA'S REPLY IN SUPPORT OF**
                                                    **MOTION TO DISMISS**
14          v.

15                                                  Judge:        Hon. Michael Truncale
     **ROBERT ANDRES BONTA A.K.A. ROB**            Action Filed: January 6, 2025
16   **BONTA, IN HIS INDIVIDUAL**
     **CAPACITY, ET AL.,**

17                                   Defendants.

18

19

20

21

22

23

24

25

26

27

28

---

1

**TABLE OF CONTENTS**

2

**Page**

Introduction ............................................................................................................... 1

Argument ................................................................................................................... 1

    I.       The Court Lacks Personal Jurisdiction ................................................... 1

    II.     AG Bonta Is Entitled to Official Immunity............................................ 4

        A.      AG Bonta Is Immune Under California Law ............................. 6

        B.      AG Bonta Is Immune Under Texas Law..................................... 8

    III.    AG Bonta Is Entitled to Sovereign Immunity........................................ 9

    IV.   Declaratory Relief Is Improper ............................................................ 10

Conclusion .............................................................................................................. 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Attorney General Rob Bonta's Reply in Support of Motion to Dismiss (1:25-cv-00011-MJT)

# TABLE OF AUTHORITIES

**Page**

**CASES**

Ashcroft v. Iqbal
    556 U.S. 662 (2009) ........................................................................................... 9

Blassingame v. Trump
    87 F.4th 1, 11 (D.C. Cir. 2023) ........................................................................ 4

Calder v. Jones
    465 U.S. 783 (1984) ..................................................................................... 2, 3

Campbell v. Reisch
    986 F.3d 822 (8th Cir. 2021) ............................................................................ 4

Castellano v. Fragozo
    352 F.3d 939, 942 (5th Cir. 2003) ................................................................... 4

City of Lancaster v. Chambers
    883 S.W.2d 650 (Tex. 1994) ............................................................................ 9

Danziger & De Llano, LLP v. Morgan Verkamp, LLC
    24 F.4th 491 (5th Cir. 2022) ............................................................................ 3

Dreyer v. Yelverton
    291 F. App'x 571 (5th Cir. 2008) ..................................................................... 5

Espinal v. City of Houston
    96 F.4th 741, 748 (5th Cir. 2024) .................................................................... 4

Fruge v. Amerisure Mut. Ins. Co.
    663 F.3d 743 (5th Cir. 2011) ............................................................................ 5

Gutierrez v. Collins
    583 S.W.2d 312 (Tex. 1979) ............................................................................ 5

Henley v. Simpson
    527 F. App'x 303, 305 (5th Cir. 2013) ......................................................... 10

Hunt v. Smith
    67 F. Supp. 2d 675 (E.D. Tex. 1999) ............................................................... 9

Idaho v. Coeur d'Alene Tribe of Idaho
    521 U.S. 261 (1997) ....................................................................................... 10

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Fort Worth Osteopathic Hosp., Inc.*
2008 WL 2963583 (N.D. Tex. 2008) ........................................................................ 5

*Jennings v. Abbott*
538 F. Supp. 3d 682 (N.D. Tex. 2021) ..................................................................... 8

*Johnson v. TheHuffingtonPost.com, Inc.*
21 F.4th 314 (5th Cir. 2021) .............................................................................. 2, 3

*Kallinen v. Newman*
2023 WL 2645555 (5th Cir. 2023) .......................................................................... 4

*Kelson v. Clark*
1 F.4th 411 (5th Cir. 2021) ................................................................................... 4

*Kilgore v. Younger*
640 P.2d 793, 798 (Cal. 1982) ............................................................................ 6, 7

*Krupa v. Quinn*
596 F. Supp. 3d 1127 (N.D. Ill. 2022) ................................................................... 4

*Lewis v. Clarke*
581 U.S. 155, 163 (2017) .................................................................................... 10

*Lindke v. Freed*
114 F.4th 812 (6th Cir. 2024) ............................................................................... 4

*Lindke v. Freed*
601 U.S. 187 (2024) ........................................................................................... 4

*Nesmith v. Taylor*
715 F.2d 194 (5th Cir. 1983) ............................................................................... 4

*Ramming v. United States*
281 F.3d 158 (5th Cir. 2001) ............................................................................... 6

*Revell v. Lidov*
317 F.3d 467 (5th Cir. 2002) ............................................................................... 2

*Rothman v. Jackson*
57 Cal. Rptr. 2d 284 (Ct. App. 1996) ................................................................... 6

*Salazar v. Morales*
900 S.W.2d 929 (Tex. App. 1995) ........................................................................ 7

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3  *Sanborn v. Chron. Publ'g Co.*
4      556 P.2d 764 (Cal. 1976) ................................................................................. 6, 7

5  *Sangha v. Navig8 ShipManagement Priv. Ltd.*
       882 F.3d 96 (5th Cir. 2018).................................................................................... 2
6
   *Shanks v. City of Arlington*
7      2022 WL 17835509 (N.D. Tex. 2022)..................................................................... 8

8  *Staten v. Tatom*
       465 F. App'x 353 (5th Cir. 2012) ........................................................................... 5
9
   *Stramaski v. Lawley*
10      44 F.4th 318 (5th Cir. 2022).............................................................................. 9, 10

11 *Stroman Realty, Inc. v. Wercinski*
12      513 F.3d 476 (5th Cir. 2008)................................................................................... 2

13 *Sulak v. Am. Eurocopter Corp.*
       901 F. Supp. 2d 834 (N.D. Texas 2012) ................................................................. 5
14
   *Tutor-Saliba Corp. v. Herrera*
15      39 Cal. Rptr. 3d 21 (Ct. App. 2006)..................................................................... 6, 7

16 *Vexas, LLC v. Hill Enters., LLC*
17      2010 WL 3655850 (W.D. Tex. 2010)...................................................................... 5

18 *Walden v. Fiore*
       571 U.S. 277 (2014) ............................................................................................... 3
19
   *Walton v. Alexander*
20      44 F.3d 1297 (5th Cir. 1995).................................................................................. 4

21 *Williams v. Gorton*
22      529 F.2d 668, 672 (9th Cir. 1976).......................................................................... 8

23 *Woods Servs. v. Disability Advocs., Inc.*
       342 F. Supp. 3d 592, 607-08 (E.D. Pa. 2018) ........................................................ 5
24
   *X Corp. v. Media Matters for Am.*
25      2024 WL 4001803 (N.D. Tex. 2024)....................................................................... 3

26 **STATUTES**

27 42 U.S.C. § 1983 ..................................................................................................... 4, 8

28

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Gov. Code § 19815(d) ............................................................................ 6

Cal. Gov. Code §§ 19990(a)–(b) ................................................................... 6

Texas Tort Claims Act ............................................................................... 5, 9

**CONSTITUTIONAL PROVISIONS**

Eleventh Amendment ................................................................................ 9, 10

**COURT RULES**

Fed. Rule Civ. Proc. 12(b)(1) .................................................................... 5, 6

**OTHER AUTHORITIES**

Restatement (Second) Conflict of Laws § 6 (Am. Law Inst. 2024) ............... 5

# INTRODUCTION

The straightforward application of case law counsels dismissing this action against Attorney General Bonta ("AG Bonta") on justiciability grounds. Yet ExxonMobil's opposition overcomplicates the issues. In over thirty pages spanning two briefs, ExxonMobil—unbounded by this case's forum or causes of action—relies on federal authorities from jurisdictions where it did not sue describing legal theories that it did not advance.

AG Bonta is entitled to due process. Here, that means applying governing law to ExxonMobil's specific allegations. That includes the law of the Fifth Circuit on personal jurisdiction—under which ExxonMobil cannot show sufficient contacts with Texas. It includes the law of California and Texas on official immunity—under which ExxonMobil's suit cannot proceed because AG Bonta described a case brought by his Department. And it includes federal sovereign immunity law—under which ExxonMobil cannot subvert general principles through a procedural workaround. The Court should grant AG Bonta's Motion to Dismiss.

# ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION

ExxonMobil's personal-jurisdiction arguments share a common flaw: they do not respond to AG Bonta. ExxonMobil does not distinguish, counter, or even cite AG Bonta's many Fifth Circuit precedents showing a lack of personal jurisdiction. It does not engage with AG Bonta's discussion of the relevant conduct. And it relies heavily on a single non-binding case from another judicial district.

As AG Bonta explained, the Court lacks personal jurisdiction over him because he made none of the relevant statements in Texas and directed his statements towards a California audience—or, at least, a nationwide audience that did not target Texas specifically. ECF 44 at 14–16. ExxonMobil's opposition does not dispute that AG Bonta made all his statements outside of Texas. Instead, it argues that AG Bonta "purposefully directed his activities at Texas," rehashing its Complaint's allegations. ECF 96 at 10–13.

Missing from this recitation: any refutation of AG Bonta's legal arguments and supporting Circuit precedent. AG Bonta explained that the Fifth Circuit does not permit specific personal

1   jurisdiction based on only alleged harm to a Texas resident. ECF 44 at 13 (citing *Stroman Realty,*

2   *Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008)). He demonstrated that conduct that

3   "happened to affect" ExxonMobil in Texas does not spawn personal jurisdiction, because such

4   harm came from ExxonMobil's forum connections, not his. *Id.* at 13–14 (quoting *Sangha v.*

5   *Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103–04 (5th Cir. 2018)). He noted that his

6   statements targeted California residents, never "solicit[ing] Texan visits to the alleged" speech.

7   *Id.* at 16 (quoting *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 321 (5th Cir. 2021), and

8   citing *Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002)). And he confirmed that even if the

9   Court viewed his words as targeting not Californians, but instead all Americans, that still did not

10  establish personal jurisdiction in Texas. *Id.* (citing *Johnson*, 21 F.4th at 321–22).

11      ExxonMobil does not respond to this robust precedent. Indeed, it offers no contrary Fifth

12  Circuit authority. Instead, it presents only general concepts via the Supreme Court's hornbook

13  defamation-jurisdiction case, *Calder v. Jones*. ECF 96 at 12 (citing 465 U.S. 783 (1984)).

14  ExxonMobil relies on only these broad principles, as it must, because Fifth Circuit precedent

15  clearly establishes that ExxonMobil has no valid personal jurisdiction arguments in this case. In

16  *Stroman Realty*, the Fifth Circuit declined to apply *Calder* to a case in which an out-of-state

17  government defendant acted "based upon conduct which occurred entirely in Texas" because the

18  foreign official "essentially assert[ed] nationwide authority." 513 F.3d at 485–86. In *Sangha*, the

19  Circuit rejected an invocation of *Calder* for the proposition that an act with effects felt in Houston

20  established jurisdiction in Texas, holding instead that a plaintiff must show that the defendant's

21  "conduct connects it to the forum in a meaningful way." 882 F.3d at 103–04. In *Revell*, the Fifth

22  Circuit held that a "plaintiff's residence in the forum, and suffering of harm there, will not alone

23  support jurisdiction under *Calder*." 317 F.4th at 473 (collecting cases).[1] And in *Johnson*, the Fifth

24  ───────────────

25  [1] *Revell* was the original source for ExxonMobil's claim that a party that "pick[s] a fight in Texas" should "expect that it be settled there." ECF 96 at 6 (citing *X Corp. v. Media Matters for Am.*,

26  2024 WL 4001803, at *6 (N.D. Tex. Aug. 29, 2024) [citing *Revell*, 317 F.3d at 476]). But in the same cited paragraph, *Revell* explained that courts should "look to the geographic focus of the

27  [conduct], not the bite of the defamation . . . or who provoked the fight"—and on *that* basis, the court affirmed the dismissal of the case for lack of personal jurisdiction. 317 F.3d at 476. Its "pick

28  a fight" language thus supports an even-handed application of legal principles, not a pugnacious declaration that those who allegedly harm Texas firms must face suit there.

2

1    Circuit emphasized that its interpretation of *Calder* turns on whether allegedly defamatory

2    statements were "adequately directed at the forum state." 21 F.4th at 321 n.8 (citation omitted).

3        Under these cases, the Court should not exercise jurisdiction over a non-resident like AG

4    Bonta who speaks outside of Texas and targets California listeners or all Americans. ECF 44 at

5    14–17. ExxonMobil never distinguishes these authorities, offers contrary binding precedent, or

6    explains why it prevails under these decisions—because it cannot counter these controlling cases.

7        Nor does ExxonMobil engage with AG Bonta's core personal-jurisdiction argument. AG

8    Bonta's comments did not concern advanced recycling per se; instead, they discussed the State of

9    California's allegations that ExxonMobil misled Californians regarding its efficacy. *See* ECF 44

10   at 15–16. AG Bonta's sole reference to ExxonMobil's Texas facility answered an interviewer's

11   unsolicited question concerning the site, which cannot establish personal jurisdiction. *See id.* at 15

12   (citing *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 24 F.4th 491, 498 (5th Cir. 2022)).

13       Finally, ExxonMobil relies on a case from Texas' Northern District, *X Corp. v. Media*

14   *Matters*. ECF 96 at 6, 10, 11, 12, 13, 14, 16, 18, 22. First, this case from another district does not

15   bind this tribunal, unlike the Fifth Circuit authorities AG Bonta marshals above. Second, unlike in

16   *X Corp.*, AG Bonta's comments did not target ExxonMobil's "headquarters," instead discussing

17   ExxonMobil's alleged deception that occurred in California and its effects. ECF 44 at 16.

18   Reading AG Bonta's statements to "target" ExxonMobil's headquarters sufficient to exercise

19   personal jurisdiction over him would vitiate binding Circuit precedent, including *Sangha*'s

20   requirement that the defendant's conduct "connect it to the forum in a meaningful way," 882 F.3d

21   at 103–04, and *Revell*'s holding that a plaintiff's residence alone cannot establish jurisdiction, 317

22   F.4th at 473.

23       To sum up, the "'minimum contacts' analysis looks to a non-resident defendant's contacts

24   with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v.*

25   *Fiore*, 571 U.S. 277, 285 (2014). By doing so, this "limit[] on the State's adjudicative authority

26   principally protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs

27   or third parties." *Id.* at 284. ExxonMobil cannot "impermissibly" "shift[] the analytical focus

28   from [plaintiff's] contacts with the forum to his contacts with [defendants]." *Id.* at 289. The Court

3

1    should vindicate this liberty interest and recognize a lack of personal jurisdiction over AG Bonta.

2    **II.    AG BONTA IS ENTITLED TO OFFICIAL IMMUNITY**

3    　　　The statements by AG Bonta at issue in this lawsuit—all made in his role as a public

4    official in the scope of government employment—fall within the official immunity privilege,

5    whether California or Texas law applies. ExxonMobil's arguments to the contrary ignore

6    governing doctrine. Indeed, ExxonMobil spends little time engaging with the relevant legal

7    standards under California and Texas law. Instead, it primarily canvasses federal doctrines that

8    are inapplicable here. *See, e.g.*, ECF 95 at 18–20, 22–23, 24–25. Specifically, ExxonMobil cites

9    several cases applying 42 U.S.C. section 1983. *Lindke v. Freed*, 601 U.S. 187, 193 (2024);

10   *Kallinen v. Newman*, 2023 WL 2645555, at *1 (5th Cir. Mar. 27, 2023); *Campbell v. Reisch*, 986

11   F.3d 822, 823 (8th Cir. 2021); *Krupa v. Quinn*, 596 F. Supp. 3d 1127, 1131 (N.D. Ill. 2022).

12   *Blassingame v. Trump* also proceeds under a federal cause of action. 87 F.4th 1, 11 (D.C. Cir.

13   2023). These citations are irrelevant for several reasons. Section 1983 provides a different legal

14   framework than state tort law: 1983 plaintiffs must show deprivation of a federal right, but state

15   tort plaintiffs proceed under state law. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003)

16   (en banc) ("[T]o proceed under [] § 1983 such a claim must rest upon a denial of rights secured

17   under federal and not state law."), *overruled on other grounds as recognized by Espinal v. City of*

18   *Houston*, 96 F.4th 741, 748 (5th Cir. 2024); *Walton v. Alexander*, 44 F.3d 1297, 1301 (5th Cir.

19   1995) (en banc); *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). Section 1983

20   law also has no role to play here because Texas and California law already provide principles to

21   resolve this dispute. *See* pp.4–9 *infra*. Finally, the Court should not apply section 1983 principles

22   because, had ExxonMobil proceeded under that law, AG Bonta could invoke qualified immunity,

23   which "protects government officials from civil damages liability when their actions could

24   reasonably have been believed to be legal." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021)

25   (quotation and citation omitted). Indeed, qualified immunity arises in some of ExxonMobil's

26   cited cases. *Lindke v. Freed*, 114 F.4th 812, 821 (6th Cir. 2024); *Kallinen*, 2023 WL 2645555 at

27   *3–4. ExxonMobil cannot profit from this doctrine's potential benefits but avoid its limitations.

28   　　　As explained in his opening brief, AG Bonta would prevail under either Texas or California

4

1    law. *Id.* at 17–25.[2] ExxonMobil argues that Texas law applies, but there are strong reasons it

2    should not. Texas choice-of-law doctrine considers, among other factors, the protection of

3    justified expectations. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). That factor favors

4    applying California law, because "it would be unfair and improper to hold a person liable under

5    the local law of one state when he had justifiably molded his conduct to conform to the

6    requirements of another state." *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 845 (N.D.

7    Texas 2012) (quoting Restatement (Second) Conflict of Laws § 6 (Am. Law Inst. 2024)). AG

8    Bonta justifiably expected that because his disputed actions concerned California state litigation,

9    he would "be[] subject to California law in at least some capacity" for those statements. *Vexas,*

10   *LLC v. Hill Enters., LLC*, 2010 WL 3655850, at *4 (W.D. Tex. Sept. 13, 2010).

11        In addition, ExxonMobil unwittingly makes a strong argument against selecting Texas law

12   as the rule of decision, claiming the Texas Tort Claims Act applies to only Texas state officials.

13   ECF 95 at 26. That strongly favors applying California law, because Texas law does not

14   contemplate this situation involving an out-of-state official. *See Woods Servs. v. Disability*

15   *Advocs., Inc.*, 342 F. Supp. 3d 592, 607–08 (E.D. Pa. 2018) (holding New York had greater

16   interest in applying SLAPP law to defamation case because Pennsylvania had no equivalent).

17        ExxonMobil also argues that AG Bonta bears the burden of proof for official immunity.

18   ECF 95 at 13. That is incorrect. Rule 12(b)(1) governs the official-immunity defense, and a

19   plaintiff bears the burden of pleading allegations that surmount the defense. ECF 44 at 12.

20   ExxonMobil's supposedly contrary federal authorities from the Fifth Circuit—which provide the

21   rule of decision on this procedural issue—come from the summary-judgment phase, and thus are

22   irrelevant to the motion before the Court. *In re Fort Worth Osteopathic Hosp., Inc.*, 2008 WL

23   2963583, at *3–5, n.9 (N.D. Tex. July 29, 2008); *Staten v. Tatom*, 465 F. App'x 353, 360 (5th

24   Cir. 2012); *Dreyer v. Yelverton*, 291 F. App'x 571, 572 (5th Cir. 2008) (per curiam). Instead,

25   ────────────────────

26   [2] ExxonMobil asserts that AG Bonta forfeited his argument that California law applies. ECF 95 at
     14 n.3. That is clearly wrong. ExxonMobil's cited authority explains that, had AG Bonta "briefed
27   only [California] law before the [C]ourt, never asserting that Texas law should apply or that the
     district court should engage in a choice-of-law analysis," he would be barred from later arguing
28   for choice-of-law principles. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011).
     But AG Bonta addressed both California and Texas law in his briefing.

1  "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."

2  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

3  ### A.    AG Bonta Is Immune Under California Law

4  As AG Bonta has explained, California law protects conduct as official if an employee was

5  doing work he was employed for or performed acts incident to those duties. ECF 44 at 17. The

6  California AG's duties include representing the public interest, including informing the public of

7  the office's actions. *Id.* at 18. As described above, ExxonMobil generally declines to argue within

8  this framework. To the extent it does, it comes up short.

9  ExxonMobil asserts that AG Bonta's discussion of his office's litigation was not "work he

10  was employed to perform." ECF 95 at 10 (quoting *Sanborn v. Chron. Publ'g Co.*, 556 P.2d 764,

11  766 (Cal. 1976)). But ExxonMobil ignores AG Bonta's lengthy explanation of his relevant

12  responsibilities, including that the duty to "keep the public informed of his [] management of the

13  public business." ECF 44 at 19 (quoting *Rothman v. Jackson*, 57 Cal. Rptr. 2d 284, 294 n.6 (Ct.

14  App. 1996)).[3] ExxonMobil seeks a more favorable outcome in federal law, as noted above, but it

15  chose to proceed on state-law claims.

16  ExxonMobil tries, but fails, to distinguish *Kilgore v. Younger* and *Tutor-Saliba v. Herrera*.

17  Regarding *Kilgore*, ExxonMobil claims that California's official-immunity standard asks whether

18  the conduct at issue was "indistinguishable from actions initiated by public officials truly

19  oblivious to the political ramifications of their moves." ECF 95 at 17 (quoting 640 P.2d 793, 798

20  (Cal. 1982)). ExxonMobil uses this to argue that if AG Bonta spoke with the "aim[] [of]

21  advancing a political campaign," then he falls outside of California immunity law. *Id.* But *Kilgore*

22  held the exact opposite: because the challenged communications described the AG's office's

23  conduct, it did not matter if the actions "may well have been taken to produce a popular and

24  appealing law enforcement image." 640 P.2d at 798.[4] An attorney general need not be "oblivious

25  ---

[3] ExxonMobil argues that AG Bonta violated California's incompatible activities law for state employees. ECF No. 95 at 9, 18 (citing Cal. Gov't Code §§ 19990(a)–(b)). Setting aside ExxonMobil's inapt characterization of AG Bonta's litigation update as "fundraising," those statutes do not apply, covering only "employees of the executive branch of government who are not elected to office." Cal. Gov't Code § 19815(d).

[4] Texas courts have cited *Kilgore* to hold that if an elected attorney general acts pursuant to his

(continued…)

1  to the political ramifications" of his speech—to the contrary, if he discusses law-enforcement

2  issues from his perspective as attorney general, an argument that he "was acting as a candidate

3  and therefor[e] not performing an 'official duty' . . . is without merit." *Id.*; *see also Tutor-Saliba*

4  *Corp. v. Herrera*, 39 Cal. Rptr. 3d 21, 28 (Ct. App. 2006).

5      ExxonMobil purports to distinguish *Tutor-Saliba* by asserting that it was "undisputed" that

6  the defendant spoke in his official capacity. ECF 95 at 24 (quoting 39 Cal. Rptr. 3d at 29). That is

7  incorrect. The plaintiff there argued essentially ExxonMobil's position: "a prosecutor is not

8  immune when making inflammatory statements at a press conference." Appellant's Opening

9  Brief at 3, *Tutor-Saliba*, 39 Cal. Rptr. 3d (No. A108712), 2005 WL 1305432. The Court used

10 "undisputed" to mean that the proposition was clearly true, not agreed on by the parties. For good

11 reason: per *Tutor-Saliba*, an elected attorney may make "florid" remarks that "cast [a party] in an

12 unfavorable light" if they "concern[] the claims being asserted in [an] action, and [the attorney's]

13 professional opinion . . . that the matter was well worth pursuing." 39 Cal. Rptr. 3d at 29.

14      ExxonMobil tries to find relevant significance in distinctions among AG Bonta's different

15 social media pages. *Id.* at 20–22. Generally, these arguments proceed under federal law, which

16 again, is immaterial here. The pertinent official-conduct inquiry under California law asks

17 whether the defendant was "engaged in work he was employed to perform." ECF 44 at 19

18 (quoting *Sanborn*, 556 P.2d at 766). The law does not separately examine the context in which the

19 individual acted, and ExxonMobil presents no California authority to that effect. To the contrary,

20 per *Tutor-Saliba*, the political context does not change the analysis; the remarks in that case were

21 made at a meeting of the San Francisco Chinese–American Democratic Club, yet were

22 determined to be official. *Id.* at 20–21 (citing 39 Cal. Rptr. 3d at 23, 29).

23      ExxonMobil relatedly argues that the interviews at issue could not serve AG Bonta's

24 California constituents because he spoke with "national media outlets." ECF 95 at 26. AG

25 Bonta's interviews with media that broadcast in the entire country (including California), rather

26 than media with a foothold in just California, do not show that he was not fulfilling his duty to

27 _____

28 duties, a plaintiff cannot avoid immunity by arguing that he acted "as a politician seeking re-
   election." *Salazar v. Morales*, 900 S.W.2d 929, 934 (Tex. App. 1995).

7

1    inform the California public of his management of official business. Indeed, if AG Bonta sought

2    to reach all Californians, media outlets that transmit nationwide would be an effective conduit to

3    all State residents. And in any event, ExxonMobil's personal-jurisdiction claim undermines this

4    argument: ExxonMobil claims that nationwide media outlets have "no particular connection to"

5    California, and thus to any state, ECF 95 at 26, but elsewhere submits that those same nationwide

6    contacts targeted Texas sufficiently to invoke specific jurisdiction, ECF 96 at 11–13.

7        Finally, ExxonMobil seeks to apply *Williams v. Gorton*, a case that presented "a question of

8    Washington law." 529 F.2d 668, 672 (9th Cir. 1976). *Williams* closely read Washington's

9    primary case on official immunity, concluding that the complaint stated a claim for state-law

10   defamation. But the Court need not parse Washington precedent; California law provides the

11   principles needed to resolve this dispute.[5]

12       **B.    AG Bonta Is Immune Under Texas Law**

13       Attorney General Bonta is entitled to dismissal under two separate Texas doctrines. First,

14   he should be dismissed under Texas' common-law immunity doctrine because AG Bonta's

15   statements described official acts, came within the scope of his authority, and represented good-

16   faith conduct. ECF 44 at 23–25. Second, the Court should dismiss him per Texas' statutory

17   immunity because the challenged statements represent conduct "within the general scope of [his]

18   employment." *Id.* at 25 (quoting *Jennings v. Abbott*, 538 F. Supp. 3d 682, 692 (N.D. Tex. 2021)).

19       As with its analysis of California law, ExxonMobil focuses little on the applicable Texas

20   standard, instead advancing numerous inapplicable arguments. For instance, it argues that AG

21   Bonta's statements lose immunity's protection because he spoke publicly about the litigation's

22   allegations. ECF 95 at 20. But as the opening brief explains, AG Bonta's statements are protected

23   for their content: they describe his office's work and litigation, and thus are official acts. ECF 44

24   at 22–23. And ExxonMobil never addresses the practical consequences of its official immunity

25
         ――――――――――――――
26   [5] *Williams* also held that the plaintiff failed to state a claim under section 1983—more evidence
     that the Court should reject ExxonMobil's attempts to import 1983 principles into this case. 529
     F.2d at 670. Additionally, *Williams* applied the pre-*Twombly* notice-pleading regime,
27   undermining ExxonMobil's argument that it shows ExxonMobil stated a claim. *Shanks v. City of
     Arlington*, 2022 WL 17835509, at *1 (N.D. Tex. Dec. 21, 2022) ("Plaintiff's counsel seeks to
28   revive a notice pleading standard that has been dead for over fifteen years").

1    theory: if suits like this could proceed, based merely on AG Bonta's description of a lawsuit his

2    Department filed, any public official could face suit anywhere in the country for any discussion of

3    state action, including on the campaign trail. ECF 44 at 10.

4          ExxonMobil next states that Texas law does not immunize AG Bonta because it would be

5    premature at the motion to dismiss stage to find that he acted in good faith. ECF 95 at 27–29. But

6    as explained in the opening brief, a court not only can resolve this issue here—it must find good

7    faith unless the plaintiff "establish[es] that 'no reasonable person in the defendant's position

8    could have thought the facts were such that they justified [his] acts.'" *Hunt v. Smith*, 67 F. Supp.

9    2d 675, 683 (E.D. Tex. 1999) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 657

10    (Tex. 1994)); *see id.* ("The Plaintiff's First Amended Original Petition is wholly based [] on

11    *Plaintiff's* perceptions"). ExxonMobil tries to distinguish AG Bonta's authorities, ECF 95 at 27–

12    29, but stays mum on *Hunt*, presumably because *Hunt* defeats its case. AG Bonta's statements

13    summarized allegations in his Department's litigation against ExxonMobil—eminently

14    reasonable conduct for a government official, and certainly not conduct no reasonable person

15    would have found justified. ExxonMobil's allegation that AG Bonta "*actually knew his*"

16    statements were false, ECF 95 at 21, is a legal conclusion entitled to no deference. *Ashcroft v.*

17    *Iqbal*, 556 U.S. 662, 678 (2009).

18          ExxonMobil also fails to address a critical argument: it sued the wrong defendant under the

19    Texas Tort Claims Act. ECF 44 at 25. This suit is plainly based on conduct within the general

20    scope of AG Bonta's job duties, and because Texas law required ExxonMobil to proceed against

21    him in his official capacity, this case must be dismissed. *Id.*

22    **III.   AG BONTA IS ENTITLED TO SOVEREIGN IMMUNITY**

23          Despite this suit's styling as an individual-capacity matter, sovereign immunity still applies.

24    "[T]he fact a plaintiff brings a suit against a state employee solely in that employee's individual

25    capacity does not eliminate the Eleventh Amendment as a defense." ECF 44 (quoting *Stramaski*

26    *v. Lawley*, 44 F.4th 318, 324 (5th Cir. 2022)). "[T]he circumstances of the case" resolve that

27    analysis. *Id.* (quoting *Stramaski*, 44 F.4th at 322). That is because acting otherwise and treating

28    the naming of a government official in his individual capacity as dispositive "would be to adhere

1  to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity

2  represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Coeur*

3  *d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). This suit's (1) basis on statements describing

4  official conduct, and (2) implication of California's finances render California "the real and

5  substantial party in interest" here, leaving ExxonMobil's suit a "transparent[] effort at an end run

6  around the Eleventh Amendment." *Stramaski*, 44 F.4th at 322, 323.

7      ExxonMobil responds with a divide-and-conquer approach, citing cases holding that these

8  two arguments do not *individually* implicate the Eleventh Amendment. In *Lewis v. Clarke*, the

9  Supreme Court nixed ruling a defendant "immune from [] suit *solely* because he was acting

10  within the scope of his employment." 581 U.S. 155, 163 (2017) (emphasis added). In *Henley v.*

11  *Simpson*, the Fifth Circuit, explaining that "an action against a state official in his individual

12  capacity may not *in all instances* implicate the Eleventh Amendment," clarified that "if the State

13  will indemnify an official sued in his individual capacity, *that alone* does not extend Eleventh

14  Amendment immunity to that official." 527 F. App'x 303, 305 (5th Cir. 2013) (emphases added).

15      But AG Bonta does not argue that either of those facts individually invokes the Eleventh

16  Amendment. Instead, he offers multiple reinforcing pieces of evidence that this suit targets

17  California. ECF 44 at 25–27. ExxonMobil thus topples a strawman.

18  **IV.    DECLARATORY RELIEF IS IMPROPER**

19      A declaratory-judgment cause of action cannot proceed if no other cause of action can

20  proceed. ECF 44 at 27. ExxonMobil does not contest this black-letter legal principle. And it still

21  does not clarify whether it seeks relief under federal or Texas law. *Id.* The declaratory-judgment

22  action thus fails.

23                          **CONCLUSION**

24      The Court should grant AG Bonta's Motion to Dismiss.[6]

25  _____

26  [6] At its brief's conclusion, ExxonMobil states that AG Bonta's co-defendants' potential 12(b)(6) successes could not benefit AG Bonta. ECF 95 at 32 n.12. That is wrong. Several other defendants' arguments apply equally to AG Bonta. For instance, ExxonMobil did not plead that it

27  gave any defendant the required chance to retract the allegedly defamatory statements before suing. ECF 50 at 4. It also did not plead that any defendant sufficiently knew of its advanced-

28  recycling agreements. *Id.* at 21–23.

1    Dated:  June 30, 2025                        Respectfully submitted,

2                                                 ROB BONTA
                                                  Attorney General of California
3                                                 R. MATTHEW WISE
                                                  Supervising Deputy Attorney General
4
                                                  /s/ Robert William Setrakian
5                                                 WILL SETRAKIAN
                                                  Deputy Attorney General
6                                                 *Attorneys for Defendant Attorney General
                                                  Rob Bonta*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Attorney General Rob Bonta's Reply in Support of Motion to Dismiss (1:25-cv-00011-MJT)

# CERTIFICATE OF SERVICE

Case Name:   **Exxon Mobil v. Bonta**          No.   **1:25-cv-00011-MJT**

I hereby certify that on <u>June 30, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ATTORNEY GENERAL ROB BONTA'S REPLY IN SUPPORT OF MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>June 30, 2025</u>, at Los Angeles, California.

|  |  |
|---|---|
| Dyan Serzo | *D. Serzo* |
| Declarant | Signature |

SA2025300062
67750591.docx