# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | | |
|---|---|---|
| **EXXON MOBIL CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **ROBERT ANDRES BONTA A.K.A.** | § | |
| **ROB BONTA, IN HIS INDIVIDUAL** | § | Case No. 1:25-cv-00011-MJT |
| **CAPACITY; SIERRA CLUB, INC.;** | § | |
| **SURFRIDER FOUNDATION, INC.;** | § | |
| **HEAL THE BAY, INC.; BAYKEEPER,** | § | |
| **INC.; AND INTERGENERATIONAL** | § | |
| **ENVIRONMENT JUSTICE FUND LTD.** | § | |
| | § | |
| **Defendants.** | § | |

**REPLY IN SUPPORT OF DEFENDANT SIERRA CLUB'S MOTION TO DISMISS**

I.     **The Claims Against Sierra Club Should Be Dismissed Pursuant to Rule 12(b)(2)**

ExxonMobil ("EM") spends fifteen pages arguing its position regarding personal jurisdiction. Doc. 96 at 4-18. Most of EM's arguments concern General Bonta. But alleging a conspiracy does not give rise to personal jurisdiction over alleged co-conspirators. *Nat'l Indus. Sand Ass'n*, 897 S.W.2d 769, 773 (Tex. 1995). "Each defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984), and "plaintiffs may not aggregate defendants' forum contacts." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 441 (5th Cir. 2025).

EM's Complaint alleges "Sierra Club and its Texas members have a history of taking in-state action against ExxonMobil's Baytown Refining Complex." Compl. ¶ 18. But EM concedes that Sierra Club's "prior activities directed against ExxonMobil in Texas do not establish personal jurisdiction for this case." Doc. 96 at 10.

For contacts with a forum to be "constitutionally sufficient" such that personal jurisdiction exists, "the underlying cause of action must 'arise out of' the defendants' contacts with the forum state." *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F.Supp.3d 462, 470 (E.D. Tex. 2020); *see also Bristol-Myers Squibb Co. v. Superior Court of California,* 582 U.S. 255, 262 (2017). As the Supreme Court put it in a case EM fails to discuss in its opposition brief: "there must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place *in the forum State*.'" *Bristol-Myers Squibb,* 582 U.S. at 264 (emphasis added). EM acknowledges its Complaint identifies only three allegedly defamatory statements attributed to Sierra Club (Doc. 96 at 9, citing Compl. ¶ 91), but none of those statements were made in Texas. *See* Chin Declaration (Doc. 46-2); Kreeger Declaration (Doc 46-4).

Recognizing the lack of connection between these statements and Texas, EM pivots, citing

1

its allegation that "Sierra Club has 24,000 Texas members." Doc. 96 at 9 (citing Compl. ¶ 18). But merely conducting business or general activity in a forum does not establish personal jurisdiction, *Bristol-Myers*, 582 U.S. at 262—a point EM seems to recognize. EM therefore contends, relying on *Calder*, 465 U.S. at 790, that its allegation about the size of Sierra Club's Texas membership "confirm[s]" "Sierra Club (and its website where it published one such statement regarding ExxonMobil, and solicits donations) has a significant following in Texas such that the statements had a 'large circulation' in Texas." Doc. 96 at 9. But, as the Fifth Circuit has explained, "[t]he key question, under *Calder*, is whether the forum state was 'the focal point *both* of the [alleged libel] and of the harm suffered.'" *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (emphasis added); *see also Herman v. Cataphora Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) ("Without a showing that the *statement's* focal point was Louisiana . . . the district court lacked personal jurisdiction over the Defendants.") (emphasis added). As discussed, the Sierra Club statements were neither made in Texas nor mention Texas. Those statements were about, and made in conjunction with, the initiation of a lawsuit against EM in California, which has no focus on Texas. *See* Chin Declaration (Doc. 46-2); Kreeger Declaration (Doc 46-4). And, like in *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002), here there is no allegation or evidence that the purportedly defamatory statements were "directed at Texas readers as distinguished from readers in other states."[1]

EM's other argument is that because "Sierra Club has not submitted a declaration or

---

[1] EM improperly relies on assertions not included in its complaint—that Sierra Club's website "solicits donations" and "has a significant following in Texas such that the statements had a 'large circulation' in Texas." Regardless, these assertions are unavailing in establishing personal jurisdiction. "Making a website that's visible in Texas, of course, does not suffice." *TheHuffingtonPost.com, Inc.*, 21 F.4th at 320. That is true even if the website is used to generate revenue. *Id*. at 320-21. For these reasons, among others, EM's conditional request for "jurisdictional discovery" (Doc. 96 at 15-16) should be denied.

otherwise denied" it was "aware that ExxonMobil is a Texas corporation and that the advanced recycling operations are based in Texas," Sierra Club "purposefully targeted its tortious conduct at Texas." Doc. 96 at 9. This argument too fails. Whether someone at Sierra Club was aware that EM (a New Jersey corporation) has its headquarters in Texas does not give rise to personal jurisdiction in this case. Nor does whether someone at Sierra Club was aware that EM has "advanced recycling operations" in Texas. "For Texas to have jurisdiction . . . the [alleged defamatory statement] had to target Texas specifically and knowingly." *TheHuffingtonPost.com, Inc.*, 21 F.4th at 318. The Sierra Club statements do not mention Texas or "advanced recycling."[2]

\* \* \*

Specific personal jurisdiction "may arise only from the defendant's forum ties that relate to the plaintiff's claim. One reason for that limit is to respect federalism. When one state tries a suit, it 'may prevent sister States from exercising their like authority,' even when those states have a greater interest in the dispute." *TheHuffingtonPost.com, Inc.*, 21 F.4th at 323. "That federalism interest carries enormous weight." *Id.* As the Supreme Court recently emphasized, constraints on specific personal jurisdiction "ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Fuld v. Palestine Liberation Org.*, 2025 WL 1716140, at \*8 (U.S. June 20, 2025). Here, federalism principles reinforce that this Court lacks personal jurisdiction over EM's claims against Sierra Club, a California entity, based on statements by Sierra Club (1) announcing and describing a lawsuit filed in California, (2) uttered outside of Texas, and (3) which made no mention of Texas.

---

[2] EM failed to respond to several Sierra Club arguments about why it is not subject to personal jurisdiction. Courts "have consistently deemed arguments as conceded where those arguments remain unaddressed in the parties' responsive briefing." *Cobble v. 20/20 Communications, Inc.*, 2019 WL 13175520, at \*4 (N.D. Texas, Feb. 21, 2019).

## II. The Claims Against Sierra Club Should Be Dismissed Pursuant to Rule 12(b)(3)

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Unable to point to events in this District that *gave rise* to its claims, EM contends "venue is proper in the Eastern District of Texas because that is where ExxonMobil is suffering the harms inflicted by" Defendants' alleged conduct (Doc. 96 at 19), citing *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387 (E.D. Tex. 2022). But in *Nunes*, the district court, after evaluating the venue statute, transferred the case from the Eastern District of Texas to the Southern District of New York, where the *Defendant* had its headquarters and the individuals involved in the alleged tortious conduct were located. *Id*. at 404. EM's quotation from *Nunes* notably substitutes ellipses for the court's statement that under § 1391(b)(2) "the court may consider *where the defamation occurred* . . . ." *Id*. at 403-04 (emphasis added). EM's editing of the quotation is particularly noteworthy since the omitted words were the basis for the court's ruling: it concluded a substantial part of the events giving rise to the claim occurred where the defamation occurred. *Id.* at 404.

Moreover, even if EM had properly characterized *Nunes*, that decision is from a district court, and EM ignores the Fifth Circuit' decision in *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492–93 (5th Cir. 2018), cited in Sierra Club's motion (Doc. 50 at 7), where the court of appeals applied §1391(b)(2) based on the location of the allegedly liability-generating conduct, not the location of alleged impact. EM cites *no* Fifth Circuit authority supporting its theory that venue is proper in this District because that is where EM allegedly is suffering harm, or its related theory that "Defendants intended that their attack be felt in the district." Doc. 96 at 20.

4

### III. The Claims Against Sierra Club Should Be Dismissed Pursuant to Rule 12(b)(6)

#### A. The Complaint Improperly Employs "Collective Pleading"

EM claims "collective pleading" is permissible because its Complaint includes a conspiracy cause of action. Doc. 97 at 10. EM is mistaken. The Complaint asserts six causes of action against *each* Defendant—a total of 36 causes of action. EM's allegation that Defendants conspired does not itself state a claim for any of the other five causes of action.³ Because EM has failed to state a claim against Sierra Club for business disparagement, defamation, tortious interference (of either variety), or for a declaratory judgment, those claims must be dismissed—even if EM had properly alleged a conspiracy claim (which it has not).⁴

#### B. The Complaint Fails to Disaggregate Lawful In-Court Statements from Purportedly Unlawful Out-of-Court Statements

Sierra Club's motion to dismiss explained that: (1) under EM's view, Sierra's Club's *in-court* allegations and assertions must have caused ExxonMobil harm, (2) those in-court allegations are substantially similar to the out-of-court statements challenged in ExxonMobil's pleading in this case, and (3) in-court allegations can adversely impact a party's reputation, perhaps even *more* than out-of-court statements. Motion at 12. EM does not dispute any of that. Nor does EM justify its failure to disaggregate alleged harm from in-court versus out-of-court statements, or offer any theory about how Sierra Club's out-of-court statements could injure it when Sierra Club's California pleading made the same points, and more. EM's allegation that it has been harmed by

---

³ Neither *Adams v. Alcolac, Inc.*, 974 F.3d 540, 544 (5th Cir. 2020), invoked by EM (Doc. 97 at 2), nor any other case cited by EM, holds otherwise.

⁴ Ignoring the many cases prohibiting collective pleading (sometimes referred to as "group pleading"), Motion at 9, EM cites *Clapper v. Am. Realty Inv'r, Inc.*, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015), claiming that courts "routinely" permit collective pleading. Doc. 97 at 10. Of course, *Clapper* is just one case, and hardly establishes a "routine" practice. Moreover, in *Clapper*, unlike here, the plaintiff intended every reference to "multiple defendants" to "allege that each named defendant committed the alleged act." *Id.* at *4.

the three out-of-court statements attributed to Sierra Club are therefore implausible, and Counts One through Five should be dismissed.

        **C.    Count One (Business Disparagement) and Count Two (Defamation) Should Be Dismissed**

        **1.    ExxonMobil is a Public Figure and The Complaint Does Not Adequately or Plausibly Allege Sierra Club Acted With Actual Malice**

Perhaps concerned it has not plausibly alleged actual malice, EM rolls out the astonishing argument that it is a *private* figure for purposes of this case. Despite being one of the largest and most familiar companies in the United States (and presumably more so in Texas), EM contends that while it is public figure "for purposes of energy production" it is a private figure in this case because it involves plastics and recycling, and therefore only needs to demonstrate negligence (not actual malice). Doc. 97 at 18-19. This gambit contradicts EM's Complaint, which claims the alleged conspiracy sought to "disparage the oil and gas industry," (Compl. ¶ 131), and was a "novel strategy for competing against American oil-and-gas producers like ExxonMobil" (Compl. ¶ 45). EM cites *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974), and *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 (5th Cir.1993), as authority for its counterfactual argument, but neither helps EM. The rationale articulated in *Gertz* for treating some entities as private figures, 418 U.S. at 351-52, demonstrates that EM is a public figure here—it has ample access to channels of effective communication, and invited attention to and comment about its business activities. *See Snead,* 998 F.2d at 1329 (distinguishing private figures from companies that are "household names"). EM cites no Supreme Court or Fifth Circuit authority for the notion a notorious company can transform from a public to a private figure for litigation concerning certain lines of business.

As for the Complaint's formulaic allegation that "Defendants either knew that their statements (as alleged herein) concerning ExxonMobil and advanced recycling were false or acted

6

with reckless disregard as to that falsity" (Compl. ¶ 94; *see also id*. at ¶¶ 98, 106, 111), this fails to meet the pleading requirements of *Twombly* and *Iqbal*.  *See* Motion at 16.  Because Plaintiff does not adequately plead actual malice, Counts One and Two should be dismissed.

> 2. **The Complaint Does Not Adequately Allege Defamation Per Se or Special Damages**

*Defamation Per Se*.  Again engaging in "collective pleading," EM contends "*Defendants' statements*" are defamatory per se because "they denigrate [EM's] fitness to conduct business or trade in the polymers and advanced-recycling businesses" and "impugn [EM's] integrity and reputation by accusing [it] of being deliberately dishonest about the efficacy of recycling and advanced recycling."  Doc. 97 at 19 (emphasis added).  But a statement may be defamatory *per se* "only if it falls within a specifically defined category," including if it imputes criminal conduct, sexual misconduct, or "a loathsome disease," or if it injures "a person's office, business, profession, or calling."  Motion at 18.  EM has not alleged that any of the *three specific statements* attributed to Sierra Club (Compl. ¶ 91) meets these standards.

*Special Damages*.  FRCP 9(g) provides: "If an item of special damage is claimed, it must be specifically stated."  EM ignores this Rule, but the Complaint's failure to state *any* "item of special damage" is a fatal pleading defect because special damages are "an essential element of a business disparagement claim," *Burbage v. Burbage*, 447 S.W.3d 249, 261 n.6 (Tex. 2014), and required for a defamation claim unless a specific statement constitutes defamation *per se*.  *See Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019).

> D. **Counts Three and Four (Tortious Interference) Should Be Dismissed**
>
> 1. **ExxonMobil's Allegations Regarding Existing Contracts are Deficient**

EM's Complaint does not identify any *specific* counterparty to an EM contract with which it claims Sierra Club tortiously interfered.  Motion at 19.  EM represents it "has entered" into

contracts (Doc. 97 at 24, citing Compl. ¶¶ 62, 66), but that allegation comes up short because those contracts may not have been in effect at the time of the alleged interference, and in any event that allegation does not provide a "plausible basis to infer that [defendant] knew of a *specific* business relationship and intentionally interfered with that relationship." *Klein v. Walker*, 2016 WL 9242015, *6 (E.D. Tex. 2016) (emphasis in original). Nor does the Complaint allege any party actually breached or terminated an agreement with EM as a result of Sierra Club's alleged conduct, or that Sierra Club took an active part in persuading a party to a contract to breach or terminate any such agreement.

EM fails to respond to Sierra Club's argument that its allegations of willful and intentional interference with contract do not satisfy the plausibility requirement of Rule 8. Motion at 20. EM never explains why Sierra Club would have any reason to believe its out-of-court statements would interfere with EM's existing business relationships when substantially similar allegations were being made in court, or how EM could plausibly have been harmed by Sierra Club's out-of-court statements when substantially similar statements were made in court. EM's silence is telling.

### 2. ExxonMobil's Allegations Regarding Prospective Contracts are Deficient

The Complaint contains "no allegation that [Sierra Club] acted with a conscious desire to cause, or with the certain knowledge that" they were "preventing [a] *specific business relationship* [with EM] from forming." *Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861, *5 (E.D. Tex. 2021). EM does not contend otherwise. Instead, EM claims "a reasonable person would believe that [it] is contracting with companies in this region" because "advanced recycling works" and because EM has a "pyrolysis facility in Baytown." Doc. 97 at 26. This argument seems at odds with EM's notion that it is a "private figure"—out of sight and mind of the average person. But leaving that aside, Sierra's Club statements make no mention of "advanced recycling" or

8

"pyrolysis," and there is no basis to infer that Sierra Club knew, or should have known, about EM's prospective contractual relations. Nor is there any allegation that Sierra Club took an active part in persuading a party to a contract to forego any prospective contractual relations. And, the Complaint does not adequately plead actual damages as a result of the purported interference. As discussed above, Sierra Club's lawsuit in California made allegations substantially similar to the out-of-court statements attributed to Sierra Club challenged in this case, and EM has failed to plausibly allege how it was harmed by Sierra Club's out-of-court statements.

### E. Count Five (Conspiracy) Should Be Dismissed

Sierra Club's motion observed that EM's Complaint is "notably silent about even the basics of this alleged conspiracy." Motion at 23. EM's explanation of its conspiracy allegations makes even more clear that Count Five should be dismissed.

First, EM alleges a conspiracy dedicated in substantial part to an unquestionably lawful objective (seeking relief from the courts) through unquestionably lawful means (filing a lawsuit).[5] Such a "conspiracy" is not actionable. *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) ("[C]ivil conspiracy requires specific intent" to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."). To the contrary, the challenged conduct is constitutionally-protected petitioning of government. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (under the *Noerr-Pennington* doctrine, there is "no cause of action" where conduct is "predicated" on "[t]he right of petition," including "[t]he right of access

---

[5] *See, e.g.*, Doc. 96 at 2 (Defendants' "concerted effort began when IEJF . . . hired [California law firm] to bring claims against ExxonMobil" on behalf of U.S. Nonprofits); Doc. 97 at 4 ("IEJF hired Cotchett to attack [EM] on behalf of the US NGO Defendants."); Doc. 97 at 7 ("Bonta and NGOs filed parallel complaints within hours of each other"; describing "agreement" related to filing and "announcement" of lawsuits); Doc. 97 at 8 (Defendants were "working together" to "accomplish the scheme, resulting in strikingly similar lawsuits filed [against EM] on the same day"); Doc. 97 at 9 (filing of the California lawsuits was the "culminat[ion]" of Defendants' "agreement").

9

to the courts"); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (*Noerr-Pennington* applies to common-law tort claims); *Coastal States Mktg. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("petitioning immunity protects joint litigation").

Second, EM's opposition brief confirms the alleged conspiracy is implausible. EM has not disputed Sierra Club's observation that each U.S. Nonprofit "has plausible *independent* reasons to be concerned about ExxonMobil's activities" and each "would have had plausible *independent* reasons to make the statements challenged by ExxonMobil." Motion at 23. Nor has EM disputed that statements made in furtherance of the purported "conspiracy to defame" were limited in time (coincident with the filing of the California complaints) and scope (announcing and describing the California lawsuits). Instead, EM's opposition brief confirms both. Doc. 97 at 9 ("agreement" "culminat[ed]" in "filing" of California lawsuits and "coordinated press statements" in September 2024, and ended in October 2024). The few Sierra Club actions challenged in the Complaint are fully consistent with independent action, and EM's allegation that Sierra Club participated in a conspiracy is implausible.

### F. Count Six (Declaratory Judgment) Should Be Dismissed

EM seeks "[a] declaration that (i) advanced recycling is recognized and permitted by law in multiple states, including Texas, and that (ii) ExxonMobil is lawfully permitted to engage in and promote advanced recycling at its Texas facility." Compl. ¶ 140. But a declaratory judgment claim is justiciable only if it involves "the *legal relations* of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (emphasis added). What EM really seeks is an impermissible advisory opinion. Count Six should be dismissed for lack of subject matter jurisdiction.

Dated: June 30, 2025          Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

<u>/s/  Scott E. Gant</u>
SCOTT E. GANT (appearing pro hac vice)
D.C. Bar No. 455392
sgant@bsfllp.com
1401 New York Avenue, NW
Washington, DC  20005
Telephone: (202) 895-7566
Facsimile: (202) 237-6131

*Attorney for Sierra Club*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

/s/  *Scott E. Gant*